## THE RELEVANT MARKETS

164.    Defendants' antitrust violations have occurred in the market for Class Commodities, which is the market for physical platinum and palladium conforming to the NYMEX's requirements for physical delivery in connection with NYMEX platinum and palladium futures contracts.

165.    Concerning platinum, the relevant market includes physical platinum at least 99.95% pure and consisting of ingots or plates weighing at least ten ounces, each of which is incised with the lot or bar number, weight, grade, name or logo of the assayer, and symbol identifying the metal.

166.    Concerning palladium, the relevant market includes physical palladium at least 99.95% pure and consisting of ingots or plates weighing at least ten ounces, each of which is incised with the lot or bar number, weight, grade, name or logo of the assayer, and symbol identifying the metal.

## FUTURES PLAINTIFFS' CLAIMS

## AS AND FOR A FIRST CLAIM

## AGAINST ALL DEFENDANTS

**(Manipulation In Violation of The Commodity Exchange Act, 7 U.S.C. §§1 *et seq.*)**

167.    The Futures Plaintiffs re-allege and incorporate the allegations of this Complaint in ¶¶1-10, ¶¶13-22; ¶¶27-69; ¶¶75-152 with the same force and effect as if fully restated herein.

168.    Defendants, through their acts alleged herein, from at least October 25, 2007 through at least June 6, 2008, specifically intended to and did cause unlawful and artificial prices of NYMEX palladium and platinum futures contracts in violation the CEA, 7 U.S.C. §1, *et seq.* These included artificially high prices.

169.    In all the circumstances previously alleged, each Defendant had the ability to cause and did cause artificial prices, including artificially high prices.

170.    Each Defendant is liable under Section 2(a)(1) of the CEA, 7 U.S.C. §2(a)(1), for the manipulative acts of their agents, employees and other persons acting on their behalf.  The Moore Defendants all acted through Defendant Pia as the CFTC—as to the Moore Capital Defendants—held and found.  CFTC Order p. 5 n. 3.

171.    The Futures Plaintiffs and other persons who purchased NYMEX palladium or platinum futures contracts during the Class Period paid artificial and unlawful prices, and were further injured in that they transacted in an artificial and manipulated market, including at artificially high prices, during the Class Period.

172.    As a direct result, the Futures Plaintiffs and Futures Sub-Class members who purchased NYMEX palladium and platinum futures contracts during the Class Period were injured and suffered damages.

## AS AND FOR A SECOND CLAIM

## AGAINST ALL DEFENDANTS

**(Principal-Agent / Control Person Liability In Violation of The Commodity Exchange Act, 7 U.S.C. §§1 *et seq.*)**

173.    The Futures Plaintiffs re-allege and incorporate the allegations of the First Claim as if fully set forth herein.

174.    Defendants Moore Capital Advisors and Moore Advisors—acting through Defendant Pia and others—directed the manipulative trades alleged herein as agents of Defendants Moore Capital Management and the Moore Funds.

175.    Defendant Pia was an employee and agent of Defendant Moore Capital Management and, as an agent or other person acting on behalf of Defendants Moore Capital Advisors, Moore Advisors and the Moore Funds, entered the manipulative orders for them.

176.    Defendants Moore Capital Management, Moore Capital Advisors and Moore Advisors and Defendant Pia—all acting through Defendant Pia and others—were the agents or other persons acting on behalf of the Moore Funds, which made and paid for the manipulative trades alleged herein for such Moore Funds.

177.    Defendant MF Global acted as FCM and agent or another person acting on behalf of Defendants Moore Capital Management, Moore Capital Advisors, Moore Advisors, Pia and the Moore Funds.    This included when Defendant MF Global entered and placed the manipulative orders and caused them to be executed during the last ten seconds of trading and otherwise as alleged herein.  Mr. Welsh was a registered AP and was employed by MF Global during the Class Period and acted as its agent or as another person acting on behalf of it.

178.    Under Section 2(a)(1)(B) of the CEA, 7 U.S.C. §2(a)(1)(B), each of the aforementioned Defendants is liable for the acts of its agents.  Under Section 13(b) of the CEA, 7 U.S.C. §13c(b), each of the aforementioned Defendants is liable as a control person.

179.    The Futures Plaintiffs and members of the Futures Sub-Class are each entitled to damages for the violations alleged herein.

## AS AND FOR A THIRD CLAIM

## AGAINST ALL DEFENDANTS

**(Aiding and Abetting Manipulation In Violation of The Commodity Exchange Act, 7**

**U.S.C. §§1 *et seq.*)**

180.    The Futures Plaintiffs re-allege and incorporate the allegations of the Second Claim as though fully set forth herein.

181.    In all the circumstances of the long duration of the manipulative scheme and the blatantly manipulative nature of the "bang the close" trades, each and every Defendant had extensive knowledge of the manipulation.

182.    Each Defendant provided highly unusual assistance by engaging in acts to further the blatant manipulation whereas standard practice was to refuse to do such acts.

183.    Defendant Moore Capital Management acted as the commodity trading advisor to the Moore Funds and, as a principal of Defendant Moore Capital Advisors, shared in the financial benefits from the manipulation. Also, it willfully aided, abetted, counseled, induced, or procured the commission of violations of the CEA by the Moore Defendants.

184.    Defendants Moore Capital Advisors and Moore Advisors were co-general partners of the Moore Funds and directed (though Defendant Pia and others) manipulative investments in the Moore Funds alleged herein.   They thereby willfully aided, abetted, counseled, induced, or procured the commission of violations of the CEA by the Moore Defendants.

185.    Defendant MF Global acted as FCM for Defendants Moore Capital Advisors and Moore Advisors and entered the manipulative trades and orders alleged herein (as directed by Defendant Pia and others).  MF Global thereby willfully aided, abetted, counseled, induced, or procured the commission of violations of the CEA by the Moore Defendants.  Defendant MF Global substantially assisted in the aforesaid manipulations by executing the Moore Defendants' trades while simultaneously being aware of the nature of the manipulative trades and, indeed, the manipulative pattern of trading engaged in by the Moore Defendants.

186.   Defendant MF Global repeatedly provided extraordinary assistance for extra revenues with actual knowledge of the manipulative trades over a long duration.   It, too, knowingly and willfully aided and abetted the manipulation.

187.   The Moore Funds held the manipulative positions for Defendants Moore Capital Management, Moore Capital Advisors and Moore Advisors, paid for same and financed the manipulation.  This is highly unusual conduct.  Based on the long duration and blatant nature of the "frequent" large manipulative trades in the two separate markets, and other facts previously alleged, the Moore Defendants were willfully blind and aided and abetted or knowingly willfully aided, abetted, counseled, induced, or procured the commission of violations of the CEA by the Moore Defendants.

188.   Defendant Pia implemented the manipulative trading strategies alleged herein on behalf of the Moore Defendants and directed that manipulative trades and orders be placed through Defendant MF Global and willfully aided, abetted, counseled, induced, or procured the commission of violations of the CEA by the Moore Defendants.

189.   Defendants each played their component role and each knowingly aided, abetted, counseled, induced, and/or procured the violations of the CEA alleged herein.

190.   Under Section 13c(a) of the CEA, 7 U.S.C. §13, each of the aforementioned Defendants is liable for willfully intending to assist the manipulation.

191.   The Futures Plaintiffs and the Futures Sub-Class are each entitled to actual damages for the violation of the CEA alleged herein.

## PHYSICAL PLAINTIFFS' CLAIMS

## AS AND FOR A FOURTH CLAIM

## AGAINST ALL DEFENDANTS

**(Sherman Act § 1 for *per se* Price Fixing)**

192.    Plaintiffs re-allege and incorporate by reference each and every paragraph set forth above. As used in the Fourth Claim and Fifth Claim "Plaintiffs" means the "Physical Plaintiffs" and "Class" means the Physical Sub-Class.

193.    The Sherman Antitrust Act's purpose is to preserve or advance our system of free, competitive enterprise, and to encourage to the fullest extent practicable, free and open competition in the market place so the consuming public may receive better goods and services at the lowest obtainable cost.

