UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| *In Re: Platinum And Palladium Commodities Litigation*<br><br>This Document Relates To:<br><br>  Platinum/Palladium Physical Class | MASTER FILE<br>No. 10 Civ. 3617 (WHP)<br><br>**JURY TRIAL DEMANDED**<br><br>**Plaintiffs' Memorandum Of Law In Support Of Motion For Preliminary Approval Of Class Action Settlement** |

**TABLE OF CONTENTS**

I.      INTRODUCTION…………………………………………………………1

II.     BACKGROUND………………………………………………………...2

    A.  Physical Plaintiffs' Allegations……………………………………………3

    B.  Procedural History…………………………………………………………4

        1.      Motion Practice and Discovery…………………………………4

        2.      Extensive Arm's-Length Settlement Discussions…………………………5

    C.  THE SETTLEMENT AGREEMENT……………………………………6

        1.      The Physical Class………………………………………………..6

        2.      Consideration to Physical Class…………………………………......8

        3.      Release and Covenant Not to Sue…………………………………9

        4.      The Proposed Plan of Allocation…………………………………9

        5.      The Proposed Notice Plan Provides the Best
                Notice Practicable …………………………………………………10

III.    ARGUMENT………………………………………………………...10

    A.  The Proposed Settlement Is Fair, Reasonable and Adequate……………………11

        1.      The Settlement Is the Result of Arm's-Length
                Negotiations Between Experienced Counsel……………………………12

        2.      The Proposed Settlement Is Substantively Fair…………………………14

            a.      Complexity, Expense, and Likely Duration
                    of the Litigation…………………………………………14

            b.      Physical Class's Reaction to the Settlement ……………………15

            c.      Stage of the Proceedings and Amount of
                    Discovery Completed…………………………………………15

            d.      Risks of Proving Liability, Damages, and
                     Maintaining a Class……………………………………………15

e.      Settling Defendants' Ability to Withstand

a Greater Judgment……………………………………...………18

f.      Range of Reasonableness of Settlement in Light of Best

Possible Recovery and Attendant Litigation Risks………..……19

B.   The Proposed Notice Plan Provides the Best Notice Practicable

Under the Circumstances…………………………………………………20

1.      The Proposed Notice Comports with Due Process and Rule 23(c)….…..21

2.      The proposed notice plan is the best practicable

under the circumstances……………………………………………22

C.   Certification of a Settlement Class Is Proper……………………………………23

1.      The Physical Class Satisfies Rule 23(a)…………………………………23

a.      The Numerosity Requirement Is Satisfied……………...………23

b.      The Commonality Requirement Is Satisfied……………..………24

c.      The Typicality Requirement Is Satisfied……………...…………25

d.      The Adequacy Requirement Is Satisfied…………………………25

2.      The Physical Class Satisfies Rule 23(b)(3)……………...………………26

a.      Common Questions of Law and Fact Predominate……………..26

b.      A class action is the superior method to

adjudicate these claims……………………………………………26

D.   The Court should appoint lead counsel as class counsel

because the Court has previously found they satisfy Rule 23(g)………..………27

IV.      CONCLUSION…………………………………………………………...……..28

# TABLE OF AUTHORITIES

## Cases

*Amchem Prods. v. Windsor*,
  521 U.S. 591 (1997)................................................................................28

*Baffa v. Donaldson, Lufkin & Jenrette Secs. Corp.*,
  222 F.3d 52 (2d Cir. 2000) .......................................................................27

*Clark v. Ecolab, Inc.*,
  2009 U.S. Dist. LEXIS 108736 (S.D.N.Y. Nov. 17, 2009) .....................11

*Cohen v. J.P. Morgan Chase & Co.*,
  262 F.R.D. 153 (E.D.N.Y. 2009)..............................................................24

*Cordes & Co. Financial Services, Inc. v. A.G. Edwards & Sons, Inc.*,
  502 F.3d 91 (2d Cir. 2007)........................................................................29

*Detroit v. Grinnell*,
  495 F.2d 448 (2d Cir. 1974).................................................................12, 20

*Hecht v. United Collection Bureau, Inc.*,
  691 F.3d 218 (2d Cir. 2012) .....................................................................22

*Hicks v. Morgan Stanley & Co.*,
  2005 U.S. Dist. LEXIS 24890 (S.D.N.Y. Oct. 24, 2005)....................20, 21

*In re Am. Int'l Group Sec. Litig.*,
  689 F.3d 229 (2d Cir. 2012)...............................................................7, 24, 25

*In re Bear Stearns Cos.*,
  909 F. Supp. 2d 259 (S.D.N.Y. 2012).......................................................20

*In re Blech Sec. Litig.*,
  187 F.R.D. 97 (S.D.N.Y. 1999) ................................................................29

*In re Currency Conversion Fee Antitrust Litig.*,
  2006 U.S. Dist. LEXIS 81440 (S.D.N.Y. Nov. 8, 2006).....................12, 15

*In re Currency Conversion Fee Antitrust Litig.*,
  263 F.R.D. 110 (S.D.N.Y 2009) .........................................................17, 20

*In re Initial Public Offering Sec. Litig.*,
  260 F.R.D. 81 (S.D.N.Y. 2009)......................................................25, 26, 27, 28

*In re NASDAQ Market-Makers Antitrust Litig.*,
  169 F.R.D. 493 (S.D.N.Y. 1996) ..............................................................26

*In re: NASDAQ Market-Makers Antitrust Litig.*,
  1997 U.S. Dist. LEXIS 20835 (S.D.N.Y. Dec. 31, 1997)....................7, 28

*In re Natural Gas Commodities Litig.*,
  03-cv-6186, Order dated June 15, 2007 (S.D.N.Y.)....................................8

*In re Natural Gas Commodities Litig.*,
  231 F.R.D. 171 (S.D.N.Y. 2005)................................................................8

*In re PaineWebber Ltd. P'ships Litig.*,
  147 F.3d 132 (2d. Cir. 1998) ....................................................................11

*In re Platinum and Pall. Comm. Litig.*,
  2010 U.S. Dist. LEXIS 145183 (S.D.N.Y. Nov. 30, 2010)........................4

*In re Platinum and Pall. Comm. Litig.*,

828 F. Supp. 2d 588 (S.D.N.Y. 2011)............................................................................4

*In re Sumitomo Copper Litig.*,
182 F.R.D. 85 (S.D.N.Y. 1998) ................................................................................8

*In re Sumitomo Copper Litig.*,
189 F.R.D. 274 (S.D.N.Y. 1999)...............................................................8, 11, 19

*In re Top Tankers, Inc. Sec. Litig.*,
2008 U.S. Dist. LEXIS 58106 (S.D.N.Y. July 31, 2008)........................................16

*In re Traffic Executive Ass'n*,
627 F.2d 631 (2d Cir. 1980)....................................................................................11

*McReynolds v. Richards-Cantave*,
588 F.3d 790 (2d Cir. 2009)...............................................................................22, 23

