UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| *In Re: Platinum And Palladium Commodities Litigation*<br><br>This Document Relates To:<br><br>  All Actions | MASTER FILE<br>No. 10 Civ. 3617 (WHP)<br><br>**JURY TRIAL DEMANDED**<br><br>**Declaration of John Lowther In Support of Motion for Preliminary Approval of Amended Class Action Settlement** |

I, John A. Lowther, declare as follows:

## I. Introduction

1. I am an attorney at law admitted to practice *pro hac vice* before this Court and am an attorney with Doyle Lowther LLP, counsel of record for Physical Plaintiffs in this action.

2. As I was one of the counsel of record directly involved in the negotiations over the terms of this settlement, I have personal knowledge of the matters set forth in this Declaration, which is filed in support of the Physical Plaintiffs' Motion for Preliminarily Approval of Amended Class Action Settlement. If called to testify, I could and would competently testify to the following facts stated herein.

3. Attached as Exhibit A is a true and correct copy of the Amended Stipulation and Agreement of Settlement that has been executed by the Settling Parties and their counsel, and attached to this Declaration are the relevant exhibits in connection with the Amended Settlement Agreement, identified within. Unless stated otherwise, all capitalized terms shall have the same meanings as set forth in the Amended Stipulation and Agreement of Settlement.

## II. Overview of the Settling Parties' Arms' Length Settlement Negotiations

Physical Plaintiffs filed their initial complaint on June 14, 2010. Five amended complaints followed. Although procedurally the case is still at the motion to dismiss stage, the discovery and fact-finding is far more advanced. The current operative complaint is the Fifth Amended Consolidated Class Action Complaint—itself a product of motion and discovery practice, forensic document review, review and transcription of audio files concerning trading in the platinum and palladium markets, deposition transcript analyses, and assistance from experts concerning the platinum and palladium markets.[1]

4. Not only did the Physical Plaintiffs receive extensive discovery from the Settling Defendants and from the CFTC, the Physical Plaintiffs also pursued third-party discovery from

---

[1] The Parties have filed a Motion with the Court asking the Court allow the Futures and Physical Plaintiffs to file a Sixth Amended Consolidated Class Action Complaint for the limited purpose of substituting named Futures Plaintiffs. The Sixth Amended version differs from the Fifth Amended version in no other respects.

major national precious metal dealers and retailers, as well as financial institutions concerning their transactions in physical platinum and palladium. Thus the amended complaints' foundation includes significant time, resources, and expert analyses in reviewing highly relevant documents, testimony, electronic audio files, many electronic text messages, and similar evidence.

5. Demonstrating the Physical Plaintiffs' (and the futures plaintiffs') development of factual evidence supporting the case, each iteration of the operative complaint increased in size, from the initial seventeen-page complaint to the 193-page Fifth Amended Consolidated Class Action Complaint—not including exhibits thereto.

6. As part of the lengthy and protracted settlement negotiation process, the settling Parties negotiated directly with each other, and also relied on the material assistance of the Hon. Daniel H. Weinstein (Ret.). Through this process, the Parties were made familiar with each other's claims and contentions, as well as the strengths and weaknesses of the claims and defenses of both sides. Physical Lead Counsel was well-informed of the relevant facts, and the Parties acted in a manner ensuring the negotiations were arms' length and non-collusive, with the assistance of an independent mediator. These negotiations were hard fought, and at certain points, negotiations ended.

7. The Parties' settlement discussions were buttressed with significant expert analysis. Even Judge Weinstein was aided by his own economics expert, who attended mediation and provided a third-party review and analysis of the confidential expert reports and analyses submitted as part of the formal mediation process.

8. Two formal mediation sessions were held. The first all-day session, on July 27, 2012, failed to result in a settlement, or even any agreement on basic terms. A second formal mediation session with Judge Weinstein, held on August 27, 2012, also failed to result in a mediated settlement, though the Parties did make some progress on some very broad points concerning the Physical Class.

9. After these failed negotiations, on January 9, 2013, the Physical Plaintiffs, together with the futures plaintiffs, requested leave to file a Fourth Amended Complaint. This

expanded complaint included new factual allegations and additional common law claims of fraud, aiding and abetting fraud and conspiracy to commit fraud.

10. In the interim, additional settlement discussions were held between and among the Parties. The Court allowed the Physical Plaintiffs to file the Fourth Amended Complaint but stayed the time for defendants to respond to allow the Parties to further discuss settlement. After the Fourth Amended Complaint was filed, negotiations continued, and settlement talks progressed. On or about July 29, 2013, the Court granted the Parties' request to file a Fifth Amended Complaint for the sole purpose of adding a count for negligence against Defendant Joseph Welsh.

