# Exhibit A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| *In Re: Platinum And Palladium Commodities Litigation*<br><br>This Document Relates To:<br><br>  Platinum/Palladium Physical Action | MASTER FILE<br>No. 10 Civ. 3617 (WHP) |

## <u>STIPULATION AND AGREEMENT OF SETTLEMENT</u>

THIS STIPULATION AND AGREEMENT OF SETTLEMENT (the "Settlement Agreement" or "Settlement") is made and entered into as of March 21, 2014, pursuant to Federal Rule of Civil Procedure 23. This Settlement Agreement is entered into on behalf of the Physical Plaintiffs (as defined in Section 1(z) hereof) and the Physical Class (as defined in Section 1(x) hereof), by and through the Physical Lead Counsel (as defined in Section 1(y) hereof), and on behalf of defendants Moore Capital Management, LP; Moore Capital Management, LLC; Moore Capital Advisors, LLC; Moore Advisors, Ltd.; Moore Macro Fund, LP; Moore Global Fixed Income Master Fund, LP; Christopher Pia; Louis Bacon; Eugene Burger (together the "Moore Defendants"); and Joseph Welsh ("Welsh" and together with the Moore Defendants, the "Settling Defendants"), by and through their respective counsel of record in this action.

WHEREAS, the Physical Plaintiffs made various allegations in the Fifth Consolidated Amended Class Action Complaint (the "Complaint") of alleged conduct that began in 2006, continued until at least May 21, 2008, and allegedly had impact on the market after May 21, 2008;

1

WHEREAS, the foregoing allegations included allegations that the Settling Defendants, non-settling defendant MF Global, Inc., and other co-conspirators, between at least October 17, 2007 and June 6, 2008 combined, conspired and agreed to fix or manipulate the prices of New York Mercantile Exchange ("NYMEX") platinum and palladium futures contracts prices, and thereby inflated prices in physical platinum and palladium, conforming to NYMEX delivery requirements sold in the physical or "spot" market, in violation of the Sherman Antitrust Act, 15 U.S.C. §1 *et seq*., the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 *et seq*. and New York common law;

WHEREAS, the Physical Plaintiffs further alleged that the foregoing caused false statements or misstatements of prices to be made and also alleged a separate negligence claim for breach of duty against Defendant Welsh;

WHEREAS, the Settling Defendants have denied each and every allegation of the challenged conduct or omissions, disclaimed any wrongdoing or liability whatsoever, and have repeatedly asserted and submitted evidentiary economic analyses which tend to show that the maximum alleged class damages, if any, that could be allowed on these claims would be only a minute fraction of those asserted by the Physical Plaintiffs;

WHEREAS, extensive arm's-length, good faith settlement negotiations have taken place on and off over the course of sixteen months between counsel for the Physical Plaintiffs and Settling Defendants;

WHEREAS, such settlement negotiations included a settlement mediation under the direction of The Honorable Daniel Weinstein (Ret.), including all-day mediation sessions on July 27 and August 27, 2012;

WHEREAS, such mediation sessions did not conclude in a settlement; the parties thereafter resumed litigating, and have continued their arm's-length negotiations through and including the date hereof;

WHEREAS, certain defendants successfully obtained the dismissal of the Physical Plaintiffs' earlier complaint without prejudice, and the Settling Defendants were prepared to file a motion to dismiss with prejudice challenging the entirety of the current Complaint prior to the Parties' entering this Settlement Agreement;

WHEREAS, Physical Lead Counsel has had an opportunity to conduct factual research and has reviewed more than 250,000 pages of documents produced by the Settling Defendants and defendant MF Global, Inc., both during discovery and in the course of settlement negotiations, Physical Lead Counsel further reviewed records and data (including deposition transcripts) produced by third parties such as the NYMEX, and the Commodity Futures Trading Commission ("CFTC"), received and reviewed expert analyses, conducted a thorough legal analysis, and otherwise has become well-informed before agreeing to the Settlement;

WHEREAS, Defendant Welsh has represented that to the best of his knowledge the information he provided concerning the Relevant Insurers (as defined in Section 3(b)(ii)) and related Policy (as defined in Section 3(b)(ii)) and excess polices is complete and accurate;

WHEREAS, Defendant Welsh has represented that to the best of his knowledge any actions he took with respect to any E&O insurance policy or otherwise has not impaired his rights under the Policy and related excess polices;

WHERAS, Defendant Welsh has provided Physical Lead Counsel with information regarding his financial condition and represented that such information, which is confidential, is true and accurate;

WHEREAS, in the Physical Plaintiffs' informed judgment, Defendant Welsh does not have the financial ability to satisfy any significant judgment, and further, in the Physical Plaintiffs' informed judgment, Defendant Welsh would face potential insolvency if he had to defend this complex case through summary judgment or trial and/or if there was any significant judgment entered against him in this Physical Action;

WHEREAS, Physical Lead Counsel considers the settlement set forth herein to be fair, reasonable, adequate and in the best interests of the Physical Plaintiffs and the members of the Physical Class, and has determined that it is in the best interests of the Physical Class to enter into this Settlement Agreement in order to avoid the risks and uncertainties of this complex litigation and to assure a benefit to the Physical Class, while maintaining the right to pursue claims against any Non-Settling Defendants (as defined in Section 1(s));

WHEREAS, Settling Defendants have decided, despite their denial of each and every one of the Physical Plaintiffs' allegations, their position that they are not liable for the claims asserted, and their position that alleged class damages, if any, would be allowed only in a minute fraction of those asserted by the Physical Plaintiffs, to enter into this Settlement Agreement to

avoid the further expense, inconvenience and burden of this protracted litigation, the distraction and diversion of their personnel and resources, and the risks and expenses inherent in any complex litigation;

NOW THEREFORE, it is agreed by the undersigned, on behalf of the Physical Plaintiffs, the Physical Class, and Settling Defendants, without any admission or concession of liability or the validity of any allegation in the Complaint whatsoever, that the Physical Action and the Released Claims (as defined in Section 1(dd) hereof) be settled, compromised and dismissed on the merits and with prejudice as to the Settling Defendants (but not as to the Non-Settling Defendants), and without costs as to the Physical Plaintiffs or Settling Defendants, on the following terms and conditions, all as subject to the approval of the Court.

## 1.    Terms Used In This Settlement Agreement

The words and terms used in this Settlement Agreement expressly defined below shall have the meaning ascribed to them.

(a)    "Allowed Claim" shall mean a Proof of Claim that satisfies all of the following requirements: (i) it is timely submitted by a Person within the definition of the Physical Class in substantial conformity with the procedural and substantive requirements of this Settlement Agreement, the Settlement Administrator (as defined in Section 1(hh) hereof) and all applicable orders of the Court; (ii) it is validated by the Settlement Administrator and determined to establish that the Person submitting the claim has suffered Net Artificiality Paid and/or Net Losses in accordance with the Plan of Allocation (as defined in Section 1(aa) hereof) and (iii), if objected to, has not been invalidated by the Mediator (as defined in Section 1(p) hereof).

(b)      "Class Contracts" shall mean NYMEX platinum futures contracts and NYMEX palladium futures contracts traded during June 2006 through April 2010, inclusive.

(c)      "Class Notice" shall mean collectively notice of the Settlement to the Physical Class in the form of the long form notice (substantially in the form of Exhibit A-1 hereto), the publication notice (substantially in the form of Exhibit A-2 hereto), and the settlement website, all to be provided, established and maintained pursuant to the Scheduling Order and in the manner and form approved by the Court and which is in compliance with Federal Rule of Civil Procedure 23.

(d)      "Class Period" shall mean the period June 1, 2006 through April 29, 2010, inclusive.

(e)       "Court" shall mean the United States District Court for the Southern District of New York.

(f)      "Claiming Physical Class Members" shall mean Physical Class members with Allowed Claims.

(g)      "Claims Bar Date" shall mean seventy-five (75) days after the Fairness Hearing.

(h)      "Effective Date" shall mean the date when the Final Judgment (as defined in Section 1(n) hereof) becomes final as provided in Section 14 of this Settlement Agreement.

(i)      "Escrow Account" shall mean (1) the account to be established at Huntington National Bank which will hold a $150,000 payment by the Moore Defendants; and (2) an interest bearing Court Registry Investment System ("CRIS") account for the Southern District of New York for which the remaining $9,205,000 payment by the Moore Defendants will be

deposited along with any Welsh Consideration (as defined in Section 1(nn) below) that may be recovered, if any.

