BERGER & MONTAGUE, P.C.
Merrill G. Davidoff
Michael Dell'Angelo
1622 Locust Street
Philadelphia, Pennsylvania 19103
Telephone: (215) 875-3000
Facsimile: (215) 875-4604

ENTWISTLE & CAPPUCCI LLP
Andrew J. Entwistle
Joshua K. Porter
280 Park Avenue, 26th Floor West
New York, New York 10017
Telephone:  (212) 894-7200
Facsimile:  (212) 894-7272

*Co-Lead Counsel for the Lead Plaintiffs
in the MF Global Inc. Customer Class Action*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| *In Re: Platinum And Palladium Commodities Litigation* | MASTER FILE<br><br>No. 10 Civ. 3617 (WHP) |
| THIS DOCUMENT RELATES TO:<br><br>Platinum/Palladium Futures and Physical Actions | |

**MOTION TO INTERVENE AND LIMITED OBJECTION OF THE LEAD PLAINTIFFS IN THE MF GLOBAL INC. COMMODITY CUSTOMER CLASS ACTION TO THE PROPOSED SETTLEMENTS IN THE FUTURES AND PHYSICAL ACTIONS**

**TABLE OF CONTENTS**

Page(s)

INTRODUCTION ............................................................................................................................ 1

BACKGROUND ............................................................................................................................. 4

    A.    The MFGI Customer Class Action and the Shortfall................................................4

    B.    The SIPA Proceeding and Welsh's Release of Claims to Coverage Under MF Global's Errors and Omissions Policies............................................................6

    C.    The Futures and Physical Settlements Contain Assignments of Claims Against Policies to Which Defendant Welsh Has No Rights .................................8

ARGUMENT.................................................................................................................................. 10

    A.    The Customer Representatives May Intervene as a Matter of Right Pursuant to Rule 24(a)(2).......................................................................................10

    B.    The Customer Representatives May Also Be Granted Permissive Intervention Pursuant to Rule 24(b).......................................................................12

    C.    The Customer Representatives Object to the Invalid Assignment of the 2011 Policies to Which Defendant Welsh Has No Rights.....................................14

CONCLUSION............................................................................................................................... 15

# **TABLE OF AUTHORITIES**

**Cases**

*Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Americas*,
   262 F.R.D. 348 (S.D.N.Y. 2009) ............................................................................................... 11

*D'Amato v. Deutsche Bank*,
   236 F.3d 78 (2d Cir. 2001) ......................................................................................................... 11

*In re Ambac Financial Group, Inc., Derivative Litigation*,
   257 F.R.D. 390 (S.D.N.Y. 2009) ............................................................................................... 11

*International Design Concepts LLC v. Saks Inc.*,
   486 F. Supp. 2d 229 (S.D.N.Y. 2007) ....................................................................................... 13

*Louis Berger Grp., Inc. v. State Bank of India*,
   802 F. Supp. 2d 482 (S.D.N.Y. 2011) ....................................................................................... 12

*MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n Inc.*,
   471 F.3d 377 (2d Cir. 2006) ....................................................................................................... 10

*PricewaterhouseCoopers LLP v. Giddens (In re MF Global, Inc.)*,
   No. 13 Civ. 8893 (VM) (S.D.N.Y. Feb. 20, 2014) ..................................................................... 5

*Trbovich v. United Mine Workers of Am.*,
   404 U.S. 528 (1972) .................................................................................................................. 11

*U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.*,
   No. 09 Civ. 9476, 2013 WL 837565 (S.D.N.Y. Mar. 6, 2013) ........................................... 11, 13

*Windsor v. United States*,
   797 F. Supp. 2d 320 (S.D.N.Y. 2011) ....................................................................................... 10

**Rules**

17 C.F.R. § 190.08(a) (1) (ii) (J) ........................................................................................... 6, 11, 14

Fed. R. Civ. P. 24 .............................................................................................................................. 1, 10

Fed. R. Civ. P. 24(a) ............................................................................................................................. 11

