**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------*x*
*In Re: Platinum And Palladium Commodities*
*Litigation*

                                                    MASTER FILE
                                                    No. 10 Civ. 3617 (WHP)

THIS DOCUMENT RELATES TO:
Platinum/Palladium Futures and Physical
Actions
-----------------------------------------------------------*x*

**FUTURES PLAINTIFFS' MEMORANDUM IN OPPOSITION TO**
**COMMODITY CUSTOMERS' MOTION TO INTERVENE AND**
**LIMITED OBJECTION TO SETTLEMENT AND IN FURTHER SUPPORT OF**
**PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**

**CORRECTED COPY**

## ERRATA

| Page; Line | Correction |
|---|---|
|  |  |
| TOA; ii | Delete "(intervention" after (S.D.N.Y. 1968) |
| 2; 14-15 | Restore footnotes 3 and 4. |
| 2; 15 | Delete "; fns 10 and 11, *infra*." |
| 3; 9 | Insert "of" after "lifting" |
| 4; 3-4 | Correct spelling of "Notwithstanding" and change "now" to "not" |
| 4; 10 | Change "Individual Insureds" to "Insured Persons" |
| 4; fn. 6 | Delete "See fn. 10-11, *infra*;" |
| 5;7 | Change "assorted" to "alleged" and change "others" to "other" |
| 5; fn. 7 | Move citation to *In re MF Global Holdings Inc*. back one sentence and delete last sentence. |
| 10; 10-11 | Delete "(S.D.N.Y. Mar. 28, 2001)" |
| 11; 3-4 | Delete "(S.D.N.Y. Aug. 24, 2003)" |
| 17; 21 | Delete "and" before "which" |
| 18; 13, 16 | Add "is" after "this" and delete quotation mark after "Action." |

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ..........................................................................................2

ARGUMENT ..............................................................................................................8

I.  CUSTOMER REPRESENTATIVES DO NOT HAVE STANDING TO
    OBJECT BECAUSE THEY ARE NOT SETTLING PARTIES TO THE
    ACTION AND FAIL TO ESTABLISH ANY LEGAL PREJUDICE THAT
    WOULD RESULT FROM APPROVAL OF THE AMENDED SETTLEMENT ............8

II.  THE CUSTOMER REPRESENTATIVES IMPROPERLY SEEK ADVISORY
     OPINIONS FROM THIS COURT ..................................................................10

III. CUSTOMER REPRESENTATIVES FAIL TO MEET THE PROCEDURAL
     REQUIREMENTS FOR INTERVENTION UNDER FEDERAL RULE CIV.
     PRO. 24(c) ..............................................................................................10

IV.  CUSTOMER REPRESENTATIVES DO NOT MEET THE CRITERIA FOR
     INTERVENTION AS OF RIGHT UNDER FED.R.CIV.P. 24(a)(2) ..............................11

     A.  Customer Representatives' Motion To Intervene Is Untimely ............................11

     B.  Customer Representatives Fail to Demonstrate a Substantive Direct Interest in
         This Action..........................................................................................13

     C.  Customer Representatives Fail to Demonstrate a Substantive Interest in The
         2011 D&O Policies Subject to the Welsh Assignment—At Best Their
         Interest is Speculative and Contingent.................................................13

     D.  Customer Representatives Have Not Shown That Preliminary or Final
         Approval of the Settlement and Welsh Assignment Will Interfere With,
         Impede or Prejudice Their Efforts to Assert Alleged Rights Under the
         E&O and D&O Policies..........................................................................16

V.  CUSTOMER REPRESENTATIVES FAIL TO MEET THE REQUIREMENTS FOR
    PERMISSIVE INTERVENTION UNDER FEDERAL RULE CIV. PRO. 24(b)(1) OR
    24(b)(3) ..................................................................................................18

CONCLUSION.....................................................................................................20

# TABLE OF AUTHORITIES

## Cases

*Agretti v. ANR Freight Sys., Inc.*,
  982 F.2d 242 (7th Cir. 1992) .......................................................... 9

*Certain Underwriters at Lloyds, London v Four J's Community Living Ctr., Inc.*, CIV.A.,
  H-11-0713, 2011 WL 6026689 (S.D. Tex. Dec. 2, 2011) ....................................... 15

Farmland Dairies v. Commissioner of New York Dep't of Agric.,
  847 F.2d 1038 (2d Cir.1988)........................................................... 11

Gen. Star Indem. Co. v. V.I Port Auth.,
  224 F.R.D. 372 (D.V.I. 2004).......................................................... 16

H.L. Hayden Co. v. Siemens Medical Systs., Inc.,
  797 F.2d 85 (2d Cir.1986)............................................................. 15

*In re GTI Capital Holdings*, LLC,
  409 Fed.Appx. 68 (9th Cir. 2010)...................................................... 10

In re Healthsouth Corp. Ins. Litig.,
  219 F.R.D. 688 (S.D. Ala. 2004) ...................................................... 16

In re MF Global Holdings Ltd.,
  469 B.R. 177 (Bankr. S.D.N.Y. 2012) .................................................. 17

*In re MF Global Holdings, Ltd.*, No. 11-1509 (MG),
  2011 WL 5554390 (Bkrtcy. S.D.N.Y. Nov. 15, 2011) .....................................5

*In re NASDAQ Mkt. Makers Antitrust Litig.*,
  176 F.R.D. 99 (S.D.N.Y. 1997) ......................................................... 8

*Kheel v. American Steamship Owners Mutual Protection and Indemnity Association*,
  45 F.R.D. 281 (S.D.N.Y. 1968) ........................................................ 13

*Kunz v. New York State Commission on Judicial Misconduct*,
  155 Fed Appx. 21 (2d Cir.2005)........................................................ 12

*Liberty Mut. Ins. Co. v. Treesdale, Inc.,*
  419 F.3d 216 (3d Cir. 2005)........................................................... 15

Restor-A-Dent Dental Laboratories, Inc. v. Certified Aloe Prods., Inc.,
  725 F.2d 871 (2d Cir.1984)............................................................ 11

