UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
*In Re: Platinum And Palladium Commodities Litigation*

This document relates to:

All Actions
-----------------------------------------------------------------------X

MASTER FILE
NO. 10-CV 3617 (WHP)

**REPLY OF SUSAN LEVY REGARDING MOTION TO INTERVENE PURSUANT TO FED. RULE OF CIV. PRO. 24(a)(2) and/or 24(b)(1)(B) and/or OBJECTION TO PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT AGREEMENT AND PLAN OF ALLOCATION.**

**1.** Susan Levy, pro se, as a potential putative Class Member of the above-captioned case, respectfully submits this Reply to the Motion to intervene and objection to Preliminary Approval of Class Action.

2. Ms. Levy's request to intervene is pursuant to Fed. Rule Civ. Pro 24(a)(2) or alternatively pursuant to 24(b)(1)(B). There is no particular time in which to intervene, and Ms. Levy wishes to do so now, because it will be the last opportunity before she is required to opt out. Preferably, She would have preferred to join the Class, if at all possible. See <u>Smith v. Spirt Communications Co.</u>, 387 F.3d 612, 614 (7th Cir. 2004), <u>reh'g en banc denied</u>, <u>Cert Denied,</u> 125 S. Ct. 2939, 112 L.Ed 2d (2004)(II)(Court struck down Class Settlement based on Interveners' objections as to adequacy of representations.)

3. Under Rule 24(a)(2), Ms. Levy meets the four criteria for intervention First, although she knew about the Class Action and did try to intervene at least once before, she has not wasted any time. She has been working as much as she can on this matter and thus with her limited

resources and time constraints, she does not believe she has been guilty of laches. In fact, she has changed her mind several times on the need to intervene, and would have preferred not to have the burden; however, when she realized that others similarly situated to herself might be totally cut out of the settlement, she felt she had no other moral choice but to intervene. She does have her own case pending, but could easily abandon that case too and join the Class if she could become adequately compensated under the Class Action. Defense counsel's comment that she is timing her objection with her motion to dismiss is off base because he forgets that Ms. Levy tried to adjourn the Motion to Dismiss in her case for a long time and did not want to proceed with the Motion to Dismiss in her case at this time, but defense counsel insisted. Thus, under the totality of the circumstances, Ms. Levy has acted as timely as she could.

      4. The second criteria is also met that she has an interest relating to the property or transaction that is the subject of this action; the third criteria is also met, because she is a Class Member under the expanded Class and both her interests and the rights of the Class Members will be mutually effected by either the resolution of the Class Action or Ms. Levy's case. And Certainly, the last criteria is met, because her interests are not being adequately protected in the Class action which was the reason for her own suit being filed.

      5. Alternatively, Ms. Levy requests Intervention under Rule 24(b)(1(B) by permission. She has worked arduously to try to make things fair to herself and the class and would like to be heard at this time. Once she is forced to opt out, as she must eventually if she cannot be adequately represented in the Class, she will not be able to be heard at the Fairness Hearing. Thus, based on the procedural posture of this case, she seeks to intervene now so that she can be heard.

      6. Regarding the issue of legal fees. Ms. Levy in reading the Class

Action settlement believed that the 32.8% fee was agreed to by all parties. This Fee was unacceptable to her and smacked of collusion in her mind. She based this belief on her 24 years at the bar and the case law involving Class Action settlements and law review articles including, Turner v. Murphy Oil USA, Inc., 472 F. Supp. 2d 803, 845 ("In Class actions where the attorneys' fee is negotiated by counsel, courts 'must be particularly vigilant in evaluating [class counsel's] recommendations because there may be a bias toward settlements in which the class attorney agrees to trade off a smaller total award by defendant for a larger fee.' Wright, et. Al., *supra, § 1797.1*; see also Kent A. Lambert, *Class Action Settlements in Louisiana*, 61 La. L. Rev. 89, 102-104 (2000)(noting that 'mixing negotiations of overall settlement with discussions of attorneys fees' can at a minium, create 'an appearance of impropriety.") Pecuniary self-interest of class counsel has long been cited by courts and scholars as a threat to performance of counsel's professional and fiduciary obligations to the class members."[citations omitted.]; Richard H. Underwood, *Legal Ethics and Class Actions: Problems, tactics and Judicial Responses, 71 Kentucky Law Journal 788 (1982-1983).*

7. In Turner v. Murphy Oil USA, Inc., 472 F. Supp. 2d 803, 845, the court was able to avoid the issue of collusion by taking the issue out of the attorneys' hands and making the award of attorneys fees instead. Now in the case at bar, since counsel have represented that they have not agreed to the 32.8% attorneys' fees, and will leave an award of Fees in the Court's hands, Ms. Levy will withdraw her objection to attorneys' fees at this time based on Collusion, and put it in the Court's hands instead.

