BERGER & MONTAGUE, P.C.
Merrill G. Davidoff
Michael Dell'Angelo
1622 Locust Street
Philadelphia, Pennsylvania 19103
Telephone: (215) 875-3000
Facsimile: (215) 875-4604

ENTWISTLE & CAPPUCCI LLP
Andrew J. Entwistle
Joshua K. Porter
280 Park Avenue, 26th Floor West
New York, New York 10017
Telephone:  (212) 894-7200
Facsimile:  (212) 894-7272

*Co-Lead Counsel for the Lead Plaintiffs
in the MF Global Inc. Customer Class Action*

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| *In Re: Platinum And Palladium Commodities Litigation* | MASTER FILE<br><br>No. 10 Civ. 3617 (WHP) |
| THIS DOCUMENT RELATES TO:<br><br>Platinum/Palladium Futures and Physical Actions | |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO INTERVENE AND LIMITED OBJECTION OF THE LEAD PLAINTIFFS IN THE MF GLOBAL INC. COMMODITY CUSTOMER CLASS ACTION TO THE PROPOSED SETTLEMENTS**

# TABLE OF CONTENTS

**Page(s)**

INTRODUCTION ................................................................................................................ 1

ARGUMENT ..................................................................................................................... 4

    A.    The Court is Permitted to and Should Evaluate the Legitimacy of the
        Purported Settlement Consideration ....................................................................... 4

        1.    The Customers' Limited Objection Relates Only to the Policy Year .......... 5

        2.    The Assignments are Illusory in that the Settlements Implicate the
              Wrong Policy Year .................................................................................... 6

        3.    Questions Concerning the Validity of the Assignments Should Not
              Be Left to Another Court in a Future Litigation ......................................... 8

    B.    The Customer Representatives' Interests in the D&O Policy Proceeds are
        Not Speculative ..................................................................................................... 9

    C.    The Customer Representatives Have an Interest in the this Action
        Sufficient To Intervene Under Either Rule 24(a) Or Rule 24(b) ........................... 11

        1.    The Customer Representatives' Interests are Neither Remote,
              Speculative, Nor Contingent .................................................................... 12

        2.    The Customer Representatives Have Standing to Intervene and
              Object to the Settlements ......................................................................... 14

    D.    The Settling Parties' Other Challenges to the Customer Representatives'
        Motion and Limited Objection are Without Merit ................................................ 15

        1.    The Customer Representatives Have Complied with the Technical
              Requirements of Rule 24 ......................................................................... 15

        2.    The Customer Representatives' Motion to Intervene is Timely ............... 16

CONCLUSION .................................................................................................................. 17

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*Agretti v. ANR Freight Sys., Inc.*,
   982 F.2d 242 (7th Cir. 1992) ................................................... 14

*Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Americas*,
   262 F.R.D. 348 (S.D.N.Y. 2009) ............................................. 14

*Certain Underwriters at Lloyds, London v. Four J's Cmty. Living Ctr., Inc.*,
   No. H-11-0713, 2011 WL 6026689 (S.D. Tex. Dec. 2, 2011) ................................................. 14

*CheckRite Ltd., Inc. v. Illinois Nat. Ins. Co.*,
   95 F. Supp. 2d 180 (S.D.N.Y. 2000) ........................................ 6

*E.E.O.C. v. Int'l Ass'n of Bridge, Structural & Ornamental Ironworkers, Local 580*,
   139 F. Supp. 2d 512 (S.D.N.Y. 2001) ...................................... 15

*Gen. Star Indem. Co. v. V.I. Port Auth.*,
   224 F.R.D. 372 (D.V.I. 2004) ................................................... 14

*H.L. Hayden Co. v. Siemens Med. Sys., Inc.*,
   797 F.2d 85 (2d Cir. 1986) ...................................................... 14

*Home Ins. Co. of Illinois (New Hampshire) v. Spectrum Info. Techs., Inc.*,
   930 F. Supp. 825 (E.D.N.Y. 1996) ........................................... 7

*In re Currency Conversion Fee Antitrust Litig.*,
   263 F.R.D. 110, 122 (S.D.N.Y. 2009)
   *aff'd, sub nom.*, *Priceline.com, Inc. v. Silberman*,
   405 F. App'x 532 (2d Cir. 2010) ............................................. 13

*In re GTI Capital Holdings, LLC*,
   409 F. App'x 68 (9th Cir. 2010) ............................................... 5

*In re Healthsouth Corp. Ins. Litig.*,
   219 F.R.D 688 (N.D. Ala. 2004) ............................................. 14

*In re Indep. Energy Holdings PLC Sec. Litig.*,
   No. 00 Civ. 6689(SAS), 2003 U.S. Dist. LEXIS 17090 (S.D.N.Y. Sept. 29, 2003) ............... 13

*In re Luxottica Grp. S.p.A. Secs. Litig.*,
   233 F.R.D. 306 (E.D.N.Y. 2006) ............................................. 13

*In re MF Global Holdings Ltd.*,
   469 B.R. 177 (Bankr. S.D.N.Y. 2012) ................................ 3, 12, 13

*In re NASDAQ Mkt. Makers Antitrust Litig.*,
  176 F.R.D. 99 (S.D.N.Y. 1997) ............................................................................... 14

*Katz v. Berisford International PLC*,
  No. 96 CIV. 8695(JGK), 2000 WL 1760965 (S.D.N.Y. Nov. 30, 2000) ................................ 14

*Louis Berger Grp., Inc. v. State Bank of India*,
  802 F. Supp. 2d 482 (S.D.N.Y. 2011) .................................................................... 11

*MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n Inc.*,
  471 F.3d 377 (2d Cir. 2006) ............................................................................. 11

*Restor-a-Dent Dental labs., Inc. v. Certified Alloy Prods., Inc.*,
  725 F.2d 871 (2d Cir. 1984) ............................................................................. 14

*S.E.C. v. Bear, Stearns & Co. Inc.*,
  No. 03 Civ.2937 WHP, 2003 WL 22000340 (S.D.N.Y. Aug. 25, 2003) ................................ 15

*See Liberty Mut. Ins. Co. v. Treesdale, Inc.*,
  419 F.3d 216 (3d Cir. 2005) ............................................................................. 14

*Tachiona ex rel. Tachiona v. Mugabe*,
  186 F. Supp. 2d 383 (S.D.N.Y. 2002),
  *aff'd in part, rev'd in part on other grounds*,
  386 F.3d 205 (2d Cir. 2004) ............................................................................. 15

*U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.*,
  No. 09 Civ. 9476, 2013 WL 837565 (S.D.N.Y. Mar. 6, 2013) ........................................ 2, 12

*Vapne v. Meissner*,
  No. 99 CIV. 9525(WHP), 2001 WL 492410 (S.D.N.Y. Mar. 28, 2001) ................................... 5

*Wash. Elec. Cooperative, Inc. v. Mass. Mun. Wholesale Elec. Co.*,
  922 F.2d 92 (2d Cir. 1990) .............................................................................. 14

*Windsor v. United States*,
  797 F. Supp. 2d 320 (S.D.N.Y. 2011) ................................................................... 2, 11

*Zunenshine v. Executive Risk Indem., Inc.*,
  No. 97 Civ. 5525(MBM), 1998 WL 483475 (S.D.N.Y. Aug. 17, 1998) .................................... 7

*Zupnick v. Fogel*,
  989 F.2d 93 (2d Cir. 1993) ............................................................................. 14

## Statutes

17 C.F.R. § 190.08(a)(1)(ii)(J) .......................................................................... 10

**Rules**

Rule 23 ................................................................................................................. 13, 16

Rule 24 ................................................................................................................. *passim*

Rule 24(a) ................................................................................................... 3, 11, 15, 16

Rule 24(b) ............................................................................................................. *passim*

Rule 24(c) .................................................................................................................. 15

The Customer Representatives respectfully submit this reply memorandum of law in further support of the Motion to Intervene and Limited Objection of the Lead Plaintiffs in the Customer Class Action to the Proposed Settlements in the Futures and Physical Actions (ECF No. 174) (the "Motion and Limited Objection" or "Cust. Mem.").[1]  To avoid repetition, the Customer Representatives herein reply to both the Defendants' Memorandum and to the Plaintiffs' Memorandum (together, the "Memoranda").[2]

## **INTRODUCTION**

The Memoranda in opposition are grounded on mischaracterizations of the relief sought in the Motion and Limited Objection.  Contrary to Plaintiffs' claims, the Customer Representatives do not ask this Court to opine on Welsh's right to coverage under the D&O Policies overall or on any parties' right to priority to any insurance policy.  Nor, as Defendants claim, do the Customer Representatives ask this Court to handicap the likelihood that Plaintiffs will prevail in a later action against the D&O Carriers.  And the Motion and Limited Objection is not an attempt to obstruct any parties' valid claims against any insurance.  The relief sought is much narrower and simpler than that.  The Motion and Limited Objection only asks the Court to evaluate whether Welsh is attempting to assign coverage to the D&O Policy under the incorrect policy year, nothing more.[3]  The problem is, the Memoranda focus on numerous ancillary issues without explaining why the Court should accept the Plaintiffs' and Defendants' (the "Settling

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in the: (i) Defendants' Memorandum of Law in Opposition to Commodity Customers' Motion to Intervene and Limited Objection to Settlement (ECF No. 192) (the "Defendants' Memorandum" or "D.Mem."); and (ii) Futures Plaintiffs' Memorandum in Opposition to Commodity Customers' Motion to Intervene and Limited Objection to Settlement and In Further Support of Plaintiffs Motion for Preliminary Approval of Settlement (ECF No. 197) (the "Plaintiffs' Memorandum" or "Pl. Mem."), which was joined by the Physicals Plaintiffs (ECF No. 196).

[2] Under Section III.C of the Court's individual practices, the Customer Representatives are presumably permitted 10 reply pages for each memorandum.

[3] The Motion and Limited Objection also objected to the extent any assignment to rights under the E&O Policies was intended, which the Memoranda concede was not.

Parties") premise that the core issue of whether Welsh is seeking to assign coverage under the wrong policy should be postponed for adjudication by another court in some later litigation. Even assuming the Settling Parties are correct that the Customer Representatives have no standing to object or intervene, which they are not, the value, if any, Welsh's settlement consideration has to the class or the validity of the Assignments comprising that consideration are appropriate questions for this Court in evaluating motions for class action settlement approval under Rule 23.

The Customer Representatives demonstrate in the Motion and Limited Objection that the Court can and should exercise its considerable discretion to permit them to intervene either as a matter of right or permissively for the discrete purpose of lodging a limited objection concerning the D&O policy year ostensibly implicated in the Assignments underlying the Settlements.[4]  As explained in the Motion and Limited Objection (*see* Cust. Mem. at 2-3, 6-8), the putative Assignments are defective in that they implicate the 2011 policy year but the claims in this litigation for MFGI's and Welsh's misconduct were first made in 2010 (the amended complaint in 2011 finally adding Welsh as a Defendant does not reset the "claims made" date), and thus, Welsh has no rights to proceeds from the 2011 policies.  Indeed, the D&O Policy contains a "pending or prior litigation" clause that excludes coverage under the 2011 policy if litigation of the subject matter was pending in a prior year.  On these bases, the purported Assignments that are Welsh's settlement consideration are valueless to the class.

