UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| *In Re: Platinum And Palladium Commodities Litigation*<br><br>This Document Relates To:<br><br>    Platinum/Palladium Futures Action | MASTER FILE<br>No. 10 Civ. 3617 (WHP) |

**DECLARATION OF CHRISTOPHER LOVELL, ESQ. IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**

CHRISTOPHER LOVELL, pursuant to 28 U.S.C. §1746, declares as follows:

1. I am a partner in Lovell Stewart Halebian Jacobson LLP ("Lovell Stewart") and respectfully submit this declaration in order to demonstrate the procedural fairness of the proposed settlement by Futures Plaintiffs and the Futures Class in this action with the SIPA Trustee for the liquidation of named Defendant MF Global, Inc. ("Settling Defendant") (the "MF Global Settlement").

2. A true and correct copy of the Stipulation and Agreement of Settlement, together will all exhibits thereto ("Settlement Agreement") is attached as Exhibit 1 hereto. The specific exhibits to the Settlement Agreement include the following:

Exhibit 1-A, the Claim Stipulation being presented to the Bankruptcy Court for approval that grants Futures Plaintiffs and the Futures Class a single general unsecured allowed claim in the amount of $18,753,571.43 against the MFGI Estate in the MFGI SIPA liquidation (the "Allowed Claim");

Exhibit 1-B, the Automatic Stay Stipulation submitted to the Bankruptcy Court to modify the automatic stay for the limited purpose of permitting Insurer M F Global Assurance, the E&O carrier, to make a settlement payment of $4,672,500 as per the Settlement Agreement;

1

Exhibit 1-C, the Welsh Futures Assignment Agreement, in which MF Global Holdings, Ltd. ("MFGH") will pay $800,000 in exchange for Futures Plaintiffs agreement to assign certain rights in relation to their anticipated Judgment against Defendant Joseph Welsh as set forth in the Welsh Futures Judgment and Welsh Assignment agreement previously executed with defendant Welsh and the Futures Class to MFGH;

Exhibit 1-D, the Backstop Agreement executed with MFGH[1];

Exhibit 1-E, the proposed Scheduling Order;

Exhibit 1-F, the proposed Final Judgment;

Exhibit 1-G, the proposed Long Form Notice (for mailing);

Exhibit 1-H, the proposed Short Form Notice (for publication);

Exhibit 1-I, the Amended [proposed] Plan of Allocation;[2]

Exhibit 1-J, the Escrow Agreement; and

Exhibit 1-K, the proposed Proof of Claim.

3. Attached as Exhibit 2 hereto is the proposed Request for Exclusion form.

4. I led and personally conducted with assistance from other attorneys in my office the negotiations for the Futures Plaintiffs which produced the Settlement Agreement.

5. **Arms-Length**. The negotiations were entirely non-collusive and strictly arms-length.

6. **Experience**. At the times of the negotiations of the proposed settlement, I was experienced in litigating claims under the Commodity Exchange Act ("CEA"), 7 U.S.C. §§ 1, *et*

---

[1] Footnote 2 of the Backstop Agreement has been redacted for public filing purposes because of non-public confidential information contained therein.

[2] The Amended Proposed Plan of Allocation annexed to this Lovell Decl. has been corrected and substituted to remove typographical errors in paragraph lettering and references that were in the proposed Plan but the Plan remains the same in all other respects.

*seq*. and the Sherman Antitrust Act ("Sherman Act"), 15 U.S.C. §1 *et seq*. This includes trying the first successful manipulation claim under the CEA as amended in 1974, *Strobl v. New York Mercantile Exch.,* 582 F. Supp. 770 (S.D.N.Y. 1984), *aff'd,* 768 F.2d 22 (2d Cir. 1985), *cert. denied sub nom., Simplot* v. *Strobl,* 474 U.S. 1006 (1985), and obtaining, as sole lead or co-lead counsel, the first, second and third largest manipulation class action recoveries under the CEA, and obtaining what was at the time the largest class action recovery in the history of the antitrust laws. *In re NASDAQ Market-Makers Antitrust Litigation*, 187 F.R.D. 465, 471 (S.D.N.Y. 1998).

7. **Well-Informed**. My firm had received and reviewed, before agreeing to the proposed Settlement, what I am informed was and believe to be (a) more than 250,000 pages of documents produced by previously settling Defendants; (b) deposition transcripts of approximately twenty-three persons that were produced by the Commodity Futures Trading Commission ("CFTC") in response to the Futures Plaintiffs' subpoena; (c) extensive data produced by the New York Mercantile Exchange ("NYMEX"), including the NYMEX's "street book," which provides a detailed record of all trades in NYMEX platinum and palladium futures contracts; and (d) numerous MF Global documents including tape recordings of conversations excerpts from a few of which were quoted in the complaint.

8. In addition to this formal discovery, we had also conducted extensive investigation. We also engaged in extensive negotiation with the Settling Defendant herein, and participated in several mediation sessions with the Settling Defendant.

9. Further, we consulted with outside bankruptcy counsel regarding the MFGI bankruptcy, the likelihood of recovery from the MFGI Estate, and numerous procedural and substantive matters related to the MF Global Settlement. We also reviewed various filings and financial documents produced by Settling Defendant relating to the bankruptcy, obtained and

reviewed other documents, and took other steps to learn about or analyze the strengths and weaknesses of the claims.

Dated:  New York, New York
        October 29, 2014

                                                */s/ Christopher Lovell*
                                                Christopher Lovell