UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| *In Re: Platinum And Palladium Commodities Litigation*<br><br>This Document Relates To:<br><br> Platinum/Palladium Physical Class | MASTER FILE<br>No. 10 Civ. 3617 (WHP)<br><br>**JURY TRIAL DEMANDED**<br><br>**Plaintiffs' Memorandum Of Law In Support Of Motion For Preliminary Approval Of MF Global Class Action Settlement** |

## TABLE OF CONTENTS

I.   Introduction ........................................................................................................... 2

   A.  Overview of the Settlement............................................................................... 2

   B.  Stipulation of Settlement ................................................................................. 4

II.   Background ........................................................................................................... 6

   A.  Physicals Plaintiffs' allegations ........................................................................ 6

   B.  Procedural History .......................................................................................... 7

   1.  Motion practice and discovery ........................................................................ 7

   2.  MF Global bankruptcies and SIPA liquidation............................................... 11

   3.  Extensive arm's-length settlement discussions............................................... 13

   C.  The Settlement Agreement ............................................................................. 15

   1.  The Physicals Class........................................................................................ 15

   2.  Consideration to Physicals Class .................................................................... 17

   3.  Release and covenant not to sue ..................................................................... 20

   4.  The proposed Plan of Allocation .................................................................... 20

   5.  The proposed notice plan provides the best notice practicable....................... 20

III.   Argument ........................................................................................................... 21

   A.  The proposed settlement is fair, reasonable, and adequate ........................... 22

   1.  The Settlement is the result of arm's-length negotiations between experienced counsel 23

   2.  The proposed settlement is substantively fair................................................. 25

   a.  Complexity, expense, and likely duration of the litigation ........................... 25

   b.  Physicals Class's reaction to the settlement ................................................. 26

   c.  Stage of the proceedings and amount of discovery completed ...................... 26

   d.  Risks of proving liability, damages, and maintaining a class......................... 27

   e.  Settling Defendant's ability to withstand a greater judgment ........................ 32

   f.  Range of reasonableness of settlement in light of best possible recovery and attendant litigation risks............................................................................................................... 33

   B.  The proposed notice plan provides the best notice practicable under the circumstances, comports with due process, and comports with Rule 23(c) ........................................ 34

   C.  Certification of a settlement class is proper ................................................... 35

1.  The Physicals Class satisfies Rule 23(a)........................................................ 36

a.  The numerosity requirement is satisfied ...................................................... 36

b.  The commonality requirement is satisfied.................................................... 37

c.  The typicality requirement is satisfied ......................................................... 37

d.  The adequacy requirement is satisfied.......................................................... 38

2.  The Physicals Class satisfies Rule 23(b)(3).................................................... 38

a.  Common questions of law and fact predominate........................................... 39

b.  A class action is the superior method to adjudicate these claims ................... 39

   D.  The Court should appoint lead counsel as class counsel because the Court has

previously found they satisfy Rule 23(g)..................................................................... 40

IV.   Conclusion............................................................................................................. 41

# TABLE OF AUTHORITIES

## Cases

*Amchem Prods. v. Windsor*,
521 U.S. 591 (1997) .......................................................................................................... 39

*Baffa v. Donaldson, Lufkin & Jenrette Secs. Corp.*,
222 F.3d 52 (2d Cir. 2000) ............................................................................................... 38

*Clark v. Ecolab, Inc.*,
2009 U.S. Dist. LEXIS 108736 (S.D.N.Y. Nov. 17, 2009) ................................................ 22

*Cohen v. J.P. Morgan Chase & Co.*,
262 F.R.D. 153 (E.D.N.Y. 2009) ...................................................................................... 36

*Cordes & Co. Financial Services, Inc. v. A.G. Edwards & Sons, Inc.*,
502 F.3d 91 (2d Cir. 2007) ............................................................................................... 39

*Detroit v. Grinnell*,
495 F.2d 448 (2d Cir. 1974) ....................................................................................... 22, 33

*Gentry v. Siegel*,
668 F.3d 83 (4th Cir. 2012) .............................................................................................. 27

*Hecht v. United Collection Bureau, Inc.*,
691 F.3d 218 (2d Cir. 2012) ............................................................................................. 35

*Hicks v. Morgan Stanley & Co.*,
2005 U.S. Dist. LEXIS 24890 (S.D.N.Y. Oct. 24, 2005) ............................................ 33, 34

*In re Advanced Battery Tech., Inc. Sec. Litig.*,
298 F.R.D 171 (S.D.N.Y. 2014) ...................................................................................... 21

*In re Am. Int'l Group Sec. Litig.*,
689 F.3d 229 (2d Cir. 2012) ................................................................................. 16, 35, 36

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,
2006 U.S. Dist. LEXIS 17588 (S.D.N.Y. Apr. 6, 2006) .................................................... 23

*In re Bear Stearns Cos.*,
909 F. Supp. 2d 259 (S.D.N.Y. 2012) .............................................................................. 33

*In re Blech Sec. Litig.*,
187 F.R.D. 97 (S.D.N.Y. 1999) ........................................................................................ 40

*In re Currency Conversion Fee Antitrust Litig.*,

    2006 U.S. Dist. LEXIS 81440 (S.D.N.Y. Nov. 8, 2006) ............................................. 22, 25, 26

*In re Currency Conversion Fee Antitrust Litig.*,

    263 F.R.D. 110 (S.D.N.Y 2009) ................................................................................. 28, 33

*In re Drexel Burnham Lambert Group*,

    960 F.2d 285 (2d Cir. 1992) ............................................................................................ 32

*In re Giant Interactive Grp., Inc. Sec. Litig.*,

    279 F.R.D 151 (S.D.N.Y. 2011) ..................................................................................... 23

*In re Global Crossing Sec. and ERISA Litig.*,

    225 F.R.D. 436 (S.D.N.Y. 2004) .................................................................................... 32

*In re Initial Public Offering Sec. Litig.*,

    260 F.R.D. 81 (S.D.N.Y. 2009) ........................................................................... 36, 37, 39

*In re Initial Public Offering Securities Litig.*,

    226 F.R.D. 186 (S.D.N.Y. 2005) .............................................................................. 16, 23

*In re NASDAQ Market-Makers Antitrust Litig.*,

    169 F.R.D. 493 (S.D.N.Y. 1996) ................................................................................... 37

*In re Natural Gas Commodities Litig.*,

    03-cv-6186, Order dated June 15, 2007 (S.D.N.Y.) ..................................................... 17

*In re Natural Gas Commodities Litig.*,

    231 F.R.D. 171 (S.D.N.Y. 2005) ................................................................................... 17

*In re PaineWebber Ltd. P'ships Litig.*,

    147 F.3d 132 (2d. Cir. 1998) ......................................................................................... 21

*In re Platinum & Palladium Commodities Litig.*,

    2014 U.S. Dist. LEXIS 96457 (S.D.N.Y. July 15, 2014) ................................... passim

*In re Platinum and Pall. Comm. Litig.*,

    2010 U.S. Dist. LEXIS 145183 (S.D.N.Y. Nov. 30, 2010) ..................................... 8

*In re Platinum and Pall. Comm. Litig.*,

    828 F. Supp. 2d 588 (S.D.N.Y. 2011) ...................................................................... 8

*In re Sumitomo Copper Litig.*,

    182 F.R.D. 85 (S.D.N.Y. 1998) .................................................................................... 17

*In re Sumitomo Copper Litig.*,
   189 F.R.D. 274 (S.D.N.Y. 1999) ............................................................ 17, 22, 32

*In re Top Tankers, Inc. Sec. Litig.*,
   2008 U.S. Dist. LEXIS 58106 (S.D.N.Y. July 31, 2008) ........................ 27

*In re Traffic Executive Ass'n*,
   627 F.2d 631 (2d Cir. 1980) ................................................................... 22

*In re Warner Chilcott Ltd. Sec. Litig.*,
   2008 U.S. Dist. LEXIS 99840 (S.D.N.Y. Nov. 20, 2008) ...................... 21

*In re Worldcom, Inc.*,
   347 B.R. 123 (Bankr. S.D.N.Y. 2006) .................................................... 32

*McReynolds v. Richards-Cantave*,
   588 F.3d 790 (2d Cir. 2009) .................................................................. 34, 35

*Menkes v. Stolt-Nielsen S.A.*,
   270 F.R.D. 80 (D. Conn. 2010) .............................................................. 33

*Morris v. Affinity Health Plan, Inc.*,
   859 F. Supp. 2d 611 (S.D.N.Y. 2012) .................................................... 32

*Sullivan v. DB Investments, Inc.*,
   667 F.3d 273 (3d Cir. 2011) ................................................................... 16

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005) ................................................................. 22, 23, 25, 35

**Statutes**

15 U.S.C. §§ 1 *et seq.* ................................................................................. 6

18 U.S.C. §§ 1961 *et seq.* ........................................................................... 6

Federal Rule of Civil Procedure 23 .......................................................... passim

Physicals Plaintiffs, F.W. DeVito, Inc. Retirement Plan Trust, Frederick and Mary DeVito, David W. DeVito and Russell W. Andrews, submit this Memorandum and the accompanying Declaration of John Lowther, Esq. in support of their motion for preliminary approval of the Stipulation and Agreement of Settlement ("Settlement")[1], executed on October 21, 2014. The Settlement is between the Physicals Plaintiffs and the Physicals Class, James W. Giddens, as trustee (the "Trustee") for the liquidation of MF Global Inc. ("MFGI") under the Securities Investor Protection Act (the "SIPA Proceeding"), MF Global Holdings Ltd. ("MFGH"), and MFG Assurance Company Ltd. (the "Insurer").[2] This Settlement is separate from, and made in addition to, the prior settlement by Plaintiffs with the Non-Settling Defendants in the Physicals Action, the final approval of which is pending before this Court.[3] A copy of the Settlement is attached as Exhibit MFG to the Declaration of John Lowther In Support Of Preliminary Approval Of MF Global Class Action Settlement ("Lowther Decl."), filed concurrently herewith, and exhibits pursuant to the Settlement are attached thereto as Exhibits MFG-1 through MFG-12.

