UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| *In Re: Platinum And Palladium Commodities Litigation*<br><br>This Document Relates To:<br><br>Platinum/Palladium Physical Action | MASTER FILE<br>No. 10 Civ. 3617 (WHP)<br><br>**JURY TRIAL DEMANDED**<br><br>**Declaration of John Lowther In Support Of Motion For Preliminary Approval Of MF Global Class Action Settlement** |

I, John A. Lowther, declare as follows:

## I. Introduction

1. I am an attorney at law admitted to practice *pro hac vice* before this Court and am an attorney with Doyle Lowther LLP, counsel of record for Physicals Plaintiffs in this action.

2. As I was one of the counsel of record directly involved in the negotiations over the terms of this settlement, I have personal knowledge of the matters set forth in this Declaration, which is filed in support of the Physicals Plaintiffs' Motion for Preliminarily Approval of MF Global Class Action Settlement. If called to testify, I could and would competently testify to the following facts stated herein.

3. Attached as Exhibit MFG is a true and correct copy of the Stipulation and Agreement of Settlement that has been executed by the Parties and their counsel, and attached to this Declaration are the relevant exhibits in connection with the Settlement Agreement, identified within. Unless stated otherwise, all capitalized terms shall have the same meanings as set forth in the Stipulation and Agreement of Settlement.

## II. Overview of the Settling Parties' Arms' Length Settlement Negotiations

4. Physicals Plaintiffs filed their initial complaint on June 14, 2010, and several amended complaints followed. Although procedurally the case is still at the pleading stage, the discovery and fact-finding is far more advanced. The current operative complaint is the Sixth Amended Consolidated Class Action Complaint—itself a product of motion and discovery practice, forensic document review, review and transcription of audio files concerning trading in the platinum and palladium markets, deposition transcript analyses, and assistance from experts concerning the platinum and palladium markets.

5. Not only did the Physicals Plaintiffs receive extensive discovery from the

Moore defendants, which included information from defendant MF Global, and from the CFTC, the Physicals Plaintiffs also pursued third-party discovery from major national precious metal dealers and retailers, as well as financial institutions concerning their transactions in physical platinum and palladium. Thus the amended complaints' foundation includes significant time, resources, and expert analyses in reviewing highly relevant documents, testimony, electronic audio files, many electronic text messages, and similar evidence.

6. Demonstrating the Physicals Plaintiffs' (and the futures plaintiffs') development of factual evidence supporting the case, each iteration of the operative complaint increased in size, from the initial seventeen-page complaint to the 193-page Sixth Amended Consolidated Class Action Complaint—not including exhibits thereto.

7. As part of the lengthy and protracted settlement negotiation process, the settling Parties negotiated directly with each other, and also relied on the material assistance of the Hon. Daniel H. Weinstein (Ret.). Through this process, the Parties came to understand each other's claims and contentions, as well as the strengths and weaknesses of each side. Physicals Lead Counsel was informed of the relevant facts, and the Parties acted in a manner ensuring the negotiations were arms' length and non-collusive, with the assistance of an independent mediator. These negotiations were hard fought, and at certain points, negotiations ended.

8. The Parties' settlement discussions were buttressed with significant expert analysis. Even Judge Weinstein was aided by his own economics expert, who attended mediation, and who provided a third-party review and analysis of the confidential expert reports and analyses submitted as part of the formal mediation process.

9. Three formal mediation sessions over the course of three days were held. The first all-day session, on July 27, 2012, failed to produce a settlement, or even agreement on

2

basic settlement terms. Settlement discussions were difficult because MF Global had filed bankruptcy nine months before. At this time, MF Global and its insurers could not reasonably estimate defendant's true exposure to secured and unsecured creditors, and Physicals Plaintiffs were unable to estimate the likelihood of recovering money for the Physicals Class through the bankruptcy proceedings. More time was needed before the Parties' could resolve this case, and thus settlement discussions with the Moore entities only proceeded at that time.

