**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| *In Re: Platinum And Palladium Commodities Litigation* | Master File No. 10 Civ. 3617 (WHP) |
| This Document Relates To: | Physical Plaintiffs' Memorandum Of Law In Support Of Final Approval Of Class Action Settlement With Defendants Moore Capital and Joseph Welsh |
| Platinum/Palladium Physical Class | |

# TABLE OF CONTENTS

I.  Introduction ....................................................................................................... 1

II.  Background ......................................................................................................... 3

  A.  Allegations And Defenses ............................................................................. 3

  B.  Procedural History ........................................................................................ 5

    1.  Motion Practice and Discovery .............................................................. 5

    2.  Extensive Arm's Length Settlement Discussions .................................. 8

  C.  The Amended Settlement Agreement ............................................................ 9

    1.  The Physical Class ................................................................................. 9

    2.  Consideration to Physical Class ........................................................... 11

    3.  Release and Covenant Not to Sue ........................................................ 12

    4.  The Plan of Allocation ......................................................................... 12

III.  Argument .......................................................................................................... 14

  A.  The Amended Settlement Should Receive Final Approval Because It Is Fair, Reasonable, and Adequate ........................................................................... 14

    1.  The Amended Settlement Is the Result of Arm's Length Negotiations Between Experienced Counsel .............................................................. 15

    2.  The Amended Settlement Is Substantively Fair ................................... 18

  B.  The Settlement Is Presumptively Fair because It Is the Product of Informed Arm's Length Negotiations .......................................................................... 29

  C.  The Class Has Been Preliminarily Certified and It Satisfies the Prerequisites of Rule 23(a) and Rule 23(b)(3) such that It Should Be Certified for Purposes of Final Approval ........................................................................................... 30

  D.  Notice of The Settlement Has Been Provided to the Class Pursuant to and Consistent With The Court's July 15, 2014 Order ...................................... 30

    1.  The Notice Program Complied With Rule 23 and Due Process ........... 30

IV.  Conclusion ........................................................................................................ 34

TABLE OF AUTHORITIES

**Cases**

*Charron v. Pinnacle Group N.Y. LLC,*
    874 F. Supp. 2d 179 (S.D.N.Y. 2012) .................................................. 22

*Charron v. Wiener,*
    731 F.3d 241 (2d Cir. 2013) .............................................................. 29

*Chavarria v. N.Y. Airport Serv., LLC,*
    875 F. Supp. 2d 164 (E.D.N.Y. 2012) ................................................ 12

*Clark v. Ecolab, Inc.,*
    2009 U.S. Dist. LEXIS 108736 (S.D.N.Y. Nov. 17, 2009) ................... 14

*D'Amato v. Deutsche Bank,*
    236 F.3d 78 (2d Cir. 2001) ............................................................... 14

*Frank v. Eastman Kodak Co.,*
    228 F.R.D. 174 (W.D.N.Y. 2005) ...................................................... 23

*Gilliam v. Addicts Rehab. Center Fund,*
    2008 U.S. Dist. LEXIS 23016 (S.D.N.Y. March 24, 2008) .................. 23

*Gross v. Waywell,*
    628 F. Supp. 2d 475 (S.D.N.Y. 2009) ............................................... 19

*Hecht v. United Collection Bureau, Inc.,*
    691 F.3d 218 (2d Cir. 2012) .............................................................. 31

*Hicks v. Morgan Stanley & Co.,*
    2005 U.S. Dist. LEXIS 24890 (S.D.N.Y. Oct. 24, 2005) ............... 27, 28

*In re Am. Bank Note Holographics, Inc. Sec. Litig,*
    127 F. Supp. 2d 418 (S.D.N.Y. 2001) ............................................... 20

*In re Am. Int'l Group Sec. Litig.,*
    689 F.3d 229 (2d Cir. 2012) .............................................................. 10

*In re Bear Stearns Cos.,*
    909 F. Supp. 2d 259 (S.D.N.Y. 2012) ............................................... 27

*In re China Sunergy Sec. Litig.,*
    2011 U.S. Dist. LEXIS 53007 (S.D.N.Y. May 13, 2011) ..................... 23

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,

    2010 U.S. Dist. LEXIS 119702 (S.D.N.Y. Nov. 8, 2010) ...................................................... 16

*In re Global Crossing Sec. & ERISA Litig.*,

    225 F.R.D. 436 (S.D.N.Y. 2004) .................................................................................. 23, 24, 30

*In re Natural Gas Commodities Litig.*,

    03-cv-6186, Order dated June 15, 2007 (S.D.N.Y.) ................................................................ 10

*In re Natural Gas Commodities Litig.*,

    231 F.R.D. 171 (S.D.N.Y. 2005) ............................................................................................. 10

*In re PaineWebber Ltd. P'ships Litig.*,

    147 F.3d 132 (2d. Cir. 1998) ............................................................................................. 14, 15

*In re PaineWebber Ltd. P'ships Litig.*,

    171 F.R.D 104 (S.D.N.Y. 1997) .............................................................................................. 22

*In re Platinum & Pall. Comm. Litig.*,

    2014 U.S. Dist. LEXIS 96457 (S.D.N.Y. July 15, 2014) ................................................. passim

*In re Platinum and Pall. Comm. Litig.*,

    2010 U.S. Dist. LEXIS 145183 (S.D.N.Y. Nov. 30, 2010) ....................................................... 6

*In re Platinum and Pall. Comm. Litig.*,

    828 F. Supp. 2d 588 (S.D.N.Y. 2011) ..................................................................................... 6

*In re Sturm, Ruger & Co., Inc. Sec. Litig.*,

    2012 U.S. Dist. LEXIS 116930 (D. Conn. Aug. 20, 2012) ..................................................... 21

*In re Sumitomo Copper Litig.*,

    182 F.R.D. 85 (S.D.N.Y. 1998) ............................................................................................... 10

*In re Sumitomo Copper Litig.*,

    189 F.R.D. 274 (S.D.N.Y. 1999) ............................................................................. 11, 14, 26

*In re Top Tankers, Inc. Sec. Litig.*,

    2008 U.S. Dist. LEXIS 58106 (S.D.N.Y. July 31, 2008) ....................................................... 22

*In re Union Carbide Corp. Con. Prods. Bus. Sec. Litig.*,

    718 F. Supp. 1099 (S.D.N.Y. 1989) ...................................................................................... 24

*In re Wachovia Equity Sec. Litig*,

    2012 U.S. Dist. LEXIS 97910 (S.D.N.Y. June 12, 2012) ....................................................... 16

*In re: NASDAQ Market-Makers Antitrust Litig.*,

1997 U.S. Dist. LEXIS 20835 (S.D.N.Y. Dec. 31, 1997) ...................................... 10

*Joel A. v. Giuliani,*

    218 F.3d 132 (2d Cir. 2000)............................................................................ 14

*Malchman v. Davis,*

    706 F.2d 426 (2d Cir. 1983)............................................................................ 15

*Maley v. Del Global Techs Corp.,*

    186 F. Supp. 2d 358 (S.D.N.Y. 2002) ............................................................ 12

*Maywalt v. Parker & Parsley Petroleum Co.,*

    67 F.3d 1072 (2d Cir. 1995)............................................................................ 15

*McReynolds v. Richards-Cantave,*

    588 F.3d 790 (2d Cir. 2009)..................................................................... 31, 32

*Menkes v. Stolt-Nielsen S.A.,*

    270 F.R.D. 80 (D. Conn. 2010) ...................................................................... 27

*Morris v. Affinity Health Plan, Inc.,*

    859 F. Supp. 2d 611 (S.D.N.Y. 2012) ............................................................ 26

*Newman v. Stein,*

    464 F.2d 689 (2d Cir. 1972)............................................................................ 23

*Park v. Thomson Corp.,*

    2008 U.S. Dist. LEXIS 84551 (S.D.N.Y. 2008) ....................................... 22, 27

*Silverman v. Motorola Solutions, Inc.,*

    739 F.3d 956 (7th Cir. 2013) .......................................................................... 16

*Silverman v. Motorola, Inc.,*

    2012 U.S. Dist. LEXIS 63477 (N.D. Ill. May 7, 2012) ................................... 16

*Sullivan v. DB Investments, Inc.,*

    667 F.3d 273 (3d Cir. 2011)............................................................................ 10

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,*

    396 F.3d 96 (2d Cir. 2005)..................................................................... passim

*Weigner v. City of New York,*

    852 F.2d 646 (2d Cir. 1988)............................................................................ 31

**Statutes**

15 U.S.C. §§ 1 *et seq.*................................................................................................ 3

