**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| *In Re: Platinum And Palladium Commodities Litigation*<br><br>This Document Relates To:<br><br>Platinum/Palladium Physical Class | Master File No. 10 Civ. 3617 (WHP)<br><br>Physical Plaintiffs' Memorandum Of Law In Support Of Final Approval Of Class Action Settlement With Defendant MF Global Inc. |

TABLE OF CONTENTS

I.   Introduction ................................................................................................................. 1

II.   Background ................................................................................................................. 3

  A.   Allegations And Defenses ..................................................................................... 3

  B.   Procedural History ................................................................................................ 5

    1.   Motion Practice and Discovery .................................................................. 5

    2.   Extensive Arm's Length Settlement Discussions ...................................... 9

III.   The MF Global Settlement Agreement ..................................................................... 11

  A.   The Physical Class ............................................................................................... 11

  B.   Consideration to Physical Class .......................................................................... 13

  C.   Release and Covenant Not to Sue ....................................................................... 14

  D.   The Plan of Allocation ........................................................................................ 14

IV.   Argument .................................................................................................................. 15

  A. The Settlement Should Receive Final Approval Because It Is Fair, Reasonable, and Adequate ............................................................................................................. 16

  B.   The Settlement Is the Result of Arm's Length Negotiations Between Experienced Counsel ............................................................................................................... 17

  C.   The Settlement Is Substantively Fair .................................................................. 19

    1.   Complexity, Expense, and Likely Duration of the Litigation ................... 19

    2.   Physical Class's Reaction to the Settlement ............................................. 21

    3.   Stage of the Proceedings and Amount of Discovery Completed ............... 22

    4.   Risks of Proving Liability, Damages, and Maintaining a Class ................ 23

    5.   Settling Defendants' Ability to Withstand a Greater Judgment ................ 29

    6.   Range of Reasonableness of Settlement in Light of Best Possible Recovery and Attendant Litigation Risks ................................................................... 30

    7.   Risk of maintaining the class action through trial ..................................... 32

    8.   The Settlement Is Presumptively Fair because It Is the Product of Informed Arm's Length Negotiations ........................................................................ 33

  D.   The Class Has Been Preliminarily Certified and It Satisfies the Prerequisites of Rule 23(a) and Rule 23(b)(3) such that It Should Be Certified for Purposes of Final Approval ........ 34

E.   Notice of The Settlement Has Been Provided to the Class Pursuant to and Consistent With The Court's November 14, 2014 Order.............................................................................. 34

   1.   The Notice Program Complied With Rule 23 and Due Process ................................... 34

   2.   Physical Plaintiffs and the Settlement Administrator Complied With The Court's Order and Timely Completed The Notice Program ............................................................... 36

V.   Conclusion..................................................................................................................... 38

TABLE OF AUTHORITIES

**Cases**

*Charron v. Pinnacle Group N.Y. LLC,*
  874 F. Supp. 2d 179 (S.D.N.Y. 2012) ................................................................. 25

*Charron v. Wiener,*
  731 F.3d 241 (2d Cir. 2013) ............................................................................... 32

*Chavarria v. N.Y. Airport Serv., LLC,*
  875 F. Supp. 2d 164 (E.D.N.Y. 2012) ................................................................. 14

*Clark v. Ecolab, Inc.,*
  2009 U.S. Dist. LEXIS 108736 (S.D.N.Y. Nov. 17, 2009) .................................. 16

*D'Amato v. Deutsche Bank,*
  236 F.3d 78 (2d Cir. 2001) ................................................................................. 16

*Frank v. Eastman Kodak Co.,*
  228 F.R.D. 174 (W.D.N.Y. 2005) ........................................................................ 25

*Gilliam v. Addicts Rehab. Center Fund,*
  2008 U.S. Dist. LEXIS 23016 (S.D.N.Y. March 24, 2008) .................................. 25

*Gross v. Waywell,*
  628 F. Supp. 2d 475 (S.D.N.Y. 2009) ................................................................. 20

*Hecht v. United Collection Bureau, Inc.,*
  691 F.3d 218 (2d Cir. 2012) ............................................................................... 35

*Hicks v. Morgan Stanley & Co.,*
  2005 U.S. Dist. LEXIS 24890 (S.D.N.Y. Oct. 24, 2005) ............................... 30, 32

*In re Am. Bank Note Holographics, Inc. Sec. Litig.,*
  127 F. Supp. 2d 418 (S.D.N.Y. 2001) ................................................................. 21

*In re Am. Int'l Group Sec. Litig.,*
  689 F.3d 229 (2d Cir. 2012) ............................................................................... 12

*In re Bear Stearns Cos.,*
  909 F. Supp. 2d 259 (S.D.N.Y. 2012) ........................................................... 30, 31

*In re China Sunergy Sec. Litig.,*
  2011 U.S. Dist. LEXIS 53007 (S.D.N.Y. May 13, 2011) ..................................... 26

*In re Drexel Burnham Lambert Group,*
  960 F.2d 285 (2d Cir. 1992)...................................................................................... 29

*In re Flag Telecom Holdings, Ltd. Sec. Litig.,*
  2010 U.S. Dist. LEXIS 119702 (S.D.N.Y. Nov. 8, 2010)....................................... 18

*In re Global Crossing Sec. & ERISA Litig.,*
  225 F.R.D. 436 (S.D.N.Y. 2004) ......................................................... 25, 26, 34, 30

*In re Natural Gas Commodities Litig.,*
  03-cv-6186, Order dated June 15, 2007 (S.D.N.Y.) ................................................ 13

*In re Natural Gas Commodities Litig.,*
  231 F.R.D. 171 (S.D.N.Y. 2005) .............................................................................. 13

*In re PaineWebber Ltd. P'ships Litig.,*
  147 F.3d 132 (2d. Cir. 1998)............................................................................... 15, 17

*In re PaineWebber Ltd. P'ships Litig.,*
  171 F.R.D 104 (S.D.N.Y. 1997) ................................................................................ 25

*In re Platinum and Pall. Comm. Litig.,*
  2010 U.S. Dist. LEXIS 145183 (S.D.N.Y. Nov. 30, 2010) ....................................... 6

*In re Platinum and Pall. Comm. Litig.,*
  828 F. Supp. 2d 588 (S.D.N.Y. 2011) ........................................................................ 6

*In re Sturm, Ruger & Co., Inc. Sec. Litig.,*
  2012 U.S. Dist. LEXIS 116930 (D. Conn. Aug. 20, 2012) ..................................... 23

*In re Sumitomo Copper Litig.,*
  182 F.R.D. 85 (S.D.N.Y. 1998) ................................................................................ 13

*In re Sumitomo Copper Litig.,*
  189 F.R.D. 274 (S.D.N.Y. 1999) ................................................................... 13, 16, 28

*In re Union Carbide Corp. Con. Prods. Bus. Sec. Litig.,*
  718 F. Supp. 1099 (S.D.N.Y. 1989) ......................................................................... 26

*In re Wachovia Equity Sec. Litig,*
  2012 U.S. Dist. LEXIS 97910 (S.D.N.Y. June 12, 2012)......................................... 18

*In re Worldcom, Inc.,*
  347 B.R. 123 (Bankr. S.D.N.Y. 2006)...................................................................... 30

*In re: NASDAQ Market-Makers Antitrust Litig.,*

1997 U.S. Dist. LEXIS 20835 (S.D.N.Y. Dec. 31, 1997) ....................................... 13

*Joel A. v. Giuliani*,
  218 F.3d 132 (2d Cir. 2000)................................................................................. 16

*Maley v. Del Global Techs Corp.*,
  186 F. Supp. 2d 358 (S.D.N.Y. 2002) ................................................................. 14

*Maywalt v. Parker & Parsley Petroleum Co.*,
  67 F.3d 1072 (2d Cir. 1995)................................................................................. 16

*McReynolds v. Richards-Cantave*,
  588 F.3d 790 (2d Cir. 2009)................................................................................. 35

*Menkes v. Stolt-Nielsen S.A.*,
  270 F.R.D. 80 (D. Conn. 2010) ........................................................................... 30

*Morris v. Affinity Health Plan, Inc.*,
  859 F. Supp. 2d 611 (S.D.N.Y. 2012) ................................................................. 29

*Newman v. Stein*,
  464 F.2d 689 (2d Cir. 1972)................................................................................. 25

*Park v. Thomson Corp.*,
  2008 U.S. Dist. LEXIS 84551 (S.D.N.Y. 2008).......................................... 24, 30

*Silverman v. Motorola Solutions, Inc.*,
  739 F.3d 956 (7th Cir. 2013) ............................................................................... 18

*Silverman v. Motorola, Inc.*,
  2012 U.S. Dist. LEXIS 63477 (N.D. Ill. May 7, 2012) ...................................... 18

*Sullivan v. DB Investments, Inc.*,
  667 F.3d 273 (3d Cir. 2011)................................................................................. 12

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
  396 F.3d 96 (2d Cir. 2005)............................................................ 16, 33, 35, 36

*Weigner v. City of New York*,
  852 F.2d 646 (2d Cir. 1988)................................................................................. 35

**Statutes**

15 U.S.C. §§ 1 *et seq*....................................................................................................... 3

18 U.S.C. §§ 1961 *et seq*................................................................................................. 3

Commodities Exchange Act, 7 U.S.C. §§1 *et seq.* .................................................... 26

Fed. R. Civ. P. 23 ................................................................................................................. 34

Physical Plaintiffs, F.W. DeVito, Inc. Retirement Plan Trust, Frederick and Mary DeVito, David W. DeVito and Russell W. Andrews, submit this Memorandum and the accompanying omnibus declaration of John Lowther, Esq. in support of their motion for final approval of the Stipulation and Agreement of Settlement ("Settlement"), executed on October 21, 2014. The Settling Defendants are James W. Giddens, as trustee (the "Trustee") for the liquidation of MF Global Inc. ("MFGI") under the Securities Investor Protection Act (the "SIPA Proceeding"), MF Global Holdings Ltd. ("MFGH"), and MFG Assurance Company Ltd. (the "Insurer"). A copy of the Settlement and accompanying exhibits was filed on October 29, 2014 and attached as Exhibits MFG and MFG-1 through MFG-12 to the Declaration of John Lowther In Support Of Motion For Preliminary Approval Of MF Global Class Action Settlement, filed with Physical Plaintiffs' motion for preliminary approval. (ECF No. 237.) Following a hearing on preliminary consideration of the MF Global Settlement, four exhibits were amended and filed with the Court (long form notice, scheduling order, publication notice, and final order and judgment). (ECF No. 243.)