194.    Any unreasonable interference, by contract, combination or conspiracy, with the ordinary, usual and freely competitive pricing or distribution system of the open market in interstate trade and commerce, constitutes an unreasonable restraint of interstate trade.

195.    Defendants Moore Capital Management, LP, Moore Capital Advisors, LLC, Moore Advisors, Ltd. and Christopher Pia entered into and knowingly engaged in a contract, combination or conspiracy in restraint of trade, the "Platinum/Palladium Price-Fixing Enterprise." The purpose and effect of this Enterprise was to manipulate, raise, fix or otherwise cause artificial prices in the market for Class Commodities during the Class Period. This contract, combination, and conspiracy is illegal *per se* under Section 1 of the Sherman Act, 15 U.S.C. § 1.

196.    Defendants' "Platinum/Palladium Price-Fixing Enterprise," a contract, combination, conspiracy and common purpose to reap significant ill-gotten profits and gains, artificially raised the prices on Class Commodities during the Class Period to plaintiffs' and the Class's detriment.

46

197.    Defendants' contract, combination, or conspiracy has caused substantial anticompetitive effects and harm in the market for Class Commodities and has affected interstate commerce. It has done so by causing plaintiffs, and other Class Commodities purchasers, to pay artificial prices higher than what they would have paid in the absence of defendants' illegal activity.

198.    Because of these Section 1 Sherman Act violations, plaintiffs and the Class have been injured in their business and property in an amount not presently known, but which is, at minimum, hundreds of thousands of dollars, prior to trebling.

## AS AND FOR A FIFTH CLAIM

## AGAINST ALL DEFENDANTS

### (Violations of the Racketeer Influenced and Corrupt Organizations Act

### 18 U.S.C. §§ 1961 *et seq.* ("Civil RICO"))

199.    The Physical Plaintiffs re-allege and incorporate by reference each and every paragraph set forth above.

200.    Defendants, and each of them, conspired and combined together to artificially raise the prices on platinum and palladium futures during the Class Period, which necessarily impacted the physical commodities market for platinum and palladium.

201.    Defendants' "Platinum/Palladium Price-Fixing Enterprise" had the common purpose of reaping significant profits and gains by artificially raising the prices on platinum and palladium during the Class Period to the detriment of the plaintiffs and the class they represent.

**Defendants used instrumentalities of interstate and foreign commerce**

202.    As an integral part of the continuing conspiracy and course of conduct alleged herein, defendants repeatedly and continuously used and affected the instrumentalities of

47

interstate and foreign commerce in and to and from the United States, including the mails, wires, air travel and other forms of interstate and foreign commerce the defendants used to engage in their unlawful trading and price-fixing activities in and with the United States within the meaning of 18 U.S.C. § 1962.

203.   The conduct, acts and omissions of the defendants set forth above were an integral part of the overall pattern and practices described herein, including using the facilities of United States interstate and foreign commerce to artificially raise the prices on platinum and palladium during the Class Period.

204.   The conduct, acts and omissions of the defendants set forth above were an integral part of the overall pattern and practices described herein.

205.   It also was an integral, essential part of the conspiracy this same conduct was used to unlawfully earn millions of dollars at the expense of the plaintiffs and the class they represent and to deprive the plaintiffs and the class of their funds and property.

206.   In furtherance of their unlawful conduct and these acts and omissions, the defendants knowingly:

> a.   used the mails in U.S. or foreign commerce to commit fraud in violation of 18 U.S.C.§ 1341;
>
> b.   used the wires in U.S. or foreign commerce to commit fraud in violation of 18 U.S.C. § 1343;
>
> c.   engaged in money laundering in violation of 18 U.S.C. §§ 1956, 1957; and
>
> d.   engaged in transactions with money derived from unlawful activity in violation of 18 U.S.C. § 1957.

207.   All these constitute "predicate acts" under 18 U.S.C. § 1961.

**Defendants engaged in a "pattern" of racketeering activity**

208.    Defendants' conduct involved "at least two acts of racketeering activity . . . the last of which occurred within ten years after the commission of a prior act of racketeering activity" and therefore constituted a "pattern of racketeering" within the meaning of 18 U.S.C. § 1961(b).

209.    As set forth above, this pattern consisted of repeated, continuous acts that had the same or similar purposes, results, participants, victims, or methods of commission, and are interrelated by distinguishing characteristics rather than isolated events.

210.    This pattern lasted for a significant period of time, from no later than October 25, 2007 and continuing through June 6, 2008.

211.    The purpose of defendants' pattern and practice was to engage in the unlawful conduct alleged herein.

212.    As part of their pattern and practice, and in furtherance of their illegal and fraudulent acts, the defendants used and caused to be used wire communications in interstate and foreign commerce, by both making and causing to be made wire communications.

213.    Each such use of a wire communication in connection with the described schemes and artifices to defraud constitutes a separate and distinct violation of 18 U.S.C. § 1343.

214.    Beginning at least as early October 25, 2007 and continuing through June 6, 2008, in furtherance of and for the purpose of executing and attempting to execute the described schemes and artifices to defraud, the defendants on numerous occasions did knowingly and willfully transport and cause to be transported in interstate and foreign commerce money of the value of $5,000 or more knowing said money had been obtained by fraud or knowing said

49

money was generated as the result of one or more fraudulent transactions. Each such act constitutes a separate and distinct violation of 18 U.S.C. § 2314.

215.     In furtherance of the schemes to defraud, and in an effort to conceal and promote their criminal conduct, from at least as early as October 25, 2007 and continuing through June 6, 2008, the defendants knowingly engaged in one or more financial transactions in criminally derived property and/or monetary transactions in such property, derived as a result of the schemes and artifices to defraud, in violation of 18 U.S.C. §§ 1341, 1343, 2314, as previously set out above. These monetary transactions each had a value of more than $10,000.

216.     Defendants are United States persons within the meaning of 18 U.S.C. § 1957(d). A substantial part of the acts and omissions described above was conducted within the United States or by a United States person, each act or omission was engaged in for the purposes described in the preceding paragraph and each constitutes a separate and distinct activity indictable under 18 U.S.C. §§ 1956, 1957 and 2314.

217.     From at least as early as October 25, 2007 and continuing through June 6, 2008, the defendants repeatedly engaged in acts indictable under 18 U.S.C. § 1341 (mail fraud), 18 U.S.C. § 1343 (wire fraud), 18 U.S.C. § 1956 (laundering of monetary instruments), 18 U.S.C. § 1957 (engaging in monetary transactions in property derived from specified unlawful activity) and 18 U.S.C. § 2314 (transportation of stolen money), used the United States mails as well as wire and other communications in interstate and foreign commerce in connection with these acts and thereby continually engaged in "racketeering activity" within the meaning of 18 U.S.C. § 1961(1)(B) in the course of their described criminal schemes.

218.     The repeated violations by the defendants of 18 U.S.C. §§ 1341, 1343 and 2314 extended over a period of at least seven month and involved distinct and independent criminal

acts. They were neither isolated nor sporadic events, but involved the regular and repeated violation of law to accomplish the defendants' desired ends in the course of the continuing business of the "Platinum/Palladium Price-Fixing Enterprise" as defined herein.

219.    These acts were related to each other by virtue of (a) common participants, (b) common victims, (c) common methods of commission through concerted action and (d) the common purpose and common result of enriching themselves at the expense of the plaintiffs and the class they represent while concealing their criminal activities. As such, this conduct constitutes a pattern of racketeering activity within the meaning of is 18 U.S.C. § 1961(5).

220.    These repeated and continuing violations of 18 U.S.C. § 1956, 18 U.S.C. § 1957 and 18 U.S.C. § 2314 were neither isolated nor sporadic events, but involved a callous and calculated series of repeated violations of law in order to conceal and promote criminal activity in the course of the continuing business of the Platinum/Palladium Price-Fixing Enterprise. These activities therefore constitute a further component of a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

221.    Defendants were employed by or active participants in the Platinum/Palladium Price-Fixing Enterprise and all of them violated or aided violations of 18 U.S.C. § 1962(c) by directly or indirectly conducting or participating in the conduct of the affairs of the Platinum/Palladium Price-Fixing Enterprise through a pattern of racketeering activity.