*Menkes v. Stolt-Nielsen S.A.*,
270 F.R.D. 80 (D. Conn. 2010) ...............................................................................20

*Morris v. Affinity Health Plan, Inc.*,
859 F. Supp. 2d 611 (S.D.N.Y. 2012)......................................................................19

*Sullivan v. DB Investments, Inc.*,
667 F.3d 273 (3d Cir. 2011)......................................................................................7

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
396 F.3d 96 (2d Cir. 2005) .........................................................................12, 15, 23

*Weigner v. City of New York*,
852 F.2d 646 (2d Cir. 1988) ....................................................................................23

## Statutes

15 U.S.C. §§ 1 *et seq* ................................................................................................3

18 U.S.C. §§ 1961 *et seq* ...........................................................................................3

Fed. R. Civ. P. 23............................................................................................passim

Physical Plaintiffs, F.W. DeVito, Inc. Retirement Plan Trust, Frederick and Mary DeVito, David W. DeVito and Russell W. Andrews, submit this Memorandum and the accompanying Declaration of John Lowther, Esq. in support of their motion for preliminary approval of the Stipulation and Agreement of Settlement ("Settlement"). The Settling Defendants are Moore Capital Management, LP; Moore Capital Management, LLC; Moore Capital Advisors, LLC; Moore Advisors, Ltd.; Moore Macro Fund, LP; Moore Global Fixed Income Master Fund, LP; Christopher Pia; Louis Bacon; and Eugene Burger (the "Moore Defendants"); and Joseph Welsh. A copy of the Settlement and accompanying exhibits are attached as Exhibits A-1 - A-9 to the Lowther Declaration.

## I.      INTRODUCTION

Physical Plaintiffs entered into the Settlement with Settling Defendants[1] on September 18, 2013, after almost three years of intense litigation, which involved voluminous fact and expert discovery, two formal mediation sessions before The Honorable Daniel Weinstein (Ret.), and many months of contentious and protracted settlement negotiations. Under the Settlement, the Physical Class receives cash payments of $9,355,000 and a consent judgment against Defendant Welsh in the amount of $7,000,000 in exchange for Physical Plaintiffs' and the Physical Class's release of claims against the Settling Defendants.

The Settlement includes all the hallmarks of a fair, reasonable, and adequate settlement of a complex, class action litigation. Settlement negotiations proceeded in good faith, were conducted at arm's length by highly experienced class counsel, were devoid of collusion, and lasted many months. These negotiations included mediation sessions with Retired Judge Weinstein, one in New York and another in California, multiple telephonic conferences with the mediator, and numerous follow-on negotiations between formal mediation sessions. Despite the

---

[1]   Terms have been capitalized as defined in the Stipulation and Agreement of Settlement. Lowther Decl. Ex. A.

Parties' substantial efforts to resolve this dispute, formal mediation failed to produce a settlement. Only after building upon the groundwork from the formal mediation sessions did counsel, through additional negotiations, reach an agreement to resolve this litigation.

Physical Plaintiffs' decision to settle was informed by the extensive record in this case, including more than 250,000 pages of document discovery, numerous subpoena responses from third parties, twenty-three fact depositions, extensive consultations with damages experts and experts on the platinum and palladium markets, as well as other facts and data, such as the risks and uncertainty of litigation. Based on the totality of circumstances, Physical Lead Counsel believes the Settlement is in the best interest of Physical Plaintiffs and the Physical Class. Accordingly, Physical Plaintiffs, on behalf of themselves and the proposed Physical Class, respectfully request that the Court grant preliminary approval of the Settlement and enter the [Proposed] Order Preliminarily Approving Proposed Settlement, Scheduling Hearing for Final Approval Thereof, and Approving the Proposed Form and Program of Notice to the Class ("Scheduling Order"), attached as Exhibit A-4 to the Lowther Declaration.

At the Fairness Hearing, Physical Plaintiffs will request entry of a final order and judgment, substantially in the form of Exhibit A-5 to the Lowther Declaration, dismissing the action and retaining jurisdiction to implement and enforce the Settlement.

## II.    BACKGROUND

Physical Plaintiffs seek damages on behalf of themselves and the Physical Class based on allegations the Settling Defendants manipulated certain New York Mercantile Exchange ("NYMEX") platinum and palladium futures contracts, in turn, causing prices of physical platinum and palladium to become artificially inflated in violation of the Sherman Antitrust Act, 15 U.S.C. §§ 1 *et seq.*, the Racketeer Influenced Corrupt Organizations Act, 18 U.S.C. §§ 1961

*et seq.* ("RICO"), and common law proscriptions against fraud, aiding and abetting fraud, and conspiracy to commit fraud. Docket No. 133 at 1-7, 157-90. Physical Plaintiffs also assert a negligence claim against defendant Joseph Welsh. *Id*. at 190-91.

### A.    Physical Plaintiffs' Allegations

Physical Plaintiffs allege that defendants, from May 2006 until at least June 6, 2008, engaged in a manipulative scheme to inflate prices in platinum and palladium futures contracts traded on NYMEX, which in turn caused artificial price inflation in physical platinum and palladium bullion over the course of the Class Period. Docket No. 133 at 35-59. Plaintiffs allege defendants manipulated the closing price of platinum and palladium futures contracts and physical bullion by engaging in "market on close" trades during the last two minutes of the day's trading—at prices alleged to be in excess of best available prices. *Id*. at 5-7. The futures closing prices for platinum and palladium are based on a volume-weighted average pricing ("VWAP") of the last two-minutes of the day's trading. *Id*. at 29. Physical Plaintiffs contend defendants took advantage of the VWAP during the two-minute close by making numerous large and uneconomic purchases during this window, resulting in artificially inflated closing prices of platinum and palladium futures. *Id*. at 1-7. Physical Plaintiffs assert that defendants' conduct in artificially increasing the price of platinum and palladium futures directly impacted the physical bullion market for these metals and caused Physical Plaintiffs and Physical Class members to pay artificially high prices during the Class Period. *Id*. at 8, 31-33. Settling Defendants deny Physical Plaintiffs' charges in their entirety. Lowther Decl. Ex. A at 2.

Defendants have consistently and vigorously denied Plaintiffs' claims. At the time Settlement was reached, Settling Defendants had significant defenses, which created the real risk

Physical Plaintiffs could not establish liability or prove the damages they sought. Had these risks materialized, their impact could have been substantial, including the risk of no recovery at all.

### B.    Procedural History

#### 1.    Motion Practice and Discovery

On June 14, 2010, Physical Plaintiffs filed an initial seventeen-page class action complaint against certain Moore Defendants and asserted claims under Section 1 of the Sherman Act. On August 10, 2010, Physical Plaintiffs filed a 62-page amended class action complaint. Thereafter the Physical Action was consolidated with the Futures Action under the caption *In re: Platinum and Palladium Commodities Litigation*. Doyle Lowther, LLP was appointed lead counsel for the Physical Action.