### III. Fact Finding, Expert Assistance and Document Review

11. Physical Lead Counsel expended significant time and resources reviewing and understanding the evidence. Among other things, counsel worked with forensic electronic data experts to assist in efficiently sifting through and reviewing documents and electronic data, and counsel and their experts determined the individuals who were directly involved in the alleged trading fraud, counsel determined the parameters for alleged wrongful conduct, and counsel even transcribed and organized scores of trading audio files. The process was time consuming because it was not always obvious who was communicating via text message due to the use of "handles" or screen names for texts and emails, and required listening to many calls to determine speakers on the electronic audio files.

12. The discovery produced to Physical Plaintiffs included all documents defendants provided to the CFTC as part of its investigation into defendants' trading activity in the platinum and palladium markets, which were produced in this case after plaintiffs moved to compel their

production. The production included more than two hundred fifty thousand pages of documents, thousands of emails and text messages, and numerous recorded telephone conversations, which had to be reviewed, transcribed, and analyzed by Physical Lead Counsel.

13. Physical Lead Counsel spent many hours reviewing and understanding the document production, transcribing and reviewing the recorded telephone conversations, and working with experts to understand the impact on the platinum and palladium markets. Thus significant resources were expended analyzing the evidence, including using experts to help efficiently review the documents, data, and trading information. The information gathered from this labor-intensive review formed the basis of the multiple amended complaints filed with the Court.

14. Physical Lead Counsel also engaged in extensive third-party discovery in the form of third-party subpoenas including subpoenas to nationally-recognized physical metals dealers and several banks concerning transaction data during the Class Period, as well as subpoenas to the CFTC, resulting in the production of twenty-three deposition transcripts, which aided counsel's review and understanding of the audio, electronic, and documentary evidence.

15. Physical Lead Counsel expended significant resources in identifying and retaining qualified experts to assist with the precious metals markets and to assist with damages analyses, and many of the expert materials and reports were used extensively during formal and informal mediation sessions and settlement negotiations. The material was voluminous, the research extensive—and all of this was done long before Settlement was reached.

**IV. The Physical Class Faces Significant Litigation Risks, Including the risk of No Recovery, and thus the Settlement Is an Excellent Result for the Physical Class**

16. Based on Physical Lead Counsel's experience in complex class actions, the strength and weaknesses of Physical Plaintiffs' claims, including the distinct possibility of a successful dispositive motion by the Settling Defendants, the extensive risk and expense of continued litigation, the analyses by various experts, and the likelihood of success at trial and

appeal, counsel for the Physical Plaintiffs believe the Settlement is fair, reasonable, adequate and in the best interests of the Physical Plaintiffs and the Physical Class.

17. Absent a settlement, Physical Class members face a significant risk of either no or *de minimus* recovery, and, even in the best case, long delays in receiving any recovery. This is especially true here, because the Physical Class's Sherman Act, RICO, and common law fraud claims are novel, complex, have not been vetted by the Supreme Court or the Second Circuit, and face risk of defeat. Pursuant to the Settlement, claiming Physical Class members will receive payment promptly and without such risk. The Physical Class faced the very real prospect of defendants' dispositive motions being granted, class certification being denied, and successful *Daubert* challenges to every aspect of the Physical Class's theories of artificial inflation, trading activity, alleged impact on the futures market and resultant impact in the physical/spot market, and damages.

18. Physical Lead Counsel retained Jeffrey M. Christian, founder and managing partner of CPM Group, to provide market analysis for the platinum and palladium physical markets. CPM Group advises many of the world's largest corporations and institutional investors on managing their commodities price and market exposures, and provides commodity advisory services to the World Bank, United Nations, International Monetary Fund, and numerous governments.

19. Mr. Christian has been an analyst and advisor on precious metals and commodities markets since the 1970s and is one of the foremost experts on the precious metals markets. He wrote what is considered to be the first market report on platinum group metals in May 1981. Among other things, Mr. Christian wrote the business plan for the U.S. Mint's Platinum Eagle program in the 1990s, developed the Mint's platinum procurement and management program, and managed their purchases. Earlier this year, he developed and managed a platinum lease tender for the U.S. Mint.

20. Physical platinum and palladium bullion markets are difficult to quantify. Physical platinum and palladium bullion is traded over-the-counter, as opposed to commodities

futures which are traded on an exchange. Information about virtually every aspect of the markets for physical platinum and palladium bullion is secret at the institutional and investor level, as is the case with most physical commodity markets. No government program collects data on transactions in physical platinum or palladium bullion. No official statistics, from either government agencies or private corporations, set forth how much physical platinum and palladium bullion is being purchased or sold in the United States for investment purposes. In the absence of concrete data, professionals in the platinum and palladium markets rely on anecdotal commentary, research, and the estimates of supply and demand made by private organizations like the CPM Group.