(j)      "Escrow Agent" shall mean A.B. Data, Ltd. or any other Persons approved by the Court to act as escrow agent for the portion of the Settlement Fund held at Huntington National Bank pursuant to the terms of the Escrow Agreement for such account at Huntington National Bank.

(k)      "Escrow Agreement" shall mean the agreement, substantially in the form of Exhibit A-3 hereto, governing the Escrow Account at Huntington National Bank. The Escrow Agreement shall be executed contemporaneously with the execution of this Settlement.

(l)      "Exclusion Bar Date" shall mean the date thirty-five (35) days before Fairness Hearing.

(m)      "Fairness Hearing" shall have the meaning set forth in the proposed Scheduling Order attached hereto as Exhibit A-4.

(n)      "Final Judgment" shall mean a final judgment and order of dismissal substantially in the form of Exhibit A-5 to this Settlement Agreement (or such other form that the parties may agree) which is to be entered by the Court finally approving the terms of this Settlement Agreement and dismissing the Physical Action with prejudice as to the Settling Defendants provided that the Physical Action will not be dismissed as to the Non-Settling Defendants.

(o)      "Futures Action" shall mean the consolidated class action concerning the Futures Plaintiffs and the Futures Class pending in the United States District Court for the Southern

District of New York captioned *In re: Platinum and Palladium Commodities Litig.* (Platinum/Palladium Futures Action), 10-cv-3617 (WHP) (S.D.N.Y.) provided that the Futures Action shall not be deemed to include (i) any claims solely asserted by the named plaintiffs or the proposed class in the Physical Action, or (ii) any claims that are not in any way related to and do not arise in full or in part from the Settling Defendants' trading of Class Contracts.

(p)    "Mediator" shall mean Francis McGovern.

(q)    "MF Global, Inc." shall mean MF Global, Inc., MF Global Holdings Ltd., MF Global Finance USA Inc., MF Global Capital LLC, MF Global Market Services LLC, MF Global FX Clear LLC, and MF Global Holdings USA Inc., and their insurers, employees, parents, subsidiaries, affiliates, or agents.

(r)    "Net Settlement Fund" shall mean the Settlement Fund minus all reasonable and appropriate costs and expenses associated with Class Notice, all attorneys' fees, settlement administration expenses, taxes and all other expenses or charges as approved by the Court as required herein.

(s)    "Non-Settling Defendants" shall mean defendant MF Global, Inc., and any other person or entity other than the Released Parties that may be named as a defendant in the Physical Action or any other action or proceeding asserting similar claims.

(t)    "Opt Outs" shall mean all Persons within the definition of the Physical Class who have submitted Requests For Exclusion in substantial conformity with the procedural and substantive requirements of this Settlement Agreement, the Settlement Administrator and all

applicable orders of the Court prior to the Exclusion Bar Date, and thereafter does not revoke such Request for Exclusion prior to entry of the Final Judgment.

(u)     "Parties" shall mean the Physical Plaintiffs and the Settling Defendants, collectively.

(v)     "Person" shall mean an individual, corporation, partnership, association, proprietorship, trust, governmental or quasi-governmental body or political subdivision or any agency or instrumentality thereof, or any other entity or organization.

(w)     "Physical Action" shall mean the consolidated class action concerning the Physical Plaintiffs and the Physical Class, including the Complaint, pending in the United States District Court for the Southern District of New York captioned *In re: Platinum and Palladium Commodities Litig.* (Platinum/Palladium Physical Action), 10-cv-3617 (WHP) (S.D.N.Y.) provided that the Physical Action shall not be deemed to include any claims solely asserted by the named plaintiffs or the proposed class in the Futures Action.

(x)     "Physical Class" shall be defined as: all Persons and/or entities who purchased, invested in, or otherwise acquired an interest in Platinum and/or Palladium Bullion (as defined in subparagraph (bb)) in the United States physical or "spot" market during the period of June 1, 2006 through April 29, 2010.  Excluded from the Physical Class are (i) the Settling Defendants, MF Global, Inc., any co-conspirators alleged in the Complaint or any subsequent amended complaint filed prior to the Exclusion Bar Date, Alan Craig Kleinstein, Dominick Frank Terrone, Richard Peter Trifoglio Sr., Frederick Charles Ferriola, Peter Michael Venus, Lawrence Frasca Favuzza, John Anthony Sakulich and any NYMEX floor brokers or NYMEX

9

floor traders who refuse to execute the certification in the Proof of Claim attesting that they were not co-conspirators, or aiders or abettors of the Settling Defendants or Non-Settling Defendants, and  (ii) Opt Outs (as defined in Section 1(t) hereof).

(y)     "Physical Lead Counsel" shall mean Doyle Lowther LLP.

(z)     "Physical Plaintiffs" shall mean F.W. DeVito, Inc. Retirement Plan Trust ("DeVito Trust"), Frederick DeVito, Mary DeVito, David W. DeVito and Russell W. Andrews.

(aa)    "Plan of Allocation" shall mean the Physical Plaintiffs' proposed plan of allocation attached hereto as Exhibit A-6, or such alternative plan of allocation as may be ordered by the Court, provided however that the Settling Defendants dispute that the Plan of Allocation sets forth any legally or factually cognizable damages that any of the Settling Defendants would be liable for, dispute that the Plan of Allocation or concepts contained therein would ever be admissible at trial in full or in part, and maintain their position that the maximum alleged damages, if any, would be only a minute fraction of that asserted by the Physical Plaintiffs.

(bb)    "Platinum and/or Palladium Bullion" shall mean physical or spot platinum or palladium bullion conforming to NYMEX "good delivery" requirements and/or of at least 99.95% purity.

(cc)    "Proof of Claim" shall mean the form by which the Physical Class submits their claims, substantially in the form attached as Exhibit A-7 hereto, or such alternative form as may be approved by the Court.

10

(dd)    "Released Claims" shall mean those claims identified in Sections 6(a) and 6(b) of this Settlement Agreement.

(ee)    "Released Parties" shall mean the Settling Defendants, each of their past, present or future parents, subsidiaries, divisions, affiliates, shareholders, general or limited partners, attorneys, spouses, insurers, beneficiaries, employees, officers, directors, legal and equitable owners, members, predecessors in interest, successors in interest, legal representatives, trustees, associates, heirs, executors, administrators and/or assigns, and each and any of their respective shareholders, parents, subsidiaries, divisions, affiliates, shareholders, general or limited partners, assigns, attorneys, insurers, beneficiaries, employees, officers, directors, legal and equitable owners, members, predecessors in interest, successors in interest, legal representatives, alter egos, trustees, associates, heirs, executors, administrators and/or assigns. In no event shall the Released Parties include MF Global, Inc., the Relevant Insurers (as defined in Section 3(b) below) or any NYMEX floor brokers or NYMEX floor traders who executed trades in NYMEX platinum futures contracts or NYMEX palladium futures contracts between October 17, 2007 and June 6, 2008.  This Settlement is not intended to relieve U.S. Specialty Insurance Company or any of the other Relevant Insurers (defined in Section 3(b)(ii) below) of their obligations under the Policy (defined in Section 3(b)(ii) below) and/or the related excess policies underwritten by the Relevant Insurers.

(ff)    "Request for Exclusion" shall mean the form by which Persons within the definition of the Physical Class may request exclusion therefrom, substantially in the form attached as Exhibit A-8 hereto, or such alternative form as may be approved by the Court.

(gg)    "Scheduling Order" shall mean the order that, *inter alia*, preliminarily approves this Settlement, schedules deadlines leading up to the Fairness Hearing, and that makes provisions for the Class Notice.   A copy of the proposed Scheduling Order is attached as Exhibit A-4 hereto.

(hh)    "Settlement Administrator" shall mean A.B. Data, Ltd. or any other Persons approved by the Court to perform the tasks necessary to provide notice of the Settlement to the Class and to otherwise administer the Settlement Fund.

(ii)    "Settlement Agreement" or "Settlement" shall mean this Stipulation and Agreement of Settlement and all exhibits attached hereto, including any subsequent modification(s) to the Settlement or any exhibit made in conformity with the terms hereof.

(jj)    "Settlement Fund" shall mean the $9,355,000.00 aggregate payment by the Moore Defendants and any Welsh Consideration (as defined in Section 1(nn) below) that may be recovered (if any) and all interest accrued thereon (except interest (if any) to which may be retained by the Moore Capital Defendants as provided by Section 3(a) herein) provided that in no event shall the Settlement Fund include any funds or other consideration that may be recovered from MF Global, Inc. or any other Non-Settling Defendant.