Fed. R. Civ. P. 24(a)(2) ................................................................................................................... 10, 13

Fed. R. Civ. P. 24(b) ............................................................................................................... 10, 12, 13

Fed. R. Civ. P. 24(b)(1)(B) .................................................................................................................. 12

Fed. R. Civ. P. 24(b)(2) ........................................................................................................................ 13

The court-appointed lead plaintiffs (the "Customer Representatives")[1] in the consolidated class action against certain former officers, directors and employees of MF Global Inc. ("MFGI") and its parent MF Global Holdings Ltd. ("Holdings") (together, "MF Global") on behalf of former commodity futures customers of MFGI whose property was misappropriated in the days preceding MF Global's collapse in 2011 (the "MFGI Customer Class Action" or "MCCA")[2] respectfully submit this motion to intervene and limited objection to the proposed settlements in the Platinum/Palladium Futures and Physical Actions (the "Settlements").[3]

## INTRODUCTION

The Customer Representatives move to intervene under Fed. R. Civ. P. 24 and file this limited objection because under the Settlements, Joseph Welsh, a former employee of MFGI, purports to assign to the Futures and Physical Plaintiffs (the "Plaintiffs") his claims to coverage under MF Global insurance policies to which he unequivocally has no right. The Customer Representatives have standing to intervene and object because these same policies will be the primary source of recovery in the MFGI Customer Class Action and, if approved, the assignment contemplated by the Settlements will interfere with their priority claim to the policy proceeds, which are already insufficient to cover the established damages to customers and the MF Global estates. Put another way, Welsh purports to assign something that he does not own to the

---

[1] The Customer Representatives are Augustus International Master Fund L.P., Bearing Fund LP, Kay P. Tee, LLC, Mark Kennedy, Robert Marcin, Thomas G. Moran, Paradigm Global Fund I Ltd., Paradigm Equities Ltd., Paradigm Asia Fund Ltd., PS Energy Group, Inc., Summit Trust Company, Henry Rogers Varner Jr., and Thomas S. Wacker.

[2] The MFGI Customer Class Action, entitled in *Deangelis, et al. v. Jon S. Corzine, et al.*, Case No. 11-Civ-7866 (VM) (S.D.N.Y.) is among the cases arising from the collapse of MF Global that are consolidated before the Hon. Victor Marrero in *In re MF Global Holdings Ltd. Investment Litig.*, MDL No. 12-2338-VM (S.D.N.Y.) (the "MF Global MDL").

[3] Capitalized terms not defined herein shall have the meanings ascribed to them in the Futures Plaintiffs' Memorandum in Support of Motion for Preliminary Approval of Amended Class Action Settlement (ECF No. 162) in the Futures Action or the Plaintiffs' Memorandum Of Law In Support Of Motion For Preliminary Approval Of Amended Class Action Settlement (ECF No. 167) in the Physical Action.

detriment of the class in the MFGI Customer Class Action and to the bankrupt MF Global estates – *the actual policy owners.* In this regard, the Settlements invite costly and wasteful litigation by the Plaintiffs to recover on the policies premised on an invalid assignment.

In exchange for releases in the Futures and Physical Actions requiring no out-of-pocket payment by defendant Welsh, the Settlements require him to stipulate to liability to the Futures and Physical Plaintiffs in amounts of $42.0 and $7.0 million, respectively. The Settlements provide that Plaintiffs can collect on these "liability judgments" only by pursuing proceeds from certain MF Global insurance policies based on Welsh's purported assignment of his coverage under the policies. The Settlements expressly purport to assign defendant Welsh's coverage under a director and officer liability policy issued to MF Global by U.S. Specialty Insurance Company ("Specialty") covering claims made between May 31, 2011 through May 31, 2012 (and related excess policies) (the "2011 D&O Policy"),[4] and also provide for assignment of "any insurance policy" issued by "other companies." The latter general category presumably intends to cover defendant Welsh's purported claims to coverage under an errors and omissions policy issued to MF Global by MFG Assurance Company Limited ("Assurance") covering claims made from May 2011 to May 2012 (and related excess policies) (the "2011 E&O Policy") (together with the 2011 D&O Policy, the "2011 Policies").