*Taco Bell Corp. v. Continental Cas. Co.,* 01 C,
    0438, 2003 WL 124454 (N.D. Ill. Jan. 13, 2003) .................................................. 12

United States v. State of New York,
    820 F.2d 554 (2d Cir.1987).................................................................................... 11

*Washington Elec. Co-op., Inc. v Massachusetts Mun. Wholesale Elec. Co.,*
    922 F2d 92 (2d Cir 1990)................................................................................ 11, 15

*Zupnick v. Fogel,*
    989 F.2d 93 (2d Cir. 1993)...................................................................................... 8

**Rules**

Fed. R. Civ. P. 24(c) ................................................................................................. 10

Fed. R. Civ. P. 24(b)(1).............................................................................................. 18

Fed. R. Civ. P. 24(b)(3)................................................................................................ 7

Fed. R. Civ. P.23(e) ..................................................................................................... 1

Fed. R. Civ. P. 24(a)(2)............................................................................................. 11

Fed. R. Civ. P. 24(b)(1).............................................................................................. 18

Fed. R. Civ. P. 24(b)(3).............................................................................................. 18

**Other Authorities**

2 Herbert B. Newberg, Newberg on Class Actions § 11.54 (2d ed. 1985)..................................... 8

The Futures Plaintiffs[1] (sometimes "Plaintiffs") respectfully submit this memorandum (a) in response to the Motion to Intervene and Limited Objection To Plaintiffs' Motion for Preliminary Approval of Proposed Settlements in the Futures and Physical Actions ("Limited Objection") filed on April 4, 2014 by the Lead Plaintiffs in the MF Global, Inc. Commodity Customer Class Action (hereinafter the "Customer Representatives"), ECF No. 173;[2] and (b) in further support of their motion, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, for preliminary approval of the Stipulation and Agreement of Settlement executed on March 17, 2014 ("Amended Settlement"), ECF Nos. 162 and 141.

Customer Representatives seek an unnecessary advisory opinion on the issue of coverage and priorities of coverage under insurance policies. But the requested judgment does not rule on such issues. Therefore, the Customer Representatives are not prejudiced by the entry of the proposed judgment in the absence of the additional advisory opinion they seek. The Customer Representatives may contest these issues later in the appropriate forum (*e.g.* wherever enforcement of the judgment occurs). And this Court need not decide these issues at even the final approval stage to enter the judgment, much less the present, preliminary approval stage to send out notice. In sum, Customer Representatives have no standing to assert their objection and may be interposing it in order to slow down and thereby attempt or seek to obtain settlement leverage against the Futures Plaintiffs.

For all the reasons stated herein  and in Futures' Plaintiffs' prior Reply Memorandum (ECF No. 180), the Court should (1) hold that the Customer Representatives have no standing to

---

[1] The "Futures Plaintiffs" are Richard White, Harry Ploss and The Stuart Sugarman Trust.
[2] To the extent that the Customer Representatives raise any arguments in their motion and Limited Objection that also were raised by the SIPA Trustee in his Limited Objection, which Futures Plaintiffs responded to on April 17, 2014 (ECF No.180), Futures Plaintiffs incorporate by reference their responses herein.

object or overrule their Limited Objection in its entirety; or (2) hold that they have not met the standards for intervention either by right or by permission.

## PRELIMINARY STATEMENT

Customer Representatives seek intervention in order to challenge one portion of the Settlement made by Futures and Physical Plaintiffs with individual defendant Joseph Welsh, a former vice president and manager of MF Global ("Welsh"). Welsh has agreed to entry of Judgments against him on the negligence claims in an amount totaling $42 million ($35 million in favor of Futures Plaintiffs and $7 million in favor of Physical Plaintiffs). Welsh does not have the assets to satisfy this Judgment. Welsh has agreed to assign to Plaintiffs all of his rights to recovery under the Directors' and Officer's Liability Policy with U.S. Specialty ("D&O" policy), together with any and all coverage provided by other insurers excess to the D&O policy (collectively the "D&O policies"). It is this assignment that the Customer Representatives challenge.

The D&O policies provide coverage to Individual Insureds.[3] As shown below, they contractually provide priority of payment to Individual Insureds on claims either settled or adjudicated. *See* D&O Policy, Ex. 1-I to Docket No. 163.[4]

---

[3] The definition of "Insured Persons" under the U.S. Specialty Policy, as amended by Endorsement No. 11, is as follows:

> (F) Insured Person means:
> (I) any past, present or future director or officer of the Company, including any person in a position which is the functional equivalent of a director or officer with respect to any entity included within the definition of Company or Outside Entity located outside the United States, and
> (2) any past, present or future employee of the Company, but only with respect to:
>> (a) Securities Claims; or
>> (b) any other Claim during such time that such Claim is made and maintained against at least one other Insured.

The Settlement among Plaintiffs and Welsh was negotiated at arms' length. The Welsh Assignment and Judgment were not opposed by the relevant D&O insurers. [5] Plaintiffs' counsel reviewed the D&O policies before agreeing to accept the Welsh Assignment and Settlement.

---

Customer Representatives cannot dispute that they are not "Insured Persons." They are not current or former directors, officers, employees, or their functional equivalent.

[4] The Specialty D&O policy specifically provides for priority of payment to Insured Persons:

INSURING AGREEMENTS
    (A) The Insurer will pay to or on behalf of the Insured Persons Loss arising from Claims first made during the Policy Period or Discovery Period (if applicable), against the Insured Persons for Wrongful Acts, except when and to the extent that the Company has paid such Loss to or on behalf of the Insured Persons as indemnification or advancement.
    (B) The Insurer will pay to or on behalf of the Company Loss arising from:(I) Claims first made during the Policy Period or the Discovery Period (if applicable) against the Insured Persons for Wrongful Acts, if the Company has paid such Loss to or on behalf of the Insured Persons as indemnification or advancement, and/or (2) Securities Claims first made during the Policy Period or the Discovery Period (if applicable) against the Company for Wrongful Acts.