8. In addition, Ms. Levy will withdraw her objection to collusion based on the

effort that she perceived by Class Counsel to make it more difficult for objectors to be heard at the Fairness hearing. Now that Class Counsel have agreed to accept service by email, the playing field is even, and she withdraws her objection based on collusion as well.

9. However, suspecting that others might be cut out of the Class Settlement she would not feel right remaining silent at this point on the issues of adequacy of counsel as well as the problems with the Settlement regarding equal treatment to all Class members.

10. For example, Ms. Levy has become aware of other investors similarly-situated to herself. These investors were involved in a similar debacle as hers involving another bankrupt FCM named Peregrine Financial or PGF Best led by Felon Russell Wassendorf, Sn. who is now serving time in prison and had been on the Advisory Board of the NFA for many years. Those investors from IOWA were invested in part in Natural Gas Futures Contracts on the NYMEX which was the subject of the In Re Amaranth Settlement to which counsel keeps referring. Ms. Levy knows that certain of those kind investors who were seniors lost their entire life savings including their IRA funds. She believes that those investors did not even fill out proof of claims because the Amaranth paper work was too confusing and these kind folks did not even have their Account Statements because they were in managed accounts. So, Ms. Levy suspects that people will be cut out of the Class if they do not have enormous resources and the educational background to proceed and fill out paper work.

11. Thus, Ms. Levy needs to voice her concerns now knowing others may get hurt if she remains silent.

12. Ms. Levy's still believes that the right of reversion needs to be deleted from the Class Action Settlement. Any unclaimed funds should be used to either continue paying claim holders who have valid claims and will not be receiving full satisfaction under the

settlement or go into a customer protection fund similar to SIPC, since there is no customer protection fund in the Commodities industry, and it is time for one to be created. In fact, MF Global is only governed by a SIPC trustee because it was also a Broker-Dealer not just an FCM, Futures Commission Merchant upon information and belief.

13. Ms. Levy wants to do everything she can to help those she feels may be irrevocably harmed by being cut out of the Class Settlement. She does not want to ignore her moral obligation to help, if she can.

14. In fact, attached hereto as Exhibit 1 is just one affidavit of Mr. Bruce Beherns, one of the investors to whom she is referring. Knowing the pain of the loss of your life savings can cause, she needs to speak up now. Mr. Beherns is a remarkable man based on how he has conducted his life, and he deserved some kind of compensation. He has gained her respect the way he has carried on in his life as best he can, and something should have been done to compensate him. If there are similarly situated people in this case, they need to be afforded full protection under the Class Settlement.

15. Getting back to the Proposed Settlement at hand. The Settlement should not proceed and should be stopped in its tracks because of inadequacy of counsel. It appears that they have not fulfilled their fiduciary obligations to the Class based on the proposed settlement.

16. The Fifth Amended Complaint demonstrates that Class Counsel does not even have any Long Platinum investors as Class representatives who are even named in the Fifth Amended Complaint. According to the Fifth Amended Complaint, Greggory Galen was a named representative, but he was withdrawn by counsel without a stated reason. Mr. White, the other named Plaintiff who purchased Palladium not Platinum does not have any cognizable

claim under the Plan of Allocation either, and he will not be receiving any funds under the Plan of Allocation either upon information and belief. Mr. White entered into one contract on October 26, 2007 before the period of artificiality began and sold on November 19, 2007 during the period of Artificiality. Since one leg of Mr. White's transaction was in the artificiality period, he can only recover to the extent of net artificiality paid. Thus, because he only received artificiality and did not pay any, he has no claim under the Plan of Allocation.

17. Because the Plan of Allocation does not even protect the named Plaintiff, Mr. White, I think it is obvious the Plan of Allocation is a doomed model.

18. Thus, as it stands there appear to be no future plaintiffs in the Fifth Amended Complaint that stand to gain anything under the arbitrary Plan of Allocation and are similarly situated to myself.

19. Mr. Lovell says that it was his judgment to allocate the 90%-10% plan of allocation as he did; does his judgment also include cutting out Mr. White who he purports to represent? It is not very sound judgment upon information and belief, and breaches his fiduciary duty to the Class.

20. Ms. Levy does not see any mention of any Harry Ploss in the Fifth Amended Complaint that Mr. Lovell is now referring to as a named Plaintiff who actually may recover something. Thus, Ms. Levy does not know anything about Mr. Ploss's claim. However, at least one of the Class representatives needs to recover something under the Plan of Allocation upon information and belief.

21. It seems as though Named Representatives are being substituted in and out of the Class in order to fit into the Plan of Allocation instead of formulating a damages model to compensate the Named Plaintiffs.