Contrary to the Settling Parties' assertions, the Bankruptcy Court has recognized that the proceeds of the policies *are* property of the MFGI and MFGH estates and the estates have claims

---

[4] *See, e.g.*, *U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.*, No. 09 Civ. 9476, 2013 WL 837565, at *8 (S.D.N.Y. Mar. 6, 2013) (courts "have held that Rule 24(b)(2) is to be liberally construed in favor of intervention"); *Windsor v. United States*, 797 F. Supp. 2d 320, 323-24 (S.D.N.Y. 2011) (courts apply Rule 24(a) requirements "in a 'flexible and discretionary' way").

against them.[5]  And these policies are "wasting policies," meaning a dollar to Welsh (and then assigned to Plaintiffs) is one dollar less available to the estates to cover claims (*see In re MF Global Holdings Ltd.*, 469 B.R. 177, 182-83 (Bankr. S.D.N.Y. 2012)).  If the Court approves the Settlements and underlying Assignments as is, it harms the Customer Representatives and the class in the Customer Action, as well as their assignee MFGI, because the Customer Representatives will be forced to litigate these same issues when the Plaintiffs assert their assigned rights in a new action against the D&O Carriers.  And at that point the Plaintiffs will have received this Court's imprimatur on the Assignments.  For this reason, the Customer Representatives unquestionably have an interest in property that is the subject of this litigation, which warrants intervention here.

The Settling Parties' arguments that the Customer Representatives lack an interest in the litigation (Rule 24(a)) or that no common question of law or fact exists (Rule 24(b)) – whether couched as a lack of interest, a remote or speculative claim, an improper request for an advisory opinion, or a lack of standing – are without merit.  The Assignments, if approved as is, will lead directly to costly and wasteful litigation by Plaintiffs to recover proceeds from the policies to the detriment of the Customer Representatives' interests.  It is possible that Plaintiffs will recover nothing on the Assignments, a possible result they acknowledge in the Settlements,[6] after litigation with considerable cost to multiple courts, the Customer Representatives, the Plaintiffs and class here, and the D&O Carriers and the MFGI estate.  A result that may increase the costs to the courts and the parties, foments further litigation, and yields nothing for the release of

---

[5] *See In re MF Global Holdings Ltd.*, No. 11-15059 (MG) (Bankr. S.D.N.Y.) ("MFGH Chapter 11 Case") ECF No. 1537 at 20 (Judge Glenn stating "I think given the changed circumstances since the initial decision, proceeds are -- are property of the estate. . . .  at this point it becomes a competition between two or more claimants against the insurance").

[6] *See* ECF Nos. 163-1 ¶ 3(b)(vi); 168-1 ¶ 3(b)(vi).

claims against Welsh cannot be fair, adequate and reasonable.

Equally unavailing are the settling parties' other arguments which are either overly technical (*e.g.*, requiring a specific form of pleading) and elevate form over substance, or they are at cross-purposes (*e.g.*, Plaintiffs assert the motion to intervene is premature while the defendants claim it is too late).

## ARGUMENT

### A.    The Court is Permitted to and Should Evaluate the Legitimacy of the Purported Settlement Consideration

Plaintiffs assert that resolving the issue of Welsh's rights under the D&O Policies requires an improper advisory opinion and the Court "need not, and should not, tackle these issues." (Pl. Mem. at 11). Defendants go a step further, asserting that the Amended Settlements do not "even permit the Court to address whether Welsh has rights, title or interests to coverage under the D&O Policies." (D. Mem. at 11). These assertions miss the mark. Both motions for preliminary approval that prompted the Motion and Limited Objection ask the Court to evaluate whether the Settlements are "fair, reasonable and adequate" (ECF No. 162 at 3; ECF No. 167 at 16). Whether the Settlement consideration offered by Welsh in the form of an Assignments that offer "potential further recoveries from insurers" (ECF No. 162 at 2) are illusory is a highly pertinent subject of evaluation by the Court.

The Settling Parties suggest that the Court can and should approve the Settlements without evaluating whether Welsh is providing the class members anything of value. The Customer Representatives disagree. With or without the Customer Representatives' intervention and objection, what, if anything, the class is actually receiving from Welsh for the releases against him is a pertinent question. Why should the Court leave the answer to another court in a later (and potentially unnecessary) litigation?

### 1.       The Customers' Limited Objection Relates Only to the Policy Year

Plaintiffs argue, spuriously, that the Motion and Limited Objection seeks an advisory opinion as to the scope of Welsh's coverage under the D&O Policies, whether he has priority over other defendants, and whether the Customer Representatives have a substantial interest in the D&O Policies (Pl. Mem. at 11).[7]  Defendants similarly suggest the Customer Representatives are asking the Court to resolve Welsh's rights (if any) to the policies, or to "handicap" whether Plaintiffs will recover from the insurers.  (D. Mem. at 11).

The Motion and Limited Objection does not ask the Court to rule on any of these issues. The Customer Representatives request only that the Court evaluate whether Welsh is assigning his rights under the wrong policy year, nothing more.[8]  Indeed, the Motion and Limited Objection states clearly that the "Customer Representatives are willing to withdraw th[e] limited objection if the Settlements are revised expressly to exclude the 2011 D&O and E&O Polices."[9] The Settling Parties have conceded that the 2011 E&O Policy is not at issue (Pl. Mem. at 18; D. Mem. at 10), so all that is left of the Limited Objection is resolving whether the Settlements involve the wrong D&O Policy year.