---

[1] Capitalized terms are used as defined in the Stipulation and Agreement of Settlement. Lowther Decl., Ex. MFG. The terms of the Stipulation and Agreement of Settlement shall control over any summary or description of the terms of the Stipulation and Agreement of Settlement contained in this Motion.

[2] Defendant MF Global Inc. filed a suggestion of bankruptcy in the Physicals Action on November 8, 2011. ECF No. 75.

[3] The Court preliminary approved the Moore Defendants and Joseph Welsh Settlement Agreement on July 15, 2014. The Fairness Hearing is set for February 13, 2015. The Court previously certified the Physical Class for settlement purposes and appointed Doyle Lowther LLP as lead counsel for Physical Plaintiffs and the Physical Class. ECF No. 213.

## I.      Introduction

### A.      Overview of the Settlement

Physicals Plaintiffs seek preliminary approval of a Settlement reached with the Trustee for the liquidation of the remaining defendant in the platinum and palladium commodities litigation. After three years of litigation, evidence and document discovery, multiple in-person and telephonic mediation sessions before The Honorable Daniel Weinstein (Ret.), and many months of contentious and complex settlement negotiations, the Physicals Plaintiffs, MFGI, MFGH and the Insurer have reached a proposed Settlement.

The proposed Settlement has two component parts. First, under the Settlement, the Physicals Class receives cash in the amount of $577,500 from the Insurer, and receives $2,317,857.14 in an allowed general creditor claim ("Allowed Claim") in the MFGI SIPA Proceeding. The Physicals Class has the option to retain the Allowed Claim, assign, sell and transfer the Allowed Claim to MFGH, or sell the Allowed Claim to a third party. Second, the Physicals Plaintiffs also obtain a cash payment of $200,000 from MFGH in exchange for assigning their claims against defendant Joseph Welsh to MFGH. In addition, the Parties agreed to a limited relief from the bankruptcy stay to consummate the Settlement.

Taken together, the relief from the bankruptcy stay, the cash payments from the Insurer, the Allowed Claim, and the Welsh assignment cash payment constitute the stipulated Settlement's consideration to the Physicals Class in exchange for a release of all claims and assignment of Physicals Class' Welsh claims to MFGH. The Settlement resolves the litigation against MFGI, the remaining defendant Welsh in the district court action, and the Physicals Plaintiffs' claim filed in the SIPA proceeding.

The Settlement includes all the hallmarks of a fair, reasonable, and adequate settlement of a complex commodities class action litigation. Settlement negotiations proceeded in good faith, were conducted at arm's length by highly experienced class counsel, were devoid of collusion, and lasted many months. These negotiations included two mediation sessions with Retired Judge Weinstein in New York, multiple telephonic conferences with the mediator as well as an overview and analysis by Judge Weinstein's economics expert, and numerous follow-on negotiations between formal mediation sessions. Despite the Parties' substantial efforts to resolve this dispute, formal initial mediation discussions failed to produce a settlement. Only after building upon the groundwork from the two mediation sessions did counsel, through additional negotiations, reach agreement to resolve the litigation.

Physicals Plaintiffs' decision to settle was informed by the extensive record in this case, including more than 250,000 pages of document discovery, numerous subpoena responses from third parties, twenty-three fact depositions, consultations with damages experts, and experts on the platinum and palladium markets. Physicals Plaintiffs also relied on other facts and data, such as the bankrupt status of MF Global and the attendant reports and filings therein, and the risks and uncertainty of litigation against an entity who was in liquidation and faced thousands of claims. Based on the totality of circumstances, Physicals Lead Counsel believes the Settlement is in the best interest of Physicals Plaintiffs and the Physicals Class. Accordingly, Physicals Plaintiffs, on behalf of themselves and the proposed Physicals Class, respectfully request the Court grant preliminary approval of the Settlement and enter the [Proposed] Order Preliminarily Approving Proposed MF Global Settlement, Scheduling Hearing for Final Approval Thereof, and Approving the Proposed Form and Program of Notice to the Class ("Scheduling Order"), attached as Exhibit MFG-7.

At the Fairness Hearing, Physicals Plaintiffs will request entry of a Final Order and Judgment, substantially in the form of Exhibit MFG-8, dismissing the action and retaining jurisdiction to implement and enforce the Settlement. Further, the Stipulation of Settlement and attendant documents have been filed in the MFGI SIPA proceeding. Objections to the Bankruptcy Court are due November 3, 2014, and Physicals Plaintiffs anticipate presentment to the Bankruptcy Court on November 4, 2014, as well as relief from the automatic bankruptcy stay. *See In re MF Global Inc., Debtor*, Case No. 11-2790 (MG) SIPA, Notice Of Presentment Of Stipulation And Order Resolving General Creditor Claim Numbered 500000344 Filed On Behalf Of The Physicals Class, Doc. 8444 (filed October 22, 2014); *see also* Lowther Decl., Ex. MFG-1 (presentment), Ex. MFG-2 (relief from bankruptcy stay).

**B.   Stipulation of Settlement**

The proposed Stipulation of Settlement reflects certain of the requirements the Court requested before granting preliminary approval to the initial settlement with the Moore defendants and defendant Joseph Welsh. *In re Platinum & Palladium Commodities Litig.*, 2014 U.S. Dist. LEXIS 96457 (S.D.N.Y. July 15, 2014).

The Stipulation of Settlement provides for the creation of two Escrow Accounts. The first escrow is with Huntington National Bank, which will hold $70,000 for purposes of funding notice costs.[4] This $70,000 amount will be paid out of the $577,500 cash payment from the Insurer. The second escrow account is an interest-bearing Court Registry Investment System ("CRIS") account, which will hold (a) the remaining $507,500 cash payment by the Insurer in

---

[4] Physicals Plaintiffs and Physicals Lead Counsel may advance notice costs in excess of the $70,000, if any, and will seek reimbursement of such costs from the Settlement Fund at final approval.

connection with the Insurer Settlement Payment; (b) the $190,000 cash payment[5] to be made by MFGH pursuant to the Welsh Physicals Assignment Agreement; and (c) any proceeds from the sale, assignment or any disbursements related to the stipulated $2,317,857.14 Allowed Claim in the SIPA Proceeding. *See* Lowther Decl., Ex. MFG §§ 3(a)(1)-(2), 3(b)(1)-(2), 3(c)(1).[6]

Within fourteen calendar days after the Scheduling Order is entered, and provided the order approving the Automatic Stay Stipulation has become Final, the Insurer shall make an all-cash payment totaling $577,500 on behalf of MFGI as follows: (i) $507,500 into the CRIS Escrow Account, and (ii) $70,000 into the Huntington Escrow Account. In addition, MFGH will make an all-cash payment of $190,000 into the CRIS Escrow Account within the latter of (a) fourteen calendar days after the date on which the Scheduling Order is entered and (b) seven calendar days after the date on which MFGH receives an initial distribution of proceeds from MFGI on account of MFGH's allowed claim against MFGI; provided that in no event shall the $190,000 all-cash payment be made any later than fourteen calendar days before the Fairness Hearing. *See* Lowther Decl., Ex. MFG-3.

Lastly, pursuant to the Settlement and Backstop Agreement with MFGH, if the Physicals Class elects in its sole discretion to sell and assign the Allowed Claim to MFGH in exchange for MFGH's commitment to purchase the Allowed Claim, MFGH shall make an all-cash payment to the Physicals Class for 70% of the Allowed Claim. *See* Lowther Decl., MFG-12 (Backstop Agreement).

---

[5] $10,000 from the Welsh Physicals Assignment Agreement is payable to the Moore Defendants pursuant to Section 3(a) of the prior Stipulation And Agreement Of Settlement (ECF No. 148-1).

[6] A.B. Data, Ltd. will act as the Escrow Agent for the portion of the Settlement Fund held in escrow by Huntington National Bank. *See* Lowther Decl., Ex. MFG-6. Professor Francis McGovern will serve as Mediator, if necessary, pursuant to the terms of the Settlement. Lowther Decl., Ex. MFG §§ 13(b), 28.

## II.      Background

Physicals Plaintiffs seek damages on behalf of themselves and the Physicals Class based on allegations the defendants manipulated certain New York Mercantile Exchange ("NYMEX") platinum and palladium futures contracts, in turn, causing prices of physical platinum and palladium to become artificially inflated in violation of the Sherman Antitrust Act, 15 U.S.C. §§ 1 *et seq.*, the Racketeer Influenced Corrupt Organizations Act, 18 U.S.C. §§ 1961 *et seq.* ("RICO"), and common law proscriptions against fraud, aiding and abetting fraud, and conspiracy to commit fraud. ECF No. 133 at 1-7, 157-90. Physicals Plaintiffs also assert a negligence claim against defendant Joseph Welsh. *Id.* at 190-91.

### A.      Physicals Plaintiffs' allegations

 Physicals Plaintiffs allege defendant MFGI, the Moore Defendants and defendant Welsh, from May 2006 until at least June 6, 2008, engaged in a manipulative scheme to inflate prices in platinum and palladium futures contracts traded on NYMEX, which in turn caused artificial price inflation in physical platinum and palladium bullion over the course of the Class Period. ECF No. 133 at 35-59. Physicals Plaintiffs allege defendants manipulated the closing price of platinum and palladium futures contracts and physical bullion by engaging in "market on close" trades during the last two minutes of the day's trading—at prices alleged to be in excess of best available prices. *Id.* at 5-7. The futures closing prices for platinum and palladium are based on a volume-weighted average pricing ("VWAP") of the last two-minutes of the day's trading. *Id.* at 29. Physicals Plaintiffs contend defendants took advantage of the VWAP during the two-minute close by making numerous large and uneconomic purchases during this window, resulting in artificially inflated closing prices of platinum and palladium futures. *Id.* at 1-7. Physicals Plaintiffs assert that defendants' conduct in artificially increasing the price of platinum and

palladium futures directly impacted the physical bullion market for these metals and caused Physicals Plaintiffs and Physicals Class members to pay artificially high prices during the Class Period. *Id*. at 8, 31-33. The Trustee denies Physicals Plaintiffs' charges in their entirety. Lowther Decl., Ex. MFG at pp. 2-3.