10.     In October 2013, the Physicals Plaintiffs and the Settling Defendant agreed to resume settlement talks, and multiple settlement discussions ensued. At this time, the MF Global bankruptcy proceedings were sufficiently advanced such that Physicals Plaintiffs could make a reasonable estimate of their ability to recover any monies through bankruptcy, and MF Global could understand the aggregate size of legitimate claims and the amount of available funds to settle this case. At the Settling Defendant's request, in November 2013, the Physicals Plaintiffs made a settlement demand on MF Global. Over the course of the following months, Physicals Plaintiffs and the Settling Defendant engaged in additional discussions and correspondence regarding settlement, including detailed discussions regarding the Physicals Class's damages calculations, inflation rates, and Class Period volume.

11.     Around April 2014, the Parties agreed to return to mediation in an attempt to finalize settlement. Once again the Parties engaged Judge Weinstein, who not only presided over the earlier mediation efforts in this case, but who also had mediated numerous disputes within the overall MF Global bankruptcy proceeding. Judge Weinstein was well aware of the particular facts of this case, had received is own expert damages estimate, and understood the specific circumstances of the MF Global bankruptcy proceedings.

12.     The Parties scheduled a two-day mediation session with Judge Weinstein, on

June 4 and June 5, 2014 in New York. In advance, the Parties and the Relevant Insurers engaged in multiple conference calls with Michelle Yoshida, Esq. of JAMS and Chad Coffman, the independent economist Judge Weinstein retained to perform damages analyses. Through these preliminary discussions, the Parties were able to narrow the scope of the disputed issues. For mediation, the Physicals Plaintiffs prepared a lengthy, detailed mediation statement, which explained their position on the merits, their model for estimating volume of platinum and palladium bullion, and MF Global's total exposure.

13. As planned, the Parties and the Relevant Insurers participated in two full days of mediation before Judge Weinstein. A settlement was not reached during the summer mediation sessions. Negotiations were arduous and contentious, and the Parties moved closer to reaching a resolution of this case. Discussions continued during the following months, and the Parties finally reached a tentative settlement agreement. The Parties then spent several months finalizing the details of the settlement and documenting the settlement's terms. This process was complex and time consuming, given the involvement of a bankrupt entity and the participation of the Relevant Insurers, and concluded on October 21, 2014 when the Parties executed the Settlement Agreement.

**III.   Fact Finding, Expert Assistance and Document Review**

14. Physicals Lead Counsel expended significant time and resources reviewing and understanding the evidence. Among other things, counsel worked with forensic electronic data experts to assist in efficiently sifting through and reviewing documents and electronic data, and counsel and their experts determined the individuals who were directly involved in the alleged trading fraud, counsel determined the parameters for alleged wrongful conduct, and counsel even transcribed and organized scores of trading audio files. The process was time

4

consuming because it was not always obvious who was communicating via text message due to the use of "handles" or screen names for texts and emails, and required listening to many calls to determine speakers on the electronic audio files.

15.     The discovery produced to Physicals Plaintiffs included all documents MF Global and Non-Settling Defendants provided to the CFTC as part of its investigation into defendants' trading activity in the platinum and palladium markets, which were produced in this case after plaintiffs moved to compel their production. The production included more than two hundred fifty thousand pages of documents, thousands of emails and text messages, and numerous recorded telephone conversations, which had to be reviewed, transcribed, and analyzed by Physicals Lead Counsel.

16.     Physicals Lead Counsel spent many hours reviewing and understanding the document production, transcribing and reviewing the recorded telephone conversations, and working with experts to understand the impact on the platinum and palladium markets. Thus significant resources were expended analyzing the evidence, including using experts to help review the documents, data, and trading information. The information gathered from this labor-intensive review formed the basis of the multiple amended complaints filed with the Court.

17.     Physicals Lead Counsel also engaged in extensive third-party discovery in the form of third-party subpoenas including subpoenas to nationally-recognized physical metals dealers and several banks concerning transaction data during the Class Period, as well as subpoenas to the CFTC, resulting in the production of twenty-three deposition transcripts, which aided counsel's review and understanding of the audio, electronic, and documentary evidence.

18.     Physicals Lead Counsel expended significant resources in identifying and retaining qualified experts to assist with the precious metals markets and to assist with damages analyses, and many of the expert materials and reports were used extensively during formal and informal mediation sessions and settlement negotiations. The material was voluminous, the research extensive—and all of this was done long before Settlement was reached.