18 U.S.C. §§ 1961 *et seq.*.................................................................................................... 3

Commodities Exchange Act, 7 U.S.C. §§1 *et seq.* ................................................................. 24

Fed. R. Civ. P. 23 ................................................................................................................ 30, 31

Physical Plaintiffs, F.W. DeVito, Inc. Retirement Plan Trust, Frederick and Mary DeVito, David W. DeVito and Russell W. Andrews, submit this Memorandum and the accompanying omnibus declaration of John Lowther, Esq. in support of their motion for final approval of the Amended Stipulation and Agreement of Settlement ("Amended Settlement"), executed on March 21, 2014. The Settling Defendants are Moore Capital Management, LP; Moore Capital Management, LLC; Moore Capital Advisors, LLC; Moore Advisors, Ltd.; Moore Macro Fund, LP; Moore Global Fixed Income Master Fund, LP; Christopher Pia; Louis Bacon; and Eugene Burger (the "Moore Defendants"); and Joseph Welsh. A copy of the Amended Settlement and accompanying exhibits was filed on March 21, 2014 and attached as Exhibits A-1 through A-9 to the Declaration of John Lowther In Support Of Motion For Preliminary Approval Of Amended Class Action Settlement, filed with Physical Plaintiffs' amended motion for preliminary approval. (ECF 168).

## I.    Introduction

The Physical Plaintiffs' settlements with the Moore Defendants and defendant Joseph Welsh deserve final approval. These settlements were achieved only after three plus years of hard-fought litigation, myriad failed negotiations, voluminous fact and expert discovery, and significant expenditure of resources by all sides. Settlement was reached only after two formal mediation sessions before The Honorable Daniel Weinstein (Ret.), and many months of contentious and protracted settlement negotiations that followed.

Under the Amended Settlement, the Physical Class receives cash payments totaling $9,355,000 and a consent judgment against defendant Welsh in the amount of $7,000,000 in exchange for Physical Plaintiffs' and the Physical Class's release of claims against the Settling Defendants. The Welsh consent judgment has been resolved, through which the Physical Class

received an additional recovery of $200,000 in cash from bankrupt defendant MF Global, Inc. and certain sureties, the settlement of which has been filed concurrently.

The Amended Settlement includes all the hallmarks of a fair, reasonable, and adequate settlement of a complex, class action litigation. Settlement negotiations proceeded in good faith, were conducted at arm's length by highly experienced class counsel, were devoid of collusion, and lasted many months. These negotiations included mediation sessions with Retired Judge Weinstein, one in New York and another in California, multiple telephonic conferences with the mediator, and numerous follow-on negotiations between formal mediation sessions. Despite the Parties' substantial efforts to resolve this dispute, formal mediation failed to produce a settlement. Only after building upon the groundwork from the formal mediation sessions did counsel, through additional negotiations, reach an agreement to resolve this litigation.

Physical Plaintiffs' decision to settle was informed by the extensive record in this case, including more than 250,000 pages of document discovery, numerous subpoena responses from third parties, twenty-three fact depositions, extensive consultations with damages experts and experts on the platinum and palladium markets, as well as other facts and data, such as the risks and uncertainty of litigation.

Final approval of this settlement is warranted because of the very real risk of an adverse finding on Physical Plaintiffs' antitrust and RICO claims, uncertainty in certifying a nationwide class, and lack of a CEA claim in this matter. As testament to the excellent result achieved in resolving this matter, as of the date of this filing, not a single objection to the Settlement, including the proposed attorneys' fees, has been filed. Based on the totality of circumstances, Physical Lead Counsel believes the Amended Settlement is in the best interest of Physical Plaintiffs and the Physical Class. Accordingly, Physical Plaintiffs, on behalf of themselves and

the proposed Physical Class, respectfully request the Court enter final approval of the Amended Settlement and enter the Final Judgment, dismiss the action, and retain jurisdiction to enforce the settlement. *See* Omnibus Declaration of John A. Lowther in Support of Final Approval of Physical Class Action Settlements and Support of Reimbursement of Attorneys' Fees and Expenses ("Lowther Omnibus Declaration"), Exhibit A.

## II.   Background

Physical Plaintiffs seek damages on behalf of themselves and the Physical Class based on allegations the Settling Defendants manipulated certain New York Mercantile Exchange ("NYMEX") platinum and palladium futures contracts, in turn, causing prices of physical platinum and palladium to become artificially inflated in violation of the Sherman Antitrust Act, 15 U.S.C. §§ 1 *et seq.*, the Racketeer Influenced Corrupt Organizations Act, 18 U.S.C. §§ 1961 *et seq.*, and common law proscriptions against fraud, aiding and abetting fraud, and conspiracy to commit fraud. (ECF 218 ¶¶ 372-470.) Physical Plaintiffs also assert a negligence claim against defendant Joseph Welsh. *Id.*

### A.   Allegations And Defenses

Physical Plaintiffs allege defendants, from May 2006 until at least June 6, 2008, engaged in a manipulative scheme to inflate prices in platinum and palladium futures contracts traded on NYMEX, which in turn caused artificial price inflation in physical platinum and palladium bullion over the course of the Class Period. (ECF 218 ¶¶ 1-19.) Plaintiffs allege defendants manipulated the closing price of platinum and palladium futures contracts and physical bullion by engaging in "market on close" trades during the last two minutes of the day's trading—at prices alleged to be in excess of best available prices. *Id.* ¶¶ 166-307. The futures closing prices for platinum and palladium are based on a volume-weighted average pricing ("VWAP") of the

last two-minutes of the day's trading. *Id*. Physical Plaintiffs contend defendants took advantage of the VWAP during the two-minute close by making numerous large and uneconomic purchases during this window, resulting in artificially inflated closing prices of platinum and palladium futures. *Id*. Physical Plaintiffs assert that defendants' conduct in artificially increasing the price of platinum and palladium futures directly impacted the physical bullion market for these metals and caused Physical Plaintiffs and Physical Class members to pay artificially high prices during the Class Period. *Id*. ¶¶ 79-83, 237-241, 242-264. Settling Defendants deny Physical Plaintiffs' charges in their entirety. Lowther Preliminary Approval Decl. Ex. 1 at 2. (ECF 168.)

Defendants have consistently and vigorously denied Plaintiffs' claims. At the time Settlement was reached, Settling Defendants had significant defenses, including: (1) the antitrust claims are defective because the alleged conspiracy does not involve independent centers of decision making, since MF Global and Joseph Welsh are alleged to be agents of the Moore Defendants; (2) the operative complaint fails to allege a horizontal conspiracy between competitors for purposes of a per se violation of the antitrust laws; (3) Physical Plaintiffs fail to show the required antitrust impact on competition or the relevant market; (4) the RICO claims are deficient because the operative complaint fails to allege the requisite "pattern of racketeering activity;" (5) the operative complaint fails to allege the required "continuity" of illegal activity; and (6) Physical Plaintiffs lack standing to assert RICO or antitrust claims because they purchased physical platinum and palladium and the alleged manipulation occurred in the futures market. These legal arguments remained open and viable at the time the Settlements were reached.

Defendants also disputed Physical Plaintiffs' understanding of the facts. They denied the market on close trades were devised to manipulate or ever did inflate the trading price of

platinum and palladium futures. Defendants denied the MOC trades caused the price distortions in the platinum and palladium bullion markets. Because the alleged manipulation occurred in the futures market, defendants argued, Physical Plaintiffs would be unable to prove their trades, even if found to be illegal and manipulative, had a corresponding effect on the trading price of physical platinum and palladium. Defendants raised substantial challenges to Physical Plaintiffs' damages calculations and the methodologies underlying the damages models. The Settling Defendants disputed the Physical Class's volume and damages numbers, and challenged every single assumption underlying Physical Plaintiffs' analyses. The Moore defendants' experts, which also have extensive experience in the commodities markets, estimate "best day" damages, using assumption they deemed favorable to the Physical Class, of at most $1.6 million, and presented expert analyses and assumptions showing *de minimus* damages to the Physical Class, or in the alternative a complete lack of causation. This analysis and significant risk to the Physical Class cannot be disregarded.