## I.    Introduction

The Physical Plaintiffs' settlement with MF Global, Inc. deserves final approval. This settlement was achieved only after over four years of hard-fought litigation, many failed negotiations, voluminous fact and expert discovery, and significant expenditure of resources by all sides. Settlement was reached only after two formal mediation sessions before The Honorable Daniel Weinstein (Ret.), and many months of contentious and protracted settlement negotiations that followed.

The Settlement has two components, under which the Physical Class receives cash in the amount of $577,500 from the Insurer and $2,317,857.14 in an allowed general creditor claim

("Allowed Claim") in the MFGI SIPA Proceeding. The Physical Class may retain the Allowed Claim, or sell it to a third party. The Physical Plaintiffs also obtain a cash payment of $190,000 from MFGH in exchange for assigning their claims against defendant Joseph Welsh to MFGH. In addition, the Parties agreed to a limited relief from the bankruptcy stay to consummate the Settlement. Through this Settlement, the Welsh consent judgment has been resolved.

The Settlement includes all the hallmarks of a fair, reasonable, and adequate settlement of a complex, class action litigation. Settlement negotiations proceeded in good faith, were conducted at arm's length by highly experienced class counsel, were devoid of collusion, and lasted many months. These negotiations included three mediation sessions in New York with the Hon. Judge Weinstein (Ret.) and his independent economic advisor, and multiple telephonic conferences with the mediator, and numerous follow-on negotiations. Despite the Parties' substantial efforts to resolve this dispute, formal mediation failed to produce a settlement. Only after building upon the groundwork from the formal mediation sessions did counsel, through additional negotiations with MF Global's bankruptcy trustee, reach an agreement to resolve this litigation.

Physical Plaintiffs' decision to settle was informed by the extensive record in this case, including more than 250,000 pages of document discovery, numerous subpoena responses from third parties, twenty-three fact depositions, extensive consultations with damages experts and experts on the platinum and palladium markets, as well as other facts and data, such as the risks and uncertainty of litigation and MF Global's liquidation proceeding.

Final approval of this settlement is warranted because of the very real risk of an adverse finding on Physical Plaintiffs' antitrust and RICO claims, uncertainty in certifying a nationwide class, and lack of a CEA claim in this matter, as well as the risk of no recovery due to the risks

and uncertainty of litigation against an entity who was in liquidation and faced thousands of claims. As testament to the excellent result achieved in resolving this matter, as of the date of this filing, not a opt out has been filed in response to the Settlement, including the proposed attorneys' fees. Nor is Lead Counsel aware of any informal or formal objection to the Settlement. Based on the totality of circumstances, Physical Lead Counsel believes the MF Global Settlement is in the best interest of the Physical Class. Accordingly, Physical Plaintiffs, on behalf of themselves and the proposed Physical Class, respectfully request the Court enter final approval of the MF Global Settlement and enter the Final Judgment, dismiss the action, and retain jurisdiction to enforce the settlement. *See* Omnibus Declaration of John A. Lowther in Support of Final Approval of Physical Class Action Settlements and Support of Reimbursement of Attorneys' Fees and Expenses ("Lowther Omnibus Decl."), Exhibit B.

## II.      Background

Physical Plaintiffs seek damages on behalf of themselves and the Physical Class based on allegations the Settling Defendants manipulated certain New York Mercantile Exchange ("NYMEX") platinum and palladium futures contracts, in turn, causing prices of physical platinum and palladium to become artificially inflated in violation of the Sherman Antitrust Act, 15 U.S.C. §§ 1 *et seq.*, the Racketeer Influenced Corrupt Organizations Act, 18 U.S.C. §§ 1961 *et seq.*, and common law proscriptions against fraud, aiding and abetting fraud, and conspiracy to commit fraud. (ECF No. 218, ¶¶ 372-470.) Physical Plaintiffs also assert a negligence claim against defendant Joseph Welsh. *Id.*

### A.      Allegations And Defenses

Physical Plaintiffs allege defendants, from May 2006 until at least June 6, 2008, engaged in a manipulative scheme to inflate prices in platinum and palladium futures contracts traded on

3

NYMEX, which in turn caused artificial price inflation in physical platinum and palladium bullion over the course of the Class Period. (ECF No. 218 ¶¶ 1-19.) Plaintiffs allege defendants manipulated the closing price of platinum and palladium futures contracts and physical bullion by engaging in "market on close" trades during the last two minutes of the day's trading—at prices alleged to be in excess of best available prices. (*Id.* ¶¶ 166-307.) The futures closing prices for platinum and palladium are based on a volume-weighted average pricing ("VWAP") of the last two-minutes of the day's trading. *Id.* Physical Plaintiffs contend defendants took advantage of the VWAP during the two-minute close by making numerous large and uneconomic purchases during this window, resulting in artificially inflated closing prices of platinum and palladium futures. *Id.* Physical Plaintiffs assert defendants' conduct in artificially increasing the price of platinum and palladium futures directly impacted the physical bullion market for these metals and caused Physical Plaintiffs and Physical Class members to pay artificially high prices during the Class Period. (*Id.* ¶¶ 79-83, 237-241, 242-264.) Settling Defendants deny Physical Plaintiffs' charges in their entirety. Lowther Preliminary Approval Decl. Ex. MFG at pp. 3-4. (ECF 237.)

Defendants have consistently and vigorously denied Plaintiffs' claims. At the time Settlement was reached, Settling Defendants had significant defenses, including: (1) the antitrust claims are defective because the alleged conspiracy does not involve independent centers of decision making, since MF Global and Joseph Welsh are alleged to be agents of the Moore Defendants; (2) the operative complaint fails to allege a horizontal conspiracy between competitors for purposes of a per se violation of the antitrust laws; (3) Physical Plaintiffs fail to show the required antitrust impact on competition or the relevant market; (4) the RICO claims are deficient because the operative complaint fails to allege the requisite "pattern of racketeering activity;" (5) the operative complaint fails to allege the required "continuity" of illegal activity;

and (6) Physical Plaintiffs lack standing to assert RICO or antitrust claims because they purchased physical platinum and palladium and the alleged manipulation occurred in the futures market. Although the litigation against MF Global had been stayed with its liquidation proceeding, these legal arguments remained open and viable at the time the Settlement was reached.

Defendants also disputed Physical Plaintiffs' understanding of the facts. They denied the market on close trades were devised to manipulate or ever inflated the trading price of platinum and palladium futures. Defendants denied the market-on-close trades caused the price distortions in the platinum and palladium bullion markets. Because the alleged manipulation occurred in the futures market, defendants argued, Physical Plaintiffs would be unable to prove their trades, even if found to be illegal and manipulative, had a corresponding effect on the trading price of physical platinum and palladium. Defendants raised substantial challenges to Physical Plaintiffs' damages calculations and the methodologies underlying the damages models. The defendants disputed the Physical Class's volume and damages numbers, and challenged every single assumption underlying Physical Plaintiffs' analyses. The defendants' experts, which also have extensive experience in the commodities markets, estimate "best day" damages, using assumption they deemed favorable to the Physical Class, of at most $1.6 million, and presented expert analyses and assumptions showing *de minimus* damages to the Physical Class, or in the alternative a complete lack of causation. Physical Lead Counsel expected similar arguments to be raised by the bankruptcy trustee had this case not settled.

### B. Procedural History

#### 1. Motion Practice and Discovery

On June 14, 2010, Physical Plaintiffs filed an initial seventeen-page class action

complaint against certain Moore defendants and asserted claims under Section 1 of the Sherman Act. On August 10, 2010, Physical Plaintiffs filed a 62-page amended class action complaint. Thereafter the Physical Action was consolidated with the Futures Action under the caption *In re: Platinum and Palladium Commodities Litigation*. Doyle Lowther LLP was appointed lead counsel for the Physical Action.