222.    Defendants' violating 18 U.S.C. § 1962(c) caused the plaintiffs and Class members to suffer direct injury to their business and property in the millions of dollars in losses over the course of time beginning at least as early as October 25, 2007 and continuing through June 6, 2008.

**Defendants operated the "Platinum/Palladium Price-Fixing Enterprise"**

223.   Defendants were and are "persons" within the meaning of 18 U.S.C. § 1961(3).

224.   Defendants operated and controlled an "enterprise" consisting of themselves and their subsidiary and affiliated companies described above (the "Platinum/Palladium Price-Fixing Enterprise") within the meaning of 18 U.S.C. § 1961(4).

225.   It was their common purpose in using and operating the Platinum/Palladium Price-Fixing Enterprise to defraud and cause the plaintiffs and the class they represent to lose millions of dollars in losses from owning and trading platinum and palladium.

**Defendants conducted the affairs of the "Platinum/Palladium Price-Fixing Enterprise" via a pattern of racketeering**

226.   The defendants managed, operated, conducted and participated in the conduct of the affairs of the "Platinum/Palladium Price-Fixing Enterprise" through a pattern of racketeering activity within the meaning of 18 U.S.C. § 1962(c).

**Defendants conspired in managing and operating the "Platinum/Palladium Price-Fixing Enterprise" in violation of 18 U.S.C. § 1962(d)**

227.   From at least as early as October 25, 2007 and continuing through June 6, 2008, the defendants knowingly agreed to facilitate the scheme and conspiracy to manage, operate, conduct and participate in the conduct of the affairs of the "Platinum/Palladium Price-Fixing Enterprise" through a pattern of racketeering activity within the meaning of 18 U.S.C. § 1962(d).

228.   From at least as early as October 25, 2007 and continuing through June 6, 2008, defendants were persons intimately involved in transactions carried on by and the affairs of the Platinum/Palladium Price-Fixing Enterprise. The Enterprise and its transactions affected, interstate and foreign commerce. Defendants unlawfully and willfully combined, conspired, confederated and agreed with each other to violate 18 U.S.C. § 1962(c), *i.e.* to conduct and

participate, directly and indirectly, in the conduct of the affairs of the "Platinum/Palladium Price-Fixing Enterprise" via a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(d).

229.    Part of the conspiracy was each of the defendants personally committed and agreed to commit two or more fraudulent and illegal racketeering acts and conducted and agreed to conduct the affairs of the "Platinum/Palladium Price-Fixing Enterprise" through the pattern of racketeering activity in violation of 18 U.S.C. § 1962(c) described above.

230.    In furtherance of the conspiracy and to effect the objects thereof, the defendants committed and caused to be committed a series of overt acts, including repeatedly and persistently:

    a.    agreeing among themselves to artificially fix and inflate the price of platinum and palladium;

    b.    agreeing among themselves to manipulate the settlement prices of palladium and platinum futures contracts traded on the NYMEX by engaging in a trading practice known as "banging the close";

    c.    causing to be entered market-on-close ("MOC") buy orders executed in the last ten seconds of the closing period for NYMEX palladium and platinum contracts to exert upward pressure on the futures contract settlement prices and thus on Class Commodities prices;

    d.    creating artificial prices in Class Commodities and damaging the plaintiffs and other class members;

    e.    agreeing among themselves to prevent regulatory and other public agencies from learning about their illegal price-fixing activities; and

    f.  agreeing among themselves to defraud and cause the plaintiffs and the class they represent to lose substantial sums of money.

231.  Plaintiffs and Class members have been directly injured in their business and property by defendants' violation of 18 U.S.C. § 1962(d). Plaintiffs' losses, in the millions of dollars, are a direct result of defendants' conspiracy.

**Defendants acted with criminal intent**

232.  Defendants' conduct was not merely reckless or negligent.

233.  Defendants engaged in the conduct, acts and omissions described above willfully and with actual knowledge of their illegality and actual purpose to the detriment of the plaintiffs and class members.

**Plaintiffs and the Class are entitled to damages under 18 U.S.C. § 1964(c)**

234.  Plaintiffs and Class members have been directly and proximately injured in their business and property by reason of the defendants' violations of 18 U.S.C. §§ 1962(c) and (d) in an amount to be proven at trial.

<u>**PRAYER FOR RELIEF**</u>

WHEREFORE, the Futures Plaintiffs pray for relief as follows:

A. for a declaratory judgment that Defendants manipulated NYMEX platinum and palladium futures prices in violation of the CEA Section 9(a), 7 U.S.C. Section 13(b) (First Claim);

B. for a declaratory judgment that Defendants are also liable for such manipulation under Section 2(a)(1) of the CEA; (Second Claim);

C. for a declaratory judgment that Defendants are liable for aiding and abetting such manipulation under Section 13c(a) of the CEA, 7 U.S.C. Section 13 (Third Claim);

D. for an order certifying the Commodity Exchange Act claims as a class action on behalf of the Futures Sub-Class pursuant to the Federal Rules of Civil Procedure;

E. for a judgment awarding the Futures Plaintiffs and the Futures Sub-Class damages against Defendants for Defendants' violations of the CEA together with prejudgment interest at the maximum rate allowable by law; and

F. for such other and further relief as the Court may deem just and proper.

WHEREFORE, the Physical Plaintiffs request the Court:

A. declare, adjudge, and decree the Defendants have committed the violations of federal law alleged herein;

B. permanently enjoin and restrain Defendants, their directors, officers, employees, agents, successors, and assigns from, in any manner, directly or indirectly, violating Section 1 of the Sherman Act, or other statutes having a similar purpose and effect;

C. award damages sustained by the Physical Plaintiffs and the Physical Sub-Class from Defendants' violations of Section 1 of the Sherman Act and Civil RICO in an amount to be proven at trial, to be trebled according to law, plus interest (including prejudgment interest);

D. order disgorgement of Defendants' unjust enrichment and award the sums disgorged to the Class as damages; and

E. grant such other and further relief as it deems just and proper.

## DEMAND FOR JURY

Pursuant to Federal Rule of Civil Procedure 38(b) and otherwise, all Plaintiffs demand a trial by jury.

Dated: New York, New York
September 30, 2010

*As To Allegations By the Futures Plaintiffs and The
Futures Sub-Class*

Christopher Lovell (CL-2595)
Ian T. Stoll (IS-3424)
Christopher M. McGrath (CM-4983)
**LOVELL STEWART HALEBIAN JACOBSON LLP**
61 Broadway, Suite 501
New York, New York 10006
Telephone:      (212) 608-1900
Facsimile:      (212) 719-4775

***Interim Futures Sub-Class Counsel***

*As To Allegations By the Physical Plaintiffs and The
Physical Sub-Class*

William J. Doyle, II
John A. Lowther
**DOYLE LOWTHER LLP**
9466 Black Mountain Road, Suite 210
San Diego, California 92126
Telephone:      (619) 576-1700
Facsimile:      (619) 573-1701

***Interim Physical Sub-Class Counsel***

# EXHIBIT A

UNITED STATES OF AMERICA
BEFORE THE
COMMODITY FUTURES TRADING COMMISSION

| | |
|---|---|
| In the Matter of: | : CFTC Docket No.  10-09 |
| | : |
| Moore Capital Management, LP, | : ORDER INSTITUTING PROCEEDINGS |
| Moore Capital Advisors, LLC and | : PURSUANT TO SECTIONS 6(c), 6(d) and |
| Moore Advisors, Ltd., | : 8a OF THE COMMODITY EXCHANGE |
| | : ACT AND MAKING FINDINGS AND |
| | : IMPOSING REMEDIAL SANCTIONS |
| Respondents.  : | |

I.

The Commodity Futures Trading Commission ("Commission") has reason to believe that Moore Capital Management, LP ("MCM"), Moore Capital Advisors, LLC ("MCA"), and Moore Advisors, Ltd. ("MA") (collectively "Respondents" or "Moore Capital") violated Sections 6(c), 6(d), and 9(a)(2) of the Commodity Exchange Act (the "Act"), as amended, 7 U.S.C. §§ 9, 13b, and 13(a)(2) (2006), and that MCM violated Commission Regulation ("Regulation") 166.3, 17 C.F.R. §166.3 (2009). Therefore, the Commission deems it appropriate and in the public interest that public administrative proceedings be, and they hereby are, instituted to determine whether Respondents engaged in the violations set forth herein, and to determine whether any order should be issued imposing remedial sanctions.