On September 30, 2010, the Futures and Physical Plaintiffs filed a consolidated class action complaint against the Moore Defendants and MF Global, Inc. In the 77-page consolidated complaint, Physical Plaintiffs charged defendants with violating the Sherman Act and RICO. Defendants moved to dismiss Physical Plaintiffs' RICO and antitrust claims, which the Court granted, along with leave to amend. *In re Platinum and Pall. Comm. Litig.*, 828 F. Supp. 2d 588 (S.D.N.Y. 2011).

In discovery, the Court ordered defendants to produce to plaintiffs all documents provided to the Commodities Futures Trading Commission ("CFTC") as part of its investigation into defendants' trading in platinum and palladium futures. *In re Platinum and Pall. Comm. Litig.*, 2010 U.S. Dist. LEXIS 145183 (S.D.N.Y. Nov. 30, 2010). Defendants produced hundreds of thousands of internal documents, myriad text and instant messages, and voluminous audio recordings of actual trading and broker orders on defendants' behalf. Lowther Decl. at ¶¶12-14.

Physical Lead Counsel expended significant time and resources reviewing and understanding the evidence. Counsel retained forensic electronic data experts to assist in formulating an efficient method of reviewing defendants' voluminous information, identifying specific individuals involved in the alleged misconduct, determining the parameters of wrongful conduct, and transcribing and organizing scores of electronic audio files. The information obtained from this extensive evidentiary review formed the foundation of Plaintiffs' Third Amended Consolidated Class Action Complaint. This 161-page complaint asserted the same antitrust and RICO claims against the Moore Defendants, Welsh, and MF Global, Inc., which soon thereafter filed bankruptcy. Docket No. 75.

On February 3, 2012, defendants moved to dismiss all of the Physical Plaintiffs' claims. After briefing, but before oral argument, the Parties requested a Court stay to explore settlement opportunities. Even after settlement discussions commenced, Physical Plaintiffs continued to prosecute this case, review and gather evidence, and develop new theories of liability.

## 2.   Extensive Arm's-Length Settlement Discussions

Settlement discussions in this case were lengthy, protracted, and hotly contested. Negotiations involved extensive expert analysis on causation and damages by Physical Plaintiffs, the futures plaintiffs, and defendants. Given the complexity of the economic analyses, the Parties recognized the need for an independent economist to advise the mediator. This independent expert reviewed the Parties' expert reports and even undertook his own analyses and formulated his own conclusions about the alleged price inflation. These conclusions were shared with the Parties as a means of bridging the gap between the Parties' damages models.

The Parties participated in mediation sessions before Judge Weinstein, a nationally-recognized mediator with extensive expertise in resolving complex litigations, including

commodities and antitrust class actions. The first mediation session, held on July 27, 2012 in Manhattan, failed to resolve this dispute, or even generate a term sheet. A second mediation session with Judge Weinstein took place in California on August 27, 2012. This second all-day session also failed to conclude in a settlement, though the Parties did make progress on very broad points of settlement.

After negotiations before Judge Weinstein failed to lead to a resolution of this dispute, on January 9, 2013, Physical Plaintiffs, together with the futures plaintiffs, requested leave to file a fourth amended complaint. This 256-page complaint included new factual allegations developed in discovery and added common law claims for fraud, aiding and abetting fraud, and conspiracy to commit fraud. As requested, the Court allowed Physical Plaintiffs to file the fourth amended complaint, but stayed the time for defendants to respond to allow the Parties to focus their efforts on settlement. As settlement talks progressed, and in late July 2013, the Court granted the Parties' request to file a fifth amended complaint to add a negligence claim against Welsh.

### C.    THE SETTLEMENT AGREEMENT

#### 1.    The Physical Class

The Settlement seeks certification of the following class for settlement purposes:

> All persons and/or entities who purchased, invested in, or otherwise acquired an interest in platinum or palladium bullion in the United States physical or "spot" market conforming to NYMEX "good delivery" requirements, and/or of at least 99.95% purity, during the period of June 1, 2006 through April 29, 2010 (the "Class Period").

Physical Plaintiffs allege a continuous course of conduct since at least June 1, 2006 for their RICO claim, and damages theories make it theoretically possible that the potential impact of the alleged misconduct extended until April 29, 2010, when the CFTC's settlement with certain defendants was announced to the public. Settling Defendants therefore insisted on a

release and Class Period that ends on April 29, 2010.[2] Where an expanded class includes plaintiffs with different and potentially barred causes of action, courts have affirmed certification in the interest of securing "global peace" and preventing "protracted litigation and further relitigation of settled questions." *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 310-11 (3d Cir. 2011) ("achieving global peace is a valid, and valuable incentive to class action settlements"); *In re Am. Int'l Group Sec. Litig.*, 689 F.3d 229, 243-44 (2d Cir. 2012) ("Defendants in class action suits are entitled to settle claims pending against them on a class-wide basis even if a court believes that those claims may be meritless" so long as Rule 23 is otherwise satisfied). Even under "heightened" scrutiny, expanded class periods are appropriate where "the class securities and the alleged conspiracy and its duration remain unchanged," and "[e]ach common question is as important for the extended period as it was for the original period." *In re: NASDAQ Market-Makers Antitrust Litig.*, 1997 U.S. Dist. LEXIS 20835, at *8, 13, 18 (S.D.N.Y. Dec. 31, 1997).

The Plan of Allocation compensates Physical Class members for the period from June 1, 2006 until April 29, 2010. Although disputed issues exist concerning the extent, if any, the alleged trading impacted bullion prices, Physical Class members receive compensation, according to the terms of the Plan of Allocation, for any artificial impact of the settling Defendants' trading that could have remained in the market. And expanding the class period here comports with other commodity manipulation cases where settlement classes are broader than the original litigation class. *Compare In re Natural Gas Commodities Litig.*, 231 F.R.D. 171, 178 (S.D.N.Y. 2005) (litigation class period of January 1, 2000 through December 31, 2002) *with In re Natural Gas Commodities Litig.*, 03-cv-6186, Order dated June 15, 2007

---

[2] This Class Period expansion tracks the futures settlement class, extending the beginning of the class back to the first manipulative trade by defendants through the last possible arguable date (April 29, 2010) on which any residual impact from the alleged manipulative trades (ending on May 21, 2008) could have remained in the market.

(S.D.N.Y.) (approving settlement and certifying settlement class period of June 1, 1999 through December 31, 2002; *compare In re Sumitomo Copper Litig.*, 182 F.R.D. 85, 88 (S.D.N.Y. 1998) (litigation class period of June 24, 1994 through June 15, 1996) *with In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 283, n. 1 (S.D.N.Y. 1999) (approving settlement and certifying settlement class period of June 24, 1993 through June 15, 1996).