21.     At Plaintiffs counsel's request, the CPM Group reviewed confidential information from several major precious metals dealers and financial institutions in the United States concerning their monthly transactions in physical platinum bullion and palladium bullion during the Class Period. This information supplemented the body of information CPM Group has collected for many years on the platinum and palladium markets.

22.     Applying methodologies and procedures derived from standard commodities research procedures, CPM Group estimated net investor purchases in the United States of physical platinum bullion during the period of October 2007 through June 2008 was 201,056 ounces. CPM Group also estimated net investor purchases in the United States of physical palladium bullion for this same time period was 933,718 ounces.

23.     Based on information I have reviewed from physical platinum and palladium bullion dealers who sell and ship physical precious metal throughout the United States, discussions with precious metal bullion wholesalers and traders, extended and detailed discussions with experts, as well as our review of trade and industry publications and data compilations (*e.g.* Johnson Matthey's weekly, monthly, interim, and annual customer, investor, and analyst reports and publications concerning precious metals including platinum and palladium bullion; the CPM Platinum Group Metals Yearbooks concerning platinum and palladium during the Class Period, as well as other Class Period publications and yearbooks on

gold, silver, and other precious metals; *Platts Metals Week* weekly reports on precious metals, including platinum and palladium bullion; investor and analyst reports produced during discovery concerning the platinum and palladium markets) the Physical Class consists of hundreds, if not thousands, of individuals and entities who are located throughout the United States.

24. I have reviewed the Physical Class representatives' trading confirmations in physical platinum and palladium bullion during the Class Period, and as part of the discovery process, the class representatives disclosed via initial disclosures their Class Period trading in physical platinum and palladium 99.95% bullion, and produced their trading confirmation documents confirming transactions in platinum and palladium 99.95% bullion.

## IV. Conclusion

25. The proposed Class Notice fully advises Physical Class members of all their alternatives, so that they can make an informed decision on whether to accept the settlement, or to opt out and pursue their own claims, or to object to any part of the Settlement or petition for fees and expenses.

26. The intent in crafting the Amended Settlement was to ensure any disclosure issues are resolved via a robust notice program, and to provide significant compensation to claiming Physical Class members in a cost-efficient manner. The amount of monies to which Physical Class members are entitled is within the range of damages I reasonably believe could have been obtained at trial, based upon my understanding of the facts as developed during the course of this litigation, my understanding of expert analyses and expert assumptions relied on by the Settling Parties, and my understanding of the strengths and weaknesses of the Physical Action.

27. This settlement is the product of contentious settlement discussions that have been held in the utmost good faith and at arm's length. The action has been vigorously yet efficiently litigated, with qualified expert assistance and with the assistance of a nationally-recognized independent mediator.

**V.     Exhibits**

28.     Attached as Exhibit A is a true and correct copy of the Amended Stipulation And Agreement Of Settlement that has been entered by the Settling Parties and their counsel.

29.     Attached as Exhibit A-1 is a true and correct copy of a proposed draft Long Form Notice, which will be available at the Physical Class settlement website.

30.     Attached as Exhibit A-2 is a true and correct copy of a proposed Short Form Notice to be [posted] which will be available at the Physical Class settlement website.

31.     Attached as Exhibit A-3 is a true and correct copy of the proposed Escrow Agreement between and among the Settling Parties and claims administrator A.B. Data, Inc., in the capacity of Escrow Agent.

32.     Attached as Exhibit A-4 is a true and correct copy of the Physical Class's Proposed Order Preliminarily Approving Proposed Settlement, Scheduling Hearing For Final Approval Thereof, And Approving The Proposed Form And Program Of Notice To The Class.

33.     Attached as Exhibit A-5 is a true and correct copy of the proposed Physical Class Final Order And Judgment.

34.     Attached as Exhibit A-6 is a true and correct copy of the Physical Class Plan Of Allocation.

35.     Attached as Exhibit A-7 is a true and correct copy of the proposed Physical Class Claim Form And Release.

36.     Attached as Exhibit A-8 is a true and correct copy of the proposed Physical Class Exclusion Form.

37.     Attached as Exhibit A-9 is a true and correct copy of the MF Global Holdings Ltd. insurance policy.

38.     Attached as Exhibit B is a true and correct copy of Doyle Lowther LLP's resume.

I declare under penalty of perjury under the laws of the United States the foregoing is true and correct. Executed this 21st day of March 2014 at San Diego, California.

                                                                                    _____
                                                                                    John Lowther, Esq.
                                                                                    Counsel to the Physical Class