(kk)    "Settling Defendants" shall have the meaning provided in the first paragraph of this Settlement Agreement, provided that neither MF Global Inc. nor any other Non-Settling Defendant is a Settling Defendant.

12

(ll)    "Supplemental Agreement" shall mean the Supplemental Agreement dated September 18, 2013 and entered on behalf of the Physical Plaintiffs, Physical Class and Moore Capital Management, LP.

(mm)  "Taxes" shall mean any and all (i) federal, state and local taxes payable on interest or other income attributable to the Settlement Fund, including interest and penalties, and (ii) expenses and costs incurred in connection with the taxation of the Settlement Fund (including expenses of tax attorneys and accountants).

(nn)    "Welsh Consideration" shall mean the consideration set forth in Section 3(b) below that may be recovered, if any.

## 2.    The Physical Class

This Settlement is made on behalf of the Physical Class without prejudice to any objections, arguments, and/or defenses of any party with respect to the Physical Class or Physical Action in the event that the Final Judgment is not obtained.

## 3.    Settlement Consideration

(a)    **Moore Defendants**. The Moore Defendants have agreed to pay and shall pay a total of nine million three hundred fifty-five thousand dollars ($9,355,000.00) for the benefit of the Physical Class as specifically described in this Section.  Provided that the Escrow Agreement has been executed and delivered by all parties thereto: **First Payment**. Within fourteen (14) calendar days after the Scheduling Order is entered, the Moore Defendants shall cause to be deposited, pursuant to Local Civil Rule 67.1 and the terms of this Settlement Agreement, the sum of nine million one hundred seventy five thousand dollars ($9,175,000) into an interest bearing

13

Court Registry Investment System ("CRIS") account. The Moore Defendants shall retain the interest (if any), earned on four million five hundred eighty-seven thousand five hundred dollars ($4,587,500) of the foregoing cash payment, but only during the time period between the day such funds are deposited into an interest bearing CRIS account, *i.e.*, within fourteen (14) calendar days of entry of the Scheduling Order, and three (3) business days before the Fairness Hearing. **Second Payment**. Within fourteen (14) calendar days after the Scheduling Order is entered, the Moore Defendants shall cause to be deposited into the Escrow Account at Huntington Bank the sum of One Hundred Fifty thousand dollars ($150,000). The foregoing $150,000 sum deposited into the escrow account at Huntington National Bank shall be used for the purposes of providing notice of the proposed Settlement to the Physical Class consistent with Section 5(f) below. **Third Payment**. As separate and additional consideration to quiet the litigation, and further consideration for the reversion rights set forth in Section 12 below, within fourteen (14) calendar days after the Scheduling Order is entered, the Moore Defendants shall cause to be deposited, pursuant to Local Civil Rule 67.1 and the terms of this Settlement Agreement, the sum of thirty thousand dollars ($30,000.00) into an interest bearing Court Registry Investment System ("CRIS") account in the Southern District of New York. In consideration for the foregoing additional consideration, the Physical Plaintiffs, the Physical Class and Physical Lead Counsel have agreed that up to a maximum of the first ten thousand dollars ($10,000.00) of any recovery from the Relevant Insurers (if any) with respect to the Welsh Consideration set forth below, will be refunded to the Moore Defendants, irrespective of whether grounds for reversion as set forth in Section 12 hereof apply.

14

(b)   **Welsh**. Welsh has agreed to provide the following consideration:

(i)   Welsh stipulates to his liability to pay the sum of seven million dollars ($7,000,000) for the benefit of the Physical Class on the negligence claim as set forth in paragraph 15 of the Final Judgment attached as Exhibit A-5 hereto.  The Physical Plaintiffs and the Physical Class shall have the full enforcement rights on such liability judgment provided in footnote one (fn. 1) of paragraph 15 of the Final Judgment attached as Exhibit A-5hereto.  This judgment shall be satisfied in full, shall cease to have any force or effect, and shall terminate when the Physical Plaintiffs' and Physical Class' claims against the Relevant Insurers have been finally resolved on the merits and all efforts to enforce any such judgment have been completed (the "Insurance Enforcement Date").

(ii)   In further satisfaction of his financial obligation, Welsh hereby agrees to the fullest extent that New York insurance law, the pertinent policies, and other applicable law permit, without impairing the Physical Plaintiffs' and Physical Class' enforcement rights in any action against U.S. Specialty, any excess carrier or any Relevant Insurer ("Insurance Enforcement Action"), to do the following:  Welsh irrevocably assigns, transfers and otherwise conveys to the Physical Plaintiffs and the Physical Class the entirety of Welsh's claims, causes of action, rights, title, interest in, and any other entitlement to any benefits, of any nature whatsoever from under, or by reason of, or against the Relevant Insurers, including in respect of any insurance policy (specifically including a certain Directors & Officers insurance policy (No. 14-MGU-11-A23947) with effective dates of May 31, 2011 through May 31, 2012 (the "Policy") issued by U.S. Specialty Insurance Company ("U.S. Specialty") and all related excess policies

15

including, but not limited to, any excess policy underwritten by: XL Specialty, Axis Insurance Co., Ace American Insurance Co., Illinois National, Federal, Ace Westchester Specialty, New Hampshire Insurance, Ironshore Indemnity, Inc., Hartford Accident & Indemnity, St. Paul Mercy, Ironshore/Starr, AWAC, Axis Specialty Ltd., Catlin Ins. Co., Continental Casualty, Federal, Everest National Scottsdale Indemnity, New Hampshire Insurance, U.S. Specialty (together the "Relevant Insurers"). The Policy is attached hereto as Exhibit A-9. The consideration provided by Welsh in this Section 3(b) shall be referred to collectively as the "Welsh Consideration."

(iii)    Physical Class and Physical Lead Counsel have sole discretion to settle, collect or otherwise seek to satisfy the $7,000,000 judgment and Welsh shall have no interest in or to the proceeds of any sums collected by Physical Class and Physical Lead Counsel by reason of the assignment herein. The Parties agree that Welsh makes no representations or warranties about the existence of, or amount of, coverage under the Policy and related excess policies.

(iv)    Welsh agrees to provide Physical Lead Counsel with any correspondence from the Relevant Insurers or their counsel concerning the assignment and settlement contemplated herein within five days after receipt thereof.  Welsh further agrees to cooperate in good faith with Physical Lead Counsel including obtaining consents from the Relevant Insurers.

(v)    Upon execution of this Settlement Agreement, Physical Lead Counsel shall commence reasonable good faith efforts to promptly settle with or sue the Relevant Insurers for any sum that Physical Lead Counsel, in its reasonable judgment, deems sufficient, or, if it so chooses, promptly pursue claims against the Relevant Insurers. Neither Physical Lead Counsel

16

nor any of the Settling Defendants or their counsel shall have liability whatsoever to any of the Settling Defendants, the Physical Plaintiffs, the Physical Class or any other persons or entities in the event that, for any reason whatsoever, some or all of the Welsh Consideration is not collected.

(vi)     Neither Welsh, nor any of the Moore Defendants, represents or warrants that any or all of the Welsh Consideration will ultimately be collected or that Defendant Welsh has a meritorious cause of action against any Relevant Insurer.

(vii)    There are no stipulated facts between the Physical Plaintiffs and Welsh with respect to any allegation in the Complaint and there is no intent between such parties to create issue or claim preclusion with respect to any facts or claims asserted in the Complaint.

### 4.     Maintenance of Settlement Fund

(a)     The Settlement Fund shall be maintained by the Escrow Agent and the Clerk of the Court, and shall be distributed solely at such times, in such manner, and to such Persons as set forth in this Settlement or as directed by subsequent orders of the Court. Subject to Court approval by written order, the Settlement Fund may be used:

(i)     To pay all the approved costs and expenses reasonably and actually incurred in connection with providing notice, locating potential members of the Physical Class, administering and distributing the Net Settlement Fund to Claiming Physical Class Members, processing Proof of Claim forms, and paying escrow fees and costs, if any;

(ii)    To pay Taxes, as defined herein;

(iii)    To pay Physical Lead Counsel's attorneys' fees, expenses and costs thereon;

(iv)    To pay the Physical Plaintiffs' requests for compensation and reimbursement for expenses;

(v)    To pay other charges on the Settlement Fund;

(vi)    To distribute the Net Settlement Fund to Claiming Physical Class Members as directed by the Court;

(vii)    To distribute any reversion to the Moore Defendants; and

(viii)    To distribute any funds back to the Moore Defendants and the Relevant Insurers, if applicable, in the event the Settlement is terminated or the Final judgment is not obtained, in accordance with Section 16(e) below.