The assignments contemplated by the Settlements are invalid for the simple reason that Welsh has no right to the 2011 Policies. *First*, the claims against him in the Futures and Physical Actions fall under policies covering *the previous year*. The 2011 Policies are unequivocally inapplicable to claims or judgments against him in these actions. *Second*, as part of a prior settlement of a coverage dispute with Assurance, defendant Welsh released all his claims to

---

[4] All the MF Global insurance policies at issue are "claims made" policies, meaning they cover claims first made by a third party during the policy period and reported in writing to the insurer.

coverage under any MF Global errors and omissions policy (the "E&O Policies"), including the 2011 E&O Policy.  If the "any insurance policy" issued by "other companies" language in the Settlements intends to include the E&O Policies, the assignment violates the releases given by defendant Welsh.  *Third*, both Specialty and Assurance have disclaimed coverage for the claims against Welsh regardless of policy year.

There is presently a $548.4 million shortfall in customer funds in the MFGI estate, an amount far exceeding the approximately $300-$320 million in remaining coverage under the 2011 Policies.  The proceeds of the policies are property of the MF Global estates and, under applicable Commodity Futures Trading Commission ("CFTC") regulations, such property is applied first to pay any shortfall in customer property before payment of any general creditor claims, including any claims by putative judgment creditors such as Plaintiffs.  Accordingly, the Customer Representatives have priority to the proceeds of the 2011 Policies.

If the Court approves the Settlements as currently drafted the Customer Representatives' interest in the 2011 Policies will be impaired or impacted.  The Plaintiffs will pursue coverage litigation, wasting the time and resources of this Court, Judge Marrero, the Hon. Martin Glenn (who is presiding over the MF Global bankruptcy proceedings and must approve any disposition of estate property), the Customer Representatives, and the MF Global estates.  Accordingly, the Customer Representatives respectfully request that the Court exercise its discretion to permit the Customer Representatives to intervene and that the Court resolve this limited objection by rejecting any assignment of the 2011 Policies.  The Customer Representatives will withdraw this objection if the Plaintiffs consent voluntarily to amend the Settlements expressly to exclude the 2011 Policies from any assignment or other pledge or transfer of rights.

## BACKGROUND

### A. The MFGI Customer Class Action and the Shortfall

On October 31, 2011, Holdings and certain affiliates commenced bankruptcy proceedings (the "Chapter 11 Proceedings").[5] Because MFGI was a broker-dealer and futures commission merchant, for the protection of customers the Hon. Paul A. Engelmayer entered an order commencing proceedings for the liquidation of MFGI pursuant to the Securities Investor Protection Act of 1970 ("SIPA"), 15 U.S.C. §§78aaa et seq. (the "SIPA Proceeding") and appointing James W. Giddens as trustee of MFGI (the "SIPA Trustee").[6]

As a futures commission merchant, MFGI was required under the Commodity Exchange Act (the "CEA") and applicable CFTC regulations to segregate in dedicated accounts those funds belonging to customers who engaged in domestic commodity transactions ("Domestic Funds") and limited the manner in which MFGI could utilize funds deposited by customers who engaged in foreign commodity transactions ("Foreign Funds").[7] Following the collapse of MF Global, the SIPA Trustee's investigation revealed that $900.0 million of Domestic Funds and $700.0 million were unavailable for return to customers, due in part to MF Global and certain officers, directors and employees misappropriating such funds to satisfy MF Global's proprietary obligations in violation of the CEA and applicable CFTC regulations.[8]

On May 21, 2012, Judge Marrero appointed the Customer Representatives as interim lead plaintiffs in the MFGI Customer Class Action.[9] The Customer Representatives filed their

---

[5] *See In re MF Global Holdings Ltd.,* No. 11-15059 (Bankr. S.D.N.Y.).