    Neither Customer Representatives nor the SIPA Trustee to whom they have now assigned their claims in the Customer Action, has priority of payment here. Indeed, there has been no ruling that any payment of Estate Assets to Customers pursuant to Customer Representatives' settlement with the SIPA Trustee, in exchange for the Assignments of their claims in the Customer Action  is "an indemnification or advance" under the Specialty Policy which automatically entitles MF Global and the SIPA Trustee to reimbursement from the carrier. Further, the fact that the SIPA Trustee may have filed a demand /claim letter with U.S. Specialty (which Customer Representatives reference in their motion but do not attach to their filing) does not mean that Customer Representatives have a direct stake in the proceeds or that such payments are owed to the Trustee. Customer Representatives have not proved their claims and do not have a judgment in the Customer Action. Nor does the SIPA Trustee.

[5] Plaintiffs have made clear in the Settlement papers that although they are being subrogated by the Assignment to Welsh's position under the D&O policies, there is no guarantee that they will recover all or any part of the Welsh Judgment. Plaintiffs fully expect that they will need to negotiate and/or litigate with the D&O Carriers to enforce their rights under the Assignment. Plaintiffs further understand that any recovery may be limited by the fact that the D&O policies are wasting policies. Nonetheless, in enforcing the Welsh Judgment and Assignment, Plaintiffs will take the position that Welsh is fully covered as an "Individual Insured" under the D&O policy, and that the claims at issue were made within the 2011 policy period covered by the D&O policy. Customer Representatives dispute that Welsh would be covered by the D&O policies for the claims here, but fail to explain satisfactorily the reasons therefor. Plaintiffs believe that the Court need not decide any of these issues in approving the proposed Settlement.

The SIPA Trustee, to whom Customer Representatives assigned their claims in the Customer Action, also does not challenge the Welsh Assignment.[6] Previously, the issue of priority of insurance coverage for Individual Insureds' defense costs relating to the demise of MF Global arose in the MF Global bankruptcy. This occurred in motions and submissions in the bankruptcy court, as to which MF Global's customers had notice and opportunity to participate, but Plaintiffs in this action did not. At that time, the SIPA Trustee did not agree with Commodities Customers' arguments at that time that policy proceeds "vested in" the Customers and thus could not be applied to pay Individual Insureds' Defense Costs. Nor did the SIPA Trustee oppose the lifting of the automatic bankruptcy stay to allow insurance carriers to reimburse various officers and directors in those unrelated proceedings under both the D&O and E&O policies. Thereby, the SIPA Trustee recognized the priority of payments to Insured Persons under the D&O.

The SIPA Trustee also did not object when the bankruptcy court subsequently lifted the automatic stay to advance legal expenses to Welsh under the E&O policies pursuant to Welsh's settlement with the E&O carrier (MFA Assurance) .[7]  *See id*., ECF Nos. 1817-2, 348. The Welsh

---

[6] Since Customer Representatives have assigned their claims to the Trustee, they arguably have no standing to make this motion.

[7]  The bankruptcy court order lifting the stay to allow for payment of defense costs under the E&O and D&O policies specifically provided "5. Nothing herein shall constitute a finding by the Court that the proceeds of the Policies are or are not property of the debtors' estates, and the Court makes no finding as to the applicability of the automatic stay imposed by 11 U.S.C. § 362(a) to the Policies' proceeds." *Id*., ECF No. 652. Contrary to Customer Representatives, the bankruptcy court did not change its ruling on this issue at the time it was asked to increase the "soft cap" of $30 million for defense costs. Rather, Judge Glenn reserved decision on the matter due to concerns about the wasting nature of the policies and the already enormous legal fees incurred, pending review by the Second Circuit of his earlier decision. *See id.*, ECF No. 1537, hearing transcript at 32:4-12; Ex. 3 hereto.

settlement with the E&O carrier was limited to the E&O policies and did not involve the D&O policies.

Notwithstanding the facts that the SIPA Trustee and D&O carriers do not oppose the Settlement or the Welsh Assignment, and that Plaintiffs are not seeking a determination as to insurance coverage or priority in connection with the proposed Settlement and Assignment, but only receiving the right to enforce whatever rights and benefits Welsh may be entitled to under the D&O policies, Customer Representatives seek to void the Welsh Assignment and eliminate it from the Settlement altogether. They seek this relief despite the following facts. They are not parties to this action. They have no interest in the claims in this litigation. They are neither Insured Persons nor beneficiaries under the D&O policies. They at most have pending contingent claims, but no enforceable judgment, against various former MF Global Officers and Directors (not including Welsh) in their unrelated Customer Action before Judge Marrero (11-cv-07866 (VMM) ECF No. 382) (the "Customer Action"), which claims they recently assigned to the SIPA Trustee and which may or may not be compensable under the D&O policies. [8] **And they will have a separate right to contest any priority or other pertinent issue elsewhere.**

The Customer Representatives' motion is unsupported by law or the facts here. The Court need not decide the motion in the context of approving this Settlement, and entering the requested judgment. The crux of the motion is (1) that Customer Representatives have exclusive

---

[8] In the Customer Action, which alleged MF Global's wrongful misappropriation of $1.6 billion of commodities customer's propriety funds in foreign and segregated domestic accounts in order to fund MF Global's proprietary operations and investments, Customer Representatives purport to bring claims on behalf of themselves and all other persons and entities similarly situated. They also bring claims on behalf of the SIPA Trustee, which claims the Trustee assigned to them." (11-cv-07866, ECF Nos. 382, 641. The Customers have now assigned their claims to the Trustee (*id.*, ECF No. 697). They claim a "shortfall" due to them of $548 million. But the D&O policies, unlike the Professional Liability (E&O) policies, do not provide direct coverage to MF Global for claims in the Customer Action or in this Action. *In re MF Global Holdings Ltd.,* 469 B.R. 177 (S.D.N.Y. April 10, 2012) (recognizing priority of payments under D&Os).

full ownership rights to the remaining proceeds of the E&O and D&O policies, and (2) that the Welsh Assignment threatens to allocate policy proceeds under the E&O and D&O policies to Plaintiffs that Customer Representatives supposedly would otherwise be paid in order to make up for an alleged "shortfall" in the MF Global Estate supposedly owed to them and other commodities customers in the SIPA liquidation. However, first, the E&O policies are not even included as part of the Welsh Assignment. Second, no such allocation occurs. Third, neither the bankruptcy court nor The Honorable Victor Marrero in the Customer Action has held that E&O or D&O policy *proceeds* are property of the Customer Representatives or even of the MF Global estate, or that Customer Representatives have priority of payments under the D&O policies.[9] Thus, with respect to the D&O policies, Customer Representatives are not direct beneficiaries, but have at most contingent indirect interests therein.