22. The other key points relate to the right of reversion which should be per se collusive because settlement proceeds should not be returned to the settlers. Would the MF Global Customers have to return part of their settlement to the MF Global carriers? It is unheard of in the real world but perhaps not in the Class Action World. Thus, the right of reversion needs to be deleted from the settlement to make it pass muster.

23. Ironically, the right of reversion gives the appearance of a bountiful settlement implying that there may even be funds left over. This ploy appears to be a red herring, because so many people will not be receiving very much if anything under the settlement. It would be especially unfair to see Class members being cut out while the Moore defendants are collecting their reversionary interests.

24. Thus, the Settlement needs to be reworked. Using Ms. Levy's own case as an example using approximate numbers for clarity. If her entire loss was approximately $350,000.00, she will be able to submit a claim in the approximate amount of $60,000.00 in the NL period. Out of that $60,000.00 she will be able to collect 110% or $66,0000.00. After that time, the Moore defendants would be entitled to a reversion on her settlement proceeds, although her real gross loss is $350,000.00. Why should not she continue to collect until she reaches her actual damages in the amount of $350,000.00? It does not make sense for the Moore defendants to step in and get their settlement proceeds back.

25. The other major problem is that out of this $66,000.00 potential recovery, there may be many others like her in the NL class. Since the approximate amount of the settlement proceeds is $3,300,000.00 for the NL class, she and all the others in the NL class will receive their losses on a pro rata basis based on distributing the amount of $3,300,000.00. Class Counsel needs to disclose how much the total loss is to investors during the NL period, so each

person has an idea of what they can expect out of the settlement proceeds. If for example, there is a $400 million loss for this period, then $3,300,000.00 will have to be divided among $400 million dollars of loss in the NL class on a pro rata basis. It seems very low, but if the standards applicable to Class actions allow such recoveries, Ms. Levy will leave it in the Court's hands.

26. Indeed, the <u>In Re Amaranth</u> case that Class Counsel keeps referring to settled for $77.1 million dollars upon information and belief. Thus, as stated, the proceeds of this settlement seem low. Since the Moore defendants are extremely liquid upon information and belief, they should be asked to contribute as much as they can. Mr. Zensky's statement that the Moore defendants lost also is not evidence, and Ms. Levy would like to see what documentary evidence he is talking about.

27. As stated, it is essential that Class Counsel make their best efforts to collect from MF Global, Inc. and their insurance carriers. Notwithstanding the Welsh stipulation and agreement not to assign his rights under the E & O policy, upon information and belief, under New York Insurance Law, § 3420 such assignment agreements do not preclude direct actions upon information and belief and Class Counsel may still be able to collect in a direct action against the E & O policies. They need to vigorously move the case forward against MF Global, Inc.. They need to join in Ms. Levy's motion adjourned until June, 2014 to unwind the Welsh Stipulation agreement not to assign his rights.

28. Class Counsel also needs to straighten out which proper policy has been assigned or just get an assignment of all policies even if just the D & O policies are in play. It was certainly not clear from the Proposed Class Action Settlement Agreement that the E & O policies were not part of the settlement agreement.

29. Ms. Levy believes that her case as well as the Class Action is extremely

meritorious and should sustain a punitive damages award. Ms. Levy's research indicates that actual damages under 7 USC §25 is quite different from the loss causation model used in the Class Action fashioned on Dura. Ms. Levy disagrees with the Class model in the Plan of Allocation. Class Counsel's reliance on the CFTC Consent Order is misguided, since that Consent Order is not evidence as per this Court's prior order and because the Consent order is only for an Attempt and therefore losses to customers were not even considered in the Consent Order.

30. Thus, until the settlement can be arranged to treat the losses to all Class members with parity including those who lost on the way up and those who lost on the way down in the unitary manipulated market, the case should proceed and the Proposed Settlment should be rejected herein.

31. Lastly, Ms. Levy would also like permission to speak with other members of the Class, since the Class has not been certified. If they need her assistance, or she needs theirs, she would like to speak with them. She realizes that other members of the Class may be hedge funds who do not want or need her help. But, for individuals who have also been wiped out, she would like to help or seek their imput and their help with her own case. If she prevails in her case, she does not want to feel as though she did not do her best to help those similarly situated to herself.

WHEREFORE, it is respectfully requested that Ms. Levy be granted permission to intervene by discretion or as of right, and that the Settlement be abandoned and that this Matter proceed, and that Ms. Levy may communicate with members of the Class; and for all further and other relief that the Honorable Court deems just and proper

Dated: May 16, 2014

*Susan J. Levy*
Susan J. Levy, Esq.
Pro Se Intervener
40 East 10th Street
Suite 2K
New York, New York 10003
(Tel) 212-962-1782
(Fax) 212-962-3711