To the extent that the Motion and Limited Objection raises other issues as to, for example, the priority of claims against the policy proceeds, it does so only in the context of

---

[7] The Customer Representatives are not seeking an improper advisory opinion on these issues or any others.  Here, the Customer Representatives ask only that the Court evaluate the adequacy, under Rule 23, of Assignments in the context of whether to approve two class action Settlements where the Assignments are the only consideration offered by one of the settling defendants.  The instant situation where Welsh's coverage under the 2011 D&O Policy is a core issue relating to approval of the Settlements is inapposite to the cases cited by Plaintiffs.  *See Vapne v. Meissner*, No. 99 CIV. 9525 (WHP), 2001 WL 492410, at *1 (S.D.N.Y. Mar. 28, 2001) (holding the Court lacked power to recommend that INS remove a District Director); *In re GTI Capital Holdings, LLC*, 409 F. App'x 68, 69 (9th Cir. 2010) (holding court lacked jurisdiction to opine on the effects of a settlement on other litigation).

[8] *See, e.g.*, Motion and Limited Objection at 2 ("the claims against him in the Futures and Physical Actions fall under policies covering *the previous year*") (emphasis in original); at 9 ("the Futures and Physical Plaintiffs are seeking assignment of coverage under the wrong policy year"); at 14 ("Welsh has no right to any coverage or claims *against the 2011 policies*") (emphasis added).

[9] *See* Motion and Limited Objection at 14.

demonstrating the Representative Customers' cognizable interests in the outcome of the approval motions for purposes of Rule 24 intervention.  The Settling Parties' assertions that the Motion and Limited Objection asks this Court to adjudicate issues other than the Rule 23 adequacy of the Assignments obscure the fact the Settling Parties are seeking this Court's approval of invalid Assignments so that the Plaintiffs may later institute separate litigation in an attempt to leverage nuisance payments from the D&O Carriers.

> ### 2. The Assignments are Illusory in that the Settlements Implicate the Wrong Policy Year

The purported settlement consideration offered by Welsh is illusory.  He is attempting to assign coverage under the 2011 D&O Policy which unquestionably does not cover the claims against him.

The Memoranda assert that the 2011 D&O Policy covers the claims against Welsh because Plaintiffs first named him in the Third Consolidated Class Action Complaint (ECF No. 86) in November 2011.  (D. Mem. at 8; Pl. Mem. at 18).  But the date Plaintiffs named Welsh is not controlling where, as here, the same Plaintiffs brought the same claims against MFGI – which is insured under the policy – in the September 2010 Consolidated Amended Class Action Complaint (ECF No. 50) based on *Welsh's conduct during the same period*.  Indeed, the September 2010 complaint repeatedly alleges that MFGI committed its wrongdoing acting "through" Welsh.  (*See, e.g., id.* at ¶¶ 87(d)-(f), 138-39, 177).  The claims against Welsh asserted in November 2011 would only be new "claims made" for purposes of implicating the 2011 D&O Policy if they were new claims by distinct plaintiffs, for distinct damages, based on distinct conduct, during a distinct period.  *See, e.g.*, *CheckRite Ltd., Inc. v. Illinois Nat. Ins. Co.*, 95 F. Supp. 2d 180 (S.D.N.Y. 2000) ("The Newman Class Action and the Second Amended

Complaint, respectively, involved distinct classes of people who sought to hold CheckRite liable for damages resulting from unlawful conduct during distinct periods of time").[10]

In a similar regard, the Settling Parties' claim that Welsh's claims fall under the 2011 D&O Policy are contrary to a coverage exclusion in that policy for claims arising from facts or circumstances subject to "any pending or prior litigation":

> Insurer will not be liable to make any payment of Loss in connection with a Claim ... arising out of, based upon or attributable to any pending or prior litigation as of the inception date of this Policy, or alleging or derived from the same or essentially the same facts or circumstances as alleged in such pending or prior litigation.[11]

Again, the claims against Welsh are the same claims by the same Plaintiffs for the same conduct at issue in the amended complaint filed against MFGI in 2010.  Courts in the district have found that such provisions exclude coverage in even broader circumstances than present here.  *See, e.g.*, *In Zunenshine v. Executive Risk Indem., Inc.*, No. 97 Civ. 5525(MBM), 1998 WL 483475, at *5 (S.D.N.Y. Aug. 17, 1998) (holding that "pending litigation" exclusion applied to claims by noteholders for misstatements in offering materials that were similar to public misstatements that were the subject of a prior shareholder action, even though claims and damages were different).  Applying the pending litigation exclusion here "is consistent with the purpose behind 'claims made' insurance, *i.e.*, to limit the insurer's liability to a fixed period of time." *Id*.

It is worth noting again that the D&O Carriers' filings before Judge Glenn reflect their

---

[10] *See also Home Ins. Co. of Illinois (New Hampshire) v. Spectrum Info. Techs., Inc.*, 930 F. Supp. 825 (E.D.N.Y. 1996) (each of three securities actions against insured was a separate "claim" within meaning of insured's directors' and officers' liability (D&O) insurance policies, notwithstanding that they were brought together in one suit and were later consolidated with earlier-filed claims, *where each represented discrete demand for money damages*).

[11] *See In re MF Global Holdings Ltd.*, No. 11-15059 (MG) (Bankr. S.D.N.Y.) ("MFGH Chapter 11 Cases") ECF No. 428-3 at 4-5.

belief that Welsh's claims fall under the 2010 policy year,[12] not under the 2011 policy year that
is the basis for the Customer Representatives' objection.