Defendant MF Global consistently denied Physicals Plaintiffs' claims. At the time Settlement was reached, the case against MFGI was stayed as MFGI filed a suggestion of bankruptcy on November 8, 2011, which created the real risk Physicals Plaintiffs could not establish liability or prove the damages they sought. Had these risks materialized, their impact could have been substantial, including the risk of no recovery at all. Prior to the bankruptcy stay, MFGI vigorously defended against Physicals Plaintiffs' claims, filing a joint motion to dismiss and motion to stay with the other defendants and objecting to producing any discovery in this matter.

**B.    Procedural History**

**1.    Motion practice and discovery**

On June 14, 2010, Physicals Plaintiffs filed an initial seventeen-page class action complaint against certain Moore defendants and asserted claims under Section 1 of the Sherman Act. On August 10, 2010, Physicals Plaintiffs filed a 62-page amended class action complaint. Thereafter the Physicals Action was consolidated with the Futures Action under the caption *In re: Platinum and Palladium Commodities Litigation*. Doyle Lowther LLP was appointed lead counsel for the Physicals Action.

On September 30, 2010, the Futures and Physicals Plaintiffs filed a consolidated class action complaint against the Moore defendants and MFGI. In the 77-page consolidated complaint, Physicals Plaintiffs charged defendants with violating the Sherman Act and RICO. Defendants moved to dismiss Physicals Plaintiffs' RICO and antitrust claims, which the Court

granted, along with leave to amend. *In re Platinum and Pall. Comm. Litig.*, 828 F. Supp. 2d 588 (S.D.N.Y. 2011).

On September 13, 2011, the Court granted in part and denied in part, without prejudice, the Defendants' Motion to Strike and Dismiss the Second Amended Consolidated Class Action Complaint. The Motion to Strike and Dismiss was a joint motion by MFGI and the other defendants. However, the Court granted the Physicals Plaintiffs leave to re-plead their allegations. *Id.*

In discovery, the Court ordered defendants to produce to plaintiffs all documents provided to the Commodities Futures Trading Commission ("CFTC") as part of its investigation into defendants' trading in platinum and palladium futures. *In re Platinum and Pall. Comm. Litig.*, 2010 U.S. Dist. LEXIS 145183 (S.D.N.Y. Nov. 30, 2010). Physicals Plaintiffs received significant production from the defendants, including documents and other things concerning MFGI, including hundreds of thousands of internal documents, myriad text and instant messages, and voluminous audio recordings of actual trading and broker orders on defendants' behalf. Lowther Decl. ¶¶ 14-19.

Physicals Lead Counsel expended significant time and resources reviewing and understanding the evidence. Counsel retained forensic electronic data experts to assist in formulating an efficient method of reviewing defendants' voluminous information, identifying specific individuals involved in the alleged misconduct, determining the parameters of wrongful conduct, and transcribing and organizing scores of electronic audio files. The information obtained from this extensive evidentiary review formed the foundation of Plaintiffs' Third Amended Consolidated Class Action Complaint. This 161-page complaint asserted antitrust and

RICO claims against the Moore defendants, Welsh, and MF Global Inc., which soon thereafter filed bankruptcy. ECF No. 75.

On February 3, 2012, the Moore defendants moved to dismiss all of the Physicals Plaintiffs' claims. ECF No. 106. On February 29, 2012, the Physicals Plaintiffs filed an opposition to the Moore defendants' motion to dismiss. ECF No. 111. The Court set the motion to dismiss for hearing for July 2012. ECF No. 119.

On or about March 14, 2012, pursuant to subpoena, Plaintiffs began to receive additional production from the CFTC in the form of twenty-three deposition transcripts.

On March 14, 2012, the CFTC filed an enforcement action against defendant Joseph Welsh for his role in the attempted manipulation of the platinum and palladium market. Joseph Welsh was a Senior Vice-President for MF Global during the period in which the manipulative trades occurred. In 2010, the CFTC did not pursue charges against Joseph Welsh and instead only pursued charges against the Moore defendants and Christopher Pia. Only after the Physicals Plaintiffs filed a detailed amended complaint outlining Welsh's important role in carrying out the "bang the close" trades did the CFTC bring the enforcement action. The intricate detail of Joseph Welsh's role (as well as that of MFGI and the various floor traders) spelled out in the Physicals Plaintiffs' 161-page Third Amended Complaint was only possible due to the countless hours Counsel spent pouring over the documents produced, transcribing the telephone conversations and IM messages. A large portion of the Welsh CFTC complaint was taken wholecloth from Physicals Plaintiffs' 161-page Third Amended Complaint. The CFTC complaint contained numerous verbatim quotes from the various telephone conversations and IM messages transcribed by Physicals Plaintiffs' Counsel and appearing in the Third Amended Complaint.

On July 11, 2012, shortly before oral arguments on the Moore defendants' motion to dismiss, the parties requested a Court stay to explore settlement opportunities. On July 27 and August 27, 2012, the parties participated in mediation sessions with the Honorable Daniel Weinstein (Ret.). Although these sessions did not result in a settlement, the parties continued to explore settlement discussions.

On December 19, 2012, the Court entered an order allowing the Physicals Plaintiffs leave to amend to file their Fourth Amended Consolidated Complaint. ECF No. 125. On January 14, 2013, the Physicals Plaintiffs filed a Fourth Amended Complaint. ECF No. 126. This 256-page complaint included new factual allegations and additional common law claims of fraud, aiding and abetting fraud and conspiracy to commit fraud. The Court allowed the Physicals Plaintiffs to file the Fourth Amended Complaint but stayed the time for defendants to respond to allow the parties to further discuss settlement.

On July 23, 2013, the Physicals Plaintiffs filed their Fifth Amended Consolidated Class Action Complaint, which added a negligence claim against defendant Welsh. ECF No. 132.

On September 18, 2013, the Physicals Plaintiffs, Moore defendants and defendant Welsh entered into a settlement agreement. On this same date, the Physicals Plaintiffs moved for preliminary approval of this settlement. ECF No. 146. On October 4, 2013, the Court held a hearing to consider preliminary approval of the settlement. ECF No. 136. During the hearing, the Court suggested the parties consider making certain revisions and additions to the proposed settlement. The parties requested permission to resubmit their settlement papers after consideration and incorporation of these changes. On March 21, 2014, the Physicals Plaintiffs, Moore defendants and defendant Welsh executed a settlement agreement and Physicals Plaintiffs moved for preliminary approval of the settlement.

On May 23, 2014, the Physicals Plaintiffs were granted leave to file a Sixth Consolidated Amended Class Action Complaint. On August 15, 2014, the Physicals Plaintiffs filed the Sixth Amended Complaint. ECF No. 218.

On July 15, 2014, the Court granted preliminary approval of the settlement between the Physicals Plaintiffs, Moore defendants and defendant Welsh. Following extensive mediation and settlement efforts, On October 21, 2014, the Physicals Plaintiffs, MFGI, MFGH and the Insurer entered into the Settlement Agreement.

### 2.    MF Global bankruptcies and SIPA liquidation

During this action's pendency, the Physicals Action was automatically stayed by virtue of the MFGI SIPA proceeding. To protect the claims of the Physicals Plaintiffs and Physicals Class, Plaintiffs filed a Proof of Claim in the SIPA liquidation, Claim No. 500000344.

On October 31, 2011, MFGH and MF Global Finance USA Inc., affiliates of MFGI, filed voluntary petitions for relief under Chapter 11 in the United States Bankruptcy Court for the Southern District of New York. Thereafter, the remaining MF Global Chapter 11 debtors filed their respective voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. The Chapter 11 debtors' cases are being jointly administered.

Also on October 31, 2011, the Honorable Paul A. Engelmayer, Judge for the United States District Court for the Southern District of New York, entered the Order Commencing Liquidation of MFGI (the "MFGI Liquidation Order"), pursuant to the provisions of SIPA in the case captioned *Securities Investor Protection Corp. v. MF Global Inc.*, Case No. 11-CIV-7750 (PAE), appointed James F. Giddens as Trustee for the liquidation of MFGI and removed the SIPA proceeding to the Bankruptcy Court. The MFGI liquidation remains pending in the case captioned *In re MF Global Inc.*, Case No. 11-2790 (MG) SIPA.

On November 8, 2011, defendant MFGI filed a suggestion of bankruptcy. ECF No. 75. The Physicals Action was stayed as against MFGI pursuant to the MFGI Liquidation Order entered on October 31, 2011, and Section 362 of the Bankruptcy Code. The automatic stay currently remains in effect. On November 23, 2011, the Bankruptcy Court entered the Order Approving Trustee's Expedited Application to Establish Parallel Customer Claims Processes and Related Relief (ECF No. 423). All general creditor claims were required to have been received by June 2, 2012.

On June 1, 2012, the Physicals Plaintiffs, on behalf of the Physicals Class, timely filed a general creditor bankruptcy proof of claim in the MFGI SIPA Proceeding in the Bankruptcy Court, Proof of Claim No. 500000344. The Proof of Claim corresponds to and incorporates the claims alleged in the Physicals Action.

On October 11, 2012, the Bankruptcy Court entered an Order pursuant to Section 105(a) of the Bankruptcy Code and Rules 2007 and 9019(b) For Approval of General Creditor (1) Claim Objection Procedures and (2) Settlement Procedures (ECF No. 3765).