19.     Physicals Lead Counsel monitored MF Global's Bankruptcy proceedings, including regular monitoring of the SIPA Liquidation of MF Global Inc. by trustee James W. Giddens, reading and analyzing MF Global's Six Month Interim Reports concerning claims resolution, and analyzing allocation and distribution motions as well as consent orders. Throughout the mediation process, counsel also sought relevant information during the course of confidential mediation negotiations.

**IV.    The Physicals Class Faces Significant Litigation Risks, Including the Risk of No Recovery, and Thus the Settlement Is an Excellent Result for the Physicals Class**

20.     Based on Physicals Lead Counsel's experience in complex class actions, the strength and weaknesses of Physicals Plaintiffs' claims, the fact MF Global filed for bankruptcy, the extensive risk and expense of continued litigation, the analyses by various experts, and the likelihood of success at trial and appeal, counsel for the Physicals Plaintiffs believe the Settlement is fair, reasonable, adequate and in the best interests of the Physicals Class.

21.     Absent a settlement, Physicals Class members face a significant risk of either no or *de minimus* recovery, and, even in the best case, long delays before receiving any recovery. These risks are only heightened by MF Global's bankruptcy. The Physicals Class's Sherman Act, RICO, and common law fraud claims are novel, complex, have been approved

neither by the Supreme Court nor the Second Circuit. Dismissal at the pleading stage remains a serious risk. Through the Settlement, claiming Physicals Class members will receive prompt payment from an entity in bankruptcy, without such risk. The Physicals Class also faced the very real prospect of MF Global avoiding liability through its bankruptcy proceedings. Even if Physicals Plaintiffs prevailed over all challenges in bankruptcy court, significant hurdles remained, including dispositive motions being granted, class certification being denied, and successful *Daubert* challenges to every aspect of the Physicals Class's theories of artificial inflation, trading activity, alleged impact on the futures market and resultant impact in the physical market, and damages.

22. Physicals Lead Counsel retained Jeffrey M. Christian, founder and managing partner of CPM Group, to provide market analysis for the platinum and palladium bullion markets. CPM Group advises many of the world's largest corporations and institutional investors on managing their commodities price and market exposures, and provides commodity advisory services to the World Bank, United Nations, International Monetary Fund, and numerous governments.

23. Mr. Christian has been an analyst and advisor on precious metals and commodities markets since the 1970s and is one of the foremost experts on the precious metals markets. He wrote what is considered to be the first market report on platinum group metals in May 1981. Among other things, Mr. Christian wrote the business plan for the U.S. Mint's Platinum Eagle program in the 1990s, developed the Mint's platinum procurement and management program, and managed their purchases. Earlier this year, he developed and managed a platinum lease tender for the U.S. Mint.

24. Physical platinum and palladium bullion markets are difficult to quantify.

7

Physical platinum and palladium bullion is traded over-the-counter, as opposed to commodities futures, which are traded on an exchange. Information about virtually every aspect of the markets for physical platinum and palladium bullion is secret at the institutional and investor level, as is the case with most physical commodity markets. No government program collects data on transactions in physical platinum or palladium bullion. No official statistics, from either government agencies or private corporations, set forth how much physical platinum and palladium bullion is being purchased or sold in the United States for investment purposes. In the absence of concrete data, professionals in the platinum and palladium markets rely on anecdotal commentary, research, and the estimates of supply and demand made by private organizations like the CPM Group.

25. At Plaintiffs counsel's request, the CPM Group reviewed confidential information from several major precious metals dealers and financial institutions in the United States concerning their monthly transactions in physical platinum bullion and palladium bullion during the Class Period. This information supplemented the body of information CPM Group has collected for many years on the platinum and palladium markets.

26. Applying methodologies and procedures derived from standard commodities research procedures, CPM Group estimated net investor purchases in the United States of physical platinum bullion during the period of October 2007 through June 2008 was 201,056 ounces. CPM Group also estimated net investor purchases in the United States of physical palladium bullion for this same time period was 933,718 ounces.