> **B.      Procedural History**
>
> **1.      Motion Practice and Discovery**

On June 14, 2010, Physical Plaintiffs filed an initial seventeen-page class action complaint against certain Moore Defendants and asserted claims under Section 1 of the Sherman Act. On August 10, 2010, Physical Plaintiffs filed a 62-page amended class action complaint. Thereafter the Physical Action was consolidated with the Futures Action under the caption *In re: Platinum and Palladium Commodities Litigation*. Doyle Lowther LLP was appointed lead counsel for the Physical Action.

On September 30, 2010, the Futures and Physical Plaintiffs filed a consolidated class action complaint against the Moore Defendants and MF Global, Inc. In the 77-page consolidated

complaint, Physical Plaintiffs charged defendants with violating the Sherman Act and RICO. Defendants moved to dismiss Physical Plaintiffs' RICO and antitrust claims, which after oral argument, the Court granted, along with leave to amend. *In re Platinum & Pall. Comm. Litig.*, 828 F. Supp. 2d 588 (S.D.N.Y. 2011).

In discovery, the Court ordered defendants to produce all documents they provided to the Commodities Futures Trading Commission ("CFTC"). *In re Platinum & Pall. Comm. Litig.*, 2010 U.S. Dist. LEXIS 145183 (S.D.N.Y. Nov. 30, 2010). Defendants produced hundreds of thousands of internal documents, myriad text and instant messages, and voluminous audio recordings of actual trading and broker orders on defendants' behalf. Lowther Omnibus Decl. ¶¶ 38, 89.

Physical Lead Counsel then expended significant time and resources reviewing and understanding the evidence. Lowther Omnibus Decl. ¶¶ 10, 89-94. Counsel retained forensic electronic data experts to assist in formulating an efficient method of reviewing defendants' voluminous information, identifying specific individuals involved in the alleged misconduct, determining the parameters of wrongful conduct, and transcribing and organizing scores of electronic audio files. Lowther Omnibus Decl. ¶¶ 90-91. The information obtained from this extensive evidentiary review formed the foundation of Plaintiffs' Third Amended Consolidated Class Action Complaint. This 161-page complaint asserted the same antitrust and RICO claims against the Moore Defendants, Welsh, and MF Global, Inc., which soon thereafter filed bankruptcy. (ECF 75.)

On February 3, 2012, defendants moved to dismiss all of the Physical Plaintiffs' claims. (ECF 106.) On February 29, 2012, the Physical Plaintiffs filed an opposition to Defendants' Motion to Dismiss (ECF 111), which was set for hearing in July 2012. (ECF 119.) In March

2012, pursuant to subpoena, Plaintiffs began to receive documents from the CFTC, including twenty-three deposition transcripts. Lowther Omnibus Decl. ¶ 102. On July 11, 2012, shortly before oral arguments on the defendants' second motion to dismiss, the parties requested a stay to explore settlement opportunities, which the Court granted. Then on July 27 and August 27, 2012, the parties participated in mediation sessions with the Honorable Daniel Weinstein (Ret.). Although these sessions did not result in a settlement, the Parties continued their settlement discussions.

On December 19, 2012, the Court permitted the Physical Plaintiffs to file a Fourth Amended Consolidated Complaint. (ECF 125.) On January 14, 2013, the Physical Plaintiffs filed their Fourth Amended Complaint. (ECF 126.) This 256-page complaint included many new factual allegations and additional common law claims of fraud, aiding and abetting fraud, and conspiracy to commit fraud. The Court stayed the time for defendants to respond to the Fourth Amended Complaint to allow the Parties to continue settlement talks.

On July 23, 2013, the Physical Plaintiffs obtained leave to file, and did submit to the Court under seal, their Fifth Amended Consolidated Class Action Complaint, which added a negligence claim against defendant Welsh. (ECF 132-33.) Two months later, on September 18, 2013, the Physical Plaintiffs and Settling Defendants entered into a settlement agreement. On this same date, the Physical Plaintiffs moved for preliminary approval of this settlement. (ECF 146.) Soon afterward, on October 4, 2013, the Court held a hearing to consider preliminary approval of the settlement. (ECF 136.) During the hearing, the Court suggested the Parties consider making certain revisions and additions to the proposed Settlement. The Parties requested permission to resubmit their settlement papers after consideration and incorporation of the suggested changes. A Sixth Amended Consolidated Class Action Complaint was submitted

*in camera* to the Court, and later a stipulation was entered into and granted permitting the filing of the Sixth Amended Consolidated Class Action Complaint. (ECF 206.) Four days later and following drafting of the Sixth Amended Complaint, on March 21, 2014, the Physical Plaintiffs and Settling Defendants executed the Amended Settlement and Physical Plaintiffs moved for preliminary approval of the Amended Settlement. The Court granted preliminary approval and certified a Rule 23(b)(3) class three months later. *In re Platinum & Pall. Comm. Litig.*, 2014 U.S. Dist. LEXIS 96457, at *44 (S.D.N.Y. July 15, 2014).

### 2.    Extensive Arm's Length Settlement Discussions

Settlement discussions in this case were lengthy, protracted, and hotly contested. Negotiations involved extensive expert analysis on causation and damages by Physical Plaintiffs, the futures plaintiffs, and defendants. Given the complexity of the economic analyses, the Parties recognized the need for an independent economist to advise the mediator. This independent expert reviewed the Parties' expert reports and even undertook his own analysis and formulated his own conclusions about the alleged price inflation in the physical platinum and bullion investment markets. These conclusions were shared with the Parties as a means of bridging the gap between their competing damages models.

The Parties participated in mediation sessions before Judge Weinstein, a nationally-recognized mediator with extensive expertise in resolving complex litigations, including commodities and antitrust class actions. The first mediation session, held on July 27, 2012 in Manhattan, failed to resolve this dispute, or even generate a term sheet. A second mediation session with Judge Weinstein took place in California on August 27, 2012. This second all-day session also failed to conclude in a settlement, though the Parties did make progress on very broad points of settlement.

After mediation failed to resolve this dispute, on January 9, 2013, Physical Plaintiffs, returned to pressing this litigation and requested, together with the futures plaintiffs, leave to file a fourth amended complaint. As requested, the Court allowed Physical Plaintiffs to amend their pleadings, but stayed the time for defendants to respond to allow the Parties to focus their efforts on settlement. As settlement talks progressed, and in late July 2013, the Court granted the Parties' request to file a fifth amended complaint to add a negligence claim against defendant Welsh.

### C.   The Amended Settlement Agreement

#### 1.   The Physical Class

The Amended Settlement seeks certification of the following class for settlement purposes:

> All persons and/or entities who purchased, invested in, or otherwise acquired an interest in platinum or palladium bullion in the United States physical or "spot" market conforming to NYMEX "good delivery" requirements, and/or of at least 99.95% purity, during the period of June 1, 2006 through April 29, 2010 (the "Class Period").

Physical Plaintiffs allege a continuous course of conduct since at least June 1, 2006 for their RICO claim, and damages theories make it theoretically possible that the potential impact of the alleged misconduct extended until April 29, 2010, when the CFTC's settlement with certain defendants was announced to the public. Settling Defendants therefore insisted on a release and Class Period that ends on April 29, 2010.[1] Where an expanded class includes members with different and potentially barred causes of action, courts have affirmed certification in the interest of securing "global peace" and preventing "protracted litigation and

---

[1] This Class Period expansion tracks the futures settlement class, extending the beginning of the class back to the first manipulative trade by defendants through the last arguable date (April 29, 2010) on which any residual impact from the alleged manipulative trades (ending on May 21, 2008) could have remained in the market based on Plaintiffs expert damages opinion, which Plaintiffs insisted form the basis of the Plan of Allocation.

future relitigation of settled questions." *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 310-11 (3d Cir. 2011) ("achieving global peace is a valid, and valuable, incentive to class action settlements"); *accord In re Am. Int'l Group Sec. Litig.*, 689 F.3d 229, 243-44 (2d Cir. 2012) ("Defendants in class action suits are entitled to settle claims pending against them on a class-wide basis even if a court believes that those claims may be meritless" so long as Rule 23 is otherwise satisfied); *Platinum & Pall.*, 2014 U.S. Dist. LEXIS 96457, at *41 (same). Even under "heightened" scrutiny, expanded class periods are appropriate where "the class securities and the alleged conspiracy and its duration remain unchanged," and "[e]ach common question is as important for the extended period as it was for the original period." *In re: NASDAQ Market-Makers Antitrust Litig.*, 1997 U.S. Dist. LEXIS 20835, at *8, 13, 18 (S.D.N.Y. Dec. 31, 1997).