On September 30, 2010, the Futures and Physical Plaintiffs filed a consolidated class action complaint against the Moore Defendants and MF Global, Inc. In the 77-page consolidated complaint, Physical Plaintiffs charged defendants with violating the Sherman Act and RICO. Defendants moved to dismiss Physical Plaintiffs' RICO and antitrust claims, which after oral argument, the Court granted, along with leave to amend. *In re Platinum & Pall. Comm. Litig.*, 828 F. Supp. 2d 588 (S.D.N.Y. 2011).

In discovery, the Court ordered defendants to produce all documents MF Global and the other defendants provided to the Commodities Futures Trading Commission. *In re Platinum & Pall. Comm. Litig.*, 2010 U.S. Dist. LEXIS 145183 (S.D.N.Y. Nov. 30, 2010). Defendants produced hundreds of thousands of internal documents, myriad text and instant messages, and voluminous audio recordings of actual trading and broker orders on defendants' behalf. Lowther Omnibus Decl. ¶¶ 38, 89.

Physical Lead Counsel then expended significant time and resources reviewing and understanding the evidence. Lowther Omnibus Decl. ¶¶ 10, 89-94. Counsel retained forensic electronic data experts to assist in formulating an efficient method of reviewing defendants' voluminous information, identifying specific individuals involved in the alleged misconduct, determining the parameters of wrongful conduct, and transcribing and organizing scores of electronic audio files. Lowther Omnibus Decl. ¶¶ 90-91. The information obtained from this

extensive evidentiary review formed the foundation of Plaintiffs' Third Amended Consolidated Class Action Complaint. This 161-page complaint asserted the same antitrust and RICO claims against the Moore Defendants, Joseph Welsh, and MF Global, Inc., which soon thereafter filed bankruptcy. (ECF No. 75.)

On October 31, 2011, MF Global affiliates MFGH and MF Global Finance USA Inc. filed voluntary petitions for relief under Chapter 11 in the United States Bankruptcy Court for the Southern District of New York. Thereafter, the remaining MF Global Chapter 11 debtors filed their respective voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. The Chapter 11 debtors' cases are being jointly administered. Also on October 31, 2011, the Honorable Paul A. Engelmayer, Judge for the United States District Court for the Southern District of New York, entered the Order Commencing Liquidation of MFGI (the "MFGI Liquidation Order"), pursuant to the provisions of SIPA in the case captioned *Securities Investor Protection Corp. v. MF Global Inc.*, Case No. 11-CIV-7750 (PAE), appointed James F. Giddens as Trustee for the liquidation of MFGI and removed the SIPA proceeding to the Bankruptcy Court. The MFGI liquidation remains pending in the case captioned *In re MF Global Inc.*, Case No. 11-2790 (MG) SIPA.

On November 8, 2011, defendant MFGI filed a suggestion of bankruptcy. (ECF No. 75.) The Physical Plaintiffs' claims against MFGI were stayed pursuant to the MFGI Liquidation Order and pursuant to Section 362 of the Bankruptcy Code. The automatic stay remains in effect, although the bankruptcy trustee has agreed to lift the stay to complete the MF Global Settlement. On November 23, 2011, the Bankruptcy Court entered the Order Approving Trustee's Expedited Application to Establish Parallel Customer Claims Processes and Related Relief (ECF No. 423). All general creditor claims were required to have been received by June 2, 2012.

On February 3, 2012, defendants moved to dismiss all of the Physical Plaintiffs' claims. (ECF No. 106.) On February 29, 2012, the Physical Plaintiffs filed an opposition to defendants' Motion to Dismiss (ECF No. 111), which was set for hearing in July 2012. (ECF No. 119.) In March 2012, pursuant to subpoena, Plaintiffs began to receive twenty-three deposition transcripts. Lowther Omnibus Decl. ¶ 102. On July 11, 2012, shortly before oral arguments on the defendants' second motion to dismiss, the Physical Plaintiffs and the Moore Capital defendants, along with former MF Global employee Joseph Welsh, requested a stay to explore settlement opportunities, which the Court granted, and settlement discussions ensued in the summer of 2012, which were overseen by the Honorable Daniel Weinstein (Ret.). Although these sessions did not result in a settlement, the Parties continued their settlement discussions.

On June 1, 2012, the Physical Plaintiffs, on behalf of the Physical Class, timely filed a general creditor bankruptcy proof of claim in the MFGI SIPA Proceeding in the Bankruptcy Court, Proof of Claim No. 500000344. The Proof of Claim corresponds to and incorporates the Physical Plaintiffs' and the Physical Class's claims alleged in the Physical Action. On October 11, 2012, the Bankruptcy Court entered an Order pursuant to Section 105(a) of the Bankruptcy Code and Rules 2007 and 9019(b) for Approval of General Creditor (1) Claim Objection Procedures and (2) Settlement Procedures (SIPA Liquidation Proceeding ECF No. 3765).

On December 19, 2012, the Court permitted the Physical Plaintiffs to file a Fourth Amended Consolidated Complaint. (ECF No. 125.) On January 14, 2013, the Physical Plaintiffs filed their Fourth Amended Complaint. (ECF No. 126.) This 256-page complaint included many new factual allegations and additional common law claims of fraud, aiding and abetting fraud, and conspiracy to commit fraud. The Court stayed the time for defendants to respond to the Fourth Amended Complaint to allow the Parties to continue settlement talks.

On July 23, 2013, the Physical Plaintiffs obtained leave to file, and did submit to the Court under seal, their Fifth Amended Consolidated Class Action Complaint, which added a negligence claim against defendant Joseph Welsh. (ECF Nos. 132-33.) On September 18, 2013, the Physical Plaintiffs and the Moore Settling Defendants entered into a settlement agreement. On this same date, the Physical Plaintiffs moved for preliminary approval of the first settlement. (ECF No. 146.)

On October 29, 2014 the Physical Class filed its motion for preliminary approval of the MF Global Settlement. (ECF Nos. 235-237). On November 12, 2014, the Court held a hearing to consider preliminary approval of the MF Global Settlement. During the hearing, the Court suggested the Parties consider making certain revisions and additions to the MF Global Settlement materials, in particular the notice and opt-out language and requirements. The Parties requested permission to resubmit their settlement papers after consideration and incorporation of the suggested changes. Thereafter, on November 14, 2014, Physical Plaintiffs submitted revised settlement materials in accordance with the matters discussed at the hearing. (ECF No. 243.) The Court then issued a scheduling order authorizing the dissemination of notice concerning the proposed MF Global Settlement. (ECF No. 244.) On January 7, 2015, Physical Lead Counsel submitted its Status Report concerning the program of notice for the MF Global class action Settlement. (ECF No. 250.)

### 2.     Extensive Arm's Length Settlement Discussions

Settlement discussions in this case were lengthy, protracted, and hotly contested. Negotiations involved extensive expert analysis on causation and damages by Physical Plaintiffs, the Futures Plaintiffs, and defendants. Given the complexity of the economic analyses, the negotiating parties recognized the need for an independent economist to advise the mediator.

This independent expert reviewed the parties' expert reports and even undertook his own analysis and formulated his own conclusions about the alleged price inflation in the physical platinum and bullion investment markets. These conclusions were shared with the parties, including MF Global, as a means of bridging the gap between their competing damages models.

Physical Plaintiffs and the SIPA Trustee, along with underwriters for MF Global, participated in mediation sessions before Judge Weinstein, a nationally-recognized mediator with extensive expertise in resolving complex litigations, including commodities and antitrust class actions. The first mediation session, held on July 27, 2012 in Manhattan, did not result in fruitful settlement negotiations with MFGI or its insurers. Only nine months prior to this initial mediation session, MFGI entered bankruptcy. The size and scope of the MFGI SIPA proceeding, including the litany of creditors, made it impossible for Physical Plaintiffs and others to reach a reasonable estimate of any potential recovery in bankruptcy for the Physical Plaintiffs or MFGI's overall exposure to secured and unsecured creditors.

In October 2013, Physical Plaintiffs and MFGI agreed to resume settlement talks. At this time the MFGI SIPA proceeding was sufficiently advanced such that Physical Plaintiffs could reasonably estimate their chances of recovery in bankruptcy. In November 2013, at the request of the SIPA Trustee, the Physical Plaintiffs sent a settlement demand to MF Global. Over the course of the following months, Physical Plaintiffs and the SIPA Trustee engaged in multiple discussions and correspondence regarding settlement including detailed discussions about Physical Plaintiffs' damages calculations and volume estimates for platinum and palladium bullion.

Several months later, around April 2014, Physical Plaintiffs and MF Global's bankruptcy trustee agreed to hold a formal mediation in an attempt to finalize a settlement. The parties

agreed to use Judge Weinstein, who was not only familiar with the underlying facts of this case but also had mediated other matters in connection with the MFGI SIPA proceeding. The parties scheduled a two-day mediation session with Judge Weinstein for June 4 and 5, 2014 in New York. In advance of mediation, the parties and Relevant Insurers engaged in multiple conference calls with Michelle Yoshida, Esq. of JAMS and Chad Coffman, an independent economist Judge Weinstein retained. These calls served to allow the parties to narrow the scope of certain issues in preparation for the mediation session. Before the mediation session, Physical Plaintiffs prepared a lengthy, detailed mediation statement outlining their position on the claims, the estimated volume of physical platinum and palladium at issue and the estimated total exposure of MF Global. While no settlement was reached during these arduous and contentious mediation sessions, the parties did make some progress toward settlement.