II.

In anticipation of the institution of an administrative proceeding, Respondents submitted an Offer of Settlement ("Offer"), which the Commission has determined to accept. Without admitting or denying any of the findings or conclusions herein, Respondents acknowledge service of this Order Instituting Proceedings Pursuant to Sections 6(c), 6(d) and 8a of the Commodity Exchange Act and Making Findings and Imposing Remedial Sanctions ("Order").[1]

---

[1] Respondents consent to the entry of this Order, the use of these findings in this proceeding and in any other proceeding against Respondents brought by the Commission or to which the Commission is a party; provided, however, that Respondents do not consent to the use of the Offer, or the findings or conclusions consented to in this Order, as the sole basis for any other proceeding brought by the Commission, other than in a proceeding in bankruptcy or to enforce the terms of this Order. Nor do Respondents consent to the use of the Offer or this Order, or the findings or conclusions consented to in the Offer or this Order, by any other party in any other proceeding.

1

III.

The Commission finds the following:

A.   Summary

During the period of at least November 2007 through May 2008 (the "Relevant Period"), a former portfolio manager for MCM (the "Former PM") attempted to manipulate the settlement prices of palladium and platinum futures contracts traded on the New York Mercantile Exchange ("NYMEX"). The Former PM engaged in a trading practice known as "banging the close." Specifically, the Former PM caused to be entered market-on-close ("MOC") buy orders that were executed in the last ten seconds of the closing period for both contracts in an attempt to exert upward pressure on the settlement prices of the futures contracts. The Former PM engaged in this trading strategy frequently throughout at least the Relevant Period.

During the Relevant Period, MCM failed to supervise diligently the Former PM's trading on behalf of Respondents and failed to have sufficient policies and procedures designed to detect and deter the violations of the Act and Regulations found herein.

In accepting Moore Capital's Offer, the Commission recognizes the Respondents' significant cooperation during the Division of Enforcement's investigation of this matter and their representations concerning the remedial steps undertaken by Respondents during the investigation.

B.   Respondents

**Moore Capital Management, LP** is a multi-strategy investment management firm with headquarters at 1251 Avenue of the Americas, New York, New York. During the Relevant Period, MCM and its affiliates managed several investment funds that invested in a wide variety of instruments, including but not limited to commodities, futures, and equities. During the Relevant Period, MCM had approximately twenty-five portfolio managers trading an estimated $15,500,000,000 in assets under management. MCM is registered as a commodity trading advisor ("CTA") and is a principal of MCA. MCM is the successor in interest to Moore Capital Management, LLC which was a registered CTA. The Former PM was an employee of Moore Capital Management, LLC.

**Moore Capital Advisors, LLC** is a Delaware limited liability company and a registered commodity pool operator ("CPO") and CTA, with headquarters at the same address as MCM. MCM is a principal of MCA. MCA, along with MA, served as the co-general partner of the Moore Macro Fund, LP and the Moore Global Fixed Income Master Fund, LP.

**Moore Advisors, Ltd.** is a Bahamian international company and registered as a CPO. MA, along with MCA, served as the co-general partner of the Moore Macro Fund, LP and the Moore Global Fixed Income Master Fund, LP.

C.    Facts

    1.    NYMEX Palladium and Platinum Futures Contracts

Palladium and platinum futures contracts are traded on the NYMEX. During the Relevant Period, the majority of trades in NYMEX palladium and platinum futures contracts were executed on the electronic trading platform, GLOBEX, rather than on the floor. The number of traders in the palladium and platinum pit on the NYMEX floor was fewer than ten on any given date.

The settlement prices of both the NYMEX palladium and platinum futures contracts are calculated based on the volume-weighted average price of all transactions conducted both on the trading floor and on Globex, during the two-minute closing period for the contracts. The closing period for trading palladium futures contracts is from 12:58 p.m. to 1:00 p.m., and the closing period for trading platinum futures contracts is from 1:03 p.m. to 1:05 p.m. Globex and the trading pit trade side-by-side through the close. Trading continues on Globex after the close of trading in the pit.

Trading in both contracts was relatively illiquid, and the Former PM's trading in the contracts on the close frequently accounted for a significant portion of the volume.

The Former PM's trading strategy took advantage of these key characteristics of these two futures markets — thinly traded, illiquid, and volume-weighted average settlement price calculations — to attempt to manipulate the daily settlement prices.

    2.    The Manipulative Scheme

During at least the Relevant Period, the Former PM frequently engaged in a trading strategy in an attempt to manipulate upward the settlement prices of the palladium and platinum futures contracts. The platinum and palladium trades executed by the Former PM were placed in two Moore Capital investment funds, the Moore Macro Fund, LP and the Moore Global Fixed Income Master Fund, LP. MCA and MA acted as the CPOs for these two funds and MCM was the trading advisor.

During at least the Relevant Period, the Former PM either directly or through Moore Capital execution clerks, placed MOC buy orders in platinum and palladium futures contracts through an associated person (the "AP") of a futures commission merchant ("FCM"). The FCM then relayed the Former PM's orders to the floor through a NYMEX floor clerk. The Former PM's MOC buy orders executed on the floor during the close generally ranged from 20 to 100 contracts, which were relatively large orders for the relatively illiquid palladium and platinum markets. Typically, the Former PM's orders constituted a large percentage of the volume of trading on the close.

The Former PM or his execution clerk routinely submitted MOC buy orders in platinum and platinum futures to the AP through Instant Messages ("IMs"), among other means. The Former PM often placed MOC orders with the FCM's AP with directions that indicated that he wanted to push the settlement prices higher.

To effectuate the Former PM's manipulative scheme, the AP waited until the last ten seconds of the closing periods of platinum and palladium futures trading to place the Former PM's buy orders with the floor clerk, who worked in the NYMEX trading pit.

The Former PM engaged in this manipulative strategy throughout the Relevant Period.

### 3.    MCM's Supervision of the Former PM

During the Relevant Period, MCM failed to supervise diligently the Former PM's manner of trading on behalf of Respondents and failed to have sufficient policies and procedures designed to detect and deter the violations of the Act and Regulations found herein. While MCM's policies prohibited manipulative trading, MCM did not have adequate procedures to detect and deter possible manipulative trading. For instance, MCM did not monitor or review the communications of the Former PM and the executing clerks or the Former PM's end-of-day trading to identify possible manipulative schemes.

Also, while MCM's written policy required violations to be reported to compliance, that policy did not provide sufficient guidance or means to ensure that possible violations were reported. For example, in one instance, an execution clerk was concerned about the Former PM's trading on the close but failed to bring his concerns to compliance because he felt intimidated by the Former PM's aggressive management style.

### D.    Legal Discussion

#### 1.    Respondents' Employee Attempted to Manipulate the Settlement Prices of NYMEX Palladium and Platinum Futures Contracts

Together, Sections 6(c), 6(d), and 9(a)(2) of the Act prohibit acts of attempted manipulation. Section 9(a)(2) of the Act makes it unlawful for "[a]ny person to manipulate or attempt to manipulate the price of any commodity in interstate commerce, or for future delivery on or subject to the rules of any registered entity." Sections 6(c) and 6(d) of the Act authorize the Commission to serve a complaint and provide for the imposition of, among other things, civil monetary penalties and cease and desist orders if the Commission "has reason to believe that any person ... has manipulated or attempted to manipulate the market price of any commodity, in interstate commerce or for future delivery on or subject to the rules of any registered entity ... or otherwise is violating or has violated any of the provisions of [the] Act."

The following two elements are required to prove an attempted manipulation: (1) an intent to affect the market price, and (2) an overt act in furtherance of that intent. *See In re Hohenberg Bros. Co.* [1975-77 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶ 20,271 at 21,477 (CFTC Feb. 18, 1977); *CFTC v. Bradley*, 408 F. Supp. 2d 1214 (N.D. Okla. 2005).