2.     **Consideration to Physical Class**

Under the Settlement, Moore Defendants agree to pay into escrow an initial payment of $4,662,500 within seven days after the Scheduling Order is entered. *See* Lowther Decl. Ex. A, Section 3(a). No later than three business days before the Fairness Hearing, Moore Defendants will transfer an additional $4,662,500 into escrow. As further consideration, Moore Defendants agree to pay an additional $30,000, provided they receive the first $10,000 of any proceeds the Physical Class recovers on the Welsh Consideration. Given the uncertainty of the collectability of any personal judgment against Welsh, the $7,000,000 stipulated judgment is fair and reasonable consideration.

The Moore Defendants' payment of $9,355,000, plus interest generated from these proceeds, along with any recovery from the Welsh Consideration, constitute the Settlement Fund. Per the Settlement, Physical Class and Physical Lead Counsel agree not to seek to collect the $7,000,000 stipulated judgment from Welsh personally and will seek to collect said sum from the Relevant Insurers. The Relevant Insurers, however, have denied coverage for Welsh on multiple grounds, and thus there can be no assurance of collecting any additional monies under the $7,000,000 stipulated judgment. Additional funds for the Physical Class may or may not be recovered from defendant MF Global, Inc. in its bankruptcy proceeding.

### 3.      Release and Covenant Not to Sue

In exchange for the foregoing consideration, the Physical Class agrees to release Settling Defendants from all claims related to the Physical Class's transactions in Platinum and/or Palladium Bullion. Lowther Decl. Ex. A, Section 6. The Physical Class's release and covenant not to sue excludes any claims a Physical Class member may have as a class member in the Futures Action. Lowther Decl. Ex. A, Section 6.

### 4.      The Proposed Plan of Allocation

As explained at the Court's August 21, 2013 conference, Physical Plaintiffs' Plan of Allocation adopts the artificiality calculations and analyses from the futures plaintiffs' plan of allocation. This model provides a one-to-one flow-through of artificial inflation (damages) in platinum and palladium futures trades on NYMEX to corresponding Physical Platinum and/or Palladium Bullion transactions.

The Plan of Allocation allocates ninety percent (90%) of the Net Settlement Fund to Claiming Physical Class Members' NAP Transaction. Lowther Decl. Ex. A-6 at 2. "NAP Transactions" means any transactions in Physical Platinum and/or Palladium executed between November 1, 2007 and June 18, 2008 for palladium, and between November 19, 2007 and June 18, 2008 for platinum. Lowther Decl. Ex. A-6 at 1. All purchases (or sales) performed on a day where alleged inflation was not zero (as provided in Exhibits A and B to the Plan of Allocation) will be credited (or debited) a dollar amount of inflation on each of these NAP transactions. Lowther Decl. Ex. A-6. The remaining ten percent (10%) of the Net Settlement Fund is allocated to Claiming Physical Class Members' NL Transactions, which are described in ¶¶ 10-14 of the Plan of Allocation. Lowther Decl. Ex. A-6 at 4. Determinations under the Plan of Allocation shall be made by the Settlement Administrator, subject to review by Physical Lead Counsel,

counsel for the Settling Defendants, and, where disputed, an appointed mediator, and the Court. Lowther Decl. Ex. A-6 at 6.

5.      <b>The Proposed Notice Plan Provides the Best Notice Practicable</b>

The proposed notice plan includes extensive and varied publication notice. The proposed notice plan takes advantage of diverse media sources, including various websites, newspapers, and magazines, to create the greatest likelihood of reaching Physical Class members. Physical Plaintiffs intend to publish, in coordination with the futures plaintiffs, notice of the Settlement, substantially in the form of Exhibit A-2 to the Settlement, as follows: (a) for two consecutive months in *Futures* magazine; (b) for two consecutive months in *Stocks & Commodities* magazine; and (c) for two consecutive months in *Futures & Options World* magazine. Notice will also be published on the following websites: (a) the *Stocks & Commodities* magazine website for one month; (b) the *Futures* magazine website for one month; (c) Traders.com for one month; (d) the *Investors Business Daily* website for one month; and Kitco.com (the world's number one source of metals market information with over 1 million unique visitors daily), for one month.

Additionally, Physical Plaintiffs intend to publish notice in the following periodicals: (1) *Barron's* for two weeks; and (b) *The Wall Street Journal* for one day, in a shared notice with the futures plaintiffs. Finally, notice of the Settlement also will be published on a website created by the Settlement Administrator, www.PlatinumPalladiumPhysicalLitigation.com.

## III.   ARGUMENT

Public policy strongly favors pretrial settlement of class action lawsuits. *In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d. Cir. 1998). Courts should give weight to the parties' consensual decision to settle class action cases because litigants and their counsel

10

occupy unique positions to assess potential risks. *See Clark v. Ecolab, Inc.*, 2009 U.S. Dist. LEXIS 108736, at *14 (S.D.N.Y. Nov. 17, 2009). This is especially true in investor class actions, which by their nature are legally and factually complex and outcomes are "notoriously uncertain." *Sumitomo*, 189 F.R.D. at 281.

### A.     The Proposed Settlement Is Fair, Reasonable, and Adequate

To grant preliminary approval, the Court need only find there is "'probable cause' to submit the [Settlement] to class members and hold a full-scale hearing as to its fairness." *In re Traffic Executive Ass'n*, 627 F.2d 631, 634 (2d Cir. 1980). A proposed settlement should be preliminarily approved where:

> the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the reasonable range of approval….

*In re Currency Conversion Fee Antitrust Litig.*, 2006 U.S. Dist. LEXIS 81440, at *13 (S.D.N.Y. Nov. 8, 2006).

In determining whether a settlement is fair, reasonable, and adequate, courts consider the "negotiating process leading up to the settlement [*i.e.*, procedural fairness,] as well as the settlement's substantive terms," *i.e.* substantive fairness. *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005). In assessing substantive fairness, courts consider the *Detroit v. Grinnell,* 495 F.2d 448 (2d Cir. 1974), factors:

> (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Wal-Mart,* 396 F.3d at 117.

> **1.     The Settlement Is the Result of Arm's Length Negotiations Between Experienced Counsel**

A class action settlement is entitled to a presumption of fairness, adequacy, and reasonableness when the product of "arm's-length negotiations between experienced counsel after meaningful discovery." *Wal-Mart,* 396 F.3d at 116. Settlement negotiations in the Physical Action transpired strictly at arm's length and were free of collusion. Lowther Decl. ¶¶ 7-11, 28. Both parties were represented by experienced, capable counsel. The Settlement is the result of rigorous, contentious, and protracted negotiations, including, among other things, several unsuccessful negotiations before Judge Weinstein, who was assisted by an independent economist, interim amended complaints and additional fact discovery, extensive use of experts and expert analyses by Physical Plaintiffs and defendants, and dozens of telephone conferences and scores of e-mail correspondence between zealous counsel, all over a period of many months. Lowther Decl. ¶¶ 7-9.