(b)    The Settlement Fund is intended to be a "qualified settlement fund" within the meaning of Treasury Regulation § 1.468B-1(c) as to court jurisdiction, the underlying claims, and the related liability assertion and the subsequent segregation of the Settlement Fund. The Parties and their counsel shall treat, and shall cause the Escrow Agent and the Settlement Administrator to treat the Settlement Fund as being at all times a "qualified settlement fund" within the meaning of Treasury Regulation § 1.468B-1 and to account and report the results of the Settlement Fund accordingly. The Parties and their counsel agree that they will not, nor will they permit the Escrow Agent or the Settlement Administrator to ask the Court to take any action inconsistent with the treatment of the Settlement Fund in such manner. The Moore Defendants, with due notification to Physical Lead Counsel, shall determine the appropriate tax elections to

18

make with respect to the Settlement Fund and communicate such determinations to the Escrow

Agent and Settlement Administrator for the Settlement Fund. Such elections shall be made in

compliance with the procedures and requirements contained in the Treasury Regulations. The

Moore Defendants shall be responsible to implement the tax elections on their own returns; the

Settlement Administrator shall be responsible to implement the same tax elections and any joint

tax elections with the Moore Defendants in the context of the return for the Settlement Fund. The

Moore Defendants shall be responsible to implement the tax statements required on their own tax

returns; the Settlement Administrator shall be responsible to implement the tax statements

required in the context of the return for the Settlement Fund. In no event shall the Settlement

Fund be charged or be liable for any tax election made by the Moore Defendants who shall be

fully responsible therefor.  All provisions of this Settlement Agreement shall be interpreted in a

manner that is consistent with the Settlement Fund being a "qualified settlement fund" within the

meaning of Treasury Regulation § 1.468B-1.

**5.      All Fees, Expenses and Costs To Be Paid from Settlement Fund**

(a)      The Settlement Fund is the total and exclusive amount that Settling Defendants

will pay under this Settlement Agreement for the benefit of the Released Claims (as defined in

Section 1(dd) herein), including without limitation, funds to pay Claiming Physical Class

Members, attorneys' fees and costs as may be ordered by the Court, any Court-approved

incentive awards to the Physical Plaintiffs, payment of any and all estimated taxes, assessed

taxes, tax preparation fees, and payment of any and all administrative and notice expenses

associated with the Physical Action or this Settlement. Settling Defendants shall have no

19

liability, obligation or responsibility for the investment, disbursement, or other administration or oversight of the Settlement Fund.  The Physical Class and each member of the Physical Class are limited solely to the Net Settlement Fund for the satisfaction of all Released Claims against all Settling Defendants and Released Parties as provided herein.  Except as provided by order of the Court pursuant to this Settlement Agreement, no Class Member shall have any interest in the Settlement Fund or any portion thereof.

(b)  **Attorneys' Fees, Expenses and Incentive Awards**. Physical Lead Counsel have represented that they will seek attorneys' fees on behalf of themselves and Other Physical Plaintiffs' Counsel not more than one-third (33.3%) of the Settlement Fund, costs and expenses in the amount of approximately $200,000, and an incentive award of no more than $50,000 for named Physical Plaintiffs for bringing this matter and for time spent devoted to this litigation. The Settling Defendants have not consented to such requests and reserve all rights to object and file papers respecting the amount of such requests.  If and when any of the foregoing funds in this Section 5(b) are approved by the Court, Physical Lead Counsel may immediately withdraw up to twenty-five percent (25%) of any such approved amount subject to providing, for the amount withdrawn, a letter of credit in such amount satisfactory in form and substance to the Moore Defendants from a financial institution acceptable to the Moore Defendants.

(c)  The remainder of any funds in Section 5(b) that are approved by the Court may be withdrawn from the Settlement Fund only upon the occurrence of the Effective Date.  If the Effective Date does not occur for any reason, then within five business days after receiving notice from counsel for the Moore Defendants or from a court with appropriate jurisdiction,

20

Physical Lead Counsel shall refund to the Settlement Fund any amounts that were withdrawn plus interest thereon at the same rate at which interest is accruing for the Settlement Fund.

(d)     Additionally, Physical Lead Counsel may apply at the time of any application for distribution to Claiming Physical Class Members for an award from the Settlement Fund of attorneys' fees for services performed, and reimbursement of expenses incurred, in connection with the administration of the Settlement after the date of the Fairness Hearing, including the costs and expenses of the Settlement Administrator.  Physical Lead Counsel reserves the right to make additional applications for fees and expenses incurred.  The Settling Defendants have not consented to any such requests and reserve all rights to object and file papers respecting the amount of such requests.

(e)     Approval of the attorneys' fees requested by Physcial Lead Counsel and/or any incentive payments that may be requested by the Physcial Plaintiffs is not a condition to the effectiveness of this Settlement Agreement or the issuance of the Scheduling Order or Final Judgment.

(f)     **Class Notice and Settlement Administration Costs and Expenses.**     The Settling Defendants agree to permit use of up to one hundred fifty thousand dollars ($150,000) of the Settlement Fund towards the reasonable and appropriate costs of providing notice of the Settlement to the Physical Class and for the costs of administration of the Settlement without further order from the Court, provided that documentation of such expenses is provided to the Settling Defendants.  This amount is separate and in addition to the up to $300,000 of the Futures Class settlement fund allocated for notice and administration of the settlement of the Futures

21

Class, which the Settlement Administrator shall, to the extent feasible and practicable, use to combine the provision of notice and administration of the Physical Class and Futures Class Settlements. Any shared notice (but not administration) expenses (if any) shall be paid from the Futures Settlement Fund and the Physical Action Settlement Fund in proportion to the respective size of the gross settlement payment to each class by the Moore Defendants. Any amounts expended or incurred in notice and administration expenses are not recoverable if this Settlement does not become final or is terminated. Neither the Physical Plaintiffs, the Physical Class, nor Physical Lead Counsel shall have any responsibility, financial obligation, or liability for any fees, costs or expenses related to providing notice of the Settlement to the Physical Class or for any fees, costs or expenses related to the administration of the Settlement. All reasonable and appropriate fees, costs and expenses shall be satisfied solely by the Settlement Fund. In the event that the reasonable and appropriate notice and administration costs exceed the $150,000 provided for in this Section, Physical Lead Counsel shall apply to the Court to pay such notice costs and administration costs from the Settlement Fund. To the extent ordered by the Court, such costs shall be non-refundable.

### 6.    Release and Covenant Not to Sue

(a)    In addition to the effect of any final judgment entered in accordance with this Settlement Agreement, and provided that the Court approves this Settlement Agreement, effective upon the Effective Date each and every Physical Class member, all of their past, present or future parents, subsidiaries, divisions, affiliates, shareholders, general or limited partners, attorneys, spouses, insurers, beneficiaries, employees, officers, directors, legal and

equitable owners, members, predecessors in interest, successors in interest, legal representatives,

trustees, associates, heirs, executors, administrators and/or assigns, and each and any of their

respective shareholders, parents, subsidiaries, divisions, affiliates, shareholders, general or

limited partners, assigns, attorneys, insurers, beneficiaries, employees, officers, directors, legal

and equitable owners, members, predecessors in interest, successors in interest, legal

representatives, trustees, associates, heirs, executors, administrators and/or assigns (together the

"Releasing Parties"), releases and forever discharges, to the fullest extent permitted by law, the

Released Parties from and against any and all present, past, or future claims, demands, debts,

damages, losses, offsets, obligations, warranties, costs, fees, penalties, expenses, whenever

incurred, rights of action, suits, and causes of action of every kind and nature whatsoever,

whether based on contract, tort, federal, state or foreign law, statutory, or other legal or equitable

theory of recovery, liabilities of any nature and kind whatsoever, whether known or unknown,

suspected or unsuspected, existing, or claimed to exist, and whether arising in the past or future,

in law or in equity, that each and every Physical Class member ever had, now has, or hereafter

can, shall or may have, directly, representatively, derivatively or in any other capacity, in any

way arising from or related to, in full or in part, the Physical Action and/or any transactions in

Platinum and/or Palladium Bullion, forwards, options, or any other instrument or derivative by

which an interest in Platinum and/or Palladium Bullion was purchased, sold, hedged or otherwise

invested or traded in during the Class Period, whether or not asserted in the Physical Action, or

from any losses incurred, in whole or in part, as a result of any transaction encompassed by this

sentence.  Notwithstanding any other provision of this Settlement, (a) the foregoing release shall

not include any claims which a Physical Class member may have in its capacity as a member of any class that may be certified with respect to the claims asserted in the Complaint in the Futures Action, and (b) as to Defendant Welsh only, the foregoing release shall not include, shall not apply to, shall have no effect whatsoever on, and shall not release in any way, the negligence and the negligent conduct as alleged, and relief that may be obtained on, the Physical Plaintiffs' eleventh claim in the Complaint.  Welsh is released as to the non-negligence claims (including the Physical Plaintiffs' claims in the Complaint for violations of the RICO Act, the Sherman Act, and common law fraud) as previously set forth above in this Section 6(a).