[6] *See In re MF Global Inc.*, No. 11-ap-2790 (MG) SIPA (Bankr. S.D.N.Y.), ECF No. 1.

[7] *See* 7 U.S.C. § 6d(a)(2); 17 C.F.R. § 30.7.

[8] *See, e.g.,* SIPA Proceeding ECF No. 1865 at 2, 162-63.

[9] *See* MCCA ECF No. 292 at 13.

4

consolidated amended complaint on November 5, 2012 and,[10] in a decision and order dated February 11, 2014, Judge Marrero sustained the Customer Representatives' claims against six former officers, directors or employees of MFGI and Holdings, including former President and CEO Jon Corzine (the "MFGI Customer Class Action Defendants"), for aiding and abetting MFGI's violations of the CEA, aiding and abetting breaches of fiduciary duty, negligence, and tortuous interference with contract.[11] He also sustained claims for conversion and aiding and abetting conversion against Corzine and MFGI's former assistant treasurer.[12] The claims sustained by Judge Marrero all fall under the 2011 policy year for both the 2011 Policies.

On March 14, 2014, Judge Marrero approved a settlement between the Customer Representatives and the SIPA Trustee whereby the SIPA Trustee would advance $560.0 million from general estate assets to close the remaining shortfall and allow customers to receive 100% of their remaining unpaid balances.[13] Judge Glenn established the shortfall was $560 million in findings of fact included in his November 6, 2013 order approving the advance of general estate funds as part of the settlement.[14] In exchange for the advance of general estate funds, the Customer Representatives and customer class assigned their claims against the MFGI Customer Class Action Defendants to the SIPA Trustee for the benefit of MFGI's general estate up to the

---

[10] *See* MCCA ECF No. 382.

[11] *See* MCCA ECF No. 641 at 74.

[12] *See id*. Judge Marrero dismissed the claims against MF Global's former general counsel, MFGI's former CFO, and MF Global's former outside auditor.

[13] *See* MCAA ECF No. 697. The initial $1.6 billion shortfall as of the date of MF Global's collapse was reduced over time, among other things, by the SIPA Trustee's marshalling assets, his settlements with a number of third-parties and MF Global's international affiliates, and a settlement among the SIPA Trustee, the Customer Representatives, and JPMorgan Bank, N.A.

[14] *See* SIPA Proceeding ECF No. 7208. Judge Marrero later affirmed Judge Glenn's order after it was appealed by certain defendants in the MFGI Commodity Customer Class Action. *See PricewaterhouseCoopers LLP v. Giddens (In re MF Global, Inc.)*, No. 13 Civ. 8893 (VM) (S.D.N.Y. Feb. 20, 2014) (the "Advance and Assignment Appeal"), ECF No. 38.

amount of the advance.[15] Pursuant to the assignment, counsel for the Customer Representatives continue to prosecute the claims on behalf of the estate along with the customers' remaining claims for exemplary damages.[16]

Under the applicable CFTC regulation, 17 C.F.R. § 190.08(a) (1) (ii) (J) ("Subsection (J)"), the SIPA Trustee is required to allocate general estate property to cover any shortfall in customer funds at the point where all other sources of recovery are exhausted.[17] To expedite repayments to customers, the SIPA Trustee elected to advance general estate funds before he is required to under Subsection (J) in exchange for assignment of customers' claims, which places him in the shoes of the customers under the assignment and principles of subrogation.[18]

On May 14, 2014, Judge Marrero also approved a settlement between the Customer Representatives and MFGI's former regulator that netted $11.6 million for the class, thereby reducing the current shortfall to $548.4, a number that far exceeds the available insurance proceeds.[19]

The MFGI Customer Class Action is ongoing.

### B. The SIPA Proceeding and Welsh's Release of Claims to Coverage Under MF Global's Errors and Omissions Policies

On March 7, 2012, Holdings, Assurance, certain Customer Representatives and others entered into a consent order in the Chapter 11 Proceedings (the "Consent Order") – approved by Judge Glenn – that permitted Assurance to reimburse defense costs on MF Global's E&O

---

[15] *See* MCCA ECF No. 608-1.