Customer Representatives have not disputed that the proposed Settlement in this action falls within the reasonable range of approval for all the reasons stated in Plaintiffs' Settlement submissions. They haven't demonstrated that they possess a substantial or direct interest in Plaintiffs' Action, in the Settlement or in the D&O policies. They have not otherwise showed how Preliminary Approval will legally prejudice them. Yet they seek to delay and disrupt the Preliminary Approval of this Settlement, invalidate the Welsh Assignment and obtain what amounts to impermissible advisory opinions about the scope of coverage and priorities of

---

[9] Without ruling whether or not policy *proceeds* under the E&O and D&O policies were the property of MF Global's estate, the bankruptcy court lifted the stay and recognized there was a priority of payment in the D&O policies for the Individual Insureds thereunder, authorizing payment of proceeds for defense costs with a "soft cap" of up to $30 million. The bankruptcy court further found that New York State Insurance Law Section 3420(a)(1) requires the insurers to abide by the policy contract provisions notwithstanding any provisions in the Bankruptcy Code. *See In re MF Global Holdings Ltd.,* 469 B.R. 177, 194-196 (S.D.N.Y April. 10, 2012), 11-15059, Doc. Nos. 619 and 652. Also that the commodity customers' "do not have a vested right in any of the proceeds." *Id.* at 196.

payment under the D&O policies. [10] Again, not only has there not been a ruling that the *proceeds* of the D&O policies are the property of the MF Global estate, or Customer Representatives, but the SIPA Trustee and Customer Representatives have failed to show their specific entitlement to those *proceeds* under the terms thereunder.

In all the circumstances, this Court should deny Customer Representatives' motion and objections for the following reasons:

*First,* Customer Representatives have not filed a requisite pleading with their intervention motion as required by Fed. R. Civ. P. 24(c).  This alone suffices to deny intervention.

*Second,* Customer Representatives have not demonstrated compliance with the standards for intervention as of right under Rule 24(a)(2).  They have not demonstrated an interest relating to the property or transaction that is the subject of this Action, or that they are so situated that granting Preliminary Approval may impede their ability to protect any such interest.

*Third*, Customer Representatives have not demonstrated compliance for permissive intervention under Rule 24(b)(2)(B) or 24(b)(3).  They have demonstrated neither that this

---

[10] Customer Representatives apparently seek unnecessary advisory opinions that the 2011 D&O policy is inapplicable to the claims made against Welsh, that only Customer Representatives have rights to recover proceeds thereunder; and that the proceeds of the E&O and D&O policies, whether property of the MF Global Estate or of the Customers, can only be payable to Customer Representatives to satisfy an alleged "$548 million" shortfall in monies owed to them by the MF Global Estate. Notwithstanding any alleged "shortfall," Customer Representatives already have received hundreds of millions of dollars in payments from the SIPA Trustee, including from advances made with general creditor funds to them. Their Customer Action against non-bankrupt persons, including former directors and officers of MF Global (not including Welsh), may implicate the D&O policies only if Customer Representatives, or the SIPA Trustee, to whom they have assigned their rights on those Customer Action claims, actually obtain a recovery from Individual Defendants in that action, who in turn seek reimbursement for such claims under the D&O policies which would then be payable to Customer Representatives.  As shown *infra,* neither the Customer Representatives nor the SIPA Trustee is a direct beneficiary under the D&O policies, which policies include priority of payment provisions that inure to the Insured Persons. Customer Representatives have no liability judgment against those defendants, and have not fully proved those claims remaining after dismissal of other claims in the Customer Action.

Action shares any common question of law or fact with the Customer Action, nor that granting intervention will not subject Plaintiffs to undue delay and prejudice their rights.

*Fourth*, Customer Representatives have not sued Welsh in the Customer Action, have no adjudicated judgment or settlement against any parties in their unrelated Customer Action, and have no other standing to object to the Settlement or to void the Welsh Assignment. They have not shown "formal legal prejudice" or otherwise demonstrated how Preliminary or Final Approval of the Settlement bars them from later asserting any of their alleged contingent claims against the D&O carriers in the Customer Action or elsewhere.  They provide no legal authorities for the proposition that Welsh lacks standing to assign his interests to Plaintiffs under the relevant 2011 D&O policies, or that Plaintiffs' claims against Welsh are not "claims made" under those policies.  We believe they mischaracterize the proposed Settlement, the D&O policies and the prior rulings of the bankruptcy court and other courts regarding the relevant insurance policies, and other issues.

*Fifth,* Customer Representatives improperly seek an advisory opinion or prediction from this Court regarding the scope of the D&O policies in regard to Welsh and to their own contingent claims in the Customer Action.  The proposed Settlement with Plaintiffs is not a direct settlement with the D&O carriers, but simply assigns to Plaintiffs any rights and interests that Welsh may have under the D&O policies. The relevant carriers have not objected to the Welsh Judgment or Assignment, and no court has ruled that Welsh is or is not covered under the D&O policies or not entitled to any proceeds thereunder.

The matters Customer Representatives raise are not now before the Court. They do not need to be addressed in connection with this Court's decision to grant preliminary or final approval of the Amended Settlement. Judicial economy and justiciability contraindicate trying

to address these issues. Further, they cannot or should not be addressed unless the insurers themselves are before this Court and may be bound thereby.