### 3.   Questions Concerning the Validity of the Assignments Should Not Be Left to Another Court in a Future Litigation

The Settling Parties advocate that this Court approve the Settlements and Assignments
without reaching the threshold question of whether the Assignments are facially valid and
provide any benefit to the class members.  They would have this Court ignore the issue and pass
it on to another court in a future litigation.[13]  Indeed, Plaintiffs actually assert that judicial
economy "contraindicate trying to address these issues."  (Pl. Mem. at 9).

The Customer Representatives believe the opposite is true.  Judicial economy is best
served by this Court deciding core issues raised by the approval motions that it has the ability
and authority to decide now, and neither Plaintiffs nor Defendants have provided any basis for
the Court to defer to another court in another litigation the basic question of whether Welsh is
assigning the correct policy year.

Plaintiffs repeatedly note that the D&O Carriers have not filed an objection to the
Assignment of Welsh's putative coverage under the 2011 Policy.  (Pl. Mem. at 5, 11).  This fact
is far from dispositive or even relevant.  Of course the carriers do not object.  They will wait
until the future litigation, when this matter is closed and the Assignments cannot be corrected, to
point out that the Assignments involve the wrong policy year and the D&O Policy's pending
litigation provision excludes coverage.

---

[12] *See*, *e.g.*, MFGH Chapter 11 Cases ECF No. 535 at 42.

[13] *See* Pl. Mem. at 11 ("The Court need not, and should not, tackle these issues"), at 3 fn. 5 ("Plaintiffs fully expect
that they will need to negotiate and/or litigate with the D&O Carriers to enforce their rights under the Assignment");
D. Mem. at 2 ("the Amended Settlements ... contemplates [sic] the filing by Futures Plaintiffs of a separate action to
adjudicate such rights"); at 11 ("the Amended Settlements expressly provide that the class plaintiffs will, if
necessary, 'promptly pursue claims against the Relevant Insurers' in separate actions").

### B.   The Customer Representatives' Interests in the D&O Policy Proceeds are Not Speculative

The Memoranda repeatedly assert that the Customer Representatives' interest in the D&O Policy proceeds is purely speculative (Pl. Mem. at 14, 16, 17, 19; D. Mem. at 4-5, 6), and rely primarily on Judge Glenn's April 2012 finding (at that time) that the customers did not have a "vested right" to policy proceeds (Pl. Mem. at 6 fn. 9, 13 fn. 13; D. Mem. at 1, 5, 7).  Their reliance on that decision is misplaced.

Judge Glenn's 2012 decision came at a time when both the MFGI SIPA proceeding and the Customer Class Action were in the nascent stage.  The SIPA Trustee had yet to issue his investigatory report on the collapse of MFGI and the defalcation of customer funds, Judge Marrero had yet to appoint the Customer Representatives to lead the class, and the Customer Representatives had yet to file their consolidated amended class action complaint.  Both proceedings are now on an entirely different footing.[14]

Most notably, on September 12, 2013, Judge Glenn approved MFGI's consent order with the CFTC obligating it to pay restitution to customers.  On November 6, 2013, Judge Glenn issued an order establishing that there is a $560 million shortfall in customer funds and authorizing the SIPA Trustee to advance MFGI general estate assets to pay customers in exchange for assignment and subrogation of customers' net-equity claims.  Judge Marrero approved the consent order and settlement on November 8, 2013 and March 12, 2014, respectively.[15]  Consequently, the SIPA Trustee is currently utilizing estate property to close the shortfall, and (at present) the MFGI estate has realized or will shortly realize $548.4 million in

---

[14] Moreover, the language cited by the Settling Parties is lifted from a portion of Judge Glenn's decision specifically addressing an argument – not made by the Customer Representatives – that rights to insurance proceeds vested in the customers under Section 3420 of the New York State Insurance Law at the moment their funds were not returned upon MFGI's collapse.  *See* MFGH Chapter 11 Cases ECF No. 619 at 27-28.

[15] *See In re DeAngelis v. Corzine, et al.*, No. 11-7866-VM (S.D.N.Y.) ("*DeAngelis*") ECF Nos. 575, 697.

actual damages.[16]

The D&O Policies provide coverage for directors and officers of MFGI and MFGH for any wrongful act, including any "actual or alleged act, error ... or breach of duty."  On February 11, 2014, Judge Marrero issued an opinion sustaining the Customers Representatives' claims against certain officers and directors for aiding and abetting violations of the Commodity Exchange Act, aiding and abetting breach of fiduciary duty, negligence, conversion, aiding and abetting conversion, and tortious interference with contract.[17]  In so doing, Judge Marrero found that:

> [T]he D&O Defendants cannot overcome the inconvenient reality that the facts contained in the CAC, if true, give rise to two reasonable inferences: that a massive collapse such as that which MF Global experienced does not occur in a vacuum, nor in a corporate environment characterized by diligent management and vigilant oversight by officers and directors; and that *in this case senior MF Global and MFGI officers failed in properly exercising their legal responsibilities to MFGI's customers*.[18]

In his April 2012 opinion, Judge Glenn noted that the D&O Policies provide entity coverage only for indemnification and for securities claims, and thus it was unlikely that MFGI would need coverage as a defendant in a securities class action.  However, as assignee and subrogee of the victimized customers' sustained claims for covered wrongful acts, MFGI now unquestionably has claims to proceeds from the D&O Policies.  Moreover, because they seek recoupment of missing customer funds, pursuant to 17 C.F.R. § 190.08(a)(1)(ii)(J), these claims arguably have priority over the Individual Defendants to policy proceeds that are MFGI property.