As provided in the Settlement Agreement, the settling parties have sought orders from the Bankruptcy Court (i) granting the Physicals Class an allowed single general unsecured creditor claim in the amount of $2,317,857.14; and (ii) lifting the automatic stay for the limited express purposes of authorizing (a) the Insurer to make the payment of $577,500 into the escrow account at Huntington National Bank and into the CRIS account established under the Settlement Agreement;[7] (b) U.S. Specialty to make any payment provided for in the Welsh D&O Settlement

---

[7] MFGI and MFGH will further request the automatic stay be lifted by the Bankruptcy Court to authorize the D&O carrier, U.S. Specialty, to make any payment to MFGH provided for in the Welsh D&O settlement between U.S. Specialty and MFGH as MFGH seeks to resolve, in conjunction with this Settlement, all claims relating to defendant Welsh and the Relevant Insurers, including those under

between U.S. Specialty and MFGH. *See* Lowther Decl., Ex. MFG § 3(a)-(c); Ex. MFG-6 ¶ 4. *See In re MF Global Inc., Debtor*, Case No. 11-2790 (MG) SIPA, ECF Nos. 8444 and 8445.

If approved, the Settlement Agreement will resolve all claims that the Physicals Class has asserted both in the Physicals Action and in the SIPA Liquidation Proceeding through the Proof of Claim.

### 3. Extensive arm's-length settlement discussions

Settlement discussions in this case were lengthy, complicated, and contested. Negotiations involved extensive expert analysis on causation and damages by Physicals Plaintiffs, the futures plaintiffs, and defendants. Given the complexity of the economic analyses, the parties recognized the need for an independent economist to advise the mediator. This independent expert reviewed the parties' expert reports and even undertook his own analyses and formulated his own conclusions about the alleged price inflation. These conclusions were shared with the parties during mediation discussions as a means of bridging the gap between the parties' damages models.

The parties participated in multiple mediation sessions before Judge Weinstein, a nationally-recognized mediator with extensive expertise in resolving complex litigations, including commodities and antitrust class actions. The first mediation session, held on July 27, 2012 in Manhattan, failed to resolve this dispute, or even generate a term sheet. This mediation session was attended by certain parties and certain Relevant Insurers. This mediation session did not result in fruitful settlement negotiations with MFGI or its underwriters. Only nine months prior to this initial mediation session, MFGI entered bankruptcy. The size and scope of the MFGI SIPA proceeding, and the litany of creditors thereto, made it impossible for Physicals Plaintiffs

---

Plaintiffs' Welsh Physicals Assignment Agreement with MFGH. Lowther Decl., Ex. MFG-2 ¶ N, Ex. MFG-3.

and others to reasonably estimate any potential recovery in bankruptcy by the Physicals Plaintiffs or MFGI's bankruptcy exposure to secured and unsecured creditors.

In October 2013 the Physicals Plaintiffs and MFGI agreed to resume settlement talks. At this time the MFGI SIPA proceeding was sufficiently advanced such that Physicals Plaintiffs could reasonably estimate the chances of recovery in bankruptcy proceeding. In November 2013, at the request of the SIPA Trustee, the Physicals Plaintiffs sent a settlement demand to MF Global. Over the course of the following months, Physicals Plaintiffs and the SIPA Trustee engaged in multiple discussions and correspondence regarding settlement including detailed discussions of damages and volume estimates by Physicals Plaintiffs.

On or about April 2014, the parties agreed to mediation in an attempt to finalize a settlement. The parties agreed to use Judge Weinstein, who was not only familiar with the instant matter but had mediated other matters in connection with the MFGI SIPA proceeding. The parties scheduled a two-day mediation session with Judge Weinstein for June 4 and 5, 2014 in New York. In advance of mediation, the parties and Relevant Insurers engaged in multiple conference calls with Michelle Yoshida, Esq. of JAMS and Chad Coffman, an independent economist retained by Judge Weinstein. These calls served to allow the parties to narrow the scope of certain issues in preparation for the mediation session. Before the mediation session, the Physicals Plaintiffs prepared a lengthy, detailed mediation statement outlining the Physicals Plaintiffs' position on the claims, the estimated volume of physical platinum and palladium at issue and the estimated total exposure by MF Global.

On June 4 and June 5, 2014, the parties along with the Relevant Insurers participated in two full-day mediation sessions with Judge Weinstein in New York. While no settlement was reached during these arduous and contentious mediation sessions, the parties did make some

progress toward settlement. During the months following the unsuccessful mediation efforts, the parties continued to negotiate a proposed settlement agreement. Multiple rounds of talks and meetings were undertaken, including with the assistance of the mediator. A proposed settlement agreement was not reached and agreed to until October 21, 2014.

To engage in substantive settlement discussions, Physicals Plaintiffs needed an accurate estimate of the volume of physical platinum and palladium traded during the Class Period. Due to the over-the-counter nature of these transactions, there is no singular database that compiles this information. Physicals Plaintiffs engaged in extensive third-party discovery to accumulate purchase data from the larger sellers and brokers of platinum and palladium bullion in the United States including Monex Deposit Co., APMEX, HSBC USA Bank, Kitco Metals, Inc., Dillon Gage, Inc., Toledo Coin Exchange, Goldline International, Northwest Territorial Mint and the United States Mint. Physicals Plaintiffs also consulted with some of the foremost experts regarding the physical platinum and palladium market including Jeffrey Christian of the CPM Group, which prints the CPM Platinum Group Metals Yearbook, a leading treatise on the industrial and investment use of platinum group metals. CPM Group advises many of the world's largest corporations and institutional investors on managing their commodities price and market exposures, and provides commodity advisory services to the World Bank, United Nations, International Monetary Fund, and numerous governments. Only through these efforts were Physicals Plaintiffs able to ascertain a volume figure for the physical platinum and palladium traded during the Class Period for purposes of negotiating a settlement.

### C.    The Settlement Agreement

#### 1.    The Physicals Class

The Settlement seeks certification of the following class for settlement purposes:

All Persons and/or entities who purchased, invested in, or otherwise acquired an interest in platinum or palladium bullion conforming to NYMEX "good delivery" requirements, and/or of at least 99.95% purity in the United States physical or "spot" market during the period of June 1, 2006 through April 29, 2010 (the "Class Period").

Physicals Plaintiffs allege a continuous course of conduct since at least June 1, 2006 for their RICO claim, and damages theories make it theoretically possible that the potential impact of the alleged misconduct extended until April 29, 2010, when the CFTC's settlement with certain defendants was announced to the public. Defendants therefore insisted on a release and Class Period that ends on April 29, 2010.[8] Where an expanded class includes plaintiffs with different and potentially barred causes of action, courts have affirmed certification in the interest of securing "global peace" and preventing "protracted litigation and future relitigation of settled questions." *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 310-11 (3d Cir. 2011) ("achieving global peace is a valid, and valuable, incentive to class action settlements"); *In re Am. Int'l Group Sec. Litig.*, 689 F.3d 229, 243-44 (2d Cir. 2012) ("Defendants in class action suits are entitled to settle claims pending against them on a class-wide basis even if a court believes that those claims may be meritless" so long as Rule 23 is otherwise satisfied); *In re Initial Public Offering Securities Litig.*, 226 F.R.D. 186, 190 (S.D.N.Y. 2005) ("court may approve a settlement class broader than a litigation class that has already been certified"). This is especially warranted where, as here, a continuous course of conduct or the potential impact from conduct has been made clear from discovery. Thus, settlement classes that are broader than the original litigation class have repeatedly been approved in prior commodity

---

[8] This Class Period expansion tracks the futures settlement class, extending the beginning of the class back to the first manipulative trade by defendants through the last arguable date (April 29, 2010) on which any residual impact from the alleged manipulative trades (ending on May 21, 2008) could have remained in the market based on plaintiffs' experts' opinion of damages, which form the basis of the Plan of Allocation.

manipulation cases. *Compare In re Natural Gas Commodities Litig.*, 231 F.R.D. 171, 178 (S.D.N.Y. 2005) (certifying litigation class period of January 1, 2000 through December 31, 2002) *with In re Natural Gas Commodities Litig.*, 03-cv-6186, Order dated June 15, 2007 (S.D.N.Y.) (approving settlement and certifying settlement class period of June 1, 1999 through December 31, 2002); *compare In re Sumitomo Copper Litig.*, 182 F.R.D. 85, 88 (S.D.N.Y. 1998) (certifying litigation class period of June 24, 1994 through June 15, 1996) *with In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 283, n. 1 (S.D.N.Y. 1999) (approving settlement and certifying settlement class period of June 24, 1993 through June 15, 1996).

The Plan of Allocation compensates Physicals Class members for the period from June 1, 2006 until April 29, 2010. *See* Lowther Decl., Ex. MFG-9. The Physicals Plaintiffs' Plan of Allocation is identical in all respects to the Plan of Allocation preliminary approved by the Court in the Moore Capital and Welsh settlement. *See also In re Platinum & Palladium Commodities Litig.*, 2014 U.S. Dist. LEXIS 96457, at *41-42.

### 2.     Consideration to Physicals Class

<u>Summary</u>. Under the MF Global Settlement Agreement, the Physicals Class will receive a $577,500 cash payment from the Insurer, a stipulated allowed general creditor claim in the SIPA proceeding in the amount of $2,317,857.14, any recovery under the related Backstop Agreement, and a $190,000 cash payment from MFGH for the benefit of the Physicals Class in consideration for assigning certain rights connection with their anticipated Judgment against defendant Joseph Welsh, as agreed to in the Welsh Physicals Judgment and Assignment.

<u>Insurer Payment</u>. Within fourteen calendar days after the Scheduling Order is entered, provided that the order from the Bankruptcy Court approving the Automatic Stay Stipulation has become Final, the Insurer must make a payment of $577,500 as follows: (1) a cash payment of

$507,500 into the CRIS Escrow Account pursuant to Local Civil Rule 67.1; and (2) a cash payment of $70,000 to be deposited into an Escrow account to be established at the Huntington National Bank to be used for providing notice to the class. *See* Lowther Decl., Ex. MFG § 3(b)(2).