## VI. Consideration to the Physicals Class

27. The proposed consideration for the Physicals Class is fair and reasonable, especially considering the Settlement is from a bankrupt entity and its insurers. The Net

Settlement Fund is comprised of a $577,500 cash payment from MF Global and a stipulated allowed general creditor claim in the bankruptcy proceeding in the amount of $2,317,857.14, for a total, potential benefit of up to $2,895,607.14. Physicals Plaintiffs have three options with regard to the Allowed Claim: (1) assign all or part of the Allowed Claim to MF Global Holdings for a cash-payment equivalent of 70% of the assigned claim amount; (2) assign all or part of the Allowed Claim to a third-party for cash-payment; or (3) retain ownership of all or part of the Allowed Claim and accept any distributions by the Settling Defendant in the bankruptcy proceeding. While Physicals Plaintiffs maintain a variety of different options with regard to the Allowed Claim of $2,317,857.14, it is expected at minimum the Physicals Class should receive $1,700,000 in cash from the Allowed Claim. Physicals Lead Counsel intends to explore assignment of the Allowed Claim to third parties to determine the best possible plan of action for the Physicals Class.

28.   In addition, as part of the settlement negotiations, Physicals Plaintiffs will receive an additional $200,000 in exchange for assigning their claims against defendant Joseph Welsh to MF Global, $10,000 of which will be paid to the Moore Capital entities. Plaintiffs intend to seek final approval for this additional consideration as part of their request for Final Approval on February 13, 2015.

**V.   Conclusion**

29.   The amount of monies to which Physicals Class members are entitled is within the range of damages I reasonably believe could have been obtained at trial, based upon my understanding of the facts as developed during the course of this litigation, my understanding of expert analyses and expert assumptions relied on by the Parties, and my understanding of the strengths and weaknesses of the Physicals Action, including the fact MF Global is

9

bankrupt.

30. This Settlement is the product of contentious settlement discussions that have been held in the utmost good faith and at arm's length. The action has been vigorously yet efficiently litigated, with qualified expert assistance and with the assistance of a nationally-recognized independent mediator.

**VI.    Exhibits**

31. Attached as Exhibit MFG is a true and correct copy of the Stipulation And Agreement of Settlement that has been entered by the Parties and their counsel.

32. Attached as Exhibit MFG-1 is a true and correct copy of the Notice of Presentment of Stipulation and Order Resolving General Creditor Claim Numbered 500000344 Filed On Behalf of the Physicals Class.

33. Attached as Exhibit MFG-2 is a true and correct copy of the Notice of Presentment of Stipulation and Order Regarding Limited Relief From Automatic Stay.

34. Attached as Exhibit MFG-3 is a true and correct copy of the defendant Joseph Welsh Insurance Settlement Agreement And Release, and Assignment Of Welsh Physicals' Claim.

35. Attached as Exhibit MFG-4 is a true and correct copy of a proposed draft Long Form Notice, which will be available at the Physical Class settlement website.

36. Attached as Exhibit MFG-5 is a true and correct copy of a proposed Short Form Notice which will be available at the Physical Class settlement website.

37. Attached as Exhibit MFG-6 is a true and correct copy of the proposed Escrow Agreement between and among the Parties and claims administrator A.B. Data, Inc., in the capacity of Escrow Agent.

38. Attached as Exhibit MFG-7 is a true and correct copy of the Physicals Class's Proposed Order Preliminarily Approving Proposed Settlement, Scheduling Hearing For Final Approval Thereof, And Approving The Proposed Form And Program Of Notice To The Class.

39. Attached as Exhibit MFG-8 is a true and correct copy of the proposed Physicals Class Final Order And Judgment.

40. Attached as Exhibit MFG-9 is a true and correct copy of the Physicals Class Plan Of Allocation.

41. Attached as Exhibit MFG-10 is a true and correct copy of the proposed Physicals Class Claim Form And Release.

42. Attached as Exhibit MFG-11 is a true and correct copy of the proposed Physicals Class Exclusion Form.

43. Attached as Exhibit MFG-12 is a true and correct copy of the Physicals Class Backstop Agreement (redacted).

44. Attached as Exhibit A is a true and correct copy of Doyle Lowther LLP's resume.

I declare under penalty of perjury under the laws of the United States the foregoing is true and correct. Executed this 29th day of October 2014 at San Diego, California.

_____/s/ John A. Lowther_____
John Lowther, Esq.
*Class Counsel for Physicals Plaintiffs and the Physicals Class*