The Plan of Allocation compensates Physical Class members for the period from June 1, 2006 until April 29, 2010. Although disputed issues exist concerning the extent, if any, the alleged trading impacted bullion prices, Physical Class members receive compensation for any net artificiality paid, according to the terms of the Plan of Allocation, for any artificial impact of the settling Defendants' trading that could have remained in the market based on the theory of damages of Plaintiffs' experts. And expanding the class period here comports with other commodity manipulation cases where settlement classes were broader than the original litigation class. *Compare In re Natural Gas Comm. Litig.*, 231 F.R.D. 171, 178 (S.D.N.Y. 2005) (litigation class period of January 1, 2000 through December 31, 2002) *with In re Natural Gas Comm. Litig.*, 03-cv-6186, (S.D.N.Y. June 15, 2007) (approving settlement and certifying settlement class period of June 1, 1999 through December 31, 2002); *compare In re Sumitomo Copper Litig.*, 182 F.R.D. 85, 88 (S.D.N.Y. 1998) (litigation class period of June 24, 1994

through June 15, 1996) *with In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 277, 284 at n. 1 (S.D.N.Y. 1999) (approving settlement and certifying settlement class period of June 24, 1993 through June 15, 1996).

### 2. Consideration to Physical Class

Under the Amended Settlement Agreement, the Moore Defendants agree to pay a total of $9,355,000. Payment of the $9,355,000 is to be made in the following manner: (1) by depositing $9,205,000 into an interest-bearing CRIS account for the Southern District of New York; (2) by depositing $150,000 into an escrow account to be established at the Huntington National Bank to be used for providing class notice; and (3) by depositing an additional $30,000 into the CRIS account, as further consideration to quiet the litigation. *See* Amended Settlement Agreement at Section 3(a). These payments shall be made no later than fourteen (14) days after the Scheduling Order is entered. *Id*. The Amended Settlement Agreement grants the Moore Defendants the right to the first $10,000 of any proceeds the Physical Class recovers on the Welsh Consideration as partial repayment of the $30,000 paid by the Moore Defendants to quiet the litigation against defendant Welsh. On or about July 15, 2014, per the terms of settlement, the Moore Defendants made the requisite deposit of funds. (ECF 214.)

Further, under the Amended Settlement, Defendant Welsh agrees to a stipulated judgment in the amount of $7,000,000. *See* Amended Settlement Agreement Section 3(b). The Moore Defendants' payment of $9,355,000, plus interest generated from these proceeds, along with any recovery from the Welsh Consideration, constitute the Settlement Fund. Per the Amended Settlement, Physical Class and Physical Lead Counsel agree not to seek to collect the $7,000,000 stipulated judgment from Welsh personally and will seek to collect said sum from

the Relevant Insurers. Given the uncertainty of the collectability of any personal judgment against Welsh, the $7,000,000 stipulated judgment fair and reasonable consideration.

The Relevant Insurers have denied coverage for Welsh on multiple grounds, and thus there could be no assurance of collecting any additional monies under the $7,000,000 stipulated judgment. The Welsh consent judgment now has been resolved for $200,000 in cash, which considering the likelihood of collecting on the Welsh stipulated judgment from the Relevant Insurers, is a fair and reasonable resolution. Payment of the $200,000 has been approved by the MF Global bankruptcy Court and was preliminarily authorized by this Court.

### 3.     Release and Covenant Not to Sue

In exchange for the foregoing consideration, the Physical Class agrees to release Settling Defendants from all claims related to the Physical Class's transactions in Platinum and/or Palladium Bullion. Ex. A, Section 6, Lowther Preliminary Approval Decl. (ECF 168) The Physical Class's release and covenant not to sue excludes any claims a Physical Class member may have as a class member in the Futures Action. *Id.*

### 4.     The Plan of Allocation

To approve the allocation plan, the Court must find it fair, reasonable, and adequate. *See Maley v. Del Global Techs Corp.*, 186 F. Supp. 2d 358, 367 (S.D.N.Y. 2002). To decide if the plan is fair, "courts look primarily to the opinion of counsel. That is, as a general rule, the adequacy of an allocation plan turns on whether counsel has properly apprised itself of the merits of all claims, and whether the proposed apportionment is fair and reasonable in light of that information." *Chavarria v. N.Y. Airport Serv.*, *LLC,* 875 F. Supp. 2d 164, 175 (E.D.N.Y. 2012). "Courts also consider the reaction of the class to a plan of allocation." *Id.* So far, no Physical

Class Member has opted out of or filed an objection to the Plan of Allocation. *See* Lowther Omnibus Decl., Exhibit C.

Physical Plaintiffs' Plan of Allocation adopts the artificiality calculations and analyses from the futures plaintiffs' plan of allocation, which provides a one-to-one flow-through of artificial inflation (damages) in platinum and palladium futures trades on NYMEX to corresponding Physical Platinum and/or Palladium Bullion transactions. This is an excellent result for the Physical Class, whose damages are necessarily derivative of the damages occasioned by defendants' market on close trades in the platinum and palladium NYMEX markets, and said damages may be affected by other market forces, as the defendants contend.

The Plan of Allocation allocates ninety percent (90%) of the Net Settlement Fund to Claiming Physical Class Members' NAP Transaction. Ex. A-6 at 2, Lowther Preliminary Approval Decl. (ECF 168.) "NAP Transactions" means any transactions in Physical Platinum and/or Palladium executed between November 1, 2007 and June 18, 2008 for palladium, and between November 19, 2007 and June 18, 2008 for platinum. Ex. A-6 at 1, Lowther Preliminary Approval Decl. (ECF 168.) All purchases (or sales) transacted on a day where alleged inflation was not zero (as provided in Exhibits A and B to the Plan of Allocation) will be credited (or debited) a dollar amount of inflation on each of these NAP transactions. Ex. A-6, Lowther Preliminary Approval Decl. (ECF 168.) The remaining ten percent (10%) of the Net Settlement Fund is allocated to Claiming Physical Class Members' NL Transactions, which are described in ¶¶ 10-14 of the Plan of Allocation. Ex. A-6 at 4, Lowther Preliminary Approval Decl. (ECF 168.) Determinations under the Plan of Allocation shall be made by the Settlement Administrator, subject to review by Physical Lead Counsel, counsel for the Settling Defendants, and, where

disputed, an appointed mediator, and the Court. Ex. A-6 at 6, Lowther Preliminary Approval Decl. (ECF 168).

Accordingly, Physical Lead Counsel has developed an allocation plan that is fair, reasonable, and adequate, and Class Members receive the maximum possible recovery under the terms of the settlement agreement. Distribution pro rata ensures each class member receives a fair proportion of the settlement.

## III.   Argument

Public policy strongly favors pretrial settlement of class action lawsuits. *In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d. Cir. 1998); *Platinum & Pall.*, 2014 U.S. Dist. LEXIS 96457, at *35. Courts should give weight to the parties' consensual decision to settle class action cases because litigants and their counsel occupy unique positions to assess potential risks. *See Clark v. Ecolab, Inc.*, 2009 U.S. Dist. LEXIS 108736, at *14 (S.D.N.Y. Nov. 17, 2009). This is especially true in investor class actions, which by their nature are legally and factually complex and outcomes are "notoriously uncertain." *Sumitomo*, 189 F.R.D. at 281.

### A.   The Amended Settlement Should Receive Final Approval Because It Is Fair, Reasonable, and Adequate

Federal Rule of Civil Procedure 23(e) requires court approval of settlements in class cases. *Platinum & Pall.*, 2014 U.S. Dist. LEXIS 96457, at *35. To approve a class action settlement, a court must determine that the proposed terms are "fair, adequate, and reasonable, and not a product of collusion." *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir. 2000). This requires an assessment of both procedural and substantive fairness. *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 113 (2d Cir. 2005); *see also D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) ("The District Court determines a [class action] settlement's fairness by examining the negotiating process leading up to the settlement as well as the settlement's

14

substantive terms."). Courts conduct this analysis keeping in mind there is strong public policy supporting the settlement of class actions. *Wal-Mart Stores, Inc.*, 396 F.3d at 117.