During the months following the unsuccessful mediation efforts, the parties continued to negotiate a proposed settlement agreement. Multiple rounds of talks and meetings ensued, including with the assistance of the mediator. A proposed settlement agreement was not reached and agreed to until October 21, 2014. Given the over-the-counter nature of physical platinum and palladium transactions, Physical Plaintiffs needed an accurate estimate of the volume of physical platinum and palladium traded during the Class Period. Physical Plaintiffs engaged in extensive third-party discovery to obtain purchase data from the larger brokers and dealers of platinum and palladium bullion in the United States. Physical Plaintiffs also consulted with leading experts regarding the physical platinum and palladium market.

## III.   The MF Global Settlement Agreement

### A.   The Physical Class

The MF Global Settlement seeks certification of the following class for settlement

purposes:

> All persons and/or entities who purchased, invested in, or otherwise acquired an interest in platinum or palladium bullion in the United States physical or "spot" market conforming to NYMEX "good delivery" requirements, and/or of at least 99.95% purity, during the period of June 1, 2006 through April 29, 2010 (the "Class Period").

Physical Plaintiffs allege a continuous course of conduct since at least June 1, 2006 for their RICO claims, and damages theories make it theoretically possible that the potential impact of the alleged misconduct extended until April 29, 2010, when the CFTC's settlement with certain defendants was announced to the public. Settling Defendants therefore insisted on a release and Class Period that ends on April 29, 2010.[1] Where an expanded class includes members with different and potentially barred causes of action, courts have affirmed certification in the interest of securing "global peace" and preventing "protracted litigation and future relitigation of settled questions." *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 310-11 (3d Cir. 2011) ("achieving global peace is a valid, and valuable, incentive to class action settlements"); *accord In re Am. Int'l Group Sec. Litig.*, 689 F.3d 229, 243-44 (2d Cir. 2012) ("Defendants in class action suits are entitled to settle claims pending against them on a class-wide basis even if a court believes that those claims may be meritless" so long as Rule 23 is otherwise satisfied); *Platinum & Pall.*, 2014 U.S. Dist. LEXIS 96457, at *41 (same). Even under "heightened" scrutiny, expanded class periods are appropriate where "the class securities and the alleged conspiracy and its duration remain unchanged," and "[e]ach common question is as important for the extended period as it was for the original period." *In re: NASDAQ*

---

[1] This Class Period expansion tracks the futures settlement class, extending the beginning of the class back to the first manipulative trade by defendants through the last arguable date (April 29, 2010) on which any residual impact from the alleged manipulative trades (ending on May 21, 2008) could have remained in the market based on Physical Plaintiffs expert damages opinion, which defendants insisted form the basis of the Plan of Allocation.

*Market-Makers Antitrust Litig.*, 1997 U.S. Dist. LEXIS 20835, at *8, 13, 18 (S.D.N.Y. Dec. 31, 1997).

The Plan of Allocation compensates Physical Class members for the period from June 1, 2006 until April 29, 2010. Although disputed issues exist concerning the extent, if any, the alleged trading impacted bullion prices, Physical Class members receive compensation for any net artificiality paid, according to the terms of the Plan of Allocation, for any artificial impact of the Settling Defendants' trading that could have remained in the market based on the theory of damages of Plaintiffs' experts. And expanding the class period here comports with other commodity manipulation cases where settlement classes were broader than the original litigation class. *Compare In re Natural Gas Comm. Litig.*, 231 F.R.D. 171, 178 (S.D.N.Y. 2005) (litigation class period of January 1, 2000 through December 31, 2002) *with In re Natural Gas Comm. Litig.*, 03-cv-6186 (S.D.N.Y. June 15, 2007) (approving settlement and certifying settlement class period of June 1, 1999 through December 31, 2002); *compare In re Sumitomo Copper Litig.*, 182 F.R.D. 85, 88 (S.D.N.Y. 1998) (litigation class period of June 24, 1994 through June 15, 1996) *with In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 277, 284 at n. 1 (S.D.N.Y. 1999) (approving settlement and certifying settlement class period of June 24, 1993 through June 15, 1996).

### B.    Consideration to Physical Class

Under the MF Global Settlement Agreement, the Physical Class will receive a $577,500 cash payment from the Insurer, a stipulated allowed general creditor claim in the SIPA proceeding in the amount of $2,317,857.14, and a $190,000 cash payment from MFGH for the benefit of the Physical Class in consideration for assigning certain rights connection with their anticipated Judgment against defendant Joseph Welsh, as agreed to in the Welsh Physical

Judgment and Assignment. Physical Plaintiffs will not release the Relevant Insurers until the Welsh Physical Assignment Agreement Settlement becomes final and effective. Lowther Preliminary Approval Decl., Ex. MFG § 7(a) at p. 20 (ECF No. 237). The Relevant Insurers have denied coverage for Welsh on multiple grounds, and thus there could be no assurance of collecting any additional monies under the $7,000,000 stipulated judgment. The Welsh consent judgment now has been resolved for $200,000 in cash, which considering the likelihood of collecting on the Welsh stipulated judgment from the Relevant Insurers, is a fair and reasonable resolution. Payment of the $200,000 has been approved by the MF Global bankruptcy Court ($10,000 of which will be reverted to Moore Capital pursuant to the other Settlement Agreement).

## C.    Release and Covenant Not to Sue

In exchange for the foregoing consideration, the Physical Class agrees to release the Released Parties from all claims related to the Physical Class's transactions in platinum and/or palladium bullion. Lowther Preliminary Approval Decl., Ex. MFG § 7 (ECF No. 237). The Physical Class's release and covenant not to sue excludes any claims a Physical Class member may have as a class member in the Futures Action. *Id.*

## D.    The Plan of Allocation

To approve the allocation plan, the Court must find it fair, reasonable, and adequate. *See Maley v. Del Global Techs Corp.*, 186 F. Supp. 2d 358, 367 (S.D.N.Y. 2002). To decide if the plan is fair, "courts look primarily to the opinion of counsel. That is, as a general rule, the adequacy of an allocation plan turns on whether counsel has properly apprised itself of the merits of all claims, and whether the proposed apportionment is fair and reasonable in light of that information." *Chavarria v. N.Y. Airport Serv., LLC,* 875 F. Supp. 2d 164, 175 (E.D.N.Y. 2012)

"Courts also consider the reaction of the class to a plan of allocation." *Id.* So far, no Physical Class member has opted out of or filed an objection to the Plan of Allocation. *See* Lowther Omnibus Decl., Exhibit C.

The Plan of Allocation compensates Physical Class members for the period from June 1, 2006 until April 29, 2010. *See* Lowther Preliminary Approval Decl., Ex. MFG-9. (ECF No. 237.) The Physical Plaintiffs' Plan of Allocation is identical in all respects to the plan of allocation preliminary approved by the Court in the Moore and Welsh settlement. *See In re Platinum & Palladium Commodities Litig.*, 2014 U.S. Dist. LEXIS 96457, at *41-42, 45. As with the Moore Capital and Joseph Welsh Settlement, Physical Plaintiffs' Plan of Allocation adopts the artificiality calculations and analyses from the Futures Plaintiffs' Plan of Allocation. This model provides a one-to-one flow-through of artificial inflation (damages) in platinum and palladium futures trades on NYMEX to corresponding physical platinum and/or palladium bullion transactions. Accordingly, Physical Lead Counsel has developed an allocation plan that is fair, reasonable, and adequate, and Physical Class members receive the maximum possible recovery under the terms of the settlement agreement. Pro rata distribution ensures each class member receives a fair proportion of the Settlement.

## IV.   Argument

Public policy strongly favors pretrial settlement of class action lawsuits. *In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d. Cir. 1998); *Platinum & Pall.*, 2014 U.S. Dist. LEXIS 96457, at *35. Courts should give weight to the parties' consensual decision to settle class action cases because litigants and their counsel occupy unique positions to assess potential risks. *See Clark v. Ecolab, Inc.*, 2009 U.S. Dist. LEXIS 108736, at *14 (S.D.N.Y. Nov.

17, 2009). This is especially true in investor class actions, which by their nature are legally and factually complex and outcomes are "notoriously uncertain." *Sumitomo*, 189 F.R.D. at 281.

A.     **The Settlement Should Receive Final Approval Because It Is Fair, Reasonable, and Adequate**

Federal Rule of Civil Procedure 23(e) requires court approval of settlements in class cases. *Platinum & Pall.*, 2014 U.S. Dist. LEXIS 96457, at *35. To approve a class action settlement, a court must determine that the proposed terms are "fair, adequate, and reasonable, and not a product of collusion." *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir. 2000). This requires an assessment of both procedural and substantive fairness. *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 113 (2d Cir. 2005); *see also D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) ("The District Court determines a [class action] settlement's fairness by examining the negotiating process leading up to the settlement as well as the settlement's substantive terms."). Courts conduct this analysis keeping in mind the strong public policy of favoring settlement of class actions. *Wal-Mart Stores, Inc.*, 396 F.3d at 117.

To determine procedural fairness, courts examine the "negotiating process leading to the settlement," and can presume "fairness, adequacy, and reasonableness" when a class settlement is reached "in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Id.* at 116-17. Courts "determine whether a settlement is substantively fair by comparing 'the terms of the compromise with the likely rewards of the litigation.'" *Platinum & Pall.*, 2014 U.S. Dist. LEXIS 96457, at *37 (quoting *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1995)). District courts in the Second Circuit "typically consider the nine *Grinnell* factors at the final approval stage":

> (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of

establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

See *Platinum & Pall.*, 2014 U.S. Dist. LEXIS 96457, at *37-38; *see also Wal-Mart,* 396 F.3d at 117; *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974).