4

Here, MCM's Former PM entered or caused to be entered MOC buy orders during the close of trading in the palladium and platinum futures contracts with the intent to move higher the settlement prices of the platinum and palladium futures contracts.[2]

By this conduct, Respondents, through the acts of the Former PM, violated Sections 6(c), 6(d) and 9(a)(2) of the Act (2006).[3]

## 2. MCM Had Inadequate Systems and Procedures to Supervise Its Business as a Registrant

Regulation 166.3 requires that every Commission registrant (except APs who have no supervisory duties) supervise diligently the handling by its partners, employees and agents of all of its commodity interest accounts and activities relating to its business as a registrant. In order to prove a violation of Regulation 166.3, it must be demonstrated that either: (1) the registrant's supervisory system was generally inadequate; or (2) the registrant failed to perform its supervisory duties diligently. *In re Murlas Commodities*, [1994-1996 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶ 26,485 at 43,161 (CFTC Sept. 1, 1995); *In re Paragon Futures Ass'n*, [1990-1992 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶ 25,266 at 38,850 (CFTC Apr. 1, 1992); *Bunch v. First Commodity Corp. of Boston*, [1990-1992 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶ 25,352 at 39,168-69 (CFTC Aug. 5, 1992).

Under Regulation 166.3, a registrant has a "duty to develop procedures for the detection and deterrence of possible wrongdoing by its agents." *Samson Refining Co. v. Drexel Burnham Lambert, Inc.*, [1987-1990 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶ 24,596 at 36,566 (CFTC Feb. 16, 1990) (*quoting Lobb v. J.T. McKerr & Co.*, [1987-1990 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶ 24,568 at 36,444 (CFTC Dec. 14, 1989)). "A showing that the registrant lacks an adequate supervisory system can be sufficient" to establish a breach of duty under Regulation 166.3. *In re Collins*, [1996-1998 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶ 27,194 at 45,744 (CFTC Dec. 10, 1997). The lack of an adequate supervisory system can be established by showing that the registrant failed to develop proper procedures for the detection of wrongdoing. *CFTC v. Trinity Fin. Group Inc.*, [1996-1998 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶ 27,179 at 45,635 (S.D. Fla. Sept. 29, 1997), *aff'd in relevant part, vacated in part and remanded sub nom. Sidoti v. CFTC*, 178 F.3d 1132 (11th Cir. 1999). The existence of violations

[2] *In re DiPlacido*, [2007-2009 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶ 30,970 at 62,484 (CFTC Nov. 5, 2008), *aff'd*, 2009 U.S. App. LEXIS 22692 (2d Cir. Oct. 16, 2009), *cert. denied*, 2010 U.S. LEXIS 2461 (March 22, 2010)("[S]ettlement prices are market prices that can be manipulated.").

[3] Respondents are liable for the actions of the Former PM who acted as their employee and/or agent in trading on behalf of Moore Capital funds. Under Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B), and Regulation 1.2, 17 C.F.R. § 1.2 (2009), the act, omission, or failure of any official, agent or other person acting for any individual, association, partnership, corporation, or trust within the scope of his employment or office shall be deemed the act, omission, or failure of such individual, association, partnership, corporation or trust.

that should have been detected by a diligent system of supervision is independent proof of a failure to supervise. *See Paragon Futures Ass'n*, ¶ 25,266 at 38,850.

Based upon the supervisory failures described above, MCM failed to have an adequate supervisory system and procedures in place designed to both detect and deter the violations of the Commission's laws and Regulations found herein. MCM failed to have adequate policies and procedures in place to monitor trading and to supervise the acts of its employees, officers or agents.

By these acts, failures and omissions, MCM violated Regulation 166.3, 17 C.F.R. § 166.3 (2009).

## IV.

## FINDINGS OF VIOLATIONS

Based on the foregoing, the Commission finds that Respondents attempted to manipulate the settlement prices of palladium and platinum futures contracts traded on the NYMEX in violation of Sections 6(c), 6(d), and 9(a)(2) of the Act, 7 U.S.C. §§ 9, 13b, and 13(a)(2) (2006). The Commission further finds that MCM failed to have an adequate supervisory system and procedures designed to detect and deter potentially manipulative practices in violation of Regulation 166.3, 17 C.F.R. § 166.3 (2009).

## V.

## OFFER OF SETTLEMENT

Respondents have submitted an Offer in which they acknowledge service of this Order and admit the jurisdiction of the Commission with respect to the matters set forth in this Order and waive: (1) the filing and service of a complaint and notice of hearing; (2) a hearing; (3) all post-hearing procedures; (4) judicial review by any court; (5) any and all objections to the participation by any member of the Commission's staff in the Commission's consideration of the Offer; (6) any and all claims that they may possess under the Equal Access to Justice Act, 5 U.S.C. § 504 (2006) and 28 U.S.C. § 2412 (2006), and/or Part 148 of the Regulations, 17 C.F.R. §§ 148.1, *et seq.* (2009), relating to or arising from this action; (7) any and all claims that they may possess under the Small Business Regulatory Enforcement Fairness Act of 1996, Pub. L. 104-121, §§ 201-253, 110 Stat. 847, 857-68 (1996), as amended by Pub. L. No. 110-28, § 8302, 121 Stat. 112, 204-205 (2007), relating to or arising from this action; and (8) any claim of double jeopardy based upon the institution of this proceeding or the entry in this proceeding of any order imposing a civil monetary penalty or any other relief.

Respondents stipulate that the record basis on which this Order is entered consists of this Order and the findings in this Order consented to in their Offer. Respondents consent to the Commission's issuance of this Order that: (1) makes findings that Respondents each violated Sections 6(c), 6(d), and 9(a)(2) of the Act, 7 U.S.C. §§ 9, 13b, and 13(a)(2) (2006), and that MCM also violated Regulation 166.3, 17 C.F.R. §166.3 (2009); (2) orders Respondents to cease and desist from violating Sections 6(c), 6(d), and 9(a)(2) of the Act, 7 U.S.C. §§ 9, 13b, and

6

13(a)(2) (2006); (3) orders MCM to cease and desist from violating Regulation 166.3, 17 C.F.R. § 166.3 (2009); (4) orders Respondents to pay, jointly and severally, a civil monetary penalty in the amount of Twenty-Five Million Dollars ($25,000,000), plus post-judgment interest; (5) restricts Respondents' registrations as CPOs and/or CTAs for a period of three years from the date of this Order by requiring Respondents and their successors and assigns to each comply with the undertakings consented to in the Offer and set forth below; and (6) orders Respondents comply with the conditions and undertakings as set forth in the Offer and incorporated in this Order.

Upon consideration, the Commission has determined to accept Respondents' Offer.

VI.

. Accordingly, IT IS HEREBY ORDERED THAT:

1.  Respondents shall cease and desist from violating Sections 6(c), 6(d), and 9(a)(2) of the Act, 7 U.S.C. §§ 9, 13b, and 13(a)(2) (2006), and MCM shall further cease and desist from violating Regulation 166.3, 17 C.F.R. § 166.3 (2009).

2.  Respondents shall pay, jointly and severally, a civil monetary penalty in the amount of Twenty-five Million Dollars ($25,000,000), plus post-judgment interest, within ten (10) days of the date of the entry of this Order. Post judgment interest shall accrue beginning eleven (11) days after entry of this Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Order pursuant to 28 U.S.C. § 1961. Respondents shall pay their civil monetary penalty by making electronic funds transfer, U.S. postal money order, certified check, bank cashier's check, or bank money order. If payment is to be made by other than electronic funds transfer, the payment shall be made payable to the Commodity Futures Trading Commission and sent to the address below:

> Commodity Futures Trading Commission
> Division of Enforcement
> ATTN: Marie Bateman – AMZ-300
> DOT/FAA/MMAC
> 6500 S. MacArthur Blvd.
> Oklahoma City, OK 73169
> Telephone 405-954-6569

If payment by electronic transfer is chosen, Respondents shall contact Marie Bateman or her successor at the above address to receive payment instructions and shall fully comply with those instructions. Respondents shall accompany payment of the penalty with a cover letter that identifies Respondents and the name and docket number of this proceeding. Respondents shall simultaneously submit a copy of the cover letter and the form of payment to: (1) the Director, Division of Enforcement, Commodity Futures Trading Commission, at the following address: 1155 21st Street, N.W., Washington, D.C. 20581; and (2) the Chief, Office of Cooperative Enforcement, Division of Enforcement, Commodity

7

Futures Trading Commission, at the same address. In accordance with Section 6(e)(2) of the Act, as amended, 7 U.S.C. § 9a(2) (2006), if this amount is not paid in full within fifteen (15) days of the due date, Respondents shall be prohibited automatically from the privileges of all registered entities, and, if registered with the Commission, such registration shall be suspended automatically until it has shown to the satisfaction of the Commission that payment of the full amount of the penalty with interest thereon to the date of the payment has been made.