Physical Lead Counsel engaged in extensive fact discovery and fact-finding, which had been completed before the Settlement was reached. This discovery includes review of all documents Settling Defendants provided to the CFTC, which were produced in this case only after plaintiffs moved to compel their production as part of their investigation. The production included more than two hundred fifty thousand pages of documents, thousands of emails and text messages, and numerous recorded telephone conversations, which had to be reviewed, transcribed, and analyzed by Physical Lead Counsel. Lowther Decl. ¶¶ 12-14. Significant time and resources were expended analyzing the evidence, including using forensic electronic data experts to help efficiently review the documents and electronic data, and identify individuals involved in the alleged trading fraud. Lowther Decl. ¶¶ 8, 16.

Physical Lead Counsel engaged in extensive third-party discovery in the form of numerous third-party subpoenas, including subpoenas to nationally-recognized physical metals dealers and several financial institutions concerning transaction data during the Class Period. Lowther Decl. ¶¶ 5, 15. Physical Lead Counsel retained qualified experts to assist with the precious metals markets and to assist with damages analyses. Many of the experts' materials and reports were used extensively during formal and informal mediation sessions and settlement negotiations. The expert material was voluminous, the research extensive—and all of this was done long before Settlement was reached. Lowther Decl. ¶¶ 8, 14, 16, 19-20.

At the time the Settlement was reached, Settling Defendants were preparing to move to dismiss the Physical Plaintiffs' fifth amended complaint in its entirety. Docket No. 130. The Settling Defendants' arguments created substantial risk that some or all of Physical Plaintiffs' claims would be dismissed, potentially with prejudice. During the Parties' negotiations, Settling Defendants and their experts criticized the methodology and assumptions underlying the Physical Plaintiffs' methodologies for calculating damages. According to Settling Defendants, even if Physical Plaintiffs could establish liability, damages were non-existent, or are based on assumptions favorable to Physical Plaintiffs, at most, $1.6 million classwide. Absent a settlement, defendants' attacks would be further developed and pursued in Court, creating real risks for the Physical Plaintiffs with respect to the amount of damages they might recover, several years from now, even if successful on the issue of liability.

Based on Physical Class Counsel's extensive experience in complex class actions, the strength and weaknesses of Physical Class's claims, including the distinct possibility of a successful dispositive motion at the pleadings stage, the extensive risk and expense of continued litigation, the analyses of various experts, including an expert selected by the mediator to analyze

13

the Parties' damages models, and the likelihood of success at trial and appeal, Physical Lead Counsel believes the Settlement is fair, reasonable, and adequate.

**2.      The Proposed Settlement Is Substantively Fair**

Under the *Grinnell* factors, the Settlement is substantively fair and substantially benefits the Physical Class.

**a.      Complexity, Expense, and Likely Duration of the Litigation**

"This antitrust, [RICO, and commodities fraud] class action involves a complex factual record and novel issues of law." *Currency Conversion*, 2006 U.S. Dist. LEXIS 81440, at *15. Absent settlement, the litigation would have consumed many years of party and Court resources, and would have accumulated substantial litigation and expert costs. Physical Lead Counsel believes further litigation would have been "lengthy" and "bitterly fought," *Wal-Mart*, 396 F.3d at 118, not only at the motion to dismiss stage, but through class certification, summary judgment, trial, and appeal. The complexity of the substantive law in the Physical Action is further compounded by the underlying facts, such as NYMEX platinum and palladium commodities markets, market-on-close orders, volume-weighted pricing, and linking artificial inflation in Physical Platinum and/or Palladium with manipulation of NYMEX futures contracts. Even mediator Weinstein retained the expertise of his own economist to provide guidance on the analyses and counter-analyses of the Parties' experts during mediation and settlement discussions.

Without Settlement, the Physical Action likely would continue for years. Multiple rounds of unsuccessful settlement discussions confirm this conclusion. "The expense and delay of continued litigation could be substantial." *Currency Conversion*, 2006 U.S. Dist. LEXIS 81440, at *15. Settlement, on the other hand, enables the Physical Class to avoid very significant

14

litigation expenses, including expert costs, continued discovery expenses, expenses tied to class certification, such as retaining antitrust experts, summary judgment motion practice, and a lengthy trial.

> **b.      Physical Class's Reaction to the Settlement**

This factor cannot be measured in full until the Physical Class receives notice of the Settlement. That said, Physical Plaintiffs are aware of no objections to the Settlement at this time.

> **c.      Stage of the Proceedings and Amount of Discovery Completed**

Although procedurally the Physical Action is still at the motion to dismiss stage, the fact-finding and discovery in this litigation is far more advanced. The current operative complaint, the Fifth Amended Consolidated Class Action Complaint, itself is a product of the significant discovery and fact-finding that has occurred in this case. Not only did Physical Plaintiffs receive extensive discovery from Settling Defendants and the CFTC, they also sought third-party discovery from major national precious metal dealers and retailers. The substantial quantity of evidence Physical Lead Counsel has reviewed includes twenty-three deposition transcripts, communications discussing the alleged manipulative conduct, and recorded conversations regarding the nature and purpose of certain financial transactions. Lowther Decl. ¶¶ 12-14. The quality of this evidence has enabled plaintiffs' complaint to expand from an initial seventeen-page pleading to the current one hundred ninety-three page complaint.

> **d.      Risks of Proving Liability, Damages, and Maintaining a Class**

"In assessing the Settlement, the Court should balance the benefits afforded to the Class, including the *immediacy* and *certainty* of a recovery, against the continuing risks of litigation." *In re Top Tankers, Inc. Sec. Litig.*, 2008 U.S. Dist. LEXIS 58106, at *13 (S.D.N.Y. July 31,

2008). The Physical Class faces substantial obstacles by continuing this litigation. They still must survive a motion to dismiss on difficult and uncertain antitrust, RICO, and fraud claims. At the time settlement was reached, Settling Defendants were preparing to move to dismiss Physical Plaintiffs' Fifth Amended Complaint in its entirety. Lowther Decl. Ex. A at 3.

The "complexity of Plaintiffs' claims *ipso facto* creates uncertainty." *In re Currency Conversion Fee Antitrust Litig.*, 263 F.R.D. 110, 123 (S.D.N.Y 2009). There is almost no precedent for asserting successful Sherman antitrust claims using a "quick look" standard. Physical Plaintiffs' RICO claim and common law fraud claim, which is alleged under New York law, present additional obstacles, especially in a precious metal commodities case, where the alleged manipulation took place in the futures market, and thereafter claims were asserted in the physical market. Neither the Supreme Court nor the Second Circuit has ruled on many aspects of proof, or opined on Rule 23 certification standards for the Physical Class. In short, there is great risk and uncertainty in continued litigation of the Physical Class, and a very real risk the Physical Action could be dismissed in its entirety or a class not certified under Rule 23, with the attendant result of no recovery for the Physical Class.

Even if the pleadings survived the motion to dismiss, Physical Plaintiffs would still face very significant hurdles in litigating the matter to trial, including certifying an antitrust, RICO, and fraud class through trial, extensive *Daubert* challenges to Physical Plaintiffs' experts, and summary judgment on novel and complex factual issues. At trial, the Physical Class would need not only to prove manipulation of the NYMEX markets for platinum and palladium futures, but also show this misconduct impacted Platinum and/or Palladium Bullion, with the concomitant problems associated with the fact most physical or spot purchases occur in a decentralized, over-the-counter market.