(b)     In addition, each Releasing Party hereby expressly waives and releases any and all provisions, rights, and benefits conferred by § 1542 of the California Civil Code, which reads:

> Section 1542. <u>General release extent</u>. A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor[.]

From the Effective Date each Releasing Party also expressly waives and releases any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States or other jurisdiction, or principle of common law, which is similar, comparable or equivalent to § 1542 of the California Civil Code.  Each Releasing Party may hereafter discover facts other than or different from those which the Person knows or believes to be true with respect to the claims which are the subject matter of this Section 6, but each Releasing Party, through this Settlement Agreement, and with the ability to seek independent advice of counsel, expressly waives and fully, finally, and forever settles and releases, as of the Effective Date, any known or unknown,

suspected or unsuspected, contingent or non-contingent claim that would otherwise fall within the definition of Released Claims, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.  From the Effective Date, the releases herein given by the Releasing Parties shall be and remain in effect as full and complete releases of the claims set forth in the Physical Action, notwithstanding the later discovery or existence of any such additional or different facts relative hereto or the later discovery of any such additional or different claims that would fall within the scope of the release provided in Section 6(a) of this Settlement Agreement, as if such facts or claims had been known at the time of this release.  Notwithstanding any of the provisions of the Final Judgment or any provisions of this Settlement Agreement or otherwise, the Physical Plaintiffs and the Physical Class do not release or dismiss and shall not release or dismiss Defendant Welsh from the Physical Plaintiffs' eleventh claim in the Complaint for negligence against Defendant Welsh.

(c)     Each Physical Class member must execute a release and covenant not to sue in conformity with this Section in order to receive a pro rata share of the Net Settlement Fund. The Settlement Administrator shall ensure that each claim form provided to Physical Class members contains a copy of the release and covenant not to sue set forth in this Section, which must be signed by each member of the Physical Class or an authorized representative as a precondition to receiving any portion of the Net Settlement Fund. Each Physical Class member's claims shall be released pursuant to Sections 6(a) and 6(b) of this Settlement Agreement, regardless of whether he executes a release and covenant not to sue pursuant to this Section 6(c).

(d)      The Released Parties fully, finally and forever discharge Physical Plaintiffs and Physical Lead Counsel from all claims by Settling Defendants relating to, arising from, or connected with the institution, prosecution, or assertion of the Physical Action, except for claims relating to the enforcement of the Settlement Agreement which are expressly reserved.

### 7.      Motions for Entry of Scheduling Order and Preliminary Approval

(a)      As soon as practicable after this Settlement Agreement has been executed, Physical Lead Counsel shall submit to the Court this Settlement Agreement and shall move the Court for entry of the Scheduling Order in the form attached hereto as Exhibit A-5, which will make provisions for notice of the Settlement to the Physical Class and will schedule deadlines leading up to the Fairness Hearing.

(b)      Physical Lead Counsel shall, in accordance with Federal Rule of Civil Procedure 23 and any other applicable law or regulation, request that the Court preliminarily certify the Physical Class as defined in Section 1(x) (it being understood and agreed that the preliminary certification of the Physical Class is a condition to the effectiveness of this Settlement Agreement).

(c)      The Settlement Administrator shall be responsible for the reproduction and distribution of the Class Notice, substantially in the forms attached hereto as Exhibits A-1 and A-2, in the manner provided in the Scheduling Order or as otherwise approved by the Court. Physical Class members shall have no recourse as to the Released Parties, Physical Plaintiffs or Physical Lead Counsel with respect to any claims they may have that arise from any failure in the notice process.

26

(d)     The Scheduling Order shall provide, pursuant to Local Civil Rule 67.1, for directions to the Clerk of the Court concerning investment of certain settlement funds (consistent with Section 3(a)) in an interest bearing CRIS account in the Southern District of New York.

(e)     The Settling Defendants may, but are not obligated, to submit papers in connection with the motion for entry of the Scheduling Order.

### 8.     Motion for Entry of Final Judgment

(a)     In connection with the Fairness Hearing to be held by the Court on the motion for final approval of this Settlement Agreement, the Parties hereto shall seek entry of the Final Judgment substantially in the form attached hereto as Exhibit A-5 and which, *inter alia*:

(i)     finally certifies the Physical Class solely for settlement purposes;

(ii)     finally approves this Settlement and its terms as being a fair, reasonable, and adequate settlement of the Physical Class's claims under Federal Rule of Civil Procedure 23;

(iii)     directs that, except for the negligence claim against Defendant Welsh only, all claims in the Physical Action as to the Settling Defendants, will be dismissed with prejudice and without costs;

(iv)     directs that the Physical Plaintiffs and the Physical Class have a judgment against Defendant Welsh only in the amount of seven million ($7,000,000) on and solely on the Eleventh Claim (Common Law Negligence) of the Complaint subject to the limitations on enforcement set forth in fn. 1 of the proposed Final Judgment;

(v)     sets forth the Release and Covenant Not to Sue contained in Sections 6(a) and 6(b) and enjoins pursuit of any claim covered by the release;

(vi)     sets forth the Protection Against Contribution contained in Section 17 and enjoins pursuit of any claim covered by the release;

(vii)    determines pursuant to Fed. R. Civ. P. 54(b) that there is no just reason for delay and directing that the judgment of dismissal shall be final and appealable;

(viii)   reserves continuing and exclusive jurisdiction over the Settlement and this Settlement Agreement, including the administration and consummation of this Settlement;

(ix)     fully, finally and forever discharges Physical Plaintiffs and Physical Lead Counsel from all claims by the Released Parties relating to, arising from, or connected with the institution, prosecution, or assertion of the Physical Action, except for claims relating to the enforcement of the Settlement Agreement which are expressly reserved;

(x)      approves a record of Opt Outs, which Physical Lead Counsel shall have filed with the Court and provided to counsel for the Settling Defendants in advance of the Fairness Hearing; and

(xi)     provides for a deadline for Lead Physical Counsel to file a report on the progress in the distribution to members of the of the Physical Class of the Net Settlement Fund.

**9.    Plan of Allocation**

(a)      Physical Lead Counsel shall be responsible for establishing a Plan of Allocation. Physical Lead Counsel's proposed Plan of Allocation is attached hereto as A-6.  The Plan of Allocation may be modified by the Court.

(b)      The Net Settlement Fund shall be distributed per the terms of this Settlement Agreement and the Plan of Allocation or per such other modified or other terms that the Court

may, as permitted by this Settlement Agreement, direct, in the Final Judgment or other order of the Court.  The Settling Defendants shall have no responsibility for implementing the Plan of Allocation and the approval, disapproval, or modification of any proposed plan of allocation shall not affect the preliminary or final approval of the Settlement or enforceability of this Settlement Agreement.

### 10.    Process for Submitting and Reviewing Proofs of Claim

(a)    The Net Artificiality Paid and the Net Losses of each Physical Class member shall be the determined as set forth in the Plan of Allocation.

(b)    A condition of receiving payment from the Net Settlement Fund shall be that a Person within the definition of the Physical Class must execute a Proof of Claim form and provide adequate supporting documentation to ensure the integrity of the Physical Class member's claim, and submit such form to the Settlement Administrator by the Claims Bar Date and in substantial conformity with the procedures established by the Scheduling Order.  At a minimum, adequate documentation shall include documents establishing:  (i) the date of each purchase, sale or other disposition of Platinum and/or Palladium Bullion during the Class Period; (ii) at what price(s) such Platinum and/or Palladium Bullion was acquired and/or sold; (iii) the names of any and all broker(s) used; (iv) a statement and description of whether Platinum and/or Palladium Bullion was acquired as a hedge to exposures that relate to platinum or palladium during the Class Period, including but not limited to platinum and/or palladium futures contracts, swap contracts, and forward contracts; and (v) whether such Physical Class member was a

swaps-dealer (as defined in the Proof of Claim).  The Parties may object to any particular proof of claim as more fully set forth below in Section (d).