[16] *See id.*

[17] *See* Advance and Assignment Appeal ECF No. 38 at 17-19.

[18] *See* Advance and Assignment Appeal ECF No. 38 at 20-26.

[19] *See* MCCA ECF. No. 696.

Policies covering claims made from May 2009 to May 2010 (the "2009 E&O Policy") and May 2010 to May 2010 (the "2010 E&O Policy"), while preserving objections by former customers including the Customer Representatives to Assurance making any payments on the 2011 E&O Policy on the ground that policy should be preserved to pay claims made arising from the shortfall.[20] The Consent Order's Exhibit B was a list of the claims falling under the 2009 and 2010 E&O Policies upon which Assurance intended to advance defense costs if necessary, including the claims against defendant Welsh in the Futures and Physicals Actions, which both Holdings and Assurance categorized as falling under the 2010 E&O Policy.[21]

On March 22, 2013, Assurance filed a motion to amend the Consent Order to, among other things, allow it to make payments from the 2010 E&O Policy to settle a coverage dispute with defendant Welsh arising from Assurance's disclaimer of coverage.[22] The modified Consent Order contains bargained-for releases in favor of Assurance that, among other things, prohibit Welsh from assigning his right to coverage, if any, under the E&O Policies to any third party and from assisting or facilitating any third party's lawsuit against Assurance or any other insured, including MFGI, and provides Holdings and MFGI complete releases from any claim to indemnity or contribution by defendant Welsh arising from the Futures and Physicals Actions.[23] Specifically, in exchange for certain payments from the 2010 E&O Policy, Welsh agreed, among other things:

---

[20] *See* Chapter 11 Proceedings ECF No. 535. On April 10, 2012, Judge Glenn resolved the objections to the reimbursement of defenses costs related to the collapse of MF Global – including defense costs in the MFGI Customer Class Action and other cases comprising the MF Global MDL – by setting a $30 million "soft cap" on defense costs. *See* Chapter 11 Proceedings ECF No. 619 at 31.

[21] *See* Chapter 11 Proceedings ECF No. 535, Exhibit B.

[22] *See* Chapter 11 Proceedings ECF No. 1227.

[23] *See id.* ¶ 17.

7

    (i)       Not to "assign to any party any rights he might have under the [E&O] Policies in respect of the P&P Claims and any other claims arising out of, resulting from or relating to the events at issue in the P&P Claims;

    (ii)      To "take no action, directly or indirectly, in any way assisting, facilitating, subsidizing or funding the prosecution of any claim currently pending, or that could be brought, in the P&P Claims against MFGA or any person or entity insured under the [E&O] Policies;

    (iii)     To "provide Assurance a full release in respect of the P&P Claims;" and

    (iv)     To "release MFGI and Holdings, and their respective subsidiaries, affiliates, officers and directors, from any claims for contribution and/or indemnity that Welsh might have arising out of the P&P Claims."[24]

Because the proposed modification did not implicate the 2011 E&O Policy covering the claims in the MFGI Customer Class Action, the Customer Representatives consented to the modification of the Consent Order. Judge Glenn approved the modification by order dated April 19, 2013.[25]

During a June 28, 2013 hearing on a stipulation seeking to raise the soft cap on defense costs by $10.0 million, Judge Glenn acknowledged that MF Global's E&O and D&O Policies and the proceeds from them are property of the MF Global estates.[26] Judge Glenn ultimately declined to raise the soft cap at that time.[27]

### C.    The Futures and Physical Settlements Contain Assignments of Claims Against Policies to Which Defendant Welsh Has No Rights

Both Settlements purport specifically to assign defendant Welsh's claims to coverage under the 2011 D&O Policy and to assign generally "any insurance policy" issued by "other companies":

---

[24] *See id.*

[25] *See* Chapter 11 Proceedings ECF No. 1348.