## ARGUMENT

**I.    CUSTOMER REPRESENTATIVES DO NOT HAVE STANDING TO OBJECT BECAUSE THEY ARE NOT SETTLING PARTIES TO THE ACTION AND FAIL TO ESTABLISH ANY LEGAL PREJUDICE THAT WOULD RESULT FROM APPROVAL OF THE AMENDED SETTLEMENT**

The general rule is that a non-settling party **does not** have standing to object to a settlement between other parties.  *See, e.g., In re NASDAQ Mkt. Makers Antitrust Litig.*, 176 F.R.D. 99, 103 (S.D.N.Y. 1997); *see also* 2 Herbert B. Newberg, Newberg on Class Actions § 11.54 (2d ed. 1985) ("[t]he general rule, of course, is that a non-settling party does not have standing to object to a settlement between other parties").  A limited exception to the foregoing general rule exists where a settlement, if approved, would cause the non-settling party to suffer "formal legal prejudice."  *Id*.

The burden is on the non-settling defendant to establish that it will suffer formal legal prejudice.  *See, e.g., Zupnick v. Fogel*, 989 F.2d 93, 98 (2d Cir. 1993) (non-settling defendant must "demonstrate" formal legal prejudice).  Here, of course, Customer Representatives are not non-settling defendants or parties.  For the same reasons that they cannot show legal prejudice in their intervention motion, they have not shown legal prejudice in their proposed limited objections.

In assigning their claims in the Customer Action to the SIPA Trustee, Judge Marrero did not analyze the D&O policies in that decision and noted that "any issues decided [by the bankruptcy court and affirmed by him] "cannot bind Appellants in the Customer Action" who were not parties to the bankruptcy proceedings. *See* Opinion and Order, 13-Civ. 8893-VM, ECF No. 38 at 12.  Since Customer Representatives have not recovered a judgment in the Customer

Action, and their rights to recover under the D&O policy are subject to their Trustee Assignment, they clearly are contingent and remote at this time.[11]  As Welsh is not a defendant in the Customer Action, they also have no entitlement to any proceeds that defendant Welsh has assigned to Futures Plaintiffs under the D&O policies.

"Courts have repeatedly held that a settlement which does not prevent the later assertion of a non-settling party's claims…does not cause plain legal prejudice to the non-settling party." *See, e.g., Agretti v. ANR Freight Sys., Inc.*, 982 F.2d 242, 247 (7th Cir. 1992) citing cases; *see also* 2 Newberg, *supra,* § 11.54 (Supp. 1992).  Here, Customer Representatives, who are not even parties,  fail even to assert (let alone establish) that anything in the Amended Settlement or the [Proposed] Final Order would prevent them  from "later asserting" that they are entitled to share in proceeds under any D&O policies. [12]

Accordingly, Customer Representatives fail to establish the requisite standing to assert a "limited objection" to the Welsh Assignment and Amended Settlement.

## II.    THE CUSTOMER REPRESENTATIVES IMPROPERLY SEEK ADVISORY OPINIONS FROM THIS COURT

---

[11] As explained in Customer Representatives' motion to intervene, the SIPA Trustee, Giddens, who filed a limited objection on behalf of MF Global with respect to this unrelated Preliminary Settlement (*see* ECF No.175), previously received an assignment of claims from Commodities Customers in the Customer Action, while continuing to be represented in that action by the same counsel that represented Customer Representatives in that action. Presumably, if the Trustee recovers on Commodities Customers' Claims against the officers/directors in the Customer action,  either by judgment or settlement, an effort will be made to recover against the officers and directors in that case under the "claims made" D&O policy. The consolidated Customer Action was filed in 2012, after Plaintiffs first asserted their claims against Welsh in December 2011. Welsh is not a defendant in the Customer Action.

[12] Customer Representatives do not claim to be representing the SIPA Trustee or any class members in this Action in their motion.

Customer Representatives are attempting to obtain advisory opinions as to the scope of coverage under the D&O policies and a ruling as to their prioritization on any recovery. Customer Representatives ask this Court to determine whether Welsh has coverage under the D&O policy and related excess policies; whether Welsh has priority over other defendants under the D&O policy and related excess policies; whether the Assignment, which was not objected to by the D&O carrier, is valid; and that Customer Representatives have a substantial interest in the D&O policy and related excess policies.

This Court need not, and should not, tackle these issues. *See, e.g., Vapne v. Meissner*, 99 CIV. 9525 (WHP), 2001 WL 492410 at *2 (S.D.N.Y. Mar. 28, 2001) (Pauley, J.) ("it is beyond the power of federal courts to render [] advisory opinions").  Courts have refused to issue advisory opinions about the effects of settlements on other litigation.  *See, e.g., In re GTI Capital Holdings*, LLC, 409 Fed.Appx. 68, 69 (9th Cir. 2010) ("Appellants appear to be seeking on appeal an advisory opinion about the effects of the settlement agreement on other litigation.  We lack jurisdiction to render advisory opinions").

## III.   CUSTOMER REPRESENTATIVES FAIL TO MEET THE PROCEDURAL REQUIREMENTS FOR INTERVENTION UNDER FEDERAL RULE CIV. PRO. 24(c)

Rule 24(c) states that a motion for intervention "must state the grounds for intervention and be accompanied by a pleading that sets out the claim or defense for which intervention is sought."  Customer Representatives have failed to file or serve a requisite pleading with their motion as required by the Rule, since they have no interest in any claim asserted by Plaintiffs herein.  This Court has previously noted that failure to follow the strictures of Rule 24(c) is sufficient to warrant dismissal of a permissive intervention motion.  *S.E.C. v. Bear, Stearns &*

*Co. Inc.*, 03 CIV.2937 WHP, 2003 WL 22000340 at *4 (S.D.N.Y. Aug. 25, 2003) (Pauley, J.).

Customer Representatives' motion for intervention should therefore be denied.