---

[16] The $560 million in established damages was subsequently reduced by a $11.6 million net-settlement approved on March 14, 2014 among the SIPA Trustee, the customer plaintiffs and the CME Group Inc.

[17] *See DeAngelis* ECF No. 641 at 73.

[18] *See DeAngelis* ECF No. 641 at 8-9 (emphasis added).

C.     **The Customer Representatives Have an Interest in the this Action Sufficient To Intervene Under Either Rule 24(a) Or Rule 24(b)**

As described above and in the Motion and Limited Objection, the Customer Representatives have an interest in the D&O Policy that is purportedly subject to the Assignments, and that interest will be sufficiently prejudiced by the Settlements to provide the basis for the Customer Representatives to intervene as a matter of right, pursuant to Rule 24(a), or, alternatively, permissibly to intervene pursuant to Rule 24(b).[19]

Under Rule 24(a), the Customer Representatives' interest in the policies is an "interest relating to the property or transaction that is the subject of th[is] action." *MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n Inc.*, 471 F.3d 377, 389 (2d Cir. 2006). The Settling Parties cannot plausibly argue otherwise as they claim that an interest in the policies is adequate to extinguish their claims against Welsh. Under Rule 24(b), this interest represents a "share[d] question of law or fact in common" between the Customer Representatives and the Settling Parties. *Louis Berger Grp., Inc. v. State Bank of India*, 802 F. Supp. 2d 482, 488 (S.D.N.Y. 2011) (citation omitted). The Settling Parties have expended pages of argument entreating the Court to allow Plaintiffs the opportunity later to litigate their rights to the very proceeds that Judge Glenn has already recognized may be used to pay claims by and against the MFGI and MFGH estates, including the Customer Representatives' claims. No one can plausibly argue that a common question of law or fact does not exist here. To the extent that Rule 24 intervention requires a shared interest or a shared question of law or fact, the Customer Representatives have demonstrated that requirement.

Moreover, the Court should assess the "interest" element of Rule 24 in a "'flexible and discretionary' way" (*Windsor*, 797 F. Supp. 2d at 323-24) given that courts have characterized

---

[19] Defendants do not challenge the Customer Representatives' request for permissive intervention pursuant to Rule 24(b), instead contesting only the Rule 24(a) requirements.

this requirement as "minimal" (*U.S. Polo Ass'n*, 2013 WL 837565, at \*8).  Finding a common question of law or fact is a low bar as courts have held that Rule 24(b) should "be liberally construed in favor of intervention."  *Id.* at \*7.

Against this highly discretionary and permissive legal framework, the Settling Parties marshal a variety of arguments to contend the Customer Representatives have no interest in the insurance policies Welsh seeks to assign.  Each of these arguments is unavailing.

### 1.    The Customer Representatives' Interests are Neither Remote, Speculative, Nor Contingent

Judge Glenn has recognized that the estate has an interest in the proceeds of the policies Welsh seeks to assign to extinguish Plaintiffs' claims against him, and the Customer Representatives have an interest in securing those proceeds to make up for the shortfall in estate funds.  That interest is heightened by the fact that the D&O Policy is a wasting policy.  The settling parties contend that this interest is too remote, speculative or contingent.[20]  Their reasoning exhibits a logical flaw concerning the nature of an interest in any policy proceeds and a fundamental misunderstanding of the Bankruptcy Court's April 10, 2012 opinion (*In re MF Global Holdings Ltd.*, 469 B.R. 177 (S.D.N.Y. Bankr. 2012)) upon which they rely.

The Settling Parties' argument, if accepted, that the Customer Representatives cannot have an interest in the proceeds to the subject policies because no judgment on them has been adjudicated applies with equal force to the Settlements.  The Settling Parties repeatedly state that they are asking the Court to sign-off on the right to sue for proceeds that may – or, as they acknowledge, may not – be available under the policies assigned to Plaintiffs by Welsh.  Plaintiffs do not have a judgment for any portion of any policy proceeds, a condition they presume to apply to the Customer Representatives.  Plaintiffs' interest in the subject policies is

---

[20] *See, e.g.*, Pl. Mem. at pp. 8-9, 16-17; D. Mem. at pp. 4-7, 8-9, 10-11.

certainly *no greater* than the Customer Representatives' interest.[21]  Yet, they contend that their interest, via the Welsh Assignments, is suitable for approval of a class action settlement under the fair, reasonable and accurate standard.[22]  At the same time, they argue the Customer Representatives' similar (or greater) interest in the same policy proceeds is insufficient for Rule 24 intervention, under a discretionary and liberal standard.  The Settling Parties cannot have it both ways.

It should also be noted that the Settlements expressly state that the Assignments may have no value whatsoever.  Thus, it is possible that Plaintiffs and the class are releasing their claims against Welsh for nothing.  Setting aside whether that qualifies as consideration that is fair, adequate and reasonable for Rule 23 settlement approval, it at least illustrates that establishing an "interest" in the proceeds of the subject policies is a low threshold.

The Settling Parties also improperly rely on Judge Glenn's April 10, 2012 opinion to suggest the Customer Representatives have no interest in the policy proceeds.  The court in that opinion was addressing the limited issue of whether officers and directors of MFGI and MFGH should receive defense costs under the policy (*see MF Global*, 469 B.R. at 197) and was doing so at the nascent stage of the Chapter 11 cases and the Customer Action.  Indeed, 14 months later, Judge Glenn declined without prejudice a motion to advance more defense costs.

Viewed in the correct context, the April 2012 opinion does not stand for the proposition that the Customer Representatives do not and can never have an interest in D&O Policy

---

[21] At present, Plaintiffs' interest in the policy proceeds is less than the Customer Representatives' interest as the Bankruptcy Court has already stated that the proceeds of the policies belong to the MFGI and MFGH estates, whereas no court has considered or addressed whether Welsh has any interest in the proceeds (that could be assigned to Plaintiffs or anyone else).