Allowed Claim. Upon approval by the Bankruptcy Court of the Claim Stipulation, approval by the Bankruptcy Court of the Automatic Stay Stipulation and entry of the Final Judgment by the District Court, the Physicals Plaintiffs will be granted an allowed general creditor claim in the SIPA Proceeding in the amount of $2,317,857.14. Physicals Plaintiffs have three options with regard to the Allowed Claim: (1) assign all or part of the Allowed Claim to MFGH for a cash-payment equivalent to 70% of the assigned claim amount; (2) assign all or part of the Allowed Claim to a third-party for cash; or (3) retain ownership of the Allowed Claim and accept any distributions by the Trustee in the SIPA Proceeding. Lowther Decl., Ex. MFG § 3(a)(1).

Backstop And Assignment Agreement. Physicals Plaintiffs may assign all or part of the Allowed Claim to MFGH for a cash-payment equivalent to 70% of the assigned claim amount. Any assignment must be comprised of a minimum of 70% of the total Allowed Claim. If Physicals Plaintiffs assigned the entire Allowed Claim amount to MFGH an all-cash payment in the amount of $1,622,500 would be received. The Physicals Plaintiffs have until November 10, 2014 to decide whether to elect to have MFGH purchase all or a portion of the Allowed Claim for the Purchase Claim Amount or the Partial Purchase Claim Amount. After such deadline, MFGH shall no longer be required to purchase all or any portion of the Allowed Claim. If Physicals Plaintiffs elect to assign all or part of the Allowed Claim to MFGH, the Physicals Plaintiffs shall enter into an Assignment of Claim to MFGH and the Parties shall execute such

Assignment of Claim no later than two (2) business days after the Physicals Plaintiffs' election. Lowther Decl., Ex. MFG § 3(d)(1).

Welsh Consideration. The Settlement Agreement states MFGH will make a cash payment to Physicals Plaintiffs pursuant to the Welsh Physicals Assignment Agreement. Lowther Decl., Ex. MFG § 3(c)(1). Pursuant to the agreement, Physicals Plaintiffs have agreed to assign the Welsh Physicals Judgment and Assignment that was part of the settlement consideration from defendant Welsh to Physicals Plaintiffs in the earlier Moore and Welsh defendants settlement (and which the Court preliminarily approved) to MFGH in exchange for a cash payment of $190,000 by MFGH for the benefit of the Physicals Class. This $190,000 will be paid by MFGH into the CRIS Escrow Account. Lowther Decl., Ex. MFG § 3(c)(1). In exchange for this consideration, the Physicals Class agrees to release and discharge the Released Parties from any and all claims against the Released Parties for losses on their Platinum & Palladium transactions during the Class Period as fully set forth in Section 7 of the Settlement, except the Physicals Plaintiffs and Physicals Class have a judgment against defendant Welsh on their negligence claim, which may be enforced against and only against defendant Welsh's personal property consisting of his rights against certain insurers, which Physicals Plaintiffs have assigned to MFGH under the Welsh Physicals Assignment Agreement. Lowther Decl., Ex. MFG-3. Physicals Plaintiffs will not release the Relevant Insurers until the Welsh Physicals Assignment Agreement Settlement becomes final and effective. Lowther Decl., Ex. MFG § 7(a) at p. 20.

### 3. Release and covenant not to sue

In exchange for the foregoing consideration, the Physicals Class agrees to release the Released Parties from all claims related to the Physicals Class's transactions in platinum and/or palladium bullion. Lowther Decl., Ex. MFG § 7. The Physicals Class's release and covenant not to sue excludes any claims a Physicals Class member may have as a class member in the Futures Action. Lowther Decl., Ex. MFG § 7.

### 4. The proposed Plan of Allocation

The Plan of Allocation compensates Physicals Class members for the period from June 1, 2006 until April 29, 2010. *See* Lowther Decl., Ex. MFG-9. The Physicals Plaintiffs' Plan of Allocation is identical in all respects to the plan of allocation preliminary approved by the Court in the Moore and Welsh settlement. *See In re Platinum & Palladium Commodities Litig.*, 2014 U.S. Dist. LEXIS 96457, at *41-42, 45. As with the prior settlement, Physicals Plaintiffs' Plan of Allocation adopts the artificiality calculations and analyses from the futures plaintiffs' plan of allocation. This model provides a one-to-one flow-through of artificial inflation (damages) in platinum and palladium futures trades on NYMEX to corresponding physical platinum and/or palladium bullion transactions.

### 5. The proposed notice plan provides the best notice practicable

The proposed notice plan includes the same four-prong notice program the Court preliminarily approved in the Moore and Welsh settlement. *See* Lowther Decl., Ex. MFG-4 (long form notice), Ex. MFG-5 (short form notice), Ex. MFG-7 (preliminary approval order); *see also In re Platinum & Palladium Commodities Litig.*, 2014 U.S. Dist. LEXIS 96457, at *43-44. The proposed notice plan takes advantage of diverse media sources, including various websites, newspapers, and magazines, to create the greatest likelihood of reaching Physicals Class

members. Physicals Plaintiffs intend to publish, in coordination with the futures plaintiffs, notice of the Settlement, substantially in the form of Exhibit MFG-5 to the Settlement, as follows: (a) for two consecutive months in *Futures* magazine; (b) for two consecutive months in *Stocks & Commodities* magazine; (c) for two consecutive months in *Futures & Options World* magazine; and (d) for four consecutive Monday editions of *Investor's Business Daily*. Notice will also be published on the following websites: (a) the *Stocks & Commodities* magazine website for one month; (b) the *Futures* magazine website for one month; (c) Traders.com for one month; (d) the *Investors Business Daily* website for one month; and Kitco.com (the world's number one source of metals market information with over 1 million unique visitors daily), for one month. Further, Physicals Plaintiffs intend to publish notice in the following periodicals: (a) *Barron's* for two weeks; and (b) *The Wall Street Journal* for one day, in a shared notice with the futures plaintiffs. Finally, notice of the Settlement also will be published on the settlement website www.PlatinumPalladiumPhysicalLitigation.com.

### III.    Argument

Public policy strongly favors pretrial settlement of class action lawsuits. *In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d. Cir. 1998); *In re Advanced Battery Tech., Inc. Sec. Litig.*, 298 F.R.D 171, 174 (S.D.N.Y. 2014) ("the law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigor of prolonged litigation."); *In re Warner Chilcott Ltd. Sec. Litig.*, 2008 U.S. Dist. LEXIS 99840, at *2-3 (S.D.N.Y. Nov. 20, 2008) ("[t]he settlement of complex class action litigation is favored by the Courts"). Courts should give weight to the parties' consensual decision to settle class action cases because litigants and their counsel occupy unique positions to assess potential risks. *See Clark v. Ecolab, Inc.*, 2009 U.S.

Dist. LEXIS 108736, at *14 (S.D.N.Y. Nov. 17, 2009). This is especially true in investor class actions, which by their nature are legally and factually complex and outcomes are "notoriously uncertain." *Sumitomo*, 189 F.R.D. at 281.

### A.    The proposed settlement is fair, reasonable, and adequate

To grant preliminary approval, the Court need only find there is "'probable cause' to submit the [Settlement] to class members and hold a full-scale hearing as to its fairness." *In re Traffic Executive Ass'n*, 627 F.2d 631, 634 (2d Cir. 1980). A proposed settlement should be preliminarily approved:

> where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the reasonable range of approval….

*In re Currency Conversion Fee Antitrust Litig.*, 2006 U.S. Dist. LEXIS 81440, at *13 (S.D.N.Y. Nov. 8, 2006).

In determining whether a settlement is fair, reasonable, and adequate, courts consider the "negotiating process leading to settlement" [*i.e.*, procedural fairness,] as well as the settlement's substantive terms, *i.e.* substantive fairness. *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005). In assessing substantive fairness, courts consider the *Detroit v. Grinnell*, 495 F.2d 448 (2d Cir. 1974), factors:

> (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Wal-Mart*, 396 F.3d at 117.

1.      **The Settlement is the result of arm's-length negotiations between experienced counsel**

A class action settlement is entitled to a presumption of fairness, adequacy, and reasonableness when it is the product of "arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart*, 396 F.3d at 116. Settlement negotiations in the Physicals Action transpired strictly at arm's-length and were free of collusion. Lowther Decl. ¶¶ 7-13, 30. All parties were represented by experienced, capable counsel. The Settlement is the result of rigorous, contentious, and protracted negotiations, including, among other things, several unsuccessful negotiations before Judge Weinstein, who was assisted by an independent economist, interim amended complaints and additional fact discovery, extensive use of experts and expert analyses by Physicals Plaintiffs and defendants, and dozens of telephone conferences and scores of e-mail correspondence between zealous counsel, all over a period of many months. Lowther Decl. ¶¶ 7-9. *See In re Initial Pub. Offering Sec. Litig.*, 226 F.R.D. 186, 194 (S.D.N.Y. 2005) (finding the use of an experienced mediator supports fairness); *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D 151, 160 (S.D.N.Y. 2011) (parties were entitled to a presumption of fairness where mediator facilitated arm's-length negotiations); *In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, 2006 U.S. Dist. LEXIS 17588, at *26 (S.D.N.Y. Apr. 6, 2006) (noting that involvement of mediator in pre-certification settlement negotiations helped "ensure that the proceedings were free of collusion and undue pressure").

Physicals Lead Counsel engaged in extensive fact discovery and fact-finding, which had been completed before the Settlement was reached. This discovery includes review of all documents Settling Defendant provided to the CFTC, which were produced in this case only after plaintiffs moved to compel their production as part of their investigation. The production included more than two hundred fifty thousand pages of documents, thousands of emails and text

messages, and numerous recorded telephone conversations, which had to be reviewed, transcribed, and analyzed by Physicals Lead Counsel. Lowther Decl. ¶¶ 14-16. Significant time and resources were expended analyzing the evidence, including using forensic electronic data experts to help efficiently review the documents and electronic data, and identify individuals involved in the alleged trading fraud. Lowther Decl. ¶¶ 8, 16.