To determine procedural fairness, courts examine the "negotiating process leading to the settlement," and can presume "fairness, adequacy, and reasonableness" when a class settlement is reached "in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Id.* at 116-17. Courts "determine whether a settlement is substantively fair by comparing 'the terms of the compromise with the likely rewards of the litigation.'" *Platinum & Pall.*, 2014 U.S. Dist. LEXIS 96457, at *37 (quoting *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1995)). District courts in the Second Circuit "typically consider the nine *Grinnell* factors at the final approval stage":

> (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*See Platinum & Pall.*, 2014 U.S. Dist. LEXIS 96457, at *37-38; *see also Wal-Mart,* 396 F.3d at 117; *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974).

### 1. The Amended Settlement Is the Result of Arm's Length Negotiations Between Experienced Counsel

A class action settlement is entitled to a presumption of fairness, adequacy, and reasonableness when the product of "arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart*, 396 F.3d at 116; *accord Platinum & Pall.*, 2014 U.S. Dist. LEXIS 96457, at *36. Settlement negotiations in the Physical Action transpired strictly at arm's length and were free of collusion. Lowther Omnibus Decl. ¶¶ 105-115. Both

parties were represented by experienced, capable counsel. The Amended Settlement is the result of rigorous, contentious, and protracted negotiations, including, among other things, several unsuccessful negotiations before Judge Weinstein, who was assisted by an independent economist, interim amended complaints and additional fact discovery, extensive use of experts and expert analyses by Physical Plaintiffs and defendants, and dozens of telephone conferences and scores of e-mail correspondence between zealous counsel, all over a period of many months. *Id.*

This presumption of fairness and adequacy applies here because this Settlement (and the MF Global Settlement) was reached by experienced, fully-informed counsel after arm's-length negotiations and, ultimately, with the assistance of Judge Daniel Weinstein, one of the nation's premier mediators in complex, multi-party, high stakes litigation, and one in whom this court reposes considerable confidence due to past experience. *See In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 2010 U.S. Dist. LEXIS 119702, at *40 (S.D.N.Y. Nov. 8, 2010) (McMahon, J.) (holding "presumption in favor of the negotiated settlement in this case is strengthened by the fact that settlement was reached in an extended mediation supervised by Judge Weinstein"); *In re Wachovia Equity Sec. Litig*, 2012 U.S. Dist. LEXIS 97910, at *9 (S.D.N.Y. June 12, 2012) (noting the procedural fairness of settlement mediated by Judge Weinstein); *see also Silverman v. Motorola, Inc.*, 2012 U.S. Dist. LEXIS 63477, at *12 (N.D. Ill. May 7, 2012), *aff'd sub nom. Silverman v. Motorola Solutions, Inc.*, 739 F.3d 956 (7th Cir. 2013) (approving settlement and describing Judge Weinstein as "a nationally-recognized and highly-respected mediator").

Physical Lead Counsel engaged in extensive fact discovery and fact-finding before the Settlement was reached. This discovery included review of all documents Settling Defendants provided to the CFTC, which were produced in this case only after Plaintiffs moved to compel

their production as part of their ongoing factual investigation. The production included more than 8.64 gigabytes of information comprised of hundreds of thousands of pages of documents, thousands of emails and text messages, and numerous recorded telephone conversations, which had to be reviewed, transcribed, and analyzed by Physical Lead Counsel. Lowther Omnibus Decl. ¶¶ 88-95. Significant time and resources were expended analyzing the evidence, including using forensic electronic data experts to help efficiently review the documents and electronic data, and identify individuals involved in the alleged illegal trading. *Id.* ¶¶ 90-93.

Physical Lead Counsel engaged in extensive third-party discovery in the form of numerous subpoenas, including subpoenas to nationally-recognized physical metals dealers and several financial institutions concerning transaction data during the Class Period. Lowther Omnibus Decl. ¶¶ 98-100. Physical Lead Counsel retained qualified experts to assist with the precious metals markets and to assist with damages analyses. Expert analyses and reports were used extensively during formal and informal mediation sessions and settlement negotiations. The expert material was voluminous, the research extensive—and all of this was done long before Settlement was achieved. Lowther Omnibus Decl. ¶¶ 103-104.

At the time the Amended Settlement was reached, Settling Defendants were preparing to move to dismiss the Physical Plaintiffs' fifth amended complaint in its entirety. (ECF 130.) The Settling Defendants' arguments created substantial risk that some or all of Physical Plaintiffs' claims would be dismissed, potentially with prejudice. During the Parties' negotiations, Settling Defendants and their experts criticized the methodology and assumptions underlying the Physical Plaintiffs' damage models. According to Settling Defendants, even if Physical Plaintiffs could establish liability, damages were non-existent. At most, argued defendants, even based on assumptions favorable to Physical Plaintiffs, classwide damages were a mere fraction of

Plaintiffs' calculations. Absent a settlement, defendants' attacks would be further developed and pursued in Court, creating real risks over the amount of damages the Physical Class might recover, even assuming the class prevailed on the issue of liability.

Based on Physical Lead Counsel's extensive experience in complex class actions, the strength and weaknesses of Physical Class's claims, including the distinct possibility of a successful dispositive motion at the pleadings stage, the extensive risk and expense of continued litigation, the analyses of various experts, including an expert selected by the mediator to analyze the Parties' damages models, and the likelihood of success at trial and appeal, Physical Lead Counsel believes the Amended Settlement is fair, reasonable, and adequate.

### 2.    The Amended Settlement Is Substantively Fair

Under the *Grinnell* factors, the Amended Settlement is substantively fair and substantially benefits the Physical Class.

### a)    Complexity, Expense, and Likely Duration of the Litigation

"This antitrust, [RICO, and commodities fraud] class action involves a complex factual record and novel issues of law." *Currency Conversion*, 2006 U.S. Dist. LEXIS 81440, at *15. Absent settlement, the litigation would have consumed many years of party and Court resources, and would have accumulated substantial litigation and expert costs. Physical Lead Counsel believes further litigation would have been "lengthy" and "bitterly fought," *Wal-Mart*, 396 F.3d at 118, not only at the motion to dismiss stage, but also through class certification, summary judgment, trial, and appeal. The complexity of the substantive law in the Physical Action is further compounded by the underlying facts, such as NYMEX platinum and palladium commodities markets, market-on-close orders, volume-weighted pricing, and linking artificial inflation in Physical Platinum and/or Palladium with manipulation of NYMEX futures contracts.

Even mediator Weinstein retained the expertise of his own economist to provide guidance on the analyses and counter-analyses of the Parties' experts during mediation and settlement discussions.

Without Settlement, the Physical Action likely would continue for years. Multiple rounds of unsuccessful settlement discussions confirm this conclusion. "The expense and delay of continued litigation could be substantial." *Currency Conversion*, 2006 U.S. Dist. LEXIS 81440, at *15. Settlement, on the other hand, enables the Physical Class to avoid very significant litigation expenses, including expert costs, continued discovery expenses, expenses tied to class certification, such as retaining antitrust experts, summary judgment motion practice, and a lengthy trial.

Additionally, there is no guarantee Physical Plaintiffs would win the case on summary judgment or at trial. RICO claims are complex and notoriously difficult to prove. As one court observed in dismissing the plaintiffs' claims under RICO and denying their leave to amend:

> This outcome should come as no surprise to any counsel versed in the formidable intricacies and pitfalls inherent in RICO litigation. These challenges bear out in the minimal rate of success plaintiffs have achieved in prosecuting RICO actions … the statistical record indicates that in 98 percent of the RICO appellate cases surveyed, which do not include RICO actions dismissed by the district courts but not appealed, plaintiffs and counsel invested extensive time and energies in litigation only to come away with a total loss.

*Gross v. Waywell*, 628 F. Supp. 2d 475, 479-80 (S.D.N.Y. 2009). Plaintiffs also face considerable risks associated with proving liability and damages, as discussed below. *See* Section 3.1.2.4, *infra*. Thus, the Settlements provide the Physical Class with a substantial and immediate recovery, and avoid the considerable risk that the litigation will stretch on for years and could ultimately end in a result less favorable for the Physical Class. Because taking this case to verdict and through subsequent appeals would likely take years, because it would cost the class

potentially over a million dollars in additional expenses, and because there is no guarantee the Physical Class would prevail, the Court should weigh these facts heavily in favor of approving the Amended Settlement.