**B.    The Settlement Is the Result of Arm's Length Negotiations Between Experienced Counsel**

A class action settlement is entitled to a presumption of fairness, adequacy, and reasonableness when the product of "arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart*, 396 F.3d at 116; *accord Platinum & Pall.*, 2014 U.S. Dist. LEXIS 96457, at *36. Settlement negotiations in the Physical Action transpired strictly at arm's length and were free of collusion. Lowther Omnibus Decl. ¶¶ 105-115. Both parties were represented by experienced, capable counsel. The Settlement is the result of rigorous, contentious, and protracted negotiations, including, among other things, several unsuccessful negotiations before Judge Weinstein, who was assisted by an independent economist, interim amended complaints and additional fact discovery, extensive use of experts and expert analyses by Physical Plaintiffs and defendants, and dozens of telephone conferences and scores of e-mail correspondence between zealous counsel, all over a period of many months. *Id.*

This presumption of fairness and adequacy applies here because the MF Global Settlement was reached by experienced, fully-informed counsel after arm's-length negotiations and, ultimately, with the assistance of Judge Daniel Weinstein (Ret.), one of the nation's premier mediators in complex, multi-party, high stakes litigation, and one in whom this court reposes considerable confidence due to past experience. *See In re Flag Telecom Holdings, Ltd. Sec. Litig.*,

2010 U.S. Dist. LEXIS 119702, at *40 (S.D.N.Y. Nov. 8, 2010) (McMahon, J.) (holding "presumption in favor of the negotiated settlement in this case is strengthened by the fact that settlement was reached in an extended mediation supervised by Judge Weinstein"); *In re Wachovia Equity Sec. Litig*, 2012 U.S. Dist. LEXIS 97910, at *9 (S.D.N.Y. June 12, 2012) (noting the procedural fairness of settlement mediated by Judge Weinstein); *see also Silverman v. Motorola, Inc.*, 2012 U.S. Dist. LEXIS 63477, at *12 (N.D. Ill. May 7, 2012), *aff'd sub nom. Silverman v. Motorola Solutions, Inc.*, 739 F.3d 956 (7th Cir. 2013) (approving settlement and describing Judge Weinstein as "a nationally-recognized and highly-respected mediator").

 Physical Lead Counsel engaged in extensive fact discovery and fact-finding before the Settlement was reached. This discovery included review of all documents Settling Defendants provided to the CFTC, which were produced in this case only after Plaintiffs moved to compel their production as part of their ongoing factual investigation. The production included more than 8.64 gigabytes of information comprised of hundreds of thousands of pages of documents, thousands of emails and text messages, and over 1,100 recorded telephone conversations, which had to be reviewed, transcribed, and analyzed by Physical Lead Counsel. Lowther Omnibus Decl. ¶¶ 88-95. Significant time and resources were expended analyzing the evidence, including using forensic electronic data experts to help efficiently review the documents and electronic data, and identify individuals involved in the alleged illegal trading. Lowther Omnibus Decl. ¶¶ 90-93.

 Physical Lead Counsel engaged in extensive third-party discovery in the form of numerous subpoenas, including subpoenas to nationally-recognized physical metals dealers and several financial institutions concerning transaction data during the Class Period. Lowther Omnibus Decl. ¶¶ 98-100. Physical Lead Counsel retained qualified experts to assist with the precious metals markets and to assist with damages analyses. Expert analyses and reports were

used extensively during formal and informal mediation sessions and settlement negotiations. The expert material was voluminous, the research extensive—and all of this was done long before Settlement was achieved. Lowther Omnibus Decl. ¶¶ 103-104.

### C.     The Settlement Is Substantively Fair

Under the *Grinnell* factors, the MF Global Settlement is substantively fair and substantially benefits the Physical Class.

#### 1.     Complexity, Expense, and Likely Duration of the Litigation

This antitrust, RICO, and commodities fraud "class action involves a complex factual record and novel issues of law." *Currency Conversion*, 2006 U.S. Dist. LEXIS 81440, at *15. Absent settlement, the litigation would have consumed many years of party and Court resources, and would have accumulated substantial litigation and expert costs. Physical Lead Counsel believes further litigation would have been "lengthy" and "bitterly fought," *Wal-Mart*, 396 F.3d at 118, not only on the pleadings, but also through class certification, summary judgment, trial, and appeal. The complexity of the substantive law in the Physical Action is further compounded by the underlying facts, such as NYMEX platinum and palladium commodities markets, market-on-close orders, volume-weighted pricing, and linking artificial inflation in physical platinum and/or palladium with manipulation of NYMEX futures contracts. Even mediator Weinstein retained the expertise of his own economist to provide guidance on the analyses and counter-analyses of the parties' experts during mediation and settlement discussions.

Without Settlement, the Physical Action likely would continue for years. Multiple rounds of unsuccessful settlement discussions confirm this conclusion. "The expense and delay of continued litigation could be substantial." *Currency Conversion*, 2006 U.S. Dist. LEXIS 81440, at *15. Settlement, on the other hand, enables the Physical Class to avoid very significant

litigation expenses, including expert costs, continued discovery expenses, expenses tied to class certification, such as retaining antitrust experts, summary judgment motion practice, and a lengthy trial.

Additionally, there is no guarantee Physical Plaintiffs would win the case on summary judgment or at trial. RICO claims are complex and notoriously difficult to prove. As one court observed in dismissing the plaintiffs' claims under RICO and denying their leave to amend:

> This outcome should come as no surprise to any counsel versed in the formidable intricacies and pitfalls inherent in RICO litigation. These challenges bear out in the minimal rate of success plaintiffs have achieved in prosecuting RICO actions … the statistical record indicates that in 98 percent of the RICO appellate cases surveyed, which do not include RICO actions dismissed by the district courts but not appealed, plaintiffs and counsel invested extensive time and energies in litigation only to come away with a total loss.

*Gross v. Waywell*, 628 F. Supp. 2d 475, 479-80 (S.D.N.Y. 2009). Physical Plaintiffs also face considerable risks in proving liability and damages, as discussed below. *See* Section IV.C.4, *infra*.

At the time the Settlement was reached and even now, MFGI remains in bankruptcy and continues to go through SIPA liquidation proceedings. Physical Plaintiffs' claims against MF Global also remained stayed. Weaknesses in the Physical Class's claims, however, were pointed out during settlement negotiations. The Moore Defendants and their economic experts, for example, criticized the methodology and assumptions underlying the Physical Plaintiffs' methodologies for calculating damages. According to the Moore Defendants, even if Physical Plaintiffs could establish liability, damages were non-existent, or are based on assumptions favorable to Physical Plaintiffs, at most, $1.6 million classwide, and this assumes liability and causation were both established. Absent settlement, MF Global's attacks would eventually be developed and pursued in court, creating real risks for the Physical Plaintiffs with respect to the

amount of damages they might recover, even if successful on the issue of liability and able to collect a future judgment against a bankrupt entity. Further, absent the Settlement, the Trustee argued he would oppose certification of the Physical Class in the SIPA Proceeding, object to any claims by class members (except those of the Physical Plaintiffs) as time barred, and otherwise seek disallowance of the Physical Plaintiffs' claims. Based on Physical Lead Counsel's extensive experience in complex class actions, the strength and weaknesses of Physical Class's claims, the status of MFGI in the SIPA liquidation proceeding, the extensive risk and expense of continued litigation, the analyses of various experts, including an expert selected by the mediator to analyze the parties' damages models, and the likelihood of success at trial and appeal, Physical Lead Counsel believes the Settlement is fair, reasonable, and adequate.

Thus, the Settlement provides the Physical Class with a substantial and immediate recovery, and avoids the considerable risk that the litigation will stretch on for years and could ultimately end in a result less favorable for the Physical Class. Because taking this case to verdict and through subsequent appeals would likely take years, because it would cost the class potentially over a million dollars in additional expenses, and because there is no guarantee the Physical Class would prevail, the Court should weigh these facts heavily in favor of approving the Settlement.

### 2.       Physical Class's Reaction to the Settlement

As of the date of this filing, Physical Plaintiffs are aware of no opt-outs to the Settlement, nor is Lead Counsel aware of any informal or formal objections to the Settlement. *See* Lowther Omnibus Decl., Exhibit D. Under the *Grinnell* factors, "the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy…. [T]he lack of objections may well evidence the fairness of the [S]ettlement." *In re Am. Bank*

*Note Holographics, Inc. Sec. Litig*, 127 F. Supp. 2d 418, 425 (S.D.N.Y. 2001).

As described more fully in Section IV E, *infra*, Physical Lead Counsel caused the court-authorized Claims and Notice Administrator AB Data to publish notice nationally, and in addition notice of the Settlement was mailed directly to platinum and palladium Monex clients. *See* Lowther Omnibus Decl., Exhibit D ¶¶ 3, 6-7. In addition, Physical Lead Counsel and the Settlement Administrator established a case website, twice published notice of its existence in *The Wall Street Journal*, *Barron's*, *Investors Business Daily*, and multiple online metals and commodities trading websites, with links to the case website on a number of leading industry websites. *Id.* ¶¶ 6-8. Not one class member has objected to the terms of the Settlement, Physical Lead Counsel's stated request for attorney's fees and expenses, or the request for incentive and reimbursement payment to class representatives, all of which were disclosed in the preliminary papers, which have been publicly available for free for many months. *See* Lowther Omnibus Decl., Exhibit C. The fact that there have been no objections weighs heavily in favor of approval.