3.  Respondents' registrations as CTAs and CPOs shall be restricted insofar as Respondents shall comply with the undertakings set forth below for a period of three (3) years from the date of this Order. Respondents represent that they have already undertaken and are implementing certain compliance enhancements.

    a.  Respondents shall institute, update and/or strengthen policies and procedures designed to detect, deter, discipline, and correct potential wrongdoing and violations of the Act and Regulations, including the type of violative conduct found by the Commission in this matter, and that are reasonably designed to provide diligent supervision in accordance with Regulation 166.3. Such policies and procedures shall include but not be limited to:

        i.  policies and procedures regarding supervision of execution, trading and back office personnel, and portfolio managers, including but not limited to reviews of trading desks and portfolio managers relating to order entry and trading practices for commodity futures, options on commodity futures, commodity options, and foreign currency subject to the Act and Regulations, with the reviews and results being documented;

        ii.  policies and procedures to ensure that questionable, unusual or unlawful activity is promptly and directly reported to, and addressed and investigated by, Moore Capital's compliance or legal personnel; and

        iii.  policies and procedures requiring periodic review of electronic communications and audio recordings as described in subparagraphs b and c below; such review will include the opening and closing periods of markets and expiration of trading on futures contracts; and

    b.  Respondents shall implement a policy requiring that any person communicating in writing (*e.g.*, text messages, facsimile, chat, Instant Messaging, electronic mail) concerning non-equity (with the exception of exchange traded funds based on commodities or commodity futures) trading, transactions, prices and/or trading strategies shall use digital or electronic media which is recorded and maintained by Respondents.

Respondents shall record and maintain a record of all such communications for a period of at least two (2) years, unless otherwise required to be retained for five (5) years pursuant to Regulation 1.31.

c. Respondents shall implement a policy requiring that any person engaging in audio communications reflecting non-equity (with the exception of exchange traded funds based on commodities or commodity futures) order placement, execution or handling shall use digital or electronic media which is recorded and maintained by Respondents. Respondents' policy shall also require that all non-privileged, business related telephonic communications occurring through each execution desk handling non-equity trading shall be recorded and maintained by Respondents. Respondents shall maintain such recorded audio and telephonic communications for a period of at least six (6) months.

d. Respondents shall either implement a system of trade recording to include all elements of the transactions, such as order entry and execution time, or in its report to the Division explain why such system is not commercially feasible or practicable.

e. Respondents shall ensure that compliance personnel have experience and knowledge of commodity futures and options trading, regulation and compliance.

f. Respondents shall enhance and continue to provide mandatory training programs, which shall be updated annually, addressing the ethics, compliance and legal requirements of the Act and Regulations, including abusive and manipulative trading practices and indicators of such practices, to be given to Moore Capital professional staff, including all directors, officers, managers, portfolio managers, traders, associated persons, execution desk personnel, compliance personnel, and employees involved in any aspect of Moore Capital's commodity and/or commodity derivatives businesses. Such training programs will be provided within 120 days of the date of the employee's start date in one of the aforementioned positions and on an annual basis. Respondents will create and maintain documentation that the required individuals noted above have fulfilled their compliance training.

g. Moore Capital shall submit a report to the Commission's Division of Enforcement within 120 days of the issuance of this Order. The report shall include the steps taken to comply and the results of its compliance with the above undertakings, including a detailed description of internal controls, policies and procedures formulated and implemented.

h. Respondents shall distribute a copy of this Order to all current and future employees, principals and officers and shall ensure that all required disclosures of the Commission's actions are made.

4.  Respondents also shall comply with the following conditions and undertakings as specified:

a.  Trading Restriction

Respondents agree not to engage in trading platinum and palladium options on commodity futures and commodity futures within fifteen minutes of the beginning of the closing period for trading until the end of the closing period for trading of those commodities for a period of two (2) years from the date of this Order.

b.  Future Cooperation with the Commission

Respondents shall continue to cooperate fully and expeditiously with the Commission, including the Commission's Division of Enforcement ("DOE"), and all other federal government agencies (hereafter collectively referred to as the "Government") in this proceeding, and in any investigation, civil litigation, or administrative matter related to the subject matter of this proceeding or any current or future Government investigation related thereto. As part of such cooperation, Respondents agree to:

(1)  preserve all records relating to the subject matter of this proceeding, including, but not limited to audio files, e-mails, and trading records; and

(2)  comply fully, promptly, and truthfully to any inquiries or requests for information including but not limited to inquiries or requests:

(i)  for authentication of documents;

(ii)  for any documents within Respondents' possession, custody, or control, including inspection and copying of documents;

(iii)  to produce any current (as of the time of the request) officer, director, employee, or agent of Respondents, regardless of the employee's location and at such location that minimizes Commission travel resources, to provide assistance at any trial, proceeding, or Commission investigation related to the subject matter of this proceeding, including but not limited to, requests for testimony, depositions, and/or interviews, and to encourage them to testify completely and truthfully in any such proceeding, trial, or investigation; and

10

(iv)   for assistance in locating and contacting any prior (as of the time of the request) officer, director, or employee of Respondents.

Respondents also agree that they will not undertake any act that would limit their ability to fully cooperate with the Commission; provided, however, that nothing in this Order shall require Respondents to disclose any information that is protected by the attorney-client privilege, the attorney work product doctrine, or other legally recognized privilege.

Respondents designate the Akin Gump Strauss Hauer & Feld LLP law firm to receive all requests for information pursuant to this undertaking. Should Respondents seek to change the designated person to receive such requests, notice shall be given to the DOE of such intention 14 days before it occurs. Any person designated to receive such request shall be located in the United States.

c.   **Public Statements**

Respondents agree that neither they nor any of their agents or employees under their authority or control shall take any action or make any public statement denying, directly or indirectly, any findings or conclusions in this Order, or creating, or tending to create, the impression that this Order is without a factual basis; provided, however, that nothing in this provision shall affect Respondents': (i) testimonial obligations; or (ii) right to take legal positions in other proceedings to which the Commission is not a party. Respondents shall undertake all steps necessary to ensure that all of their agents and employees under their authority or control understand and comply with this agreement.

5.   Miscellaneous Provisions

a.   This Order shall inure to the benefit and be binding on successors, assigns, beneficiaries and administrators of Respondents.

b.   If any Respondent fails to comply with any of the conditions or undertakings of this Order applicable to it, the entity failing to comply shall be subject to further proceedings pursuant to Sections 6(c) and 6(e)(2) of the Act, 7 U.S.C. §§ 9 and 9a(2) for violating a Commission Order.

11

The provisions of this Order shall be effective as of this date.

By the Commission.