The Physical Plaintiffs also faced potential hurdles not present in the Futures Class's litigation. The Futures Plaintiffs' claims for violations of the Commodities Exchange Act, 7 U.S.C. §§1 *et seq.*, were unavailable to the Physical Plaintiffs. The CEA only applies to commodities futures, and does not extend to physical commodity purchases. Therefore, the Physical Plaintiffs' claims are not specific to commodities and instead were brought under the Sherman Antitrust Act, the RICO Act and New York common law. Thus, the Physical Plaintiffs faced a significantly higher risk of a successful dispositive motion by the Settling Defendants than the Futures Plaintiffs. Additionally, the Physical Plaintiffs' faced causation problems not present in the Futures Action. Because the alleged manipulation occurred in the futures market, the Physical Plaintiffs would be required to show not only that these trades artificially inflated the futures closing prices, but that any effect of these trades carried through into the physical market and adversely impacted the physical price.

Settling Defendants have consistently and vigorously denied Physical Plaintiffs' claims. They contend, among other things, that their "market on close" (MOC) trades during the last two-minutes of trading were not improper, the MOC trades were not intended to artificially raise the settlement prices of platinum and palladium futures, the MOC trades did not artificially raise the settlement prices of platinum and palladium futures, the MOC trades did not affect the price of futures trades at any time outside the settlement window, and the MOC trades had no effect on the closing price of Platinum and/or Palladium Bullion. Lowther Decl. Ex. A at 2.

The Settling Defendants also have consistently and vigorously denied the Physical Plaintiffs' measure of damages. Applying the Settling Defendants' data, expert analyses and assumptions, defendants estimate their damages to be between zero and $1.6 million in artificiality. And the Settling Defendants have attacked, and will continue to attack, nearly every

aspect of the Physical Plaintiffs' case, including the data, assumptions and methodologies for estimating trading volumes, artificiality, and damages—a risk that is heightened with the Physical Class since all trades occur over-the-counter.

The Physical Plaintiffs face additional risks because the Settling Defendants also have consistently and vigorously denied the futures plaintiffs' claims. They dispute the artificiality numbers in the plans of allocation and assert that artificiality in platinum and palladium futures was non-existent, or at most, a small fraction of the inflation set forth in the plans of allocation. All of these litigation risks are substantial, and weigh in favor of approving the Settlement. *Sumitomo*, 189 F.R.D. at 281.

### e.    Settling Defendants' Ability to Withstand a Greater Judgment

A "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 620-21 (S.D.N.Y. 2012). Although the Moore Defendants can pay a judgment well in excess of the Settlement amount, the Court should assign "relatively little weight" to this factor. *Id.* If anything, the Moore Defendants' deep pockets only underscore the real risk of protracted litigation.

Welsh, on the other hand, lacks the financial resources to withstand a judgment of almost any size, which was the primary driving factor in accepting a $7,000,000 settlement judgment and assignment of rights from this defendant. Confidential financial information obtained from Welsh's counsel shows Physical Plaintiffs have no reasonable hope of recovering any monetary judgment from defendant Welsh. The Welsh Consideration is thus a reasonable and fair resolution for the Physical Class.

f.      **Range of Reasonableness of Settlement in Light of Best Possible Recovery and Attendant Litigation Risks**

"The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *Grinnell,* 495 F.2d at 455. Class settlements, especially in commodities and securities actions, are often approved where the monetary relief is a fraction of the "best day" recovery. *See, e.g., In re Bear Stearns Cos.*, 909 F. Supp. 2d 259, 269-70 (S.D.N.Y. 2012) (11% of plaintiff's expert's estimated damages was reasonable); *Menkes v. Stolt-Nielsen S.A.*, 270 F.R.D. 80, 103 (D. Conn. 2010) (class settlement providing 8% of maximum damages was reasonable); *Hicks v. Morgan Stanley & Co.*, 2005 U.S. Dist. LEXIS 24890, at *19 (S.D.N.Y. Oct. 24, 2005) (3.8% of plaintiffs' estimated damages within range of reasonableness). The Court recognizes "the complexity of Plaintiffs' claims *ipso facto* creates uncertainty." *Currency Conversion*, 263 F.R.D. at 123.

Continuing this complex litigation against the Settling Defendants would entail a lengthy, highly expensive legal battle involving uncertain, novel, and complex legal and factual issues. Establishing damages would require reliance upon challengable assumptions, presenting a very real risk of no recovery for the Physical Class. These risks are substantial, and potentially dispositive, for all of Physical Plaintiffs' causes of action.

The reasonableness of a settlement is a function of both (1) the size of the settlement amount relative to the best possible recovery; and (2) the likelihood of no recovery (or a reduced recovery). *Bear Stearns*, 909 F. Supp. 2d at 270. Precise trading volumes in the physical platinum and palladium bullion markets are difficult to calculate. Through Physical Plaintiffs' expert analysis, net platinum and palladium bullion purchases have been estimated, for the period of October 2007 and June 2008, at 201,056 ounces of platinum and 933,718 ounces of

palladium. Lowther Decl. ¶¶ 22-23. Multiplying these volume figures by the average artificiality for platinum ($125 per ounce) and the average for palladium ($37 per ounce) in the Plan of Allocation produces an alleged potential Physical Class damages number of approximately $59,754,263.

Settling Defendants disputed the Physical Class's volume and damages numbers, and have challenged every single assumption underlying Physical Plaintiffs' analyses. Defendants' experts, which also have extensive experience in the commodities markets, estimate "best day" damages, using assumption they deemed favorable to the Physical Class, of at most $1.6 million, and presented expert analyses and assumptions showing *de minimus* damages to the Physical Class, or in the alternative a complete lack of causation. This analysis and significant risk to the Physical Class cannot be disregarded.

Thus Physical Plaintiffs face substantial hurdles if this litigation continues. Even assuming Physical Plaintiffs survive past the pleading stage of the litigation, they will face significant obstacles at class certification, summary judgment, and at trial. Establishing the flow through of artificiality from the NYMEX futures market to the spot market, along with the fact physical platinum and palladium transactions are "over-the-counter" and thus there is no repository of recorded trades. In light of the tremendous risks of continued litigation, the Settlement is reasonable. *Hicks*, 2005 U.S. Dist. LEXIS 24890, at *19.

**B.    The Proposed Notice Plan Provides the Best Notice Practicable Under the Circumstances**

Upon preliminary approval, a court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). The nature and extent of class settlement notice is left to the Court's discretion. *McReynolds v. Richards-Cantave*, 588 F.3d 790, 805 (2d Cir. 2009). The standard for the adequacy of a settlement notice in a class

action is measured by reasonableness. *Hecht v. United Collection Bureau, Inc.*, 691 F.3d 218, 224 (2d Cir. 2012). Constructive notice by publication can satisfy due process as to persons whose whereabouts or interests cannot be determined through due diligence. *Id.* Due to the over-the-counter nature of physical platinum and palladium purchases, direct mail notice to all class members is impossible. *See* Lowther Decl. ¶ 21.