(c)     Physical Class members may also be required to execute a waiver and request to any broker(s) or other intermediaries to verify their account information and trading records prior to receiving a payment from the Net Settlement Fund.  The Settlement Administrator shall determine whether or not it is necessary to request such account information with respect to specific proofs of claim submissions.

(d)     The Settlement Administrator shall promptly forward all submitted Proofs of Claim and accompanying documentation to Physical Lead Counsel and counsel for the Settling Defendants, as and when they are received.  The Settlement Administrator shall notify any Physical Class member of any deficiencies in the Proof of Claim or supporting documentation, and provide a reasonable time to correct same.  When practicable, the Settlement Administrator shall also forward its determination as to the validity of the Proof of Claim and the amount, if any, of Net Artificiality Paid and/or Net Losses it establishes. On notice to the other Parties, any Party shall have ten (10) business days to provide comments or objections respecting any such Proofs of Claim, request further information or explanation from the Settlement Administrator, and/or request that the Settlement Administrator seek additional information or materials from the Person submitting the Proof of Claim. After the Settlement Administrator's final response(s) to such requests for information, the Parties will have twenty (20) business days to object to the Settlement Administrator's determination with respect to the documentation and information provided in connection with any particular Proof of Claim.  Any remaining disputes as and

between Physical Lead Counsel and counsel for the Settling Defendants concerning the Settlement Administrator's determination(s) will be submitted to the Mediator for binding resolution; however, any member of the Physical Class may object to the Settlement Administrator's and/or the Mediator's determinations before the Court.

(e)     There is no guaranty that the Settlement Administrator will determine each and every Proof of Claim to be valid, or establish Net Artificiality Paid or Net Losses in the amount claimed by the Person submitting it.  A Class Member whose claim is determined to be invalid or result in no Net Artificiality Paid or Net Losses or a different amount of Net Artificiality Paid or Net Losses than that claimed shall have no recourse against any Parties or any counsel but may solely object to such determination before the Court.

### 11.     Procedures For Requesting Exclusion

(a)     In order to be excluded from the Physical Class and be deemed an Opt-Out, a Person within the definition of the Physical Class must execute a Request for Exclusion form, and submit such form to the Settlement Administrator by the Exclusion Bar Date in substantial conformity with the requirements established by the Scheduling Order.  The Person shall submit information establishing:  (i) the date of acquisition of Platinum and/or Palladium Bullion during the Class Period; (ii) when and at what price such Platinum and/or Palladium Bullion was acquired or sold; (iii) any and all broker(s) used; and (iv) a statement and description of whether such Platinum and/or Palladium Bullion was acquired as a hedge to exposures that relate to platinum or palladium during the Class Period.

(b)    Any Person who has submitted a timely and valid Request for Exclusion may revoke such request by filing written notice of such revocation with the Court at any time prior to entry of the Final Judgment.

(c)    Any request to be excluded from the Physical Class must be made in writing and received by the Settlement Administrator no later than the Exclusion Bar Date.  Any such request for exclusion must contain the information identified in Section 11(a).

(d)    The Settlement Administrator shall provide counsel for Moore Capital Management LLP and Physical Lead Counsel with copies of any requests for exclusion and any written revocations of requests for exclusion as soon as possible after receipt by the Settlement Administrator and, in any event, within three (3) business days after receipt by the Settlement Administrator and, in no event, later than ten business days before the Fairness Hearing (as defined in the Scheduling Order).

## 12.    Potential Reversion

(a)    The Net Artificiality Paid and the Net Losses of each Physical Class member shall be determined as set forth in the Plan of Allocation; *i.e.* including a 10% premium for interest less any applicable reduction.

(b)    The Moore Defendants may be entitled to reversion from the Net Settlement Fund as a return of some or all of the settlement consideration paid by the Moore Defendants, as set forth in Section 3(a) above, but only to the extent set forth in sub-paragraphs (i) and (ii) below:

(i)    In the event that the Net Settlement Fund allocated to pay claims for Net Artificiality Paid exceeds 100% of Net Artificiality Paid by all Claiming Physical Class

Members, as finally determined by the Settlement Administrator and/or the Mediator, the Moore Defendants shall be entitled to the amount by which the Net Settlement Fund allocated to pay claims for Net Artificiality Paid exceeds 100% of Net Artificiality Paid.

(ii)     In the event that the Net Settlement Fund allocated to pay claims for Net Losses exceeds 100% of Net Losses by all Claiming Physical Class Members, as finally determined by the Settlement Administrator and/or the Mediator, then the Moore Defendants shall be entitled to a reversion of the amount that the Net Settlement Fund allocated to pay claims for Net Losses exceeds 100% of Net Losses.

(c)     Once the Settlement Administrator has completed a review of all Proofs of Claim and the information supplied in response to deficiency notices, the time for further comment or objection thereto has expired, and the Mediator has resolved any disputes respecting individual Proofs of Claim submitted to him, which may be after the Final Judgment has been issued, the Settlement Administrator will provide Physical Lead Counsel and Settling Defendants with (1) the dollar value of 100% of the Net Artificiality Paid of Claiming Physical Class Members, (2) the dollar value of 100% of the Net Losses of Claiming Physical Class Members, and (3) the difference between the amounts in (1) and (2) respectively and the estimated 90% and 10% of the Net Settlement Fund allocated to pay each type of claim. The Parties will have ten (10) business days after receipt of the above-described information from the Settlement Administrator to request additional information or explanation from the Settlement Administrator respecting the aggregate calculations. Within ten (10) business days after the last of the Settlement Administrator's responses to such requests for information, the Parties will have ten (10)

business days to object to the Settlement Administrator's information or calculations. Any disputes will be submitted to the Mediator for binding resolution.

(d)     Subject to Court approval, the Settlement Administrator shall disburse any reversion due to the Moore Defendants pursuant to this Section 12 at the same time as it disburses any funds to Claiming Physical Class Members.

(e)     The Parties agree that any disputes relating to any of the Moore Defendants' reversion rights shall be determined by the Mediator, whose determinations shall be binding for such issues.

### 13.     Best Efforts to Effectuate This Settlement

(a)     The Parties agree to recommend approval of this Settlement Agreement by the Court. They agree to undertake their best efforts, including all steps and efforts contemplated by this Settlement Agreement and any other steps and efforts that may reasonably be necessary and/or appropriate to obtain Court approval of this Settlement and to carry out the terms of this Settlement Agreement, provided that this will not limit any express rights to withdraw from this Settlement Agreement that the Parties may have, or to object to the amount or reasonableness of any fees and expenses.

(b)     The Parties agree that the Court's authority includes, but is not limited to, awarding monetary and/or injunctive relief and discretion to impose specific performance, sanctions or penalties including imposition of any sanction up to and including contempt of court, pursuant to 28 U.S.C. § 636(e). The Parties agree that the terms of this Settlement Agreement satisfy the requirements for injunctive relief and specific performance.

(c)      In the event that any Party to this Settlement Agreement finds it necessary to bring an action or proceeding against another Party to this Settlement Agreement as a result of a breach or default hereunder or to enforce the terms and conditions hereof, the prevailing party in such action or proceedings shall be paid all its reasonable attorneys' fees and costs and necessary disbursements incurred in connection with such action.

### 14.      Finality, Effective Date

(a)      Unless terminated earlier as provided in Section 16, this Settlement Agreement shall become final upon the occurrence of all of the following three events:

(i)      approval in all respects by the Court as required by Federal Rule of Civil Procedure 23(e);

(ii)      entry by the Court of the Final Judgment substantially in the form of Exhibit A-5 hereto, including, without limitation, the incorporation of the release and covenant not to sue contained in Section 6(a) and 6(b) hereof; and

(iii)      expiration of the time for appeal or the time to seek permission to appeal from the Court's entry of the Final Judgment or, if appealed, either (i) the Final Judgment has been affirmed in its entirety by the court of last resort to which such appeal has been taken and such affirmance has become no longer subject to further appeal or review, or (ii) withdrawal or dismissal with prejudice of all such appeals.

### 15.      Confidentiality Protection

(a)      All documents, materials, and information produced during the discovery process in the Physical Action, either before, during or after the date of this Settlement Agreement, may be used by the Physical Plaintiffs on behalf of the Physical Class and Physical

35

Lead Counsel solely in pursuit of their claims in the Physical Action or any bankruptcy or other proceeding against MF Global, Inc., other Non-Settling Defendants, or against the Relevant Insurers in any action, bankruptcy proceeding or enforcement proceedings against or relating to the Relevant Insurers or the Policy and/or related excess policies. Such use shall be governed by all confidentiality and/or protective orders in force as of the date of this Settlement Agreement and by such additional confidentiality and/or protective orders as may be in effect on the date the discovery takes place.