[26] *See* Chapter 11 Proceedings ECF No. 1437.

[27] *See* Chapter 11 Proceedings ECF No. 1649.

8

> Welsh irrevocably assigns, transfers and otherwise conveys to the Futures Plaintiffs and the Futures Class the entirety of Welsh's claims, causes of action, rights, title, interest in, and any other entitlement to any benefits, of any nature whatsoever from, under, or by any reason of, or against the Relevant Insurers, including in respect of **any insurance policy (specifically including a certain Directors & Officers insurance policy (No. 14-MGU-11-A23947) with effective dates of May 31, 2011 through May 31, 2012 (the "Policy")) issued by U.S. Specialty Insurance Company ("U.S. Specialty") and/or other companies** and all related excess policies including, but not limited to, any excess policy underwritten by: XL Specialty; Axis Insurance Co., Ace American Insurance Co., Illinois National, Federal, Ace Westchester Specialty, New Hampshire Insurance, Ironshore Indemnity, Inc., Hartford Accident & Indemnity, St. Paul Mercy, Ironshore/Starr, AWAC, Axis Specialty Ltd., Catlin Ins. Co., Continental Casualty, Federal, Everest National Scottsdale Indemnity, New Hampshire Insurance, U.S. Specialty (together the "Relevant Insurers").

(ECF Nos. 163-1 ¶ 3(b)(ii); 168-1 ¶ 3(b)(ii) (emphasis added)).

The Settlements contemplate that counsel for the Futures and Physical Plaintiffs will attempt to negotiate with the insurers or will sue seeking payment of some or all of the $42.0 million combined stipulation of liability by defendant Welsh:

> Lead Counsel shall commence reasonable good faith efforts to promptly settle with or sue the Relevant Insurers for any sum that … in its reasonable judgment, deem sufficient, or, if they so choose, promptly pursue claims against the Relevant Insurers.

(ECF Nos. 163-1 ¶ 3(b)(v) No. 168-1 ¶ 3(b)(v)).

Significantly, the Futures and Physical Plaintiffs are seeking assignments of coverage under the wrong policy year. The 2011 D&O Policy covers claims made after May 31, 2011, and the claims against defendant Welsh fall under the policies covering May 2010 to May 2011. Moreover, defendant Welsh already released Assurance from any claims against the policies and agreed not to assist or facilitate suit by any third party. Nor is he entitled to any indemnity or

contribution from the MF Global estates.  Finally, both Specialty and Assurance have disclaimed coverage over the claims against defendant Welsh, regardless of policy year.

## ARGUMENT

### A.   The Customer Representatives May Intervene as a Matter of Right Pursuant to Rule 24(a)(2)

Intervention as of right, pursuant to Rule 24(a)(2), is warranted here because the Settlements seek to assign putative interests in the 2011 D&O Policy, and arguably the 2011 E&O Policy, in a manner that "may as a practical matter impair or impede the [Customer Representatives'] ability to protect [their] interest" in such policies.  Fed. R. Civ. P. 24(a)(2).

Rule 24 "provides the mechanism by which non-parties who believe they have a valid and sufficient interest in a litigation can assert their rights."  *MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n Inc.*, 471 F.3d 377, 382 (2d Cir. 2006).  Intervention as of right is granted under the following conditions:

> (1) the motion is timely; (2) the applicant asserts an interest relating to the property or transaction that is the subject of the action; (3) the applicant is so situated that without intervention, disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the applicant's interest is not adequately represented by the other parties.

*Id.* at 389 (citation omitted).

While a failure to satisfy one of the Rule 24(a)(2) conditions will preclude intervention as of right (although permissive intervention pursuant to Rule 24(b) may still apply, *see, e.g.*, Part B *infra*), courts apply the four conditions "in a 'flexible and discretionary' way, considering 'all four factors as a whole rather than focusing narrowly on any one of the criteria.'"  *Windsor v. United States*, 797 F. Supp. 2d 320, 323-24 (S.D.N.Y. 2011) (citations omitted).  A court should also "'accept as true the non-conclusory allegations of the [Rule 24] motion' and must be mindful that 'each intervention case is highly fact specific and tends to resist comparison to prior

cases.'"*Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Americas*, 262 F.R.D. 348, 352 (S.D.N.Y. 2009) (citations omitted).  The Customer Representatives meet all four Rule 24(a) conditions.