## IV.   CUSTOMER REPRESENTATIVES DO NOT MEET THE CRITERIA FOR INTERVENTION AS OF RIGHT UNDER FED.R.CIV.P. 24(a)(2)

As stated in *Washington Elec. Co-op., Inc. v Massachusetts Mun. Wholesale Elec. Co.*,

922 F2d 92, 96-97 (2d Cir 1990):

> Rule 24(a)(2) provides a four part test for intervention as of right:
>
> Upon [1] timely application anyone shall be permitted to intervene in an action ... when the applicant claims [2] an interest relating to the property or transaction which is the subject of the action **and** [3] the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, [4] unless the applicant's interest is adequately represented by existing parties. Fed.R.Civ.P. 24(a)(2); *see also Farmland Dairies v. Commissioner of New York Dep't of Agric.,* 847 F.2d 1038, 1043 (2d Cir.1988); *United States v. State of New York,* 820 F.2d 554, 556 (2d Cir.1987); *Restor-A-Dent Dental Laboratories, Inc. v. Certified Aloe Prods., Inc.,* 725 F.2d 871, 874 (2d Cir.1984**). All four parts of the test must be satisfied to qualify for intervention as of right**. *State of New York,* 820 F.2d at 556 (emphasis added).

Customer Representatives do not meet this four part test and thus, cannot be permitted to

intervene as of right.

### A.  Customer Representatives' Motion To Intervene Is Untimely

The Customer Representatives' Motion to Intervene is untimely and premature, because

they have no judgment or settlement to enforce in the Customer Action and no standing to object

to the Welsh Assignment (*see* Point IV *infra*).  They ask the Court to crater the Welsh

Assignment, delay the Settlement of Plaintiffs' case against non-bankruptcy defendants, and

make advisory rulings and assumptions about the applicability of the D&O policies in order to

opportunistically eliminate any settlement or judgment that would require payment under the

D&O policies and, in their view, interfere with Customer Representatives' contingent claims.

They presume that if they obtain any recovery against Individual Defendants in the Customer

Action, they automatically will be entitled to recover payments under the D&O policies to the full extent proceeds are available to make up any of the alleged "shortfall" owed by MF Global to the Customer Representatives. Such assertions are wholly speculative and premature, inconsistent with the priority of payment provisions under the D&O policies, and thus, their application is untimely.  *See e.g*., *Taco Bell Corp. v. Continental Cas. Co.*, 01 C 0438, 2003 WL 124454 (N.D. Ill. Jan. 13, 2003) (motion to intervene which involved question of contingent duty to indemnify under insurance policy denied as premature). [13]

### B. Customer Representatives Fail to Demonstrate a Substantive Direct Interest in This Action

Customer Representatives assert no substantive direct interest in this action or Settlement. The Customer Action asserts claims against various former directors and officers of MF Global,

---

[13] Recent developments also suggest that Customer Representatives' motion and limited objection may be moot. On May 5, 2014, the respective attorneys for the MFG Plan Administrator, for Sapere Wealth Management and other appellants representing commodities customers of MF Global, and for U.S. Specialty,  the underlying D&O carrier, requested that the Second Circuit dismiss as moot an appeal pending by Sapere Appellants in which commodities customers were seeking to overturn prior rulings of the bankruptcy court, affirmed by the district court, that Commodities Customers had no "vested interest" in the policy proceeds under the E&O policies. Copies of these letters are attached as Exhibits 4, 5 and 6 hereto as are copies of the related decisions. See Ex. 1 and 2 hereto. Sapere's attorneys acknowledged that "in light of the recent payment of commodities customer net equity claims it is no longer necessary for the E&O policy proceeds to be used to pay commodities customer net equity claims in the MFG SIPA liquidation. As a result…the Court does not need to address the 'vested rights' issue." Here, Customer Representatives entire motion, is premised on arguments similar to those before the Second Circuit, i.e., that they have vested rights in insurance policy proceeds based on the alleged shortfall to commodities customers in the SIPA liquidation. However, since Customer Representatives presumably also now have received their full "net equity claims" in the SIPA liquidation, like Sapere Appellants, the issue of their alleged ownership interest in the E&O policy proceeds–not part of the Welsh assignment—is moot and the bankruptcy court's earlier ruling still stands.  The same logic would apply to the D&O policies, since Customer Representatives have been paid in full on their SIPA liquidation "net equity claims." Courts have dismissed intervention motions where the matter was moot. *See e*.g. *Kunz v. New York State Commission on Judicial Misconduct*, 155 Fed Appx. 21, 22 (2d Cir.2005).

including Jon Corzine, and others (not including Welsh), related to the demise of MF Global and the misappropriation of commodities customers' property, including from customers' segregated accounts. Futures Plaintiffs' claims have nothing to do with the failure to segregate customer funds, but instead involve the alleged wrongful activity by Defendants in trading platinum and palladium futures contracts and physical platinum and palladium during the Class Period. Plaintiffs allege over $1 billion in damages (after trebling) and upon information and belief, are one of the largest creditors of MF Global in the MF Global bankruptcy, excluding Customer Representatives. Thus, the Customer Action is separate and distinct from this case, and Customer Representatives have no interest in Plaintiffs' claims.

### C. Customer Representatives Fail to Demonstrate a Substantive Interest in The 2011 D&O Policies Subject to the Welsh Assignment—At Best Their Interest is Speculative and Contingent

Customer Representatives mistakenly suggest that the Welsh Assignment extends to both the E&O policies and the D&O policies, which colors much of their motion[14]

As for their "interests" in the D&O policies, even if they have not been paid in full in the SIPA liquidation -- which does not appear to be the case based on their recent settlement with the SIPA Trustee--they are not guaranteed any recovery under the D&O policies simply because there may be a "shortfall" in funds allegedly owed to them by the MF Global Estate and because they have unresolved claims pending in their Customer Action. *See Kheel v. American Steamship Owners Mutual Protection and Indemnity Association,* 45 F.R.D. 281 (S.D.N.Y. 1968) (intervention denied under Rule 24(a) and (b); movants only had "contingent" interests in insurance where they had not proved their negligence claims nor obtained judgments thereon).