[22] *See, e.g., In re Currency Conversion Fee Antitrust Litig.*, 263 F.R.D. 110, 122 (S.D.N.Y. 2009) *aff'd, sub nom., Priceline.com, Inc. v. Silberman*, 405 F. App'x 532 (2d Cir. 2010); *In re Luxottica Grp. S.p.A. Secs. Litig.*, 233 F.R.D. 306, 310 (E.D.N.Y. 2006); *In re Indep. Energy Holdings PLC Sec. Litig.*, No. 00 Civ. 6689(SAS), 2003 U.S. Dist. LEXIS 17090, at *9 (S.D.N.Y. Sept. 29, 2003).

proceeds.[23]

### 2.   The Customer Representatives Have Standing to Intervene and Object to the Settlements

Plaintiffs incorrectly argue that the Customer Representatives do not have standing to intervene.  In the first place, Plaintiffs err in that they rely on case law addressing objections by a non-settling *party* to litigation.[24]  The Customer Representatives are seeking to intervene pursuant to the Court's discretionary authority under Rule 24; not as an already present party to a lawsuit who is objecting to a co-defendant's agreement to settle.  In any event, the substantive element of Plaintiffs' argument rests on their claim that the Customer Representatives' interest in the subject policies is too contingent and remote, which fails for the reasons discussed above.  Further, Judge Glenn found the Customer Representatives had standing to challenge the original

---

[23] The cases relied upon by Defendants (D. Mem. at 6-7) to suggest that the Customer Representatives' interest in the Welsh Assignments is contingent and unsuitable for intervention are inapposite.  In *Washington Electric Cooperative, Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 922 F.2d 92, 97 (2d Cir. 1990), intervenors sought to inject additional claims that would have expanded the scope and complexity of the litigation beyond the straightforward contract dispute alleged in the complaint.  The intervenor in *Restor-a-Dent Dental labs., Inc. v. Certified Alloy Prods., Inc.*, 725 F.2d 871, 874-75 (2d Cir. 1984), sought permission, prior to trial, to submit interrogatories to the jury to assist with any potential indemnification issues should the defendant (the intervenor's insured) lose.  In *Katz v. Berisford International PLC*, No. 96 CIV. 8695(JGK), 2000 WL 1760965, at *1 (S.D.N.Y. Nov. 30, 2000), the intervenors wished to modify a judgment in an effort to protect their interests regarding claims against the defendant brought in another suit.  "Each intervention case is highly fact specific and tends to resist comparison to prior cases," *Aristocrat Leisure Limited v. Deutsche Bank Trust Co. Americas*, 262 F.R.D. 348, 352 (S.D.N.Y. 2009), and Defendants' cases present instances where the intervenors were seeking to inject claims and issues that would have greatly complicated the underlying matters.  In stark contrast, the Customer Representatives merely request that the Court consider their objection to one element of the Settlements as part of the Court's regular Rule 23 analysis.

Similarly inapposite are cases relied upon by Plaintiffs (Pl. Mem. at 15-16) where injured parties seek to intervene in disputes on coverage limitations between insureds and insurers.  *See Liberty Mut. Ins. Co. v. Treesdale, Inc.* 419 F.3d 216 (3d Cir. 2005); *Certain Underwriters at Lloyds, London v. Four J's Cmty. Living Ctr., Inc.*, No. H-11-0713, 2011 WL 6026689 (S.D. Tex. Dec. 2, 2011); *Gen. Star Indem. Co. v. V.I. Port Auth.*, 224 F.R.D. 372 (D.V.I. 2004); *In re Healthsouth Corp. Ins. Litig.*, 219 F.R.D 688 (N.D. Ala. 2004).  Here the Customer Representatives are only seeking to resolve whether the Assignments implicate the correct policy year and consequently whether the Assignments underlying the Settlements are valid.  Also inapposite is *H.L. Hayden Co. v. Siemens Medical Systems, Inc.*, 797 F.2d 85 (2d Cir. 1986), which concerned an attempt by the State of New York to modify a protective order for discovery purposes.

[24] *In re NASDAQ Mkt. Makers Antitrust Litig.*, 176 F.R.D. 99, 99 (S.D.N.Y. 1997) (opposition to preliminary class action settlement by non-settling defendants); *Zupnick v. Fogel*, 989 F.2d 93, 98 (2d Cir. 1993) (appeals by non-settling defendants to class action settlement); *Agretti v. ANR Freight Sys., Inc.*, 982 F.2d 242, 247 (7th Cir. 1992) (same).

request for the advance of defense costs from the policies.  *See, e.g.*, 469 B.R. at 190.  The

Customer Representatives possess a genuine interest in the proceeds of the policies that are the

subject of the Assignments underlying the Settlements.  This interest is sufficient to intervene

under either Rule 24(a) or (b).

### D.    The Settling Parties' Other Challenges to the Customer Representatives' Motion and Limited Objection are Without Merit

The Settling Parties devote the bulk of their arguments to challenging the Customer

Representatives' Rule 24 interest in this action, arguments which fail for the reasons discussed

above.  Their arguments pertaining to other Rule 24 requirements are equally unavailing.[25]

### 1.    The Customer Representatives Have Complied with the Technical Requirements of Rule 24

Plaintiffs assert the Customer Representatives failed to comply with the technical

requirements for intervention.  Where, as here, "the position of the movant is apparent from other

filings and where the opposing party will not be prejudiced, Rule 24(c) permits a degree of

flexibility with technical requirements."  *Tachiona ex rel. Tachiona v. Mugabe*, 186 F. Supp. 2d

383, 393 n.8 (S.D.N.Y. 2002), *aff'd in part, rev'd in part on other grounds,* 386 F.3d 205 (2d

Cir. 2004) (citing *Werbungs Und Commerz Union Austalt v. Collectors' Guild, Ltd.*, 782 F.