Physicals Lead Counsel engaged in extensive third-party discovery in the form of numerous third-party subpoenas, including subpoenas to nationally-recognized physical metals dealers and several financial institutions concerning transaction data during the Class Period. Lowther Decl. ¶¶ 5, 17. Physicals Lead Counsel retained qualified experts to assist with the precious metals markets and to assist with damages analyses. Many of the experts' materials and reports were used extensively during formal and informal mediation sessions and settlement negotiations. The expert material was voluminous, the research extensive—and all of this was done long before Settlement was reached. Lowther Decl. ¶¶ 8, 14, 16, 18-19.

At the time the Settlement was reached, MFGI remains in bankruptcy and continues to go through SIPA liquidation proceedings. MFGI's bankrupt status effectively stayed Physicals Plaintiffs' claims against MF Global. During the parties' negotiations, the Moore defendants and their economic experts criticized the methodology and assumptions underlying the Physicals Plaintiffs' methodologies for calculating damages. According to the Moore defendants, even if Physicals Plaintiffs could establish liability, damages were non-existent, or are based on assumptions favorable to Physicals Plaintiffs, at most, $1.6 million classwide. Absent settlement, MF Global's attacks would eventually be developed and pursued in Court, creating real risks for the Physicals Plaintiffs with respect to the amount of damages they might recover, several years from now, even if successful on the issue of liability and able to collect a future judgment against

a bankrupt entity. Further, absent the Settlement, the Trustee argued he would oppose certification of the Class in the SIPA Proceeding, object to any claims by class members (except those of the Lead Plaintiffs) as time barred, and otherwise seek disallowance of the Physical Plaintiffs' claims. Based on Physicals Class Counsel's extensive experience in complex class actions, the strength and weaknesses of Physicals Class's claims, the status of MFGI in the SIPA liquidation proceeding, the extensive risk and expense of continued litigation, the analyses of various experts, including an expert selected by the mediator to analyze the parties' damages models, and the likelihood of success at trial and appeal, Physicals Lead Counsel believes the Settlement is fair, reasonable, and adequate.

### 2.    The proposed settlement is substantively fair

Under the *Grinnell* factors, the Settlement is substantively fair and substantially benefits the Physicals Class.

### a.    Complexity, expense, and likely duration of the litigation

"This antitrust, [RICO, and commodities fraud] class action involves a complex factual record and novel issues of law." *Currency Conversion*, 2006 U.S. Dist. LEXIS 81440, at *15. Absent settlement, the litigation would have consumed many years of party and Court resources, and would have accumulated substantial litigation and expert costs. Physicals Lead Counsel believes further litigation would have been "lengthy" and "bitterly fought," *Wal-Mart*, 396 F.3d at 118, not only at the motion to dismiss stage, but through class certification, summary judgment, trial, and appeal. The complexity of the substantive law in the Physicals Action is further compounded by the underlying facts, such as NYMEX platinum and palladium commodities markets, market-on-close orders, volume-weighted pricing, and linking artificial inflation in physical platinum and/or palladium bullion with manipulation of NYMEX futures

contracts. Even mediator Weinstein retained the expertise of his own economist to provide guidance on the analyses and counter-analyses of the parties' experts during mediation and settlement discussions.

Without Settlement, the Physicals Action would continue for years. Multiple rounds of unsuccessful settlement discussions confirm this conclusion. "The expense and delay of continued litigation could be substantial." *Currency Conversion*, 2006 U.S. Dist. LEXIS 81440, at *15. Settlement, on the other hand, enables the Physicals Class to avoid very significant litigation expenses, including expert costs, continued discovery expenses, expenses tied to class certification, such as retaining antitrust experts, summary judgment motion practice, and a lengthy trial.

### b.  Physicals Class's reaction to the settlement

The Physicals Class has received notice of the prior settlement involving the Moore defendants. At this time, Physicals Plaintiffs are aware of no objections or opt-out to the prior settlement. However, this factor cannot be measured in full until the Physicals Class receives notice of this Settlement.

### c.  Stage of the proceedings and amount of discovery completed

Although procedurally the Physicals Action against the Settling Defendant is stayed, the fact-finding and discovery in this litigation is far more advanced. The current operative complaint, the Sixth Amended Consolidated Class Action Complaint, itself is a product of the significant discovery and fact-finding that has occurred in this case. Not only did Physicals Plaintiffs receive discovery concerning the Settling Defendant and the CFTC, they also sought third-party discovery from major national precious metal dealers and retailers. The substantial quantity of evidence Physicals Lead Counsel has reviewed includes twenty-three deposition

transcripts, communications discussing the alleged manipulative conduct, and recorded conversations regarding the nature and purpose of certain financial transactions. Lowther Decl. ¶¶ 15-17. The quality of this evidence has enabled plaintiffs' complaint to expand from an initial seventeen-page pleading to the current one hundred ninety-three page complaint.

> **d.**     **Risks of proving liability, damages, and maintaining a class**

"In assessing the Settlement, the Court should balance the benefits afforded the Class, including the *immediacy* and *certainty* of a recovery, against the continuing risks of litigation." *In re Top Tankers, Inc. Sec. Litig.*, 2008 U.S. Dist. LEXIS 58106, at *13 (S.D.N.Y. July 31, 2008). The Physicals Class faces substantial obstacles by continuing to pursue its proof of claim and related litigation against a party in liquidation. First, the litigation has been stayed by the Bankruptcy Court and the stay has not been lifted at this time. In addition, MF Global has disputed the proposed Class Members' ability to certify a class and, without conceding that argument, has only agreed that Civil Rule 23 applies for the purposes of settlement to provide notice of the Settlement, avoid protracted and expensive litigation and avoid appeals. Specifically, absent a settlement, the Debtors would argue class treatment is not the most fair and efficient method of adjudicating the controversy. *See, e.g., Gentry v. Siegel*, 668 F.3d 83, 85-86 (4th Cir. 2012) (affirming bankruptcy court's ruling that, inter alia, the named employee wage and hour claimants were not authorized to file class proofs of claim and finding the bankruptcy process superior to the class action process). Even assuming Physicals Plaintiffs could successfully lift the bankruptcy stay, certify a class and proceed with litigation (in either the Bankruptcy Court or the District Court), Physicals Plaintiffs would still need to survive a motion to dismiss on difficult and uncertain antitrust, RICO, and fraud claims.

Complexity of Physicals Plaintiffs' claims. The "complexity of Plaintiffs' claims *ipso facto* creates uncertainty." *In re Currency Conversion Fee Antitrust Litig.*, 263 F.R.D. 110, 123 (S.D.N.Y 2009). There is almost no precedent for asserting successful Sherman antitrust claims using a "quick look" standard. Physicals Plaintiffs' RICO claim and common law fraud claim, which is alleged under New York law, present additional obstacles, especially in a precious metal commodities case, where the alleged manipulation took place in the futures market, and thereafter claims were asserted in the physical market. The Trustee vigorously disputed Physicals Plaintiffs methodology for calculating damages and transaction volume. In addition, the Moore defendants disputed any of their trades were manipulative because they were made at prevailing market prices, and the Trustee certainly would have made similar attacks on Physicals Plaintiffs causes of action. Neither the Supreme Court nor the Second Circuit has ruled on many aspects of proof, or opined on Rule 23 certification standards for the Physicals Class. In short, there is great risk and uncertainty in continued litigation of the Physicals Class, and a very real risk the Physicals Action could be dismissed in its entirety or a class not certified under Rule 23, with the attendant result of no recovery for the Physicals Class.

Substantive and procedural challenges before obtaining judgment. Even if the pleadings survived further legal challenges, Physicals Plaintiffs would still face very significant hurdles in litigating the matter to trial, including certifying an antitrust, RICO, and fraud class through trial, extensive *Daubert* challenges to Physicals Plaintiffs' experts, and summary judgment on novel and complex factual issues. At trial, the Physicals Class would need not only to prove manipulation of the NYMEX markets for platinum and palladium futures, but also show this misconduct impacted platinum and/or palladium bullion, with the concomitant problems

associated with the fact most physical or spot purchases occur in a decentralized, over-the-counter market.

_Carrier defenses_. MFGI's insurance carriers, under both the "errors and omissions" and "directors and officers" policies, took the position insurance coverage was unavailable to MFGI and Welsh in this action. Hence there was significant risk no assets would be available to fund a judgment or settlement from any of the insurers, or that any insurance coverage—even if applicable—could be reduced, dissipated or eliminated entirely because of payments already made or being made by the E&O and D&O carriers for legal and other expenses in unrelated litigations involving the MF Global entities, including MFGI, under those policies. Both the D&O and E&O policies are "wasting policies." As insurance proceeds are paid out, including costs and attorneys fees of MFGI's insureds, available proceeds for claims settlement are being reduced. Accordingly, when weighing these factors, Physicals Plaintiffs counsel determined the Insurer contribution to the Settlement was a valuable contribution.

_Welsh consideration and risk of zero recovery_. The Physical Class faced a substantial risk they may have no recovery or, at best, a very negligible recovery under the Welsh Judgment or the Welsh Assignment of Claim provided to Physicals Plaintiffs by defendant Welsh in the Moore and Welsh settlement. The D&O insurers continue to vehemently deny they have any contractual obligation to indemnify Welsh in regard to the claim for negligence asserted against him in the Physicals Action, and Physicals Plaintiffs face the likelihood of protracted litigation with the Insurers and related excess carriers on coverage and other issues, with uncertain results. Further risks include class certification, interlocutory appeal of any certification ruling, summary judgment, _Daubert_ challenges, and _in limine_ motions to exclude the Physicals Class best evidence, along with trial risk, post-trial motions, and appeal. Further,

as insurance proceeds are paid out, it is highly uncertain whether sufficient—or any—insurance proceeds would be available to satisfy the Welsh judgment after class certification (if granted), summary judgment (if denied), obtaining a jury verdict at trial on very complex and technical claims, and surviving on appeal. Physicals Plaintiffs' counsel determined it was in the best interests of the Physicals Class to assign their rights with respect to the Welsh Judgment and Assignment to MFGH, in consideration for which MFGH will make a cash payment of $190,000 under the Welsh Physicals Assignment Agreement to Physicals Plaintiffs and the Physicals Class.