> **b)** **Physical Class's Reaction to the Amended Settlement**

As of the date of this filing, Physical Plaintiffs are aware of no opt-outs to the Amended Settlement, nor have any objections been filed to date. Under the *Grinnell* factors, "the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy…. [T]he lack of objections may well evidence the fairness of the [S]ettlement." *In re Am. Bank Note Holographics, Inc. Sec. Litig*, 127 F. Supp. 2d 418, 425 (S.D.N.Y. 2001).

As described more fully in Section III D, *infra*, Physical Lead Counsel caused the court-authorized Claims and Notice Administrator AB Data to publish notice nationally, and in addition notice of the Settlement was mailed directly to platinum and palladium Monex clients. *See* Lowther Omnibus Decl., Exhibit C ¶¶ 6-7, 14. In addition, Physical Lead Counsel and the Settlement Administrator established the case website, twice published notice of its existence in *The Wall Street Journal*, *Barron's*, *Investors Business Daily*, and multiple online metals and commodities trading websites, with links to the case website on a number of leading industry websites. *Id.* ¶¶ 6-9. Not one class member has opted out of the terms of the Amended Settlement, Physical Lead Counsel's stated request for attorney's fees and expenses, or the request for incentive and reimbursement payment to class representatives, all of which were disclosed in the preliminary papers, which have been publicly available for free for many months. The fact that there have been no opt outs, nor have any Class Members either informally or formally objected, weighs heavily in favor of approval.

> **c)** **Stage of the Proceedings and Amount of Discovery Completed**

Although procedurally the Physical Action is still at the motion to dismiss stage, the fact-finding and discovery in this litigation are far more advanced. The current operative complaint, the Sixth Amended Consolidated Class Action Complaint, itself a product of the significant discovery and fact-finding that has occurred in this case. Not only did Physical Plaintiffs receive extensive discovery from Settling Defendants, they also sought third-party discovery from major national precious metal dealers and retailers. The Omnibus Lowther Declaration describes in detail the discovery efforts engaged in by Physical Lead Counsel, from reviewing hundreds of thousands of documents, to listening to and transcribing hundreds of recorded floor broker trades between and among the defendants and floor brokers on the floor of the commodities exchange, to working with forensic electronic data experts to piece together defendants' interconnections and trades. *See generally* Lowther Omnibus Decl. ¶¶ 88-104.

This *Grinnell* factor does not require "the parties have engaged in extensive discovery ... Instead, it is enough for the parties to have engaged in sufficient investigation of the facts to enable the Court to intelligently make an appraisal of the Settlement." *In re Sturm, Ruger & Co., Inc. Sec. Litig.*, 2012 U.S. Dist. LEXIS 116930, at *15 (D. Conn. Aug. 20, 2012). The substantial quantity of evidence Physical Lead Counsel has reviewed includes twenty-three deposition transcripts, communications discussing the alleged manipulative conduct, and recorded conversations regarding the nature and purpose of certain financial transactions. Lowther Omnibus Decl. ¶¶ 88-94, 102. The quality of this evidence has enabled Plaintiffs' complaint to expand from an initial seventeen-page pleading to the current one hundred ninety-three page complaint.

      d)        **Risks of Proving Liability, Damages, and Maintaining a Class**

"In assessing the Settlement, the Court should balance the benefits afforded the Class, including the *immediacy* and *certainty* of a recovery, against the continuing risks of litigation." *In re Top Tankers, Inc. Sec. Litig.*, 2008 U.S. Dist. LEXIS 58106, at *13 (S.D.N.Y. July 31, 2008). The Physical Class faces substantial obstacles by continuing this litigation. Physical Plaintiffs still must survive a motion to dismiss on difficult and uncertain antitrust, RICO, and fraud claims. At the time the Amended Settlement was reached, Settling Defendants were preparing to move to dismiss Physical Plaintiffs' Fifth Amended Complaint in its entirety. Ex. A at 3, Lowther Preliminary Approval Decl. (ECF 168.)

The "complexity of Plaintiffs' claims *ipso facto* creates uncertainty." *Park v. Thomson Corp.*, 2008 U.S. Dist. LEXIS 84551, at *9 (S.D.N.Y. 2008). There is almost no precedent for asserting successful Sherman antitrust claims using a "quick look" standard. Physical Plaintiffs' RICO claim and common law fraud claim, which is alleged under New York law, present additional obstacles, especially in a precious metal commodities case, where the alleged manipulation took place in the futures market, and thereafter claims were asserted in the physical market. Neither the Supreme Court nor the Second Circuit has ruled on many aspects of proof, or applied Rule 23 certification standards to a similar case. In short, there is great risk and uncertainty in continued litigation of the Physical Class, and a very real risk the Physical Action could be dismissed in its entirety or a class not certified under Rule 23, with the attendant result of no recovery for the Physical Class.

Even where, as here, "Class Counsel believes that Plaintiffs have a strong case … under the civil RICO statute … 'Litigation inherently involves risks.'" *Charron v. Pinnacle Group N.Y. LLC*, 874 F. Supp. 2d 179, 199 (S.D.N.Y. 2012) (citing *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D 104, 126 (S.D.N.Y. 1997)). "The Court is not required to decide the merits of

the case or resolve unsettled legal questions … or to foresee with absolute certainty the outcome of the case … Rather, the Court must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 185-86 (W.D.N.Y. 2005). Courts, moreover, "approve settlements where plaintiffs would have faced significant legal and factual obstacles to proving their case." *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 459 (S.D.N.Y. 2004) (finding the plaintiffs faced the risk of "substantial legal and factual defenses" and finding "expert testimony on a number of complex disputed legal and factual matters" enhanced risk).

Here, Plaintiffs assert claims on behalf of a group of over-the-counter platinum and palladium metal purchasers for violations tied to defendants' futures trades on the NYMEX. Physical Plaintiffs face serious litigation risks stemming from the legal complexity of their claims, the expanse of evidence at issue, and the difficulty of proving damages, in particular because of the lack of centralized trading data from an over-the-counter market.

There "is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion[.]" *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972). Courts also should compare the potential of a larger recovery with the benefit of the settlement's immediacy. *See Gilliam v. Addicts Rehab. Center Fund*, 2008 U.S. Dist. LEXIS 23016, at *13 (S.D.N.Y. March 24, 2008) (recognizing an expedient result can be preferable "even if it means sacrificing speculative payment of a hypothetically larger amount years down the road."). Thus, courts have approved small percentages of potential total damages where the risks of litigation were, as here, great. *See In re China Sunergy Sec. Litig.*, 2011 U.S. Dist. LEXIS 53007, at *15 (S.D.N.Y. May 13, 2011) (noting "average settlement

amounts in securities fraud class actions where investors sustained losses over the past decade … have ranged from 3% to 7% of the class members' estimated losses"); *In re Union Carbide Corp. Con. Prods. Bus. Sec. Litig.*, 718 F. Supp. 1099, 1103 (S.D.N.Y. 1989) (holding "a settlement can be approved even though the benefits amount to a small percentage of the recovery sought" and that the "essence of settlement is compromise.").

Even if their pleadings survived the motion to dismiss, Physical Plaintiffs would still face very significant hurdles in litigating the matter to trial, including certifying and then maintaining an antitrust, RICO, and fraud class through trial, extensive *Daubert* challenges to Physical Plaintiffs' experts, and summary judgment on novel and complex factual issues. At trial, the Physical Class would need not only to prove manipulation of the NYMEX markets for platinum and palladium futures, but also show this misconduct impacted Platinum and/or Palladium Bullion, with the concomitant problems associated with the fact most physical or spot purchases occur in a decentralized, over-the-counter market. If the case were to proceed to summary judgment or to trial, both parties would depend heavily on surveys and on expert testimony. As in *In re Global Crossing*, dependence on expert testimony, and confrontation of alleged industry standards and esoteric economic analyses concerning trading in platinum and palladium futures, and their concomitant risk on the physicals market, greatly compounds the litigation risk in this case. 225 F.R.D. at 459.

The Physical Plaintiffs also faced potential hurdles not present in the Futures Class's litigation. The Futures Plaintiffs' claims for violations of the Commodities Exchange Act ("CEA"), 7 U.S.C. §§1 *et seq.*, were unavailable to the Physical Plaintiffs. Therefore, the Physical Plaintiffs' claims were not specific to commodities and instead were brought under the Sherman Antitrust Act, the RICO Act and New York common law. Thus, the Physical Plaintiffs

faced a significantly higher risk of a successful dispositive motion by the Settling Defendants than the Futures Plaintiffs. Additionally, the Physical Plaintiffs' faced causation problems not present in the Futures Action. Because the alleged manipulation occurred in the futures market, the Physical Plaintiffs would be required to show not only that these trades artificially inflated the futures closing prices, but that any effect of these trades carried through into the physical market and adversely impacted the physical price.