### 3.      Stage of the Proceedings and Amount of Discovery Completed

Although procedurally the Physical Action is stayed and still at the motion to dismiss stage, the fact-finding and discovery in this litigation are far more advanced. The current operative complaint, the Sixth Amended Consolidated Class Action Complaint, is itself a product of the significant discovery and fact-finding that has occurred in this case. Not only did Physical Plaintiffs receive extensive discovery from MF Global and other settling defendants, they also sought third-party discovery from major national precious metal dealers and retailers. The Omnibus Lowther Declaration describes in detail the discovery efforts engaged in by Physical Lead Counsel, from reviewing hundreds of thousands of documents, to listening to and

transcribing hundreds of recorded floor broker trades between and among the defendants and floor brokers on the floor of the commodities exchange, to working with forensic electronic data experts to piece together defendants' interconnections and trades. *See generally* Lowther Omnibus Decl. ¶¶ 88-104.

This *Grinnell* factor does not require "the parties have engaged in extensive discovery ... Instead, it is enough for the parties to have engaged in sufficient investigation of the facts to enable the Court to intelligently make an appraisal of the Settlement." *In re Sturm, Ruger & Co., Inc. Sec. Litig.*, 2012 U.S. Dist. LEXIS 116930, at *15 (D. Conn. Aug. 20, 2012). The substantial quantity of evidence Physical Lead Counsel has reviewed includes twenty-three deposition transcripts, communications discussing the alleged manipulative conduct, and recorded conversations regarding the nature and purpose of certain financial transactions. Lowther Omnibus Decl. ¶¶ 89-94. The quality of this evidence has enabled Physical Plaintiffs' complaint to expand from an initial seventeen-page pleading to the current 193-page complaint.

### 4.    Risks of Proving Liability, Damages, and Maintaining a Class

"In assessing the Settlement, the Court should balance the benefits afforded the Class, including the *immediacy* and *certainty* of a recovery, against the continuing risks of litigation." *In re Top Tankers, Inc. Sec. Litig.*, 2008 U.S. Dist. LEXIS 58106, at *13 (S.D.N.Y. July 31, 2008). The Physical Class faces substantial obstacles by continuing this litigation. First, Physical Plaintiffs still must survive a motion to dismiss or another procedural challenge in the bankruptcy court on difficult and uncertain antitrust, RICO, and fraud claims. Second, the litigation has been stayed by the Bankruptcy Court and one of the benefits conferred by the MF Global Settlement is the lifting of the stay to speed monies to the Physical Class via the Settlement. In addition, MF Global has disputed the proposed Physical Class Members' ability

to certify a class and, without conceding that argument, has only agreed that Federal Rule of Civil Procedure 23 applies for the purposes of settlement to provide notice of the Settlement, avoid protracted and expensive litigation and avoid appeals. Specifically, absent a settlement, the Debtors would argue class treatment is not the most fair and efficient method of adjudicating the controversy. *See, e.g.*, *Gentry v. Siegel,* 668 F.3d 83, 85-86 (4th Cir. 2012) (affirming bankruptcy court's ruling named employee wage and hour claimants were not authorized to file class proofs of claim and finding the bankruptcy process superior to the class action process). Even assuming Physical Plaintiffs could successfully lift the bankruptcy stay, certify a class and proceed with litigation (in either the Bankruptcy Court or the District Court), Physical Plaintiffs would still need to survive a motion to dismiss and summary judgment on difficult and uncertain antitrust, RICO, and fraud claims.

The "complexity of Plaintiffs' claims *ipso facto* creates uncertainty." *Park v. Thomson Corp.*, 2008 U.S. Dist. LEXIS 84551, at *9 (S.D.N.Y. 2008). There is almost no precedent for asserting successful Sherman antitrust claims using a "quick look" standard. Physical Plaintiffs' RICO claim and common law fraud claim, which is alleged under New York law, present additional obstacles, especially in a precious metal commodities case, where the alleged manipulation took place in the futures market, and thereafter claims were asserted in the physical market.

Neither the Supreme Court nor the Second Circuit has ruled on many aspects of proof, or applied Rule 23 certification standards to a similar case. In short, there is great risk and uncertainty in continued litigation of the Physical Class, and a very real risk the Physical Action could be dismissed in its entirety or a class not certified under Rule 23, with the attendant result of no recovery for the Physical Class.

24

Even where, as here, "Class Counsel believes that Plaintiffs have a strong case … under the civil RICO statute … 'Litigation inherently involves risks.'" *Charron v. Pinnacle Group N.Y. LLC*, 874 F. Supp. 2d 179, 199 (S.D.N.Y. 2012) (citing *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D 104, 126 (S.D.N.Y. 1997)). "The Court is not required to decide the merits of the case or resolve unsettled legal questions … or to foresee with absolute certainty the outcome of the case … Rather, the Court must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 185-86 (W.D.N.Y. 2005). Courts, moreover, "approve settlements where plaintiffs would have faced significant legal and factual obstacles to proving their case." *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 459 (S.D.N.Y. 2004) (finding the plaintiffs faced the risk of "substantial legal and factual defenses" and finding "expert testimony on a number of complex disputed legal and factual matters" enhanced risk).

Here, Physical Plaintiffs assert claims on behalf of a group of over-the-counter platinum and palladium metal purchasers for violations tied to defendants' futures trades on the NYMEX. Physical Plaintiffs face serious litigation risks stemming from the legal complexity of their claims, the expanse of evidence at issue, and the difficulty of proving damages, in particular because of the lack of centralized trading data from an over-the-counter market.

There "is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion[.]" *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972). Courts compare the potential of a larger recovery with the benefit of the settlement's immediacy. *See Gilliam v. Addicts Rehab. Center Fund*, 2008 U.S. Dist. LEXIS 23016, at *13 (S.D.N.Y. March 24, 2008) (recognizing an expedient result can be preferable

"even if it means sacrificing speculative payment of a hypothetically larger amount years down the road."). Thus, courts have approved small percentages of potential total damages where the risks of litigation were, as here, great. *See In re China Sunergy Sec. Litig.*, 2011 U.S. Dist. LEXIS 53007, at *15 (S.D.N.Y. May 13, 2011) (noting "average settlement amounts in securities fraud class actions where investors sustained losses over the past decade … have ranged from 3% to 7% of the class members' estimated losses"); *In re Union Carbide Corp. Con. Prods. Bus. Sec. Litig.*, 718 F. Supp. 1099, 1103 (S.D.N.Y. 1989) (holding "a settlement can be approved even though the benefits amount to a small percentage of the recovery sought" and that the "essence of settlement is compromise.").

Even if their pleadings survived the motion to dismiss, Physical Plaintiffs would still face very significant hurdles in litigating the matter to trial, including certifying and then maintaining an antitrust, RICO, and fraud class through trial, extensive *Daubert* challenges to Physical Plaintiffs' experts, and summary judgment on novel and complex legal and factual issues. At trial, the Physical Class would need not only to prove manipulation of the NYMEX markets for platinum and palladium futures, but also show this misconduct impacted Platinum and/or Palladium Bullion, with the concomitant problems associated with the fact most physical or spot purchases occur in a decentralized, over-the-counter market. If the case were to proceed to summary judgment or to trial, both parties would depend heavily on surveys and on expert testimony. As in *In re Global Crossing*, dependence on expert testimony, and confrontation of alleged industry standards and esoteric economic analyses concerning trading in platinum and palladium futures, and their concomitant risk on the Physical market, greatly compounds the litigation risk in this case. 225 F.R.D. at 459.

The Physical Plaintiffs also faced potential hurdles not present in the Futures Class's

litigation. The Futures Plaintiffs' claims for violations of the Commodities Exchange Act ("CEA"), 7 U.S.C. §§1 *et seq.*, were unavailable to the Physical Plaintiffs. Therefore, the Physical Plaintiffs' claims were not specific to commodities and instead were brought under the Sherman Antitrust Act, the RICO Act and New York common law. Thus, the Physical Plaintiffs faced a significantly higher risk of a successful dispositive motion than the Futures Plaintiffs. Additionally, the Physical Plaintiffs' faced causation problems not present in the Futures Action. Because the alleged manipulation occurred in the futures market, the Physical Plaintiffs would be required to show not only that these trades artificially inflated the futures closing prices, but that any effect of these trades carried through into the physical market and adversely impacted the physical price.

Like the Moore Capital Defendants, MF Global has consistently and vigorously denied Physical Plaintiffs' claims. The Trustee will continue to vigorously defend against and deny Physical Class claims and alleged damages, and in the Settlement Agreement the Trustee continues to deny MFGI engaged in any unlawful conduct. Lowther Preliminary Approval Decl., Ex. MFG at pp. 3-4. (ECF No. 237.) Further, neither the Bankruptcy Court nor this Court has rendered a ruling on whether the Physical Plaintiffs have alleged valid claims; nor have the Courts considered the procedural hurdles the Physical Class must overcome to prove its claims at trial, as well as to establish damages.