David A. Stawick
Secretary of the Commission
Commodity Futures Trading Commission

Dated: ___April 29___, 2010

12

EXHIBIT B

## Palladium Class Period Market Prices

| | futures | | physical |
|---|---|---|---|
| November 1, 2007 | 375.9 | November 1, 2007 | 372 |
| November 2, 2007 | 377.4 | November 2, 2007 | |
| November 5, 2007 | 375.1 | November 5, 2007 | |
| November 6, 2007 | 379.7 | November 6, 2007 | |
| November 7, 2007 | 376.65 | November 7, 2007 | 379 |
| November 8, 2007 | 377.5 | November 8, 2007 | |
| November 9, 2007 | 376.25 | November 9, 2007 | |
| November 12, 2007 | 372.25 | November 12, 2007 | |
| November 13, 2007 | 373.5 | November 13, 2007 | |
| November 14, 2007 | 373.8 | November 14, 2007 | |
| November 15, 2007 | 370.95 | November 15, 2007 | |
| November 16, 2007 | 365.85 | November 16, 2007 | |
| November 19, 2007 | 361.3 | November 19, 2007 | 364 |
| November 20, 2007 | 364.3 | November 20, 2007 | |
| November 21, 2007 | 357.95 | November 21, 2007 | |
| November 22, 2007 | | November 22, 2007 | 355 |
| November 23, 2007 | 361.5 | November 23, 2007 | |
| November 26, 2007 | 359.1 | November 26, 2007 | |
| November 27, 2007 | 349.3 | November 27, 2007 | |
| November 28, 2007 | 346.25 | November 28, 2007 | 343 |
| November 29, 2007 | 344.85 | November 29, 2007 | |
| November 30, 2007 | 348.65 | November 30, 2007 | 349 |
| December 3, 2007 | 346.95 | December 3, 2007 | 347 |
| December 4, 2007 | 348.9 | December 4, 2007 | |
| December 5, 2007 | 350.1 | December 5, 2007 | 348 |
| December 6, 2007 | 347.35 | December 6, 2007 | |
| December 7, 2007 | 343.3 | December 7, 2007 | |
| December 10, 2007 | 345 | December 10, 2007 | 345 |
| December 11, 2007 | 347.4 | December 11, 2007 | 345 |
| December 12, 2007 | 348.1 | December 12, 2007 | 349 |
| December 13, 2007 | 347.45 | December 13, 2007 | |
| December 14, 2007 | 353.5 | December 14, 2007 | 350 |
| December 17, 2007 | 357.55 | December 17, 2007 | 350 |
| December 18, 2007 | 359.65 | December 18, 2007 | |
| December 19, 2007 | 358 | December 19, 2007 | |
| December 20, 2007 | 355.35 | December 20, 2007 | |
| December 21, 2007 | 357.65 | December 21, 2007 | |
| December 24, 2007 | 360 | December 24, 2007 | 355 |
| December 25, 2007 | | December 25, 2007 | |
| December 26, 2007 | 365 | December 26, 2007 | |
| December 27, 2007 | 365.05 | December 27, 2007 | 364 |
| December 28, 2007 | 370.05 | December 28, 2007 | |
| December 31, 2007 | 378.2 | December 31, 2007 | 370 |
| January 1, 2008 | | January 1, 2008 | |
| January 2, 2008 | 379.9 | January 2, 2008 | 370 |
| January 3, 2008 | 379.65 | January 3, 2008 | |
| January 4, 2008 | 377.75 | January 4, 2008 | 372 |
| January 7, 2008 | 376.85 | January 7, 2008 | |
| January 8, 2008 | 381.8 | January 8, 2008 | |
| January 9, 2008 | 382.6 | January 9, 2008 | |
| January 10, 2008 | 380.8 | January 10, 2008 | |
| January 11, 2008 | 381.3 | January 11, 2008 | |

| | futures | | physical |
|---|---|---|---|
| January 14, 2008 | 387.45 | January 14, 2008 | 382 |
| January 15, 2008 | 384.5 | January 15, 2008 | |
| January 16, 2008 | 377.85 | January 16, 2008 | |
| January 17, 2008 | 376.25 | January 17, 2008 | |
| January 18, 2008 | 375.05 | January 18, 2008 | |
| | | January 21, 2008 | |
| January 22, 2008 | 371.1 | January 22, 2008 | 363 |
| January 23, 2008 | 369.45 | January 23, 2008 | |
| January 24, 2008 | 376.05 | January 24, 2008 | |
| January 25, 2008 | 385.45 | January 25, 2008 | 381 |
| January 28, 2008 | 391.35 | January 28, 2008 | |
| January 29, 2008 | 393.3 | January 29, 2008 | |
| January 30, 2008 | 390.8 | January 30, 2008 | |
| January 31, 2008 | 394.5 | January 31, 2008 | 388 |
| February 1, 2008 | 417.05 | February 1, 2008 | 402 |
| February 4, 2008 | 431 | February 4, 2008 | 420 |
| February 5, 2008 | 423.1 | February 5, 2008 | |
| February 6, 2008 | 423.45 | February 6, 2008 | |
| February 7, 2008 | 428.45 | February 7, 2008 | |
| February 8, 2008 | 440.85 | February 8, 2008 | 430 |
| February 11, 2008 | 443.4 | February 11, 2008 | 443 |
| February 12, 2008 | 431.5 | February 12, 2008 | |
| February 13, 2008 | 439.05 | February 13, 2008 | |
| February 14, 2008 | 441.15 | February 14, 2008 | |
| February 15, 2008 | 451.7 | February 15, 2008 | 450 |
| February 18, 2008 | | February 18, 2008 | |
| February 19, 2008 | 499.3 | February 19, 2008 | 484 |
| February 20, 2008 | 494.2 | February 20, 2008 | 460 |
| February 21, 2008 | 515.5 | February 21, 2008 | 519 |
| February 22, 2008 | 515.85 | February 22, 2008 | |
| February 25, 2008 | 524.7 | February 25, 2008 | |
| February 26, 2008 | 536.35 | February 26, 2008 | |
| February 27, 2008 | 555.55 | February 27, 2008 | 554 |
| February 28, 2008 | 585.25 | February 28, 2008 | |
| February 29, 2008 | 571.95 | February 29, 2008 | 568 |
| March 3, 2008 | 581.2 | March 3, 2008 | 577 |
| March 4, 2008 | 565.45 | March 4, 2008 | 588 |
| March 5, 2008 | 559.55 | March 5, 2008 | 532 |
| March 6, 2008 | 525.3 | March 6, 2008 | |
| March 7, 2008 | 491.8 | March 7, 2008 | |
| March 10, 2008 | 480.95 | March 10, 2008 | 463 |
| March 11, 2008 | 496.25 | March 11, 2008 | |
| March 12, 2008 | 507.55 | March 12, 2008 | |
| March 13, 2008 | 513.2 | March 13, 2008 | 514 |
| March 14, 2008 | 511.7 | March 14, 2008 | |
| March 17, 2008 | 482.6 | March 17, 2008 | |
| March 18, 2008 | 487.3 | March 18, 2008 | |
| March 19, 2008 | 462.1 | March 19, 2008 | |
| March 20, 2008 | 444.75 | March 20, 2008 | 425 |
| March 21, 2008 | | March 21, 2008 | |
| March 24, 2008 | 435.1 | March 24, 2008 | |
| March 25, 2008 | 461.85 | March 25, 2008 | |

| | futures | | physical |
|---|---|---|---|
| March 26, 2008 | 458.4 | March 26, 2008 | |
| March 27, 2008 | 452.5 | March 27, 2008 | |
| March 28, 2008 | 454.9 | March 28, 2008 | |
| March 31, 2008 | 450.2 | March 31, 2008 | 445 |