### 1.    The Proposed Notice Comports with Due Process and Rule 23(c)

The Class Notice contains, in plain English, all of the information Rule 23(c) requires: (1) the nature of the action is set out in Section I.A. of the notice; (2) the definition of the settlement class is set out in Section I.C. of the notice; (3) the class claims, issues and defenses are set out in Section I.A. and I.B. of the notice; (4) Physical Class members' right to enter an appearance via an attorney is set out in Section III.B. of the notice; (5) Physical Class members' right to request exclusion from the Settlement is set out in Section III.C. of the notice; (6) the time and manner for opting-out of the Settlement is set out in Section III.C. of the notice; and (7) the binding effect of a class judgment on class members is set out in Section II.H. of the notice. Lowther Decl. Ex. A-1; Fed. R. Civ. P. 23(c)(2)(B).

In addition to providing Physical Class members with all necessary information regarding the Settlement, including the options available, the Class notice affords Physical Class members a reasonable time to: (1) opt-out if desired; (2) retain independent counsel to object to the Settlement and petitions for attorneys' fees and reimbursement of expenses; (3) carefully weigh all settlement options to determine the best course of action. *McReynolds*, 588 F.3d at 804 (notice "must be of such nature as reasonably to convey the required information … and it must afford a reasonable time for those interested to make their appearance."); *Wal-Mart*, 396 F.3d at 114 ("settlement notice must fairly apprise the prospective members of the class of the terms of

the proposed settlement and of the options that are open to them in connection with the proceedings.").

### 2. The proposed notice plan is the best practicable under the circumstances

The Court should direct the best notice practicable under the circumstances. Fed. R. Civ. P. 23(c)(2)(B). Notice need not be perfect; it need only be the best notice practicable under the circumstances, and each and every class member need not receive actual notice, so long as class counsel acted reasonably in choosing the means likely to inform potential class members. *Weigner v. City of New York,* 852 F.2d 646, 649 (2d Cir. 1988).

Because physical platinum and palladium transactions occur over-the-counter, it is impossible to acquire a list of all persons who purchased, sold or otherwise acquired an interest in physical platinum or palladium during the class period. Lowther Decl. ¶ 21. For this reason, direct notice to each class member is not possible. Therefore, Physical Plaintiffs propose an extensive notice by publication campaign consisting of a settlement website, banner advertisements on the website of a major wholesaler of physical platinum and palladium, advertisements in various magazines devoted to commodity investment, and national newspapers whose focus is investors.

Physical Plaintiffs intend to publish short-form notice in the following magazines: (a) for two consecutive months in *Futures* magazine (with 37,000 monthly subscribers); (b) for two consecutive months in the *Futures & Options World* magazine (6,000 monthly subscribers); and (c) for two consecutive months in *Stocks & Commodities* magazine (with 54,000 monthly subscribers). Physical Plaintiffs also intend to publish notice on the following websites: (a) on *Futures* magazine's futuresmag.com (with 86,600 unique visitors and 322,300 views per month); (b) fow.com (11,00 unique visitors monthly); (c) Traders.com (with 100,000 monthly

impressions); (d) Investors.com (with over 3,000,000 unique visitors and 23 million page views monthly); and (e) Kitco.com (considered the world's number one source of metals market information with over 1,000,000 unique visitors daily and over 65 million page views monthly). Physical Plaintiffs also intend to publish notice in the following print publications: *Investors Business Daily* (more than 150,000 daily subscribers); *Barron's* (more than 350,000 weekly subscribers); and a single day publication in *The Wall Street Journal* (2.4 million daily circulation).

### C.   Certification of a Settlement Class Is Proper

A court may certify a class for settlement purposes where the proposed settlement class meets the requirements for Rule 23(a) class certification, as well as one of the three subsections of Rule 23(b). *Am. Int'l Group*, 689 F.3d at 238. When considering certification in the context of a proposed settlement, "courts must take a liberal rather than a restrictive approach." *Cohen v. J.P. Morgan Chase & Co.*, 262 F.R.D. 153, 157-58 (E.D.N.Y. 2009). While the Rule 23(a) analysis remains the same, the 23(b)(3) predominance requirement is easier to meet in settlement-only classes. *See Am. Int'l Group*, 689 F.3d at 238.

### 1.   The Physical Class Satisfies Rule 23(a)

Under Rule 23(a) an action may be maintained as a class action if:

(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

### a.   The Numerosity Requirement Is Satisfied

Rule 23(a)(1) requires that joinder of all class members is impracticable, not impossible. In this context, "impracticable" means joinder would be "difficult or inconvenient, rendering the

use of a class action the most efficient method to resolve plaintiffs' claims." *In re Initial Public Offering Sec. Litig.*, 260 F.R.D. 81, 90 (S.D.N.Y. 2009). The proposed Physical Settlement Class consists of persons and entities who purchased, invested in, or otherwise acquired an interest in Platinum and/or Palladium Bullion in the United States physical or "spot" market conforming to NYMEX "good delivery" requirements, and/or at least 99.95% purity, during the period of June 1, 2006 through April 29, 2010 (the "Class Period"). Based on documents obtained from third parties, the Physical Class consists of hundreds, if not thousands, of individuals and entities scattered throughout the United States. Lowther Decl. ¶ 24. Physical Plaintiffs' commodities expert also estimates total volume for the period October 2007 through June 2008 at more than one million bullion ounces bought. Lowther Decl. ¶ 23. Thus, the sheer number and geographic dispersity of the Physical Class makes joinder impracticable. Rule 23(a)(1) is satisfied.

### b.     The Commonality Requirement Is Satisfied

Federal Rule of Civil Procedure 23(a)(2)'s commonality component requires that common issues of fact or law apply to each class member. *IPO*, 260 F.R.D. at 91. "Numerous courts have held that allegations concerning the existence, scope, and efficacy of an alleged antitrust conspiracy present important common questions sufficient to satisfy the commonality requirement of Rule 23(a)(2)." *In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 509 (S.D.N.Y. 1996). As with their antitrust claims, Physical Plaintiffs' other causes of action arise from the central allegation that Settling Defendants engaged in improper market-on-close trades to artificially inflate platinum and palladium futures, which also inflated the trading prices of Platinum and/or Palladium Bullion. Thus the proof required for establishing the manipulative conduct is common to all Physical Class members.