(b)     The existence and terms and conditions of this Settlement Agreement are and shall remain confidential until the Physical Plaintiffs file the motion for the Scheduling Order as described in Section 7 hereof; provided, however, that this paragraph shall not prevent Settling Defendants or their corporate parents, subsidiaries, or affiliates from disclosing such information, prior to that date, to regulators, government agencies, rating agencies, independent accountants, actuaries, auditors, advisors, financial analysts, members, shareholders, insurers, attorneys, employers, or in any other manner required by law or regulation, nor shall it prevent the Parties or their counsel from disclosing such information to Persons (such as experts, courts, co-counsel, or the Settlement Administrator) to whom the Parties agree disclosure must be made in order to effectuate the terms and conditions of this Settlement Agreement; nor shall it prevent any of the Parties from disclosing the existence and terms of the Settlement Agreement to the Court in connection with any of the proceedings in the Physical Action, including, without limitation, in the filings made seeking preliminary approval of the Settlement or in status reports or in response to requests for information by the Court.

(c)     Within sixty (60) days after the final termination of the Action, (or the actions against the Relevant Insurers) as well as any appeals and settlement administration, as to all defendants (*i.e.*, Settling Defendants and Non-Settling Defendants), Physical Plaintiffs and Physical Lead Counsel agree to return to the Settling Defendants all materials (and all copies of materials, kept in any format) designated as confidential, restricted confidential, or Rule 408 material provided or produced to the Physical Plaintiffs in the course of the Physical Action, or, in the alternative, to destroy all such confidential materials (and all copies of materials, kept in any format) and provide Settling Defendants with written confirmation that all such confidential materials and all copies thereof have been destroyed.  Nothing in this provision requires Physical Lead Counsel to destroy or turn over its attorney work-product.

(d)     Neither the existence, fact of or contents of (a) this Settlement Agreement, (b) the Final Judgment, and/or (c) any papers, pleadings and transcripts submitted or generated by any of the Parties in connection with the approval of this Settlement may be admitted into evidence or utilized in any way in the Physical Action, or in any other action or proceeding, including any action brought by an Opt-Out (or any plaintiff alleging the same or similar facts and claims or any action brought by a regulator), except as may be required to (a) approve or enforce this Settlement Agreement, (b) to bring, prosecute or collect on the claims against the Relevant Insurers, or (c) to defend or enjoin any such other litigation or proceeding.

### 16.     Termination

(a)     **Settling Defendants' Right To Terminate**. The Settling Defendants shall have the right, but not the obligation, in their sole discretion, to terminate this Settlement Agreement

by providing written notice by email to Physical Lead Counsel of its election to do so within twenty-one (21) days of any of the following events, provided that any such termination shall be dependent upon the realization of the condition subsequent that the Physical Plaintiffs' claims shall not be dismissed pursuant to this Settlement Agreement or, if they have been dismissed, that the Physical Plaintiffs' claims dismissed pursuant to this Settlement Agreement are reinstated such that the Parties are returned to their respective positions before the Settlement Agreement was signed. Such events of termination are as follows:

(i)     the Court declines to enter the Scheduling Order in substantially the form attached as Exhibit A-4;

(ii)    the Court declines to enter the Final Judgment in substantially the form attached as Exhibit A-5;

(iii)   the Final Judgment is withdrawn, rescinded, reversed, vacated, or modified by the Court or on appeal;

(b)     Moore Capital Management, LP shall have the right, but not the obligation, in its sole discretion, to terminate this Settlement Agreement pursuant to the terms and conditions of the Supplemental Agreement.

(c)     If the Physical Plaintiffs' claims are dismissed pursuant to this Settlement Agreement and not reinstated, then any termination by the Settling Defendants shall be null and void.

(d)     **Physical Plaintiffs' Right To Terminate**. In the event that the Settling Defendants, for any reason, fail to provide any of the Settlement consideration as set forth in

38

Section 3(a), the Physical Plaintiffs shall have the right, but not the obligation, in their sole discretion, to terminate this Settlement Agreement by Physical Lead Counsel providing written notice by email to the Settling Defendants of their election to do so within twenty-one (21) days or to sue to enforce under Section 13, including reasonable attorneys' fees, costs and necessary disbursements incurred in connection with such action. Notwithstanding the foregoing, the Physical Plaintiffs shall not have the right to terminate the Settlement in the event that, for any reason whatsoever, they ultimately are unable collect any consideration from any Relevant Insurer.

(e)     Any termination under this Section 16(d) will become effective immediately upon written notice by Physical Plaintiffs to Settling Defendants.

(f)     In the event that this Settlement Agreement is terminated pursuant to any of the sub-Sections above, then: (i) the Settlement Fund, minus any funds expended or incurred for Class Notice or settlement administration referenced in Section 5 above or approved by the Court and any costs and/or expenses required to notify the Physical Class of such termination, shall be returned to the Settling Defendants in accordance with their respective settlement payments, if any, together with the interest earned thereon (less any portion of such interest properly reserved for the payment of Taxes); (ii) this Settlement Agreement and the Final Judgment shall be null and void and of no further effect, and no Party shall be bound by any of their terms, except that in addition to this Section, Sections 18 and 26 shall survive; (iii) the Physical Plaintiffs' claims shall not be dismissed pursuant to this Settlement Agreement or, if they have been dismissed pursuant to this Settlement Agreement, shall be reinstated such that the Parties are returned to

39

their respective positions before the Settlement Agreement was signed, and all releases and covenants not to sue shall be of no further force and effect; (iv) all the Settling Defendants' rights to defend shall be reinstated; and (v) the Parties are returned to the *status quo ante* and the Parties shall jointly request that the Court modify any existing scheduling order to ensure that the Parties will have sufficient time to prepare for the resumption of litigation.

### 17.    Protection Against Contribution

(a)    The Final Judgment shall include a provision barring claims for contribution or indemnification (however denominated) to recover all or a portion of any amounts a Released Party, Non-Settling Defendant, or Relevant Insurer has paid or may in the future pay to, or for the benefit of, the Physical Class by way of settlement, or judgment, or otherwise in any action respecting the Final Judgment, the Physical Action, or any other action or proceeding asserting similar claims (i) by any Non-Settling Defendant, their insurers, and/or anyone claiming to be subrogated to such Non-Settling Defendant's rights against any of the Released Parties; (ii) by any of the Released Parties against any of the Non-Settling Defendants; (iii) by any of the Moore Defendants against Welsh; and (iv) by Welsh, the Relevant Insurers, and/or anyone claiming to be subrogated to Welsh's rights, against any of the Moore Defendants.

(b)    In the event that a judgment is obtained against one or more of the Non-Settling Defendants by any or all the members of the Physical Class, such a judgment shall be reduced by the greater of (i) the total amount of the Settlement Fund that Physical Plaintiffs have recovered at the time of that judgment or (ii) the proportionate share of the liability of the Settling Defendants at the time a damages judgment is entered.  Nothing herein shall preclude (i) the

Physical Plaintiffs from asserting that any damages against which an offset must be credited must be determined in accordance with applicable law or (ii) the Non-Settling Defendants from asserting that the judgment against which the credit shall be applied must reflect actual damages demonstrated by each of the members of the Physical Class, and all such arguments are fully preserved by and in favor of the Physical Plaintiffs and Non-Settling Defendants.