The Customer Representatives' instant motion to intervene and objection is timely.  The Futures and Physical Plaintiffs filed their motions for preliminary approval on March 18, 2014 and March 21, 2013, respectively, and the Court has not granted preliminary approval or set a final approval hearing date and objection deadline.[28]  Moreover, the Customer Representatives submit this motion only two weeks after the Physical Plaintiffs filed their preliminary approval papers.[29]

The Customer Representatives have an interest in property that is the subject of the litigation, namely, the 2011 Policies.  "Courts have characterized the 'adequacy of interest' requirement of Rule 24(a) as 'minimal.'"  *U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.*, No. 09 Civ. 9476, 2013 WL 837565, at *8 (S.D.N.Y. Mar. 6, 2013) (citing *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 (1972)).  Both Settlements seek to assign defendant Welsh's purported rights to payment of $42.0 million under the 2011 D&O Policy and perhaps the 2011 E&O Policy, both of which are property of the MF Global estates and to which the customers have priority under Subsection (J).  Defendant Welsh has no right to assign the 2011 Policies or any other such policy, and accordingly the Plaintiffs should have no right to attempt to collect on

---

[28] *Compare with D'Amato v. Deutsche Bank*, 236 F.3d 78, 84 (2d Cir. 2001) (affirming the district court's ruling that a motion was untimely because "[a]ppellant filed his motion to intervene . . . approximately three months following the district court's order that notice be sent to class members, and three days prior to the Fairness Hearing scheduled by the district court").

[29] *See*, *e.g.*, *In re Ambac Financial Group, Inc., Derivative Litigation*, 257 F.R.D. 390, 392 (S.D.N.Y. 2009) ("the Court finds that the motion to intervene is timely: the Proposed Intervenors filed this motion a mere 21 days after Vice Chancellor Lamb stayed their action in the Delaware Court"); Doe v. Karadzic, No. 93 Civ. 0878(PKL), 2000 WL 763851, at*1 (S.D.N.Y. June 13, 2000) ("As the instant motion was filed a mere thirty-one days after the Court decertified the plaintiff class, and since all limitations periods for class members were stayed during the pendency of the putative class action, the motion to intervene could hardly be more timely")

those policies as assignees.

Absent intervention, the Customer Representative's ability to protect their interests will be substantially impaired or impeded. If the Court approves the Settlements with the assignments intact, the Customer Representatives will be forced to move to intervene in any action by the Plaintiff seeking to collect on the 2011 Policies, and will not be able to object to any consensual resolution among the Plaintiffs and insures. The Customer Representatives will, at very least, need to engage in costly and wasteful litigation to challenge any action taken by Plaintiffs based on the invalid assignments.

Finally, the Customer Representative's interests are not adequately represented by the parties here. The Settlements themselves illustrate that this condition is satisfied as they contain invalid assignments of rights to MF Global insurance policies to which the MFGI customers and the MFGI estate have a priority interest. Clearly the interests of defendant Welsh and the Plaintiffs are antagonistic to the Customer Representative's interests with respect to the 2011 Policies.

### B.  The Customer Representatives May Also Be Granted Permissive Intervention Pursuant to Rule 24(b)

The Court may also exercise its discretion to grant the Customer Representatives permissive intervention in this litigation, pursuant to Rule 24(b).

Rule 24(b) provides that a court "may permit anyone to intervene who: … (B) has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). A court "may grant permissive intervention when: (1) an application is timely; and (2) a federal statute confers a conditional right to intervene or (3) an applicant's claim and the main action share a question of law or fact in common." *Louis Berger Grp., Inc. v. State Bank of India*, 802 F. Supp. 2d 482, 488 (S.D.N.Y. 2011) (citation omitted). When considering the last

element regarding a shared common question, "[t]he words claim or defense [in permissive intervention] are not to be read in a technical sense, but only require some interest on the part of the applicant." *Id.* (citation omitted); *see also U.S. Polo Ass'n*, 2013 WL 837565, at *8.