---

[14] Again, the Welsh Assignment does *not* implicate the E&O policies.

Again, neither the D&O policies themselves, any CFTC or SIPA regulations, nor the recent settlement and Assignment by Customer Representatives (who are indisputably not "Insured Persons" under the D&O policies) with the SIPA Trustee give them any legal ownership interest in the D&O policies, or create any priority of payments over and above any Individual Insureds, the intended direct beneficiaries. Further, the assignment of potential and contingent recoveries in the Customer Action to the SIPA Trustee is not a judgment or settlement against the individual defendants that entitles either MF Global, the SIPA Trustee or the Customer Representatives to obtain payment of proceeds under the D&O Policies.[15]

In approving the Customer Action claims assignment to the SIPA Trustee, Judge Marrero stated that under the Assignment

> The Customers' Counsel would continue to pursue the claims in the Customer Action, but all recovery in that proceeding would (after payment of reasonable attorney's fees) become part of the general estate for the Trustee to distribute to MFGI's remaining creditors…..the Plan Administrator…would not object to the advance of the Estate Assets [to Customers in exchange for the Assignment] , but only because the Trustee (through the Customers' counsel ) would continue….to pursue damages that could be used to pay MF Global *and MFGI's other general creditors.*

11-2790 (MG) (SIPA); 13 Civ. 8893 (VM), ECF No. 38, filed 2/20/14 at p.5.

Again, there has been no ruling by the bankruptcy court or by Judge Marrero in the Customer Action that the *proceeds* of the D&O policies belong to the Customer Representatives,

---

[15] It is highly doubtful whether Customer Representatives even have standing to object to the Settlement insofar as they admittedly assigned their claims in the Customer Action to the SIPA Trustee, who already filed a limited objection (ECF No. 175). To the extent a recovery is sought in the Customer Action under the D&O policy, the Trustee now has the right to pursue those claims.  The Trustee has not objected to the settlement with or assignment by Welsh, and has only raised a limited objection as to the preclusive effect of the Welsh judgment concerning MF Global. Plaintiffs are contemporaneously responding to the Trustee's Limited Objection. See Docket No. 180.

the SIPA Trustee or the MF Global Estate.[16]  For these reasons, Customer Representatives'
interest in the D&O policies is remote, speculative and contingent at best.

Finally, there is no guarantee that Customer Representatives or the SIPA Trustee will
recover any judgment against remaining defendants in the Customer Action that would be
compensable under the D&O policies.

Courts in this and other circuits have denied intervention, where as here, a potential
intervenor has no substantive interest in the litigation and/or at best a speculative or remote
economic interest in the outcome of the litigation.  *See H.L. Hayden Co. v. Siemens Medical
Systs., Inc.,* 797 F.2d 85, 88 (2d Cir.1986) (an interest that is remote from the subject matter of
the proceeding, or that is contingent upon the occurrence of a sequence of events before it
becomes colorable, will not satisfy the rule"); *Washington Elec. Co-op., Inc., supra*, 922 F2d at
98 ("Here, VDPS's interest is based upon a double contingency: WEC first must win a judgment
against MMWEC, and the Board then must determine that ratepayers are entitled to a percentage
of that recovery. Such an interest cannot be described as direct or substantial."); *Liberty Mut. Ins.
Co. v. Treesdale, Inc.,* 419 F.3d 216, 222 (3d Cir. 2005) (Movants "ha[d] no property interest in
the [insurance] policies nor d[id] they have any other legally protectable interest in the policies;"
economic interests only in the insurance proceeds, was insufficient interest to support
intervention as a matter of right); *Certain Underwriters at Lloyds, London v Four J's Community
Living Ctr., Inc.*, CIV.A. H-11-0713, 2011 WL 6026689 (S.D. Tex. Dec. 2, 2011)(denying
motion to intervene where movant had no final judgment in the underlying action and "does not

---

[16] Customer representatives suggest that the Trustee has made a demand to the D&O carriers for
coverage based on Customer Representatives' claims (as assigned by Customer Representatives
to the SIPA Trustee) but they do not attach same to their motion papers.

yet have a protectable interest in or claim to any insurance proceeds on which to base her intervention in th[e] insurance coverage dispute").

Courts also have held that the mere fact that a lawsuit may impede a third party's ability to recover in a separate suit does not ordinarily give that party a right to intervene. In *Gen. Star Indem. Co. v. V.I Port Auth.,* 224 F.R.D. 372 (D.V.I. 2004), the court held that intervention of right was improper where the intervenors' only interest was to ensure that the insured had sufficient resources to satisfy a judgment obtained in an underlying suit. Similarly, *In re Healthsouth Corp. Ins. Litig.,* 219 F.R.D. 688 (S.D. Ala. 2004), the court held that a non-party seeking to intervene must have a direct, significant, and legally protectable interest in the outcome of the litigation in which he seeks to intervene and a contingent economic interest in insurance policy proceeds does not rise to a legally protectable interest. Conversely, Customer Representatives fail to satisfy their burden of showing why defendant Welsh has no valid claim under the relevant 2011 D&O policies, or why the Welsh Assignment to Plaintiffs relating to those policies is invalid.

### D. Customer Representatives Have Not Shown That Preliminary or Final Approval of the Settlement and Welsh Assignment Will Interfere With, Impede or Prejudice Their Efforts to Assert Alleged Rights Under the E&O and D&O Policies

As shown from the cases in Point II.C *supra*, the mere contention that a party may have rights to insurance policy proceeds, as Customer Representatives here argue, does not create a legally protectable interest to justify intervention. Customer Representatives point to no language in the Settlement Documents, or steps taken by Plaintiffs in the Preliminary Approval process, that precludes them from taking whatever legal steps as to the insurance carriers that Customer Representatives deem appropriate to protect their supposed rights to policy proceeds. Their claims of prejudice, like their claims of ownership of D&O proceeds, are speculative and premature, and have no place in the context of the preliminary settlement approval sought here.