Supp. 870, 874 (S.D.N.Y. 1991); *accord E.E.O.C. v. Int'l Ass'n of Bridge, Structural &

Ornamental Ironworkers, Local 580*, 139 F. Supp. 2d 512, 519 (S.D.N.Y. 2001).[26]  The

Customer Representatives' submission clearly sets out the basis for intervening and succinctly

---

[25] No party has challenged the Rule 24(a) element that the Customer Representatives' interests are not adequately represented by the parties here.

[26] Plaintiffs' reliance on this Court's ruling in *S.E.C. v. Bear Stearns & Co. Inc.*, No. 03 Civ.2937 WHP, 2003 WL 22000340, at *4 (S.D.N.Y. Aug. 25, 2003), is misplaced.  While the Court noted the movants' failure there to provide a pleading with their Rule 24 motion, it explained that "it is the near-certainty of undue delay, complexity and confusion that would result were intervention permitted, as well as the adequacy of the SEC's representation of the public's interest and the availability of alternative relief and commentor status for the movants, that this Court relies upon in reaching its determination to deny the motion."  *Id.*  Those concerns are not present here as the Customer Representatives present a straightforward objection to the Settlements which the Court may assess as part of its regular Rule 23 review process in determining whether the Settlements are fair, adequate and reasonable.

sets forth the nature of their interest and objection.  Nor do Plaintiffs contend that they have

suffered any prejudice.  There is no technical basis for denying the motion to intervene.

### 2.        The Customer Representatives' Motion to Intervene is Timely

The Settling Parties argue at cross-purposes on the timeliness of the Customer

Representatives' Motion and Limited Objection: Plaintiffs contend the motion is premature,

while Defendants assert the motion is late.  Neither position is valid.

Plaintiffs' assertion (Pl. Mem. at 11-12) that the motion is premature because the

Customer Representatives have not obtained a judgment for any proceeds from the policies

Welsh seeks to assign is merely a "repackaging" of their argument that the Customer

Representatives have no interest in this action, which fails for the reasons discussed above.

Defendants assert (D. Mem. at 4 n.2) that the motion is untimely because the Settlements are

amendments of prior settlements filed in September 2013.  That argument overlooks the obvious

fact that no party is seeking approval of the earlier proposed settlements.  It is the current

Settlements that are the subject of the motions for preliminary approval, and it is those

submissions that have triggered the Customer Representatives' timely Rule 24 motion.

Accordingly, the timeliness element for intervention under Rules 24(a) and (b) are satisfied.

*        *        *

In sum, the Customer Representatives have timely filed a motion that complies with the

requirements for intervention under either Rule 24(a) or (b).  The Customer Representatives have

demonstrated that they have an interest in the Settlements, which interest also represents a shared

question of law or fact.  Further, that interest will be impaired or impeded absent intervention.

The Customer Representatives have also shown that intervention will not delay or prejudice the

parties here.  Rather, it is a regular (and required) feature of the Rule 23 approval process for the

Court to consider an objection, such as the Customer Representatives' objection here, when

16

deciding approval of a class action settlement.

In fact, the Customer Representatives' motion has already yielded an important clarification on the terms of the Settlements.  Responding to the Customer Representatives' objection, the Settling Parties explain that Welsh does not purport to assign any interest in the E&O Policy (*see* Pl. Mem. at 5; D. Mem. at 1), although the plain language of the Settlements state that Welsh assigns his rights to "*any insurance policy* … issued by U.S. Specialty Insurance Company ("U.S. Specialty") *and/or other companies* …."  *See* ECF Nos. 163-1 ¶ 3 (b)(ii); 168-1 ¶ 3 (b)(ii) (emphasis added).  Absent the Customer Representative's intervention, this important limitation on the scope of the Settlements would not be apparent.[27]

Accordingly, the Court should grant the motion to intervene and consider the Customer Representatives' well-reasoned objection to one aspect of the Settlements.  Addressing this issue now, rather than 'kicking it down the lane' as the Settling Parties suggest, is efficient and will avoid the needless waste and costs associated with litigating the coverage under the 2011 D&O Policy at a later date before another court.

## CONCLUSION

For the foregoing reasons and the reasons in the Motion and Limited Objection (ECF No. 174), the Customer Representatives respectfully request that the Court grant their request to intervene and sustain their objection to Welsh's Assignment of rights to the 2011 D&O Policy to Plaintiffs.

---

[27] At a minimum, the Settlements should be revised to make this limitation express.

Dated:  May 16, 2014

                                          Respectfully submitted,

**ENTWISTLE & CAPPUCCI LLP**               **BERGER & MONTAGUE, P.C.**


 _/s/_ Andrew J. Entwistle                  _/s/_ Merrill G. Davidoff
Andrew J. Entwistle                        Merrill G. Davidoff
Joshua K. Porter                           Michael Dell'Angelo
280 Park Avenue, 26th Floor West           1622 Locust Street
New York, New York 10017                   Philadelphia, Pennsylvania 19103
Telephone:  (212) 894-7200                 Telephone: (215) 875-3000
Facsimile:  (212) 894-7272                 Facsimile: (215) 875-4604

   *Co-Lead Counsel for the Lead Plaintiffs in the MF Global Inc. Customer Class Action*