Physicals Plaintiffs' RICO, Sherman Act, and negligence claims. The Physicals Plaintiffs also faced potential hurdles not present in the Futures Class's litigation. The Futures Plaintiffs' claims for violations of the Commodities Exchange Act ("CEA"), 7 U.S.C. §§ 1 *et seq.*, were unavailable to the Physicals Plaintiffs. The CEA only applies to commodities futures, and does not extend to physical commodity purchases. Therefore, the Physicals Plaintiffs' claims are not specific to commodities and instead were brought under the Sherman Antitrust Act, the RICO Act and New York common law. Thus, the Physicals Plaintiffs faced a significantly higher risk of a successful dispositive motion by the Settling Defendant than the Futures Plaintiffs. Additionally, the Physicals Plaintiffs faced causation problems not present in the Futures Action. Because the alleged manipulation occurred in the futures market, the Physicals Plaintiffs would be required to show not only that these trades artificially inflated the futures closing prices, but that any effect of these trades carried through into the physical market and adversely impacted the physical price.

Like the Moore defendants, the Settling Defendant has consistently and vigorously denied Physicals Plaintiffs' claims. The Trustee will continue to vigorously defend against and

deny Physicals Class claims and alleged damages, and in the Settlement Agreement the Trustee continues to deny MFGI engaged in any unlawful conduct. Lowther Decl., Ex. MFG at pp. 3-4. Further, neither the Bankruptcy Court nor this Court has rendered a ruling on whether the Physicals Class has alleged valid claims; nor have the Courts considered the procedural hurdles the Physicals Class must overcome to prove its claims at trial, as well as establish damages.

Challenges to Physicals Plaintiffs claims in Bankruptcy Court. The Trustee has consistently and vigorously denied MFGI's liability. The Trustee argues neither treble damages nor class certification are attainable via their Proof of Claim in the SIPA Proceedings. Further, in anticipation of the Settlement, the Trustee successfully moved to reclassify the treble damages portion of Physicals Plaintiffs' Proof of Claim. Physicals Plaintiffs did not oppose such motion for settlement purposes, because the Trustee agreed he was not seeking a specific ruling on the merits, but nevertheless the Bankruptcy Court order allowing reclassification may have an adverse affect on Physicals Plaintiffs' efforts to recover treble damages if the Settlement Agreement is not approved.

Settling Defendant also denied the Physicals Plaintiffs' measure of damages. Applying the Moore defendants' data, expert analyses and assumptions, defendants estimate their damages to be between zero and $1.6 million in artificiality. And defendants have attacked nearly every aspect of the Physicals Plaintiffs' case, including the data, assumptions and methodologies for estimating trading volumes, artificiality, and damages—a heightened risk with the Physicals Class, since all trades occur over-the-counter and no central repository of trading data exists.

The Physicals Plaintiffs face additional risks because defendants also have consistently and vigorously denied the Futures Plaintiffs' claims. They dispute the artificiality numbers in

the Plans of Allocation and assert that artificiality in platinum and palladium futures was non-existent, or at most, a small fraction of the inflation set forth in the plans of allocation. All of these litigation risks are substantial, and weigh in favor of approving the Settlement. *Sumitomo*, 189 F.R.D. at 281.

> **e.**      **Settling Defendant's ability to withstand a greater judgment**

A "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 620-21 (S.D.N.Y. 2012). Absent settlement, Physicals Plaintiffs face the very real risk of recovering nothing, due not only to the significant defenses and obstacles to be raised by MF Global and its insurers, and MFGI's opposition to class certification based on the claim filed in the SIPA Proceeding. MFGI faced an enormous number of other claims in liquidation. In addition, unrelated lawsuits and claims are competing for recovery of MFGI's remaining assets and insurance proceeds, if any, which may be available. This poses enormous risk to the Physicals Class and is a serious threat to a class recovery. The courts certify settlement classes and approve class action settlements which involve bankrupt entities. *See In re Drexel Burnham Lambert Group*, 960 F.2d 285 (2d Cir. 1992) (affirming class certification and approving settlement involving bankrupt securities firm under federal securities laws); *In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436, 451-453 (S.D.N.Y. 2004) (certifying classes for purposes of ERISA and securities law settlements); *In re Worldcom, Inc.*, 347 B.R. 123, 143 (Bankr. S.D.N.Y. 2006) ("the Court's preliminary certification of the class is confirmed and the class should be certified for settlement purposes.").

**f.      Range of reasonableness of settlement in light of best possible recovery and attendant litigation risks**

"The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *Grinnell,* 495 F.2d at 455. Class settlements, especially in commodities and securities actions, are often approved where the monetary relief is a fraction of the "best day" recovery. *See, e.g., In re Bear Stearns Cos*., 909 F. Supp. 2d 259, 269-70 (S.D.N.Y. 2012) (11% of plaintiff's expert's estimated damages was reasonable); *Menkes v. Stolt-Nielsen S.A.*, 270 F.R.D. 80, 103 (D. Conn. 2010) (class settlement providing 8% of maximum damages was reasonable); *Hicks v. Morgan Stanley & Co.*, 2005 U.S. Dist. LEXIS 24890, at *19 (S.D.N.Y. Oct. 24, 2005) (3.8% of plaintiffs' estimated damages within range of reasonableness). The Court recognizes "the complexity of Plaintiffs' claims *ipso facto* creates uncertainty." *Currency Conversion*, 263 F.R.D. at 123.

Continuing this complex litigation against the Settling Defendant would involve a lengthy stay followed by a highly expensive legal battle involving uncertain, novel, and complex legal and factual issues. Establishing damages would require reliance upon challengeable assumptions, presenting a very real risk of no recovery for the Physicals Class. These risks are substantial, and potentially dispositive, for all of Physicals Plaintiffs' causes of action.

The reasonableness of a settlement is a function of both (1) the size of the settlement amount relative to the best possible recovery; and (2) the likelihood of no recovery (or a reduced recovery). *Bear Stearns*, 909 F. Supp. 2d at 270. Precise trading volumes in the physical platinum and palladium bullion markets are difficult to calculate. Through Physicals Plaintiffs' expert analysis, net platinum and palladium bullion purchases have been estimated, for the period of October 2007 and June 2008, at 201,056 ounces of platinum and 933,718 ounces of

palladium. Lowther Decl. ¶¶ 25-26. Multiplying these volume figures by the average artificiality for platinum ($125 per ounce) and the average for palladium ($37 per ounce) in the Plan of Allocation produces an alleged potential Physicals Class damages number of approximately $59,754,263.

Settling Defendant disputes the Physicals Class's volume and damages numbers, and challenged every single assumption underlying Physicals Plaintiffs' analyses. The Moore defendants' experts, which also have extensive experience in the commodities markets, estimate "best day" damages, using assumption they deemed favorable to the Physicals Class, of at most $1.6 million, and presented expert analyses and assumptions showing *de minimus* damages to the Physicals Class, or in the alternative a complete lack of causation. This analysis and significant risk to the Physicals Class cannot be disregarded.

Thus Physicals Plaintiffs face substantial hurdles if this litigation continues. Even assuming Physicals Plaintiffs survive past the pleading stage of the litigation, they will face significant obstacles at class certification, summary judgment, and at trial. Establishing the flow through of artificiality from the NYMEX futures market to the spot market, along with the fact physical platinum and palladium transactions are "over-the-counter" and thus there is no repository of recorded trades. In light of the tremendous risks of continued litigation, the Settlement is reasonable. *Hicks*, 2005 U.S. Dist. LEXIS 24890, at *19.

**B.    The proposed notice plan provides the best notice practicable under the circumstances, comports with due process, and comports with Rule 23(c)**

Upon preliminary approval, a court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). The nature and extent of class settlement notice is left to the Court's discretion. *McReynolds v. Richards-Cantave*, 588 F.3d 790, 805 (2d Cir. 2009). The standard for the adequacy of a settlement notice in a class

action is measured by reasonableness. *Hecht v. United Collection Bureau, Inc.*, 691 F.3d 218, 224 (2d Cir. 2012). Constructive notice by publication can satisfy due process as to persons whose whereabouts or interests cannot be determined through due diligence. *Id.* Due to the over-the-counter nature of physical platinum and palladium purchases, direct mail notice to all class members is impossible. *See* Lowther Decl. ¶ 24.

The proposed Notice plan is nearly identical to the four-prong Notice plan previously approved by the Court in the Moore and Welsh settlements. *In re Platinum & Palladium Commodities Litig.*, 2014 U.S. Dist. LEXIS 96457, at *43-44. It provides Physicals Class members with all necessary information about the Settlement, and affords Physicals Class members reasonable time to opt-out if desired, retain independent counsel to object to the Settlement and petitions for attorneys' fees and reimbursement of expenses, and carefully weigh all settlement options to determine the best course of action. *See* Lowther Decl., Ex. MFG-4 (long form notice), Ex. MFG-5 (short form notice), Ex. MFG-7 (preliminary approval order). *See also McReynolds*, 588 F.3d at 804 (notice "must be of such nature as reasonably to convey the required information … and it must afford a reasonable time for those interested to make their appearance."); *Wal-Mart*, 396 F.3d at 114 ("settlement notice must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.").

### C.     Certification of a settlement class is proper

A court may certify a class for settlement purposes where the proposed settlement class meets the requirements for Rule 23(a) class certification, as well as one of the three subsections of Rule 23(b). *Am. Int'l Group*, 689 F.3d at 238. When considering certification in the context of a proposed settlement, "courts must take a liberal rather than restrictive approach." *Cohen v. J.P.*

*Morgan Chase & Co.*, 262 F.R.D. 153, 157-58 (E.D.N.Y. 2009). While the Rule 23(a) analysis remains the same, the 23(b)(3) predominance requirement is easier to meet in settlement-only classes. *See Am. Int'l Group*, 689 F.3d at 238.