Settling Defendants have consistently and vigorously denied Physical Plaintiffs' claims. They contend, among other things, their "market on close" (MOC) trades during the last two-minutes of trading were not improper, the MOC trades were not intended to artificially raise the settlement prices of platinum and palladium futures, the MOC trades did not artificially raise the settlement prices of platinum and palladium futures, the MOC trades did not affect the price of futures trades at any time outside the settlement window, and the MOC trades had no effect on the closing price of Platinum and/or Palladium Bullion. Lowther Preliminary Approval Decl. Ex. A at 2 (ECF No. 168.)

The Settling Defendants reject the Physical Plaintiffs' measure of damages. Applying the Settling Defendants' data, expert analyses and assumptions, defendants estimate their damages to be between zero and $1.6 million in artificiality, and this assumes liability and causation were both established. And the Settling Defendants have attacked, and will continue to attack, nearly every aspect of the Physical Plaintiffs' case, including the data, assumptions and methodologies for estimating trading volumes, artificiality, and damages—a risk that is heightened with the Physical Class since all trades occur over-the-counter.

The Physical Plaintiffs face additional risks because the Settling Defendants also deny the futures plaintiffs' claims. They dispute the artificiality numbers in the plans of allocation

and assert that artificiality in platinum and palladium futures was non-existent, or at most, a small fraction of the inflation set forth in the plans of allocation. All of these litigation risks are substantial, and weigh in favor of approving the Amended Settlement. Sumitomo, 189 F.R.D. at 281.

### e)      Settling Defendants' Ability to Withstand a Greater Judgment

A "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 620-21 (S.D.N.Y. 2012). Although the Moore Defendants can pay a judgment well in excess of the Settlement amount, the Court should assign "relatively little weight" to this factor. *Id.* If anything, the Moore Defendants' deep pockets only underscore the real risk of protracted litigation.

Welsh, on the other hand, lacked the financial resources to withstand a judgment of almost any size, which was the primary driving factor in accepting a $7,000,000 settlement judgment and assignment of rights from this defendant. Confidential financial information obtained from Welsh's counsel shows Physical Plaintiffs had no reasonable hope of recovering any monetary judgment from defendant Welsh. Lowther Omnibus Decl. ¶ 114. Moreover, the Welsh judgment allowed Physical Lead Counsel to fight for additional cash consideration as part of the MF Global settlement, discussed in the concurrent filing in support of that settlement. The Welsh consideration—from both the Moore Defendants and from the MF Global settlement—is considerable value to the Class, and is a reasonable and fair resolution for the Physical Class. This fact strongly supports entering final approval of the settlement.

### f)      Range of Reasonableness of Settlement in Light of Best Possible Recovery and Attendant Litigation Risks

"The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and

should be disapproved." *Grinnell,* 495 F.2d at 455. Class settlements, especially in commodities and securities actions, are often approved where the monetary relief is a fraction of the "best day" recovery. *See, e.g., In re Bear Stearns Cos*., 909 F. Supp. 2d 259, 269-70 (S.D.N.Y. 2012) (11% of plaintiff's expert's estimated damages was reasonable); *Menkes v. Stolt-Nielsen S.A.*, 270 F.R.D. 80, 103 (D. Conn. 2010) (class settlement providing 8% of maximum damages was reasonable); *Hicks v. Morgan Stanley & Co.*, 2005 U.S. Dist. LEXIS 24890, at *19 (S.D.N.Y. Oct. 24, 2005) (3.8% of plaintiffs' estimated damages within range of reasonableness). The Court recognizes "the complexity of Plaintiffs' claims *ipso facto* creates uncertainty." *Park*, 2008 U.S. Dist. LEXIS 84551, at *9. As the Court has held, "Liability is never automatic, and a settlement of $13 million in cash … represent a significant recovery." *Id.*

Continuing this complex litigation against the Settling Defendants would entail a lengthy, highly expensive legal battle involving uncertain, novel, and complex legal and factual issues. Establishing damages would require reliance upon challengeable assumptions, presenting a very real risk of no recovery for the Physical Class. These risks are substantial and potentially dispositive for all of Physical Plaintiffs' causes of action.

The reasonableness of a settlement is a function of both (1) the size of the settlement amount relative to the best possible recovery; and (2) the likelihood of no recovery (or a reduced recovery). *Bear Stearns*, 909 F. Supp. 2d at 270. Precise trading volumes in the physical platinum and palladium bullion markets are difficult to calculate. Through Physical Plaintiffs' expert analysis, net platinum and palladium bullion purchases have been estimated, for the period of October 2007 and June 2008, at 201,056 ounces of platinum and 933,718 ounces of palladium. Lowther Omnibus Decl., Exhibit G at pp. 5-6. Multiplying these volume figures by the average artificiality for platinum ($125 per ounce) and the average for palladium ($37 per

ounce) in the Plan of Allocation produces an alleged potential Physical Class damages number of approximately $59,754,263—and this artificiality assumes 100% compounding of the daily artificiality without any dissipation in the market, a point the defendants have repeatedly disputed.

Settling Defendants disputed the Physical Class's volume and damages numbers, and have challenged every single assumption underlying Physical Plaintiffs' analyses. Defendants' experts, which also have extensive experience in the commodities markets, estimate "best day" damages, using assumption they deemed favorable to the Physical Class, of at most $1.6 million, and presented expert analyses and assumptions showing *de minimus* damages to the Physical Class, or in the alternative a complete lack of causation. This analysis and significant risk to the Physical Class cannot be disregarded.

Thus Physical Plaintiffs face substantial hurdles if this litigation continues. Even assuming Physical Plaintiffs survive past the pleading stage of the litigation, they will face significant obstacles at class certification, summary judgment, and at trial, such as establishing the flow through of artificiality from the NYMEX futures market to the spot market and identifying the number of physical platinum and palladium transactions in this "over-the-counter" market. In light of the tremendous risks of continued litigation, the Amended Settlement is reasonable. *Hicks*, 2005 U.S. Dist. LEXIS 24890, at *19.

### g)      Risk of maintaining the class action through trial

The next *Grinnell* factor requires the Court to consider the risk the Physical Plaintiffs would be unable to maintain class action status through trial. Even though this Court preliminarily certified a settlement class in this matter, it cannot be seriously questioned the defense would have tried mightily to have any class certification decision overturned, both after

the class certification stage, along with a motion for decertification later in the proceedings. In

*Charron v. Wiener*, 731 F.3d 241, 249 (2d Cir. 2013), the Second Circuit held:

> Given defendants' repeated statements that they will immediately move for decertification if the settlement is rejected, the large size of the class, the complicated and diverse claims asserted by plaintiffs, and the heightened legal uncertainty necessarily injected by significant recent Supreme Court authority relevant to the propriety of class certification, however, we cannot find that the district court abused its discretion in finding that the class faced significant risks of decertification, that decertification would drastically reduce the chances of any member of the class achieving meaningful relief, and that the litigation risks attendant to these possibilities weighed heavily in favor of the fairness of a settlement under which plaintiffs achieved substantial benefits that (as in any settlement) fell short of what they might have hoped to achieve.

Here, as in *Charron*, the Physical Class risked decertification at multiple stages in the proceeding, both from changes in class action jurisprudence by the Supreme Court and the inherent complexity of the antitrust and RICO claims and damages proof. And even though Physical Lead Counsel believe this case was ripe for class certification, the risk the defendants would ever succeed in preventing certification of later decertifying the class was real. The Amended Settlement ensures the Physical Class as certified by the Court will receive prompt monetary recovery, and eliminates the risk a later development will cause decertification, which would be a devastating result for Physical Class members.