MF Global denied the Physical Plaintiffs' measure of damages. Applying Moore Capital's data, expert analyses and assumptions, defendants estimate their damages to be between zero and $1.6 million in artificiality. And defendants have attacked nearly every aspect of the Physical Plaintiffs' case, including the data, assumptions and methodologies for estimating trading volumes, artificiality, and damages—a heightened risk with the Physical

Class, since all trades occur over-the-counter and no central repository of trading data exists.

The Physical Plaintiffs face additional risks because the Settling Defendants also deny the Futures Plaintiffs' claims. They dispute the artificiality numbers in the plans of allocation and assert that artificiality in platinum and palladium futures was non-existent, or at most, a small fraction of the inflation set forth in the plans of allocation. All of these litigation risks are substantial, and weigh in favor of approving the Settlement. *Sumitomo*, 189 F.R.D. at 281.

Carrier defenses. MFGI's insurance carriers, under both the "errors and omissions" and "directors and officers" policies, took the position insurance coverage was unavailable to MFGI and Welsh in this action. Hence there was significant risk no assets would be available to fund a judgment or settlement from any of the insurers, or that any insurance coverage—even if applicable—could be reduced, dissipated or eliminated entirely because of payments already made or being made by the E&O and D&O carriers for legal and other expenses in unrelated litigations involving the MF Global entities, including defendant MFGI, under those policies. Both the D&O and E&O policies are "wasting policies." As insurance proceeds are paid out, including costs and attorneys fees of MFGI's insureds, available proceeds for claims settlement are being reduced. Accordingly, when weighing these factors, Physical Plaintiffs counsel determined the Insurer contribution to the Settlement was a valuable contribution.

Welsh consideration and risk of zero recovery. The Physical Class faced a substantial risk they may have no recovery or, at best, a very negligible recovery under the Welsh Judgment or the Welsh Assignment of Claim provided to Physical Plaintiffs by defendant Welsh in the Moore and Welsh settlement. The D&O insurers continue to vehemently deny they have any contractual obligation to indemnify Welsh in regard to the claim for negligence asserted against him in the Physical Action, and Physical Plaintiffs face the likelihood of

protracted litigation with the Insurers and related excess carriers on coverage and other issues, with uncertain results. Further risks include class certification, interlocutory appeal of any certification ruling, summary judgment, *Daubert* challenges, and *in limine* motions to exclude the Physical Class best evidence, along with trial risk, post-trial motions, and appeal. Further, as insurance proceeds are paid out, it is highly uncertain whether sufficient—or any—insurance proceeds would be available to satisfy the Welsh judgment after class certification (if granted), summary judgment (if denied), obtaining a jury verdict at trial on very complex and technical claims, and surviving on appeal. Physical Plaintiffs' counsel determined it was in the best interests of the Physical Class to assign their rights with respect to the Welsh Judgment and Assignment to MFGH, in consideration for which MFGH will make a cash payment of $200,000 under the Welsh Physical Assignment Agreement to Physical Plaintiffs and the Physical Class ($10,000 of which will revert to the Moore Capital defendants as partial repayment of their $30,000 paid to quiet the litigation against defendant Welsh).

### 5.   Settling Defendants' Ability to Withstand a Greater Judgment

A "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 620-21 (S.D.N.Y. 2012). Absent settlement, Physical Plaintiffs face the very real risk of recovering nothing, due not only to the significant defenses and obstacles to be raised by MF Global and its insurers, and MFGI's opposition to class certification based on the claim filed in the SIPA Proceeding. MFGI faced an enormous number of other claims in liquidation. In addition, unrelated lawsuits and claims are competing for recovery of MFGI's remaining assets and insurance proceeds, if any, which may be available. This poses enormous risk to the Physical Class and is a serious threat to a class recovery. Courts recognize these risks and certify

settlement classes and approve class action settlements involving bankrupt entities. *See In re Drexel Burnham Lambert Group*, 960 F.2d 285 (2d Cir. 1992) (affirming class certification and approving settlement involving bankrupt securities firm under federal securities laws); *In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436, 451-453 (S.D.N.Y. 2004) (certifying classes for purposes of ERISA and securities law settlements); *In re Worldcom, Inc.*, 347 B.R. 123, 143 (Bankr. S.D.N.Y. 2006) ("the Court's preliminary certification of the class is confirmed and the class should be certified for settlement purposes.").

### 6.    Range of Reasonableness of Settlement in Light of Best Possible Recovery and Attendant Litigation Risks

"The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *Grinnell*, 495 F.2d at 455. Class settlements, especially in commodities and securities actions, are often approved where the monetary relief is a fraction of the "best day" recovery. *See, e.g., In re Bear Stearns Cos.*, 909 F. Supp. 2d 259, 269-70 (S.D.N.Y. 2012) (11% of plaintiff's expert's estimated damages was reasonable); *Menkes v. Stolt-Nielsen S.A.*, 270 F.R.D. 80, 103 (D. Conn. 2010) (class settlement providing 8% of maximum damages was reasonable); *Hicks v. Morgan Stanley & Co.*, 2005 U.S. Dist. LEXIS 24890, at *19 (S.D.N.Y. Oct. 24, 2005) (3.8% of plaintiffs' estimated damages within range of reasonableness). The Court recognizes "the complexity of Plaintiffs' claims *ipso facto* creates uncertainty." *Park*, 2008 U.S. Dist. LEXIS 84551, at *9. As the Court has held, "Liability is never automatic, and a settlement of $13 million in cash … represent a significant recovery." *Id.*

Continuing this complex litigation against the Settling Defendants would entail a lengthy, highly expensive legal battle involving uncertain, novel, and complex legal and factual issues. Establishing damages would require reliance upon challengeable assumptions, presenting a very

real risk of no recovery for the Physical Class. These risks are substantial and potentially dispositive for all of Physical Plaintiffs' causes of action.

The reasonableness of a settlement is a function of both (1) the size of the settlement amount relative to the best possible recovery; and (2) the likelihood of no recovery (or a reduced recovery). *Bear Stearns*, 909 F. Supp. 2d at 270. Precise trading volumes in the physical platinum and palladium bullion markets are difficult to calculate. Through Physical Plaintiffs' expert analysis, net platinum and palladium bullion purchases have been estimated, for the period of October 2007 and June 2008, at 201,056 ounces of platinum and 933,718 ounces of palladium. Lowther Omnibus Decl., Exhibit G at pp. 5-6. Multiplying these volume figures by the average artificiality for platinum ($125 per ounce) and the average for palladium ($37 per ounce) in the Plan of Allocation produces an alleged potential Physical Class damages number of approximately $59,754,263—and this artificiality assumes 100% compounding of the daily artificiality without any dissipation in the market, a point the defendants have repeatedly disputed..

Settling Defendants disputed the Physical Class's volume and damages numbers, and have challenged every single assumption underlying Physical Plaintiffs' analyses. Defendants' experts, which also have extensive experience in the commodities markets, estimate "best day" damages, using assumption they deemed favorable to the Physical Class, of at most $1.6 million, and presented expert analyses and assumptions showing *de minimus* damages to the Physical Class, or in the alternative a complete lack of causation. This analysis and significant risk to the Physical Class cannot be disregarded.

Thus Physical Plaintiffs face substantial hurdles if this litigation continues. Even assuming Physical Plaintiffs survive past the pleading stage of the litigation, they will face

significant obstacles at class certification, summary judgment, and at trial, such as establishing the flow through of artificiality from the NYMEX futures market to the spot market and identifying the number of physical platinum and palladium transactions in this "over-the-counter" market. In light of the tremendous risks of continued litigation, the Settlement is reasonable. *Hicks*, 2005 U.S. Dist. LEXIS 24890, at *19.

### 7.    Risk of maintaining the class action through trial

The next *Grinnell* factor requires the Court to consider the risk the Physical Plaintiffs would be unable to maintain class action status through trial. Even though this Court certified a settlement class in this matter, ECF No. 244 ¶ 2, it cannot be seriously questioned the defense would have tried mightily to have any class certification decision overturned, both after the class certification stage, along with a motion for decertification later in the proceedings. In *Charron v. Wiener*, 731 F.3d 241, 249 (2d Cir. 2013), the Second Circuit held:

> Given defendants' repeated statements that they will immediately move for decertification if the settlement is rejected, the large size of the class, the complicated and diverse claims asserted by plaintiffs, and the heightened legal uncertainty necessarily injected by significant recent Supreme Court authority relevant to the propriety of class certification, however, we cannot find that the district court abused its discretion in finding that the class faced significant risks of decertification, that decertification would drastically reduce the chances of any member of the class achieving meaningful relief, and that the litigation risks attendant to these possibilities weighed heavily in favor of the fairness of a settlement under which plaintiffs achieved substantial benefits that (as in any settlement) fell short of what they might have hoped to achieve.

Here, as in *Charron*, the Physical Class faces the risk of decertification at multiple stages in the proceeding, both from changes in class action jurisprudence by the Supreme Court and the inherent complexity of the antitrust and RICO claims and damages proof. And even though Physical Lead Counsel believes this case was ripe for class certification, the risk the defendants could succeed in preventing certification or later decertifying the class is real. The Settlement

ensures the Physical Class as certified by the Court will receive prompt monetary recovery, and eliminates the risk a later development will cause decertification, which would be a devastating result for Physical Class members.