# Platinum Class Period Market Prices

| | physical | | futures |
|---|---|---|---|
| November 1, 2007 | 1448 | November 1, 2007 | 1450.8 |
| November 2, 2007 | 1439 | November 2, 2007 | 1462.7 |
| November 5, 2007 | 1458 | November 5, 2007 | 1466.5 |
| November 6, 2007 | 1476 | November 6, 2007 | 1483.7 |
| November 7, 2007 | | November 7, 2007 | 1462.3 |
| November 8, 2007 | | November 8, 2007 | 1473.6 |
| November 9, 2007 | 1434 | November 9, 2007 | 1426 |
| November 12, 2007 | 1389 | November 12, 2007 | 1390.8 |
| November 13, 2007 | 1400 | November 13, 2007 | 1412.3 |
| November 14, 2007 | 1440 | November 14, 2007 | 1446.1 |
| November 15, 2007 | | November 15, 2007 | 1425.4 |
| November 16, 2007 | 1450 | November 16, 2007 | 1453.2 |
| November 19, 2007 | | November 19, 2007 | 1457.1 |
| November 20, 2007 | | November 20, 2007 | 1469.7 |
| November 21, 2007 | 1469 | November 21, 2007 | 1467.2 |
| November 22, 2007 | | November 22, 2007 | |
| November 23, 2007 | | November 23, 2007 | 1480.5 |
| November 26, 2007 | 1484 | November 26, 2007 | 1468.6 |
| November 27, 2007 | | November 27, 2007 | 1453.5 |
| November 28, 2007 | 1420 | November 28, 2007 | 1438.3 |
| November 29, 2007 | | November 29, 2007 | 1439.5 |
| November 30, 2007 | 1440 | November 30, 2007 | 1444.1 |
| December 3, 2007 | 1450 | December 3, 2007 | 1461.4 |
| December 4, 2007 | | December 4, 2007 | 1472.3 |
| December 5, 2007 | 1472 | December 5, 2007 | 1468.3 |
| December 6, 2007 | 1458 | December 6, 2007 | 1470.2 |
| December 7, 2007 | | December 7, 2007 | 1462.2 |
| December 10, 2007 | | December 10, 2007 | 1466.3 |
| December 11, 2007 | | December 11, 2007 | 1467.3 |
| December 12, 2007 | 1470 | December 12, 2007 | 1479.8 |
| December 13, 2007 | 1478 | December 13, 2007 | 1471.6 |
| December 14, 2007 | 1462 | December 14, 2007 | 1479.2 |
| December 17, 2007 | 1502 | December 17, 2007 | 1503.6 |

| | | | |
|---|---|---|---|
| December 18, 2007 | 1510 | December 18, 2007 | 1515.3 |
| December 19, 2007 | | December 19, 2007 | 1523.8 |
| December 20, 2007 | | December 20, 2007 | 1517.5 |
| December 21, 2007 | | December 21, 2007 | 1536.3 |
| December 24, 2007 | 1526 | December 24, 2007 | 1536.2 |
| December 25, 2007 | | December 25, 2007 | |
| December 26, 2007 | | December 26, 2007 | 1549.3 |
| December 27, 2007 | 1544 | December 27, 2007 | 1538.8 |
| December 28, 2007 | | December 28, 2007 | 1540.5 |
| December 31, 2007 | 1530 | December 31, 2007 | 1528.4 |
| January 1, 2008 | | January 1, 2008 | |
| January 2, 2008 | 1541 | January 2, 2008 | 1547 |
| January 3, 2008 | | January 3, 2008 | 1541.8 |
| January 4, 2008 | | January 4, 2008 | 1539.1 |
| January 7, 2008 | 1529 | January 7, 2008 | 1524.2 |
| January 8, 2008 | 1543 | January 8, 2008 | 1553.6 |
| January 9, 2008 | 1555 | January 9, 2008 | 1552.9 |
| January 10, 2008 | 1538 | January 10, 2008 | 1558.3 |
| January 11, 2008 | | January 11, 2008 | 1568.2 |
| January 14, 2008 | 1589 | January 14, 2008 | 1582.8 |
| January 15, 2008 | | January 15, 2008 | 1592.5 |
| January 16, 2008 | | January 16, 2008 | 1570.6 |
| January 17, 2008 | | January 17, 2008 | 1569.3 |
| January 18, 2008 | | January 18, 2008 | 1566.5 |
| January 21, 2008 | | January 21, 2008 | |
| January 22, 2008 | 1522 | January 22, 2008 | 1547.6 |
| January 23, 2008 | 1546 | January 23, 2008 | 1557.5 |
| January 24, 2008 | 1580 | January 24, 2008 | 1614.9 |
| January 25, 2008 | 1681 | January 25, 2008 | 1680.7 |
| January 28, 2008 | | January 28, 2008 | 1752.2 |
| January 29, 2008 | 1716 | January 29, 2008 | 1736.9 |
| January 30, 2008 | | January 30, 2008 | 1687.4 |
| January 31, 2008 | 1731 | January 31, 2008 | 1737.4 |
| February 1, 2008 | 1741 | February 1, 2008 | 1770.2 |
| February 4, 2008 | | February 4, 2008 | 1797.6 |
| February 5, 2008 | 1808 | February 5, 2008 | 1785.5 |
| February 6, 2008 | 1813 | February 6, 2008 | 1819 |
| February 7, 2008 | 1852 | February 7, 2008 | 1851.4 |
| February 8, 2008 | 1860 | February 8, 2008 | 1884 |
| February 11, 2008 | 1924 | February 11, 2008 | 1939.4 |
| February 12, 2008 | 1951 | February 12, 2008 | 1921.8 |
| February 13, 2008 | 1907 | February 13, 2008 | 1983.7 |
| February 14, 2008 | 2010 | February 14, 2008 | 2005.9 |
| February 15, 2008 | 2060 | February 15, 2008 | 2063.7 |

| | | | |
|---|---|---|---|
| February 18, 2008 | | February 18, 2008 | |
| February 19, 2008 | 2260 | February 19, 2008 | 2153.1 |
| February 20, 2008 | 2073 | February 20, 2008 | 2138.8 |
| February 21, 2008 | 2180 | February 21, 2008 | 2188.2 |
| February 22, 2008 | | February 22, 2008 | 2167.8 |
| February 25, 2008 | | February 25, 2008 | 2153.5 |
| February 26, 2008 | | February 26, 2008 | 2155.9 |
| February 27, 2008 | | February 27, 2008 | 2152.3 |
| February 28, 2008 | 2093 | February 28, 2008 | 2154.8 |
| February 29, 2008 | **2150** | February 29, 2008 | 2180.7 |
| March 3, 2008 | 2174 | March 3, 2008 | 2241.6 |
| March 4, 2008 | 2276 | March 4, 2008 | 2267 |
| March 5, 2008 | 2189 | March 5, 2008 | 2276.1 |
| March 6, 2008 | 2249 | March 6, 2008 | 2200.8 |
| March 7, 2008 | | March 7, 2008 | 2041.7 |
| March 10, 2008 | 2039 | March 10, 2008 | 2039.1 |
| March 11, 2008 | | March 11, 2008 | 2052.4 |
| March 12, 2008 | | March 12, 2008 | 2070 |
| March 13, 2008 | 2100 | March 13, 2008 | 2097.5 |
| March 14, 2008 | 2100 | March 14, 2008 | 2076 |
| March 17, 2008 | 2000 | March 17, 2008 | 1973.4 |
| March 18, 2008 | | March 18, 2008 | 1968 |
| March 19, 2008 | | March 19, 2008 | 1887 |
| March 20, 2008 | 1823 | March 20, 2008 | 1877.3 |
| March 21, 2008 | | March 21, 2008 | |
| March 24, 2008 | 1954 | March 24, 2008 | 1889.2 |
| March 25, 2008 | | March 25, 2008 | 1985.9 |
| March 26, 2008 | | March 26, 2008 | 2012.6 |
| March 27, 2008 | | March 27, 2008 | 2043.7 |
| March 28, 2008 | | March 28, 2008 | 2037.8 |
| March 31, 2008 | 2040 | March 31, 2008 | 2024.4 |

## CERTIFICATE OF SERVICE

I, Christopher M. McGrath, hereby certify that I served the foregoing *Consolidated Class Action Complaint* on the following persons by electronic mail on this 30th day of September 2010:

David M. Zensky
James A. Diehl
John B. Dugan
Peter I. Altman
Paul B. Hewitt
**AKIN GUMP STRAUSS HAUER & FELD LLP**
dzensky@akingump.com
jdiehl@akingump.com
bdugan@akingump.com
paltman@akingump.com
phewitt@akingump.com

*Counsel for Moore Capital Defendants*

Jennifer L. Rochon
Jade A. Burns
**KRAMER LEVIN NAFTALIS & FRANKEL, LLP**
jrochon@kramerlevin.com
jburns@kramerlevin.com

*Counsel for Christopher Pia*

Therese M. Doherty
Christopher P. Greeley
Lisamarie F. Collins
Ross L. Hirsh
**HERRICK, FEINSTEIN LLP**
tdoherty@herrick.com
cgreeley@herrick.com
lcollins@herrick.com
rhirsch@herrick.com

*Counsel for MF Global, Inc.*

Christopher M. McGrath