### c.      The Typicality Requirement Is Satisfied

Rule 23(a)(3)'s typicality prong is usually satisfied "when each class member's claim arises from the same course of events [] and each class member makes similar legal arguments to prove the defendant's liability." *IPO*, 260 F.R.D. at 91. Typicality is satisfied where "injuries derive from a unitary course of conduct by a single system." *Id*. Here, the injuries suffered by Physical Plaintiffs and the Physical Class arise from identical alleged manipulative conduct in connection with MOC trades in the NYMEX platinum and palladium futures market. Lowther Decl. ¶ 25. This satisfies Rule 23(a)(3)'s typicality prong.

### d.      The Adequacy Requirement Is Satisfied

The adequacy element requires that representative parties will "fairly and adequately protect the interests of the class." *Baffa v. Donaldson, Lufkin & Jenrette Secs. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000). A court must examine "whether (1) plaintiff's interests are antagonistic to the interest of other members of the class and (2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Id*. at 60.

Each of the Physical Plaintiffs, the proposed Physical Class representatives, engaged in numerous large transactions in Platinum and/or Palladium Bullion during the Class Period and were directly impacted by the alleged misconduct, just like every other Physical Class member. Lowther Decl. ¶ 25. Thus the proposed class representatives' interests in proving liability and damages are entirely aligned with Physical Class members' interests.

Physical Plaintiffs are represented by experienced counsel, who are thoroughly familiar with complex class action litigation. The partners at Doyle Lowther LLP have served as lead or co-lead counsel in many successful complex class actions, including numerous securities and

consumer class cases, along with bogus energy trading in the *Dynegy* class action. Lowther Decl. Ex. B. Thus, Rule 23(a)(4) is satisfied.

### 2.    The Physical Class Satisfies Rule 23(b)(3)

Plaintiffs must show that one of the three categories under Rule 23(b) has been met. Here the Physical Plaintiffs move to certify the settlement class under 23(b)(3), which requires: (1) questions of law or fact common to class members predominate over any questions affecting only individual members; and (2) a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. Pro. 23(b)(3).

### a.    Common Questions of Law and Fact Predominate

As a general rule, the "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *IPO*, 260 F.R.D. at 92. Here, the entirety of the case centers around alleged manipulation of the NYMEX futures closing price and the corresponding impact of the price for Platinum and/or Palladium Bullion. The alleged manipulation is common to all Physical Class members. Common questions predominate. *See NASDAQ*, 1997 U.S. Dist. LEXIS 20835, at *18, *see also Amchem Prods. v. Windsor*, 521 U.S. 591, 623, 625 (1997) ("[p]redominance is a test readily met in certain cases alleging … securities fraud").

### b.    A class action is the superior method to adjudicate these claims

Finally, Rule 23(b)(3) requires the action be superior to other available methods for the fair and efficient adjudication of the controversy. The superiority requirement "ensures that the class will be certified only when it would 'achieve economies of time, effort, and expense, and promote … uniformity of decision as to persons similarly situated, without sacrificing procedural

fairness or bringing about other undesirable results.'" *Cordes & Co. Financial Services, Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 104 (2d Cir. 2007).

The alleged damages suffered by many Physical Class members are likely to be relatively small, and thus the expense and burden of individual litigation make it virtually impossible for them to protect their rights. The highly complex nature of this case, requiring the use of multiple experts to establish liability and damages, ensures the sheer cost to retain experts makes this case far too costly to litigate on an individual basis. *See In re Blech Sec. Litig.*, 187 F.R.D. 97, 107 (S.D.N.Y. 1999). What's more, the prosecution of separate actions by thousands of individual Physical Class members would impose heavy burdens on the Court, creating real and serious risk of inconsistent or varying adjudications. A class action is superior to other available methods for fairly and efficiently adjudicating this controversy. Both prongs of Rule 23(b)(3) are satisfied.

For all the foregoing reasons, the Court should find this Settlement Class meets Rule 23(a)'s and 23(b)'s requirements and should certify the Settlement Class.

### D.      The Court should appoint lead counsel as class counsel because the Court has previously found they satisfy Rule 23(g)

Federal Rule of Civil Procedure 23(g)(1) provides "a court that certifies a class must appoint class counsel." Where, as here, only one application is made seeking appointment as class counsel, "the court may appoint that applicant only if the applicant is adequate under Rule 23(g)(1) and (4)." The Court previously appointed Doyle Lowther LLP as Lead Counsel for the Physical subclass (now termed Physical Class). Following appointment, Doyle Lowther has overseen all aspects of the litigation on the Physical subclass's behalf, including drafting, or assisting in drafting, the many amended complaints, responding to defendants' motions to dismiss, managing discovery, participating directly in documentary and evidentiary review, including hiring forensic discovery experts to efficiently assist with uncovering relevant

27

evidence, reviewing the document production, transcribing audio tapes, expending significant resources on discovery and experts for discovery, for mediation, and for settlement, and negotiating the Settlement Agreement for the Physical Class. For these reasons, the Court should now appoint Doyle Lowther as Physical Class Counsel for the Physical Class and permit them to act as class counsel for purposes of the subclass Settlement.

## IV.   CONCLUSION

Physical Plaintiffs ask the Court to:

1.   find the Settlement sufficiently fair, reasonable, and adequate to warrant dissemination of Class Notice (Lowther Decl. Ex. A-4, ¶ 12);

2.   preliminarily certify the proposed Physical Class for settlement purposes (*id*. ¶ 2);

3.   appoint Doyle Lowther, LLP as class counsel for the Physical Class (*id*. ¶ 3);

4.   appoint plaintiffs F.W. DeVito, Inc. Retirement Plan Trust ("DeVito Trust"), Frederick and Mary DeVito, David W. DeVito and Russell W. Andrews, as representatives of the Physical Class (*id*. ¶ 4);

5.   find the notice plan to be the best practicable notice under the circumstances (*id*.¶ 11);

6.   approve the forms and substance of the Class Notice (*id.*);

7.   approve A.B. Data, Ltd. as the Settlement Administrator and Escrow Agent (*id*. ¶ 21); and

8.   set a schedule leading to the Court's consideration of final approval of the Settlement, including:

   a.   the date, time, and place for a hearing to consider the fairness, reasonableness, and adequacy of the Settlement ("Fairness Hearing") (*id*. ¶ 5);

   b.   the deadline for Physical Class members to exclude themselves (*i.e.* opt out) from the Settlement (*id*. ¶ 18);

   c.   the deadline for Physical Lead Counsel to petition for attorneys' fees, reimbursement of expenses, and incentive awards for Physical Plaintiffs (*id*. ¶ 14); and

28

      d.     the deadline for Physical Class members to object to the Settlement and any of the related petitions (*id*. ¶ 15).

Dated: September 18, 2013

            */s/ John A. Lowther*

William J. Doyle, II
John A. Lowther
**DOYLE LOWTHER LLP**
10200 Willow Creek Road, Suite 150
San Diego, CA 92131
Telephone:    (858) 935-9960
Facsimile:    (858) 939-1939

*Interim Class Counsel for Plaintiffs DeVito Trust, Fredrick DeVito, Mary DeVito, David DeVito, Russell Andrews and the Proposed Class in the Platinum/Palladium Physical Action*

29