### 18.    This Settlement is Not an Admission

This Settlement Agreement, including but not limited to its exhibits, whether or not it shall become final, and any and all negotiations, documents and discussions associated with it is not and shall not be deemed or construed to be an admission, adjudication, or evidence of any violation of any statute or law or of any liability or wrongdoing by the Settling Defendants or any Released Party or of the truth of any of the claims or allegations alleged in the Physical Action or the incurrence of any damage, loss or injury by any Person. In the event that the Settlement does not become final or is terminated in accordance with the terms hereof, then this Settlement Agreement, including its exhibits, and any and all negotiations, documents and discussions associated with it and the releases set forth herein, shall be without prejudice to the rights of any Party and shall be of no force or effect and shall not be offered or received in evidence in any proceeding. Further, this Settlement Agreement and the Final Judgment are not and shall not be deemed or construed to be an admission, adjudication or evidence of any lack of merit of any of the claims asserted in the Physical Action. The Parties hereto agree that this Settlement Agreement, including its exhibits and the Final Judgment, whether or not it shall become final, and any and all negotiations, documents and discussions associated with it (a) shall

41

not be deemed or construed to be an admission or evidence of any violation of any statute or law or of any liability or wrongdoing by Settling Defendants or any Released Party, or of the truth of any of the claims or allegations, or the incurrence of any damage, loss or injury by any Person, or of any lack of merit of any of the claims asserted in the Physical Action, and (b) shall not be discoverable or used directly or indirectly, in any way, whether in the Physical Action or in any other action or proceeding of any nature, whether by the Physical Class or Opt Outs, except if warranted by existing law in connection with a dispute under this Settlement Agreement or an action in which this Settlement Agreement is asserted as a defense. Notwithstanding any other provision in this Settlement Agreement, nothing herein shall be construed to modify the judgment on the common law negligence claim into anything other than a liability judgment. Any denial of liability by Welsh shall not apply to the common law negligence claim to the extent of Welsh's personal assets that have been assigned to Physical Plaintiffs in Section 3(b)(ii), and the Physical Plaintiffs have the full enforcement rights on such liability judgment provided in footnote one (fn. 1) of paragraph 15 of the Final Judgment.  Settling Defendants and Physical Plaintiffs expressly reserve all of their rights if the Settlement does not become final in accordance with the terms of this Settlement Agreement.

**19.     Binding Effect**

(a)      This Settlement Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the Settling Defendants, the Released Parties, the Physical Plaintiffs and the Physical Class.

    (b)    The waiver by one Party of any breach of this Settlement Agreement by another Party shall not be deemed a waiver of any other prior or subsequent breach of this Settlement Agreement.

### 20.   Integrated Agreement

This Settlement Agreement, including its exhibits and the Supplemental Agreement, contains an entire, complete, and integrated statement of each and every term and provision agreed to by and among the Parties and is not subject to any condition not provided for herein. This Settlement Agreement supersedes all prior or contemporaneous discussions, agreements, and understandings among the Parties to this Settlement Agreement with respect hereto. This Settlement Agreement shall not be modified in any respect except by a writing that is executed by all the Parties hereto.

### 21.   Documents

Nothing in this Settlement Agreement may be interpreted as creating or extinguishing any obligation for Defendants to retain any records or documents, in any form.

### 22.   Headings

The headings used in this Settlement Agreement are for the convenience of the Parties only and shall not have substantive effect.

### 23.   Neither Party is the Drafter

None of the Parties hereto shall be considered to be the drafter of this Settlement Agreement or any provision hereof for the purpose of any statute, case law or rule of interpretation or construction that might cause any provision to be construed against the drafter hereof.

### 24.    Choice of Law

All terms of this Settlement Agreement and the exhibits hereto shall be governed by and interpreted according to the substantive laws of the State of New York without regard to its choice of law or conflict of laws principles.

### 25.    Execution in Counterparts

This Settlement Agreement may be executed in counterparts. Facsimile and scanned/PDF signatures shall be considered as valid signatures.  Until fully signed counterparts have been exchanged and delivered on behalf of all Parties, there shall be no agreement.

### 26.    Submission to and Retention of Exclusive Jurisdiction

The Parties and Physical Class hereby irrevocably submit, to the fullest extent permitted by law, to the exclusive jurisdiction of the United States District Court for the Southern District of New York for any suit, action, proceeding, or dispute arising out of or relating to this Settlement Agreement, or to the applicability of this Settlement Agreement, and exhibits hereto. Solely for purposes of such suit, action, or proceeding, to the fullest extent permitted by law, the Parties hereto irrevocably waive and agree not to assert, by way of motion, as a defense or otherwise, any claim or objection that they are not subject to the jurisdiction of such Court, or that such Court is, in any way, an improper venue or an inconvenient forum or that the Court lacked power to approve this Settlement Agreement or enter any of the orders contemplated hereby.   Notwithstanding any other provision in this Settlement, if, for any reason, the enforcement of paragraph 15 of the Final Judgment and obtaining complete relief thereunder against the Relevant Insurers may not be accomplished in the United States District Court for the

Southern District of New York, then the Physical Plaintiffs and the Physical Class may bring suit against such insurer(s) in other jurisdictions.

### 27.   Notices

All notices under this Settlement Agreement shall be sent to each of the undersigned counsel or such other address as a party to this Settlement Agreement may designate in writing, from time to time, in accordance with this Settlement Agreement.

### 28.   Execution by Counsel

Each counsel executing this Settlement Agreement on behalf of any Party hereto hereby warrants that counsel has full authority to do so.

### 29.   Timing

If any deadline imposed herein falls on a non-business day, then the deadline is extended until the next business day.

### 30.   Good Faith

No Physical Plaintiff, Physical Class member, or Settling Defendant shall assert in any forum that the Physical Action was brought by the Physical Plaintiffs and Physical Class Counsel or defended by Settling Defendants and Settling Defendants' Class Counsel in bad faith, nor shall any of them assert any claim of any violation of Fed. R. Civ. P. 11 relating to the prosecution, defense, or settlement of the Physical Action.

*[Signatures follow on next page]*

Dated: March 21, 2014

By: _____
John Lowther
john@doylelowther.com
**DOYLE LOWTHER LLP**
10200 Willow Creek Road, Suite 150
San Diego, California 92131
Telephone:     (858) 935-9960
Facsimile:       (858) 939-1939

*Counsel for Physical Plaintiffs & Physical Class*

By: _____
David Zensky
dzensky@akingump.com
**AKIN GUMP STRAUSS HAUER & FELD**
One Bryant Park
New York, New York 10036
Telephone:     (212) 872-1000
Facsimile:       (212) 872-1002

*Counsel for Defendants Moore Capital Management, LP;*
*Moore Capital Management, LLC;*
*Moore Capital Advisors, LLC;*
*Moore Advisors, Ltd.;*
*Moore Macro Fund, LP; and*
*Moore Global Fixed Income Master Fund, LP*
*Louis M. Bacon*

By: _____
Kerri Ann Law
klaw@kramerlevin.com
**KRAMER LEVIN NAFTALIS & FRANKEL, LLP**
1177 Avenue of the Americas
New York, New York 10036
Telephone:     (212) 715-9128
Facsimile:       (212) 715-8000

Dated: March 21, 2014


By: _____
John Lowther
john@doylelowther.com
**DOYLE LOWTHER LLP**
10200 Willow Creek Road, Suite 150
San Diego, California 92131
Telephone:     (858) 935-9960
Facsimile:      (858) 939-1939

*Counsel for Physical Plaintiffs & Physical Class*


By: _____
David Zensky
dzensky@akingump.com
**AKIN GUMP STRAUSS HAUER & FELD**
One Bryant Park
New York, New York 10036
Telephone:     (212) 872-1000
Facsimile:      (212) 872-1002

*Counsel for Defendants Moore Capital Management, LP;*
*Moore Capital Management, LLC;*
*Moore Capital Advisors, LLC;*
*Moore Advisors, Ltd.;*
*Moore Macro Fund, LP; and*
*Moore Global Fixed Income Master Fund, LP*
*Louis M. Bacon*

By: _____
Kerri Ann Law
klaw@kramerlevin.com
**KRAMER LEVIN NAFTALIS & FRANKEL, LLP**
1177 Avenue of the Americas
New York, New York 10036
Telephone:     (212) 715-9128
Facsimile:      (212) 715-8000

46

*Counsel for Defendant Christopher Pia*

By: _____
Marc Weinstein
weinstei@hugheshubbard.com
**HUGHES HUBBARD & REED LLP**
One Battery Park Plaza
New York, New York 10004
Telephone:      (212) 837-6000
Facsimile:      (212) 299-6460

*Counsel for Defendant Eugene Burger*

By: _____
Andrew Lourie
andrew.lourie@kobrekim.com
**KOBRE & KIM, LLP**
1919 M Street, N.W., Suite 410
Washington, D.C. 20036
Telephone:      (202) 664-1900
Facsimile:      (202) 664-1927

*Counsel for Defendant Joseph Welsh*

47

*Counsel for Defendant Christopher Pia*

By: _____

Marc Weinstein
weinstei@hugheshubbard.com
**HUGHES HUBBARD & REED LLP**
One Battery Park Plaza
New York, New York 10004
Telephone:     (212) 837-6000
Facsimile:      (212) 299-6460

*Counsel for Defendant Eugene Burger*

By: _____

Andrew Lourie
andrew.lourie@kobrekim.com
**KOBRE & KIM, LLP**
1919 M Street, N.W., Suite 410
Washington, D.C. 20036
Telephone:     (202) 664-1900
Facsimile:      (202) 664-1927

*Counsel for Defendant Joseph Welsh*

47