"'A district court has broad discretion in deciding whether to grant permissive intervention,' but must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." *Id.* (citation omitted).

Courts in this district "have held that Rule 24(b)(2) is to be liberally construed in favor of intervention." *U.S. Polo Ass'n*, 2013 WL 837565, at *7 (citing cases). Indeed, a court may skip past an analysis of intervention as of right, pursuant to Rule 24(a)(2), to find that permissive intervention is appropriate. *See id.* (intervention as of right "need not be reached because permissive intervention is warranted under Rule 24(b)"); *International Design Concepts LLC v. Saks Inc.*, 486 F. Supp. 2d 229, 234 (S.D.N.Y. 2007) (finding permissive intervention appropriate, court "need not determine whether intervention as of right under Rule 24(a) is warranted").

While the Customer Representatives demonstrate, at Part A above, that intervention as of right is warranted here, the Court may find in the alternative that permissive intervention is appropriate pursuant to Rule 24(b). As discussed in the preceding part, the Customer Representatives have timely filed their motion to intervene and they share a common question of law and/or fact regarding rights to the MF Global insurances policies.

Nor will intervention work any undue delay or prejudice to the Plaintiffs' or defendant Welsh's rights. To the contrary, intervention will spare the parties undue delay because the Court can resolve the issue concerning defendant Welsh's invalid assignment *before* the parties here, the Customer Representatives and/or any court becomes embroiled in wasteful, needless

13

litigation concerning these assignments. Further, the can be no prejudice to the Plaintiffs or defendant Welsh since they have no rights or interests in the policies to begin with, including specifically the 2011D&O Policy.

### C. The Customer Representatives Object to the Invalid Assignment of the 2011 Policies to Which Defendant Welsh Has No Rights

Defendant Welsh has no right to any coverage or claims against the 2011 Policies. Accordingly, the Customer Representatives object to the Settlements to the extent that they purport to assign interests in these policies. If the Settlements are approved as is, they invite counsel for the Futures and Physical Plaintiffs to file frivolous and wasteful suits seeking payments under the policies. The policies and their proceeds are property of the MF Global estates, and under the principles of Subsection (J) claims arising from the shortfall in customer funds when MFGI collapsed (*i.e.*, the claims the Customer Representatives are pursuing in the MFGI Customer Class Action) have priority over the claims of any general creditors, including purported judgment creditors such as the Futures and Physical Plaintiffs.

Judge Glenn in the SIPA Proceeding Court has recognized that the policies are property of the estate, and those policies should be maintained to satisfy claims relating to the current $548.4 million shortfall. The Customer Representatives are willing to withdraw this limited objection if the Settlements are revised expressly to exclude the 2011 D&O and E&O Policies.

## **CONCLUSION**

For the foregoing reasons, the Customer Representatives respectfully request that the Court grant their request to intervene for the limited purpose of resolving their objection.

Dated:  April 4, 2014                                            Respectfully submitted,

**ENTWISTLE & CAPPUCCI LLP**           **BERGER & MONTAGUE, P.C.**


 /s/ Andrew J. Entwistle                                /s/ Merrill G. Davidoff
Andrew J. Entwistle                                    Merrill G. Davidoff
Joshua K. Porter                                       Michael Dell'Angelo
280 Park Avenue, 26th Floor West                       1622 Locust Street
New York, New York 10017                               Philadelphia, Pennsylvania 19103
Telephone:  (212) 894-7200                             Telephone: (215) 875-3000
Facsimile:  (212) 894-7272                             Facsimile: (215) 875-4604

*Co-Lead Counsel for the Lead Plaintiffs in the MF Global Inc. Customer Class Action*