17

Even Defendant MFGI, which stands in the shoes of Customer Representatives in the Customer Action, has failed to assert "formal legal prejudice" if the Welsh Assignment is approved.

Such prejudice as the Customer Representatives strive to assert, and many of their criticisms of the Welsh Assignment, are based on their critical misunderstandings or mischaracterizations of the Settlement and Assignment. For example:

• Customer Representatives inaccurately report that Welsh's total combined settlement amount with Futures and Physical plaintiffs is $49 million, whereas the actual proposed total settlement with Futures and Physical Plaintiffs is $42 million, $35 million of which is for the settlement with Futures Plaintiffs.

• Customer Representatives report that in MF Global's bankruptcy, Judge Glenn determined that the insurance *proceeds* under both the D&O policies and the E&O policies are property of the Estate when, as shown above, there has been no such ruling. *See* In re MF Global Holdings, Ltd., *supra*, 469 B.R. at 181.

• Customer Representatives misconstrue  the Welsh Assignment and Judgment as implicating  the E&O policies—when the only policies Welsh has assigned his rights to recovery under, if any, are the D&O policies.

• Customer Representatives rely on a Consent Order between the Chapter 11 Trustee Louis Freeh and MFA Assurance, the E&O Professional Liability Carrier executed and approved by the Bankruptcy Court in 2012, which attaches a schedule of claims mentioning Plaintiffs' action as subject to the 2010 E&O policies, as proof that Plaintiffs' claims against Welsh are not covered by the D&O policies. They fail to mention that the Plaintiffs' claims against Welsh were first made in December 2011, during the May 31, 2011- May 31, 2012 policy period under the 2011 D&O policies.

18

• Customer Representatives provide absolutely no analysis as to why Welsh would not be covered under the language of the D&O policies or how his coverage (as assigned to Plaintiffs to pursue with the carriers) would interfere with their contingent interests in the Customer Action.

Also, neither the MF Global Estate nor Customer Representatives are entitled to an advance or indemnification under the D&O policies of proceeds, if any, that may be recovered by Plaintiffs under such policies by virtue of the Welsh Assignment, since MF Global has not paid Welsh under the D&O policies nor advanced monies on his behalf to Plaintiffs thereunder.

## V.   CUSTOMER REPRESENTATIVES FAIL TO MEET THE REQUIREMENTS FOR PERMISSIVE INTERVENTION UNDER FEDERAL RULE CIV. PRO. 24(b)(1) OR 24(b)(3)

For the same reasons they fail to demonstrate any sufficient reasons to intervene as of right, Customer Representatives also fail to show that permissive intervention is warranted.  Rule 24(b)(1) & (3) provide in relevant part that on timely motion (which this is not as shown *supra*), the Court may permit intervention to anyone who:

> (b)(1)(B) has a claim or defense that shares with the main action a common question of law or fact . . . .
> (b)(3) Delay or Prejudice.  In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.

As shown above, Customer Representatives do not share a claim or defense with this Action. The only issues they raise relate to questions of potentially competing economic interests to proceeds of the D&O policies if they ever obtain recoveries in the Customer Action. Again, their so called "interest" in the D&O policy proceeds is speculative and derivative, and depends on contingent events that may or may not happen concerning recovery against and coverage of the Individual Defendants in the Customer Action. Customer Representatives already have

received substantial recoveries from the SIPA Trustee in the bankruptcy, out of general creditor funds in the Estate (*see* 11-cv-07866, ECF No. 608-2, Ex. B) and may have received 100% of their "net equity" in the SIPA liquidation, thereby mooting their rights to claim any interests in the proceeds of any insurance policies.

Further, in upholding the Judge Glenn's recent approval of the assignment of the Customer Action claims to the SIPA Trustee in exchange for the SIPA Trustee's payments to Customers from general assets of the Estate, as defined therein, Judge Marrero emphasized that the Bankruptcy Court order  allowing the SIPA Trustee to advance funds to Customer Representatives in exchange for assignment of their Claims therein to the Trustee "would not affect the Customer action" or bind defendants in the Customer Action.  11-2790 (MG) (SIPA); 13 Civ. 8893 (VM), ECF No. 38, filed 2/20/14 at p.12.  Thus, there is no guarantee of recovery in the Customer Action against those defendants.

Judge Marrero also ruled that Appellants to that Order, including various director and officer defendants, "do not have standing solely based on the *potential impact* that the Bankruptcy Court's Order may have in the Customer action." *Id*. at p. 11. Here, Customer Representatives have no standing to intervene based on "potential impact" of the Welsh Assignment on their Customer Action claims.  *See* Point IV *infra*.

 Allowing Customer Representatives to intervene permissively here will further and unnecessarily delay the settlement and prejudice Plaintiffs. *See S.E.C. v Bear, Stearns & Co. Inc.,* 03 CIV.2937 WHP, 2003 WL 22000340 (S.D.NY Aug. 25, 2003)(denying permissive intervention where court was considering proposed consent judgment and it would, *inter alia,* cause "unnecessary delay, confusion and complication"). But denial of intervention will not

prevent Customer Representatives from pursuing their claims against Insurers in another forum in the future.

## CONCLUSION

For all of the foregoing reasons and authorities, together with set forth in Plaintiffs' related submissions regarding the Preliminary Approval of the Settlement and their responses to all Intervenor/Objectors' motions, the Customer Representatives' Motion to Intervene and Limited Objection should be denied in their entirety.

Dated: New York, New York
      May 8, 2014

Respectfully submitted,

*/s/ Christopher Lovell*
Christopher Lovell
Jody Krisiloff
Christopher M. McGrath
**LOVELL STEWART HALEBIAN JACOBSON LLP**
61 Broadway, Suite 501,
New York, New York 10006
Telephone:    (212) 608-1900
Facsimile:    (212) 719-4775

***Counsel for Futures Plaintiffs and the Futures Class***

21