### 1.   The Physicals Class satisfies Rule 23(a)

Under Rule 23(a) an action may be maintained as a class action if:

(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

### a.   The numerosity requirement is satisfied

Rule 23(a)(1) requires that joinder of all class members is impracticable, not impossible. In this context, "impracticable" means joinder would be "difficult or inconvenient, rendering use of a class action the most efficient method to resolve plaintiffs' claims." *In re Initial Public Offering Sec. Litig.*, 260 F.R.D. 81, 90 (S.D.N.Y. 2009). The proposed Physical Settlement Class consists of persons and entities who purchased, invested in, or otherwise acquired an interest in platinum and/or palladium bullion in the United States physical or "spot" market conforming to NYMEX "good delivery" requirements, and/or at least 99.95% purity, during the period of June 1, 2006 through April 29, 2010. Based on documents obtained from third parties, the Physicals Class consists of hundreds, if not thousands, of individuals and entities scattered throughout the United States. Lowther Decl. ¶ 24. Physicals Plaintiffs' commodities expert also estimates total volume for the period October 2007 through June 2008 at more than one million bullion ounces bought. Lowther Decl. ¶ 26. Thus, the sheer number and geographic dispersity of the Physicals Class makes joinder impracticable. Rule 23(a)(1) is satisfied.

### b.       The commonality requirement is satisfied

Federal Rule of Civil Procedure 23(a)(2)'s commonality component requires that common issues of fact or law apply to each class member. *IPO*, 260 F.R.D. at 91. "Numerous courts have held that allegations concerning the existence, scope, and efficacy of an alleged antitrust conspiracy present important common questions sufficient to satisfy the commonality requirement of Rule 23(a)(2)." *In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 509 (S.D.N.Y. 1996). As with their antitrust claims, Physicals Plaintiffs' other causes of action arise from the central allegation the Settling Defendant engaged in improper market-on-close trades to artificially inflate platinum and palladium futures, which also inflated the trading prices of platinum and/or palladium bullion. Thus the proof required for establishing the manipulative conduct is common to all Physicals Class Members.

### c.       The typicality requirement is satisfied

Rule 23(a)(3)'s typicality prong is usually satisfied "when each class member's claim arises from the same course of events [] and each class member makes similar legal arguments to prove the defendant's liability." *IPO*, 260 F.R.D. at 91. Typicality is satisfied where "injuries derive from a unitary course of conduct by a single system." *Id*. Here, the injuries suffered by Physicals Plaintiffs and the Physicals Class arise from identical alleged manipulative conduct in connection with manipulative trades in the NYMEX platinum and palladium futures market. The Court has previously ruled the identical classes in the prior Moore and Welsh settlement satisfy typicality. *In re Platinum & Palladium Commodities Litig.*, 2014 U.S. Dist. LEXIS 96457, at *30-31. This satisfies Rule 23(a)(3)'s typicality prong.

#### d.      The adequacy requirement is satisfied

The adequacy element requires that representative parties will "fairly and adequately protect the interests of the class." *Baffa v. Donaldson, Lufkin & Jenrette Secs. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000). A court must examine "whether (1) plaintiff's interests are antagonistic to the interest of other members of the class and (2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Id*. at 60.

Each of the Physicals Plaintiffs and the proposed Physicals Class representatives engaged in numerous transactions in platinum and/or palladium bullion during the Class Period and were directly impacted by the alleged misconduct, just like every other Physicals Class Member. And these trades, along with detailed account information, was disclosed as part of the Physicals Class representatives' initial disclosures and discovery responses transmitted to the defense. The Court has previously ruled the classes and counsel in the prior Moore and Welsh settlement satisfy adequacy. *In re Platinum & Palladium Commodities Litig.*, 2014 U.S. Dist. LEXIS 96457, at *31-32. Thus the proposed class representatives' interests in proving liability and damages are entirely aligned with Physicals Class Members' interests.

Physicals Plaintiffs are represented by experienced counsel, who are thoroughly familiar with complex class action litigation. The partners at Doyle Lowther LLP have served as lead or co-lead counsel in many successful complex class actions, including numerous securities and consumer class cases. Lowther Decl. Ex. A. Thus, Rule 23(a)(4) is satisfied.

#### 2.      The Physicals Class satisfies Rule 23(b)(3)

Physicals Plaintiffs must show that one of the three categories under Rule 23(b) has been met. Here the Physicals Plaintiffs move to certify the settlement class under 23(b)(3), which requires: (1) questions of law or fact common to class members predominate over any questions

affecting only individual members; and (2) a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3).

### a. Common questions of law and fact predominate

As a general rule, the "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *IPO*, 260 F.R.D. at 92. Here, the entirety of the case centers around alleged manipulation of the NYMEX futures closing price and the corresponding impact of the price for platinum and/or palladium bullion. The alleged manipulation is common to all Physicals Class Members. Common questions predominate. *See NASDAQ,* 1997 U.S. Dist. LEXIS 20835, at *18, *see also Amchem Prods. v. Windsor*, 521 U.S. 591, 623, 625 (1997) ("[p]redominance is a test readily met in certain cases alleging … securities fraud").

### b. A class action is the superior method to adjudicate these claims

Finally, Rule 23(b)(3) requires the action be superior to other available methods for the fair and efficient adjudication of the controversy. The superiority requirement "ensures that the class will be certified only when it would 'achieve economies of time, effort, and expense, and promote … uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *Cordes & Co. Fin. Serv. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 104 (2d Cir. 2007).

The alleged damages suffered by many Physicals Class Members are likely to be relatively small, and thus the expense and burden of individual litigation make it virtually impossible for them to protect their rights. The highly complex nature of this case, requiring the use of multiple experts to establish liability and damages, ensures the sheer cost to retain experts makes this case far too costly to litigate on an individual basis. *See In re Blech Sec. Litig.*, 187

F.R.D. 97, 107 (S.D.N.Y. 1999). What's more, the prosecution of separate actions by thousands of individual Physicals Class Members would impose heavy burdens on the Court, creating real and serious risk of inconsistent or varying adjudications. A class action is superior to other available methods for fairly and efficiently adjudicating this controversy. Both prongs of Rule 23(b)(3) are satisfied.

For all the foregoing reasons, the Court should find this Settlement Class meets Rule 23(a)'s and 23(b)'s requirements and should certify the Settlement Class.

### D. The Court should appoint lead counsel as class counsel because the Court has previously found they satisfy Rule 23(g)

Federal Rule of Civil Procedure 23(g)(1) provides "a court that certifies a class must appoint class counsel." Where, as here, only one application is made seeking appointment as class counsel, "the court may appoint that applicant only if the applicant is adequate under Rule 23(g)(1) and (4)." The Court previously appointed Doyle Lowther LLP as Lead Counsel for the Physical class (now termed Physicals Class). *In re Platinum & Palladium Commodities Litig.*, 2014 U.S. Dist. LEXIS 96457, at *32. Following appointment, Doyle Lowther has overseen all aspects of the litigation on the Physical Class's behalf, including drafting, or assisting in drafting, the many amended complaints, responding to defendants' motions to dismiss, managing discovery, participating directly in documentary and evidentiary review, including hiring forensic discovery experts to efficiently assist with uncovering relevant evidence, reviewing the document production, transcribing audio tapes, expending significant resources on discovery and experts for discovery, for mediation, and for settlement, and negotiating the Settlement Agreement for the Physicals Class. For these reasons, the Court should now appoint Doyle Lowther as Physicals Class Counsel for the Physicals Class and permit them to act as class counsel for purposes of the Settlement.

## IV.     Conclusion

Physicals Plaintiffs ask the Court to:

1.     find the Settlement sufficiently fair, reasonable, and adequate to warrant dissemination of Class Notice (Lowther Decl., Ex. MFG-7 ¶¶ 11-12);

2.     preliminarily certify the proposed Physicals Class for settlement purposes (*id*. ¶ 2);

3.     appoint Doyle Lowther LLP as class counsel for the Physicals Class (*id*. ¶ 3);

4.     appoint plaintiffs F.W. DeVito, Inc. Retirement Plan Trust ("DeVito Trust"), Frederick and Mary DeVito, David W. DeVito and Russell W. Andrews, as representatives of the Physicals Class (*id*. ¶ 4);

5.     find the notice plan to be the best practicable notice under the circumstances (*id*.¶ 11);

6.     approve the forms and substance of the Class Notice (*id.*);

7.     approve A.B. Data, Ltd. as the Settlement Administrator and Escrow Agent for the portion of the Settlement Fund held at Huntington National Bank pursuant to the terms of the Escrow Agreement (*id*. ¶ 20); and

8.     set a schedule leading to the Court's consideration of Final approval of the Settlement, including:

    a.     the date, time, and place for a hearing to consider the fairness, reasonableness, and adequacy of the Settlement ("Fairness Hearing") (*id*. ¶ 5);

    b.     the deadline for Physicals Class Members to exclude themselves (*i.e.* opt outs) from the Settlement (*id*. ¶ 17);

    c.     the deadline for Physicals Lead Counsel to petition for attorneys' fees, reimbursement of expenses, and incentive awards for Physicals Plaintiffs (*id*. ¶ 13); and

    d.     the deadline for Physicals Class Members to object to the Settlement and any of the related petitions (*id*. ¶ 14).

Dated: October 29, 2014

_____*/s/ John A. Lowther*_____
William J. Doyle, II
John A. Lowther
**DOYLE LOWTHER LLP**
10200 Willow Creek Road, Suite 150
San Diego, CA 92131
(858) 935-9960 phone
(858) 939-1939 fax

*Class Counsel for Physicals Plaintiffs and the Physicals
Class*