**B.     The Settlement Is Presumptively Fair because It Is the Product of Informed Arm's Length Negotiations**

To evaluate the procedural fairness of a settlement, the Court looks to the negotiations between the parties and can presume "fairness, adequacy, and reasonableness" when a class settlement is reached "in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores, Inc.*, 396 F.3d at 116; *accord Platinum & Pall.*, 2014 U.S. Dist. LEXIS 96457, at *36. As outlined in Section II B, *supra*, the parties have litigated this case for over four years, taken extensive discovery, and engaged in difficult and protracted

settlement negotiations. Plaintiffs and defendants are represented by "very able and highly experienced" counsel. *Platinum & Pall.*, 2014 U.S. Dist. LEXIS 96457, at *37. And the Settlement was the result of compromises between experienced counsel after years of contentious litigation.

### C. The Class Has Been Preliminarily Certified and It Satisfies the Prerequisites of Rule 23(a) and Rule 23(b)(3) such that It Should Be Certified for Purposes of Final Approval

Rule 23(e) allows for the settlement "of a certified class." Fed. R. Civ. P. 23(e); *Global Crossing*, 225 F.R.D. at 451 (the "Second Circuit has acknowledged the propriety of certifying a class solely for settlement purposes"). A court may grant certification for settlement purposes where the proposed settlement class satisfies the four prerequisites of Rule 23(a) (i.e., numerosity, commonality, typicality and adequacy), as well as one of the three subsections of Rule 23(b). *Id.*

On July 15, 2014, the Court granted preliminary approval of the proposed amended settlement in this matter, *Platinum & Palladium*, 2014 U.S. Dist. LEXIS 96457, at *44, after an October 4, 2013 hearing on preliminary approval, during which the Court suggested certain revisions to the proposed Settlement, which the parties made. (ECF 213.) The Court also certified the Physical Class under Rule 23(a) and Rule 23(b)(3). *Platinum & Palladium*, 2014 U.S. Dist. LEXIS 96457, at *27-35, 42, 44; *see also* ECF 213 at ¶ 2. For the foregoing reasons, the Class should be certified for purposes of final approval.

### D. Notice of The Settlement Has Been Provided to the Class Pursuant to and Consistent With The Court's July 15, 2014 Order

#### 1. The Notice Program Complied With Rule 23 and Due Process

Before a proposed class action settlement can be finally approved, the "court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). When, as here, a class is certified for settlement purposes under Rule

23(b)(3) "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Notice regarding a proposed settlement is adequate under both Rule 23 and the Due Process Clause if it "fairly apprise[s] the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings" and it can "be understood by the average class member." *Wal-Mart*, 396 F.3d at 114-15. The nature and extent of class settlement notice is left to the Court's discretion, *McReynolds v. Richards-Cantave*, 588 F.3d 790, 805 (2d Cir. 2009), and the standard for the adequacy of a settlement notice in a class action is measured by reasonableness. *Hecht v. United Collection Bureau, Inc.*, 691 F.3d 218, 224 (2d Cir. 2012). Constructive notice by publication can satisfy due process as to persons whose whereabouts or interests cannot be determined through due diligence. *Id.* Notice need not be perfect; it need only be the best notice practicable under the circumstances, and each and every class member need not receive actual notice, so long as class counsel acted reasonably in choosing the means likely to inform potential class members. *Weigner v. City of New York*, 852 F.2d 646, 649 (2d Cir. 1988).

Here, the Class Notice distributed to the Physical Class was "the best practicable notice under the circumstances." *Platinum & Pall.*, 2014 U.S. Dist. LEXIS 96457, at *44. Class Notice was extensive, including notice by a publication campaign consisting of a settlement website, banner advertisements on the website of a major wholesaler of physical platinum and palladium, advertisements in various magazines devoted to commodity investment, and two publications of advertisements in national newspapers whose focus is investors, along with direct mailing to Monex customers who traded platinum and palladium bullion during the Class Period. The

notice and settlement website are in plain English and contains all the information Rule 23 requires, including adequate information and timing to opt-out of the settlement if so desired, retain independent counsel to object to the Amended Settlement and petitions for attorneys' fees and reimbursement of expenses, and carefully weigh all settlement options to determine the best course of action. *McReynolds*, 588 F.3d at 804 (notice "must be of such nature as reasonably to convey the required information … and it must afford a reasonable time for those interested to make their appearance."); *Wal-Mart*, 396 F.3d at 114 ("settlement notice must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.").

          **a)**      **Physical Plaintiffs and the Settlement Administrator Complied With The Court's Order and Timely Completed The Notice Program**

Physical Plaintiffs, with the aid and execution of the Settlement Administrator, published the short-form notice: (a) for two consecutive months in *Futures* magazine (with 37,000 monthly subscribers); (b) for two consecutive months in *Stocks & Commodities* magazine (with 54,000 monthly subscribers); (c) for one month in the *Futures & Options World* magazine (6,000 monthly subscribers); (d) for one month in *Futures & Options World's* weekly e-newsletter distributed to approximately 6,000 recipients; and (e) for one month *Futures & Options World* banner ads available on its website, advising Class Members of the Settlement and directing Class Members to the settlement website and all Settlement-related documents. *See* Physical Plaintiff's Status Report Concerning Progress Of Executing The Program Of Notice To The Physical Class, at p. 3 (ECF 222), and *see* Physical Plaintiff's Status Report Update Concerning Progress Of Executing The Program Of Notice In the Moore Capital Settlement (ECF 251). Physical Plaintiffs also published notice on the following websites: (a) Kitco.com (considered

the world's number one source of metals market information with over 1,000,000 unique visitors daily and over 65 million page views monthly); (b) on *Futures* magazine's futuresmag.com (with 86,600 unique visitors and 322,300 views per month); (c) Traders.com (with 100,000 monthly impressions); (d) Investors.com (with over 3,000,000 unique visitors and 23 million page views monthly); and (e) *Futures And Options World's* website at fow.com (11,00 unique visitors monthly). *Id.* at pp. 3-4. Physical Plaintiffs also published notice in the following print publications: *Investors Business Daily* (more than 150,000 daily subscribers); *Barron's* (more than 350,000 weekly subscribers); and two publication days in *The Wall Street Journal* (2.4 million daily circulation), as requested by the Court during the preliminary approval process. *Id.*, *see also* Lowther Omnibus Decl., Exhibit C.

Notice of the Amended Settlement was published on the website specifically created by the Settlement Administrator, www.PlatinumPalladiumPhysicalLitigation.com. All settlement-related documents and Court orders—including all currently-filed papers associated with final approval of both this settlement and the MF Global settlement—have been posted to the settlement website and have been available for download for free. *Id.* at p. 2. Further, direct mail notice was provided to thirty-one large investment institutions identified as either having purchased or who likely purchased platinum or palladium bullion during the Class Period, as well as large and national platinum and palladium bullion retailers, which including the long form notice, link to the settlement website, and a request this notice be forwarded to any relevant clients. *Id.* at pp. 6-7, *see also* Lowther Omnibus Decl., Exhibit C.

The Court's July 15, 2014 Order adopted Plaintiffs' proposed notice program and found when completed, such notice shall constitute due and sufficient notice in full compliance with the requirements of Rule 23 and due process of the law. *Platinum & Pall.*, 2014 U.S. Dist.

LEXIS 96457, at *42-44. Pursuant to the Court's Orders, Plaintiffs have previously submitted two Status Reports (ECF 222 & 251), and also have submitted herewith an Affidavit from the Settlement Administrator attesting to the compliance with the provisions of the notice program set forth in ¶¶ 7-11 of the Court's July 15, 2014 Order. *See* Lowther Omnibus Decl., Exhibit C. Accordingly, the notice program provided to the Class satisfied Rule 23's requirements, satisfied due process, and constituted the best notice practicable under the circumstances.

## IV.    Conclusion

After several years of hard-fought litigation and painstaking negotiations, the Parties have reached an accord providing ample compensation to the Physical Class for its alleged damages. The Class is satisfied with the terms, as demonstrated by the lack of even a single opt-out to the Settlement, nor have there been any informal or formal objections to date from any potential class member, and the *Grinnell* factors weigh in favor of approval. For these and all of the foregoing reasons, Plaintiffs respectfully request the Court grant final approval to the Settlement.

Dated: January 14, 2015

*/s/ John A. Lowther*

William J. Doyle, II
John A. Lowther
DOYLE LOWTHER LLP
10200 Willow Creek Road, Suite 150
San Diego, CA 92131
(858) 935-9960 phone
(858) 939-1939 fax

*Class Counsel for Plaintiffs DeVito Trust, Fredrick DeVito, Mary DeVito, David DeVito, Russell Andrews and the Proposed Class in the Platinum/Palladium Physical Action*