The Trustee has consistently and vigorously denied MFGI's liability. The Trustee argues neither treble damages nor class certification are attainable via their Proof of Claim in the SIPA Proceedings. Further, in anticipation of the Settlement, the Trustee successfully moved to reclassify the treble damages portion of Physical Plaintiffs' Proof of Claim. Physical Plaintiffs did not oppose such motion for settlement purposes, because the Trustee agreed he was not seeking a specific ruling on the merits, but nevertheless the Bankruptcy Court order allowing reclassification may have an adverse affect on Physical Plaintiffs' efforts to recover treble damages if the Settlement Agreement is not approved.

8.    **The Settlement Is Presumptively Fair because It Is the Product of Informed Arm's Length Negotiations**

To evaluate the procedural fairness of a settlement, the Court looks to the negotiations between the parties and can presume "fairness, adequacy, and reasonableness" when a class settlement is reached "in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores, Inc.*, 396 F.3d at 116; *accord Platinum & Pall.*, 2014 U.S. Dist. LEXIS 96457, at *36. As outlined in Section 2, *supra*, the parties have litigated this case for over three years, taken extensive discovery, and engaged in difficult and protracted settlement negotiations. Plaintiffs and defendants are represented by "very able and highly experienced" counsel. *Platinum & Pall.*, 2014 U.S. Dist. LEXIS 96457, at *37. And the Settlement was the result of compromises between experienced counsel after years of contentious litigation.

**D.     The Class Has Been Preliminarily Certified and It Satisfies the Prerequisites of Rule 23(a) and Rule 23(b)(3) such that It Should Be Certified for Purposes of Final Approval**

Rule 23(e) allows for the settlement "of a certified class." Fed. R. Civ. P. 23(e); *Global Crossing*, 225 F.R.D. at 451 (the "Second Circuit has acknowledged the propriety of certifying a class solely for settlement purposes"). A court may grant certification for settlement purposes where the proposed settlement class satisfies the four prerequisites of Rule 23(a) (*i.e.*, numerosity, commonality, typicality and adequacy), as well as one of the three subsections of Rule 23(b). *Id.*

On November 14, 2014, the Court authorized the dissemination of notice of the proposed MF Global class action Settlement, and further ordered a final hearing to consider the fairness, reasonableness, and adequacy of the proposed Settlement, (ECF No. 244), after a November 12, 2014 hearing on preliminary approval, during which the Court suggested certain revisions to the proposed Settlement, which the parties made. (ECF No. 243.) The Court also preliminarily certified the Physical Class under Rule 23 for settlement purposes. (ECF No. 244 ¶ 2.) For the foregoing reasons, the Physical Class should be certified for purposes of final approval.

**E.     Notice of The Settlement Has Been Provided to the Class Pursuant to and Consistent With The Court's November 14, 2014 Order**

**1.     The Notice Program Complied With Rule 23 and Due Process**

Before a proposed class action settlement can be finally approved, the "court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). When, as here, a class is certified for settlement purposes under Rule 23(b)(3) "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Notice regarding a proposed settlement is adequate under both Rule 23 and the Due Process Clause if it "fairly apprise[s] the prospective

members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings" and it can "be understood by the average class member." *Wal-Mart*, 396 F.3d at 114-15. The nature and extent of class settlement notice is left to the Court's discretion, *McReynolds v. Richards-Cantave*, 588 F.3d 790, 805 (2d Cir. 2009), and the standard for the adequacy of a settlement notice in a class action is measured by reasonableness. *Hecht v. United Collection Bureau, Inc.*, 691 F.3d 218, 224 (2d Cir. 2012). Constructive notice by publication can satisfy due process as to persons whose whereabouts or interests cannot be determined through due diligence. *Id.* Notice need not be perfect; it need only be the best notice practicable under the circumstances, and each and every class member need not receive actual notice, so long as class counsel acted reasonably in choosing the means likely to inform potential class members. *Weigner v. City of New York*, 852 F.2d 646, 649 (2d Cir. 1988).

Here, the Class Notice distributed to the Physical Class was "the best practicable notice under the circumstances." *Platinum & Pall.*, 2014 U.S. Dist. LEXIS 96457, at *44. Class Notice was extensive, including notice by a publication campaign consisting of a settlement website, banner advertisements on the website of a major wholesaler of physical platinum and palladium, advertisements in various magazines devoted to commodity investment, and two publications of advertisements in national newspapers whose focus is investors, along with direct mailing to Monex customers who traded platinum and palladium bullion during the Class Period. The notice and settlement website are in plain English and contains all the information Rule 23 requires, including adequate information and timing to opt-out of the settlement if so desired, retain independent counsel to object to the Settlement and petitions for attorneys' fees and reimbursement of expenses, and carefully weigh all settlement options to determine the best

course of action. *McReynolds*, 588 F.3d at 804 (notice "must be of such nature as reasonably to convey the required information … and it must afford a reasonable time for those interested to make their appearance."); *Wal-Mart*, 396 F.3d at 114 ("settlement notice must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.").

> ### 2.   Physical Plaintiffs and the Settlement Administrator Complied With The Court's Order and Timely Completed The Notice Program

Physical Plaintiffs, with the aid and execution of the Settlement Administrator, published the short-form notice: (a) for two consecutive months in *Futures* magazine (with 37,000 monthly subscribers); (b) for two consecutive months in *Stocks & Commodities* magazine (with 54,000 monthly subscribers); (c) eight consecutive weekly issues in *Futures & Options World's* weekly e-newsletter distributed to approximately 6,000 recipients; and (e) for two months *Futures & Options World* banner ads available on its website, advising Class Members of the Settlement and directing Class Members to the settlement website and all Settlement-related documents. *See* Physical Plaintiff's Status Report Concerning Progress Of Executing The Program Of Notice To The MF Global Physical Class, at pp. 2-3 (ECF No. 250). Physical Plaintiffs also published notice on the following websites: (a) Kitco.com website (considered the world's number one source of metals market information with over 1,000,000 unique visitors daily) (b) the *Stocks & Commodities* magazine website; (c) the *Futures* magazine website; (d) the *Futures & Options World* website; and (e) the *Investors Business Daily* website.

Physical Plaintiffs also published notice in the following print publications: four consecutive weekly publications in *Investors Business Daily* (more than 150,000 daily subscribers); two consecutive publications in *Barron's* (more than 350,000 weekly subscribers); and two publication days in *The Wall Street Journal* (2.4 million daily circulation), as requested

by the Court during the preliminary approval process. *Id.* at 3.

Notice of the MF Global Settlement was published on the website specifically created by the Settlement Administrator, www.PlatinumPalladiumPhysicalLitigation.com. All settlement-related documents and Court orders—including all currently-filed papers associated with final approval of both the MF Global Settlement and the Moore Capital Settlement—have been posted to the settlement website and have been available for download for free. *Id.* at p. 4. The Physical Class's website for the MF Global Settlement clearly advises Physical Class members there are two separate settlements. Each settlement has a separate link and webpage. And similar to the Class Notice, in distinct red text on the Physical Class website, it advises Physical Class members they need file only a single proof of claim to participate in both settlements, but separate objections or requests for exclusion should be filed for each settlement.

Further, direct mail notice was provided to thirty-one large investment institutions identified as either having purchased or who likely purchased platinum or palladium bullion during the Class Period, as well as large and national platinum and palladium bullion retailers, which included the long form notice, link to the settlement website, and a request this notice be forwarded to any relevant clients. *Id.* at pp. 4-5.

The Court's November 14, 2014 Order adopted Physical Plaintiffs' proposed notice program and found when completed, such notice shall constitute due and sufficient notice in full compliance with the requirements of Rule 23 and due process of the law. (ECF No. 244, ¶ 11.) Pursuant to the Court's Orders, Physical Plaintiffs have submitted a Status Report concerning compliance with the notice program (ECF No. 250), and also have submitted herewith an Affidavit from the Settlement Administrator attesting to the compliance with the provisions of the notice program set forth in the Court's November 14, 2014 Order. *See* Lowther Omnibus

Decl., Exhibit D. Accordingly, the notice program provided to the Physical Class satisfied Rule 23's requirements, satisfied due process, and constituted the best notice practicable under the circumstances.

**V.    Conclusion**

After several years of hard-fought litigation and painstaking negotiations, the Parties have reached an accord providing ample compensation to the Physical Class for its alleged damages. The Class is satisfied with the terms, as demonstrated by the lack of any opt-outs to the Settlement, nor is Lead Counsel aware of any informal or formal objection to the Settlement from any potential class members. The *Grinnell* factors weigh in favor of approval. For these and all of the foregoing reasons, Physical Plaintiffs respectfully request the Court grant final approval to the MF Global Settlement.


Dated: January 14, 2015


*/s/ John A. Lowther*
_____

William J. Doyle, II
John A. Lowther
DOYLE LOWTHER LLP
10200 Willow Creek Road, Suite 150
San Diego, CA 92131
(858) 935-9960 phone
(858) 939-1939 fax


*Class Counsel for Plaintiffs DeVito Trust, Fredrick DeVito,*
*Mary DeVito, David DeVito, Russell Andrews and the*
*Proposed Class in the Platinum/Palladium Physical Action*