UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| *In Re: Platinum And Palladium Commodities* | |
| *Litigation* | MASTER FILE |
| This Document Relates To: | No. 10 Civ. 3617 (WHP) |
| | |
| Platinum/Palladium Futures Action | |

**FUTURES PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR
<u>FINAL APPROVAL OF MF GLOBAL CLASS ACTION SETTLEMENT</u>**

## TABLE OF CONTENTS

I.  Preliminary Statement ..................................................................................................1

    A.  Material Terms of the Settlement and Recent Developments ................................2

        1.  Cash Payment by the Insurer .....................................................................3

        2.  The Allowed Claim from MFGI in Liquidation .........................................3

        3.  The Class and the Class Period ..................................................................5

    B.  The Release ...........................................................................................................5

    C.  The Proposed Plan of Allocation ..........................................................................5

    D.  The Notice Plan .....................................................................................................5

II.  Background of the Action .............................................................................................5

    A.  Plaintiffs' Claims Against MF Global ..................................................................5

    B.  Procedural History of the Action ..........................................................................6

III.  Argument ......................................................................................................................6

    A.  The Standard for Final Approval Of A Class Action Settlement ...........................6

    B.  The Settlement Is Fair, Reasonable And Adequate And Should Be Finally
        Approved ...............................................................................................................7

        1.  The Settlement Is Procedurally Fair ...........................................................7

            a.  The Settlement Was Negotiated At Arm's-Length by
                Experienced Capable Counsel .......................................................8

        2.  The Proposed Settlement Is Substantively Fair .........................................10

        Factor 1: The Complexity, Expense And Likely Duration Of The Litigation .......10

        Factor 2: The Reaction Of The Class To The Settlement. ....................................11

         Factor 3: The Stage Of The Proceedings And Amount Of Discovery
        Completed. ........................................................................................................ 12

i

Factors 4, 5 and 6: The Risks Of Establishing Liability, Damages And Maintaining The Class Action Through Trial..........................................................12

Factor 7: The Ability Of The Settling Defendant To Withstand A Greater Judgment. .................................................................................................................14

Factors 8 and 9: The Range Of Reasonableness Of The Settlement Fund In Light Of The Best Possible Recovery And All The Attendant Risks Of Litigation. ...............................................................................................................15

Conclusion ...........................................................................................................................16

## Table of Authorities

**Cases**                                                                                                    **Pages**

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980) ........................................................................................................20

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974) ......................................................................................12, 21

*D'Amato v. Deutsche Bank*,
   236 F.3d 78 (2d Cir. 2001) ...............................................................................................9

*DiPlacido v. CFTC*,
   364 Fed. Appx. 657 (2d Cir. 2009) ................................................................................14

*Dura Pharm., Inc. v. Broudo*,
   544 U.S. 336 (2005) ........................................................................................................19

*Goldberger v. Integrated Res., Inc.*,
   209 F.3d 43 (2d Cir. 2000) .............................................................................................12

*In re Advanced Battery Tech., Inc. Sec. Litig.*,
   298 F.R.D 171 (S.D.N.Y. 2014) ......................................................................................9

*In re Alloy, Inc. Securities Litig.*,
   2004 WL 2750089 (S.D.N.Y. Dec. 2, 2004) ................................................................10

*In re Anthony J. DiPlacido*,
   364 F.3d. Appx. 657 (CFTC Nov. 5, 2008) ..................................................................14

*In re AOL Time Warner, Inc. Sec. Litig.*,
   2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ...................................................................11

*In re Currency Conversion Fee Antitrust Litigation*,
   263 F.R.D. 110 (S.D.N.Y. 2009) ...............................................................................9, 16

*In re Drexel Burnham Lambert Group*,
   960 F.2d 285 (2d Cir. 1992) .............................................................................................7

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
   2010 U.S. Dist. LEXIS 119702 (S.D.N.Y. Nov. 8, 2010) ............................................11

*In re Giant Interactive Grp ., Inc. Sec. Litig.*,
   2011 WL 5244707 (S.D.N.Y. Nov. 2, 2011) ................................................................11

*In re Global Crossing Sec. and ERISA Litig.*,
   225 FRD 436 (S.D.N.Y. 2004) ...................................................................................7, 12, 19

*In re Initial Pub. Offering Sec. Litig.*,
   226 F.R.D. 186 (S.D.N.Y. 2005) .......................................................................................11

*In re: Nasdaq Market-Makers Antitrust Litig.*,
   1997 WL 805062 (S.D.N.Y. Decl. 31, 1997) ......................................................................20

*In re Natural Gas Commodities Litig.*,
   231 F.R.D. 171 (S.D.N.Y. 2005) .......................................................................................14

*In re Painewebber Ltd. Partnerships. Litig.*,
   171 F.R.D. 104 (S.D.N.Y.1997) ........................................................................................12

*In re PaineWebber Ltd. P'ships Litig.*,
   147 F.3d 132 (2d Cir. 1998) ...............................................................................................9

*In re Platinum & Palladium Commodities Litig.*,
   828 F. Supp. 2d 588 (S.D.N.Y. 2011) ...................................................................... *passim*

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
   163 F.R.D. 200 (S.D.N.Y.1995) ........................................................................................15

*In re Sturm, Ruger & Co., Inc. Securities Litig.*,
   2012 WL 3589610 (D. Conn. Aug. 20, 2012) ....................................................................11

*In re Sumitomo Copper Litigation*,
   74 F.Supp.2d 393 (S.D.N.Y. 1999) ..........................................................................13, 14, 15

*In re Sumitomo Copper Litig.*,
   194 F.R.D. 480 (S.D.N.Y. 2000) ..................................................................................14, 21

*In re Wachovia Equity Sec. Litig*,
   2012 U.S. Dist. LEXIS 97910 (S.D.N.Y. June 12, 2012) ...................................................11

*In re Warner Chilcott Ltd. Sec. Litig.*,
   No. 06 CIV.11515(WHP), 2008 WL 5110904 (S.D.N.Y. Nov. 20, 2008)...............................9

*Maley v. Del Global Technologies*,
   186 F.Supp.2d 385 (S.D.N.Y. 2002) ................................................................................12

*Mavwalt v. Parker & Parsley Petroleum Co.*,
   67 F.3d 1072 (2d Cir. 1995) .............................................................................................12

*Newman v. Stein,*
    464 F.2d 689 (2d Cir. 1972) ................................................................19

*Silverman v. Motorola, Inc.,*
    2012 U.S. Dist. LEXIS 63477 (N.D. Ill. May 7, 2012) ........................11

*Silverman v. Motorola Solutions, Inc.,*
    739 F.3d 956 (7th Cir. 2013) ...............................................................11

*Simplot* v. *Strobl,*
    474 U.S. 1006 (1985) ..........................................................................14

*Strobl v. New York Mercantile Exch.,*
    582 F. Supp. 770 (S.D.N.Y. 1984) ......................................................14

*Strougo v. Bassini,*
    258 F.Supp.2d 254 (S.D.N.Y. 2003) ...................................................14

*Wal–Mart Stores, Inc. v. Visa U.S.A.,*
    396 F.3d 96 (2d Cir. 2005) .............................................................9, 13

## Rules

Fed.R.Civ.P. 23(e)(2) ....................................................................................9

Fed. R. Civ. P. 23(e) .....................................................................................9

## Other Authorities

James D. Cox & Randall S. Thomas, *Letting Billions Slip Through Your Fingers: Empirical Evidence and Legal Implications of the Failure of Financial Institutions to Participate in Securities Class Action Settlements*, 58 Stan. L. Rev. 411 (2005) ................................................21

Jerry W. Markham, *Manipulation of Commodity Futures Prices – The Un-prosecutable Crime*, 8 Yale J. on Reg. 281 (1991) ...................................................................13

John C. Coffee, Jr. (ed.), *Litigation Governance: Taking Accountability Seriously*, 110 Colum. L. Rev. 288, 335, n. 150 (Mar. 2010) ...................................................21

*Newberg on Class Actions* (4th ed.) ............................................................9

*Newberg on Class Actions* (5th ed.) ............................................................9

*Securities Class Action Settlements, 2011 Review and Analysis* ...........................21, 22

## I.       Preliminary Statement

The Futures Plaintiffs ("Plaintiffs")[1] respectfully submit this memorandum and the

accompanying declarations[2] in support of their motion pursuant to Rule 23(e) of the Federal

Rules of Civil Procedure for final approval of the Stipulation and Agreement of Settlement

executed on October 21, 2014 (the "MF Global Settlement" or the "Settlement Agreement" or

"Settlement").[3]

Class Counsel estimate that the MF Global Settlement will provide the Class with cash

consideration between $19,500,000 and $21,500,000.  McGrath Fairness Decl., ¶6(c).  Because

of the extreme risks involved in the continued prosecution of the claims against MF Global, the

receipt of this consideration is fair and reasonable and fully merits final approval of the MF

Global Settlement.   Plaintiffs' risks in prosecuting the claims against MF Global are much

greater than even the extreme risks Plaintiffs faced in prosecuting their claims against Moore

and Welsh.  First, all of the extraordinary risks and complexities that apply to Plaintiffs' claims

against the Moore Defendants and Welsh, also apply to Plaintiffs' claims against MF Global.

Practically speaking, Plaintiffs cannot prove the claims against MF Global unless they first

prove the extremely risky claims against Moore Capital and Welsh.

Second, in addition to the extreme risks in establishing the claims against Moore Capital

and Welsh, Plaintiffs faced other substantial risks unique to the claims against MF Global: (1)

Plaintiffs had to prove that MF Global knowingly aided and abetted or agreed to participate in

the Moore Defendants' price manipulation, and (2) Plaintiffs had to prove all the foregoing in

---

[1]  "Plaintiffs" refers to Richard White, Harry Ploss and The Stuart Sugarman Trust.
[2] Declaration of Christopher M. McGrath in Support of Motions for Final Approval of
Settlements ("McGrath Fairness Decl."); Declaration of Jerry W. Markham In Support Of
Proposed Class Settlements; Declaration of Eric J. Miller On Behalf Of A.B. Data, Ltd.
Regarding Notice And Claims Administration.
[3] Dkt. No. 230-1.

bankruptcy proceedings against a Trustee, while (3) Plaintiffs' success in establishing liability and even damages, would likely result in the inability of MF Global to pay the resulting judgment.

Still, the estimated settlement consideration of $19,500,000 to $21,500,000 represents approximately 5% of the $400,000,000 in total estimated damages.  McGrath Fairness Decl., ¶6(c); McGrath Fee Decl., ¶10.  This 5% recovery from MF Global alone, is significantly **more** than is recovered in the average class action settlement on damages of this size.[4]  Adding the 12% recovery on the Moore Settlement produces a total recovery of 17%.  Final approval should be granted.

The remaining issues on this motion involve the plan of allocation, the adequacy of Class notice, and the propriety of certification of the Class.  These issues will not be separately addressed herein.  They should each be approved and granted for the same reasons that have been set forth in the Futures Plaintiffs' Memorandum in Support of Motion for Final Approval of Class Action Settlement with the Moore Defendants and Defendant Joseph Welsh, Dkt. No. 263 ("Moore Fairness Br.").  This is because the same plan of allocation (except with no reversion here), the same plan of notice, and the same Class is present in both the MF Global Settlement and the Moore Settlement.

### A. Material Terms of the Settlement and Recent Developments

The MF Global Settlement parties include James W. Giddens (the "Trustee"), the Trustee for the SIPA Liquidation of MF Global, Inc. ("MFGI") under the Securities Investor

---

[4] *Securities Class Action Settlements, 2011 Review and Analysis*, Cornerstone Research, p. 7 (average settlement recovery for class action settlements during the years 1996 through 2010 involving estimated damages between $250 million and $499 million was only **2.5 cents on the dollar**) *available at* http://securities.stanford. edu/Settlements/ REVIEW_1995 2011/Settlements _Through_12_2011.pdf.

Protection Act (the "SIPA Proceeding"), MF Global Holdings, Ltd. ("MFGH") (an affiliate of

MFGI and the Plan Administrator under the Second Amended and Restated Plan for the joint

liquidation of MFGH and various other MF Global entities excluding MFGI), and MFG

Assurance Company, Ltd. (the "Insurer").

Subject to the final approvals of this Court and the Bankruptcy Court, the MF Global

Settlement, provides relief to the Class as follows:

### 1.     Cash Payment by the Insurer

Subject to the terms and conditions of the Settlement Agreement and court orders, the

Insurer agreed to make an all-cash payment of $4,672,500 for the benefit of the Class. *See* Dkt.

No. 230-1, Section 3(b)(1) and (2).  With the Bankruptcy Court's approval [ECF No.8443], and

pursuant to the Scheduling Order [Dkt. No. 245], the Insurer already has transferred this $4,672,

500 into two escrow accounts: $4,592, 500 was paid into the interest bearing Court Registry

Investment ("CRIS") account for the Southern District of New York (hereinafter "CRIS

account") and $80,000 was paid into the interest bearing escrow account at the Huntington

National Bank as per the Settlement Agreement and related court orders.  *See* Dkt. No. 248t; Dkt.

No. 249. These funds, except the $80,000 to be used to pay costs relating to class notice, will,

along with other consideration payable to the Class in the Settlement, be payable  to Class

members if and when the Settlement becomes Final under the Agreement. [5]

### 2.     The Allowed Claim from MFGI in Liquidation

---

[5] The Settlement Agreement provides that in the event the Settlement is not final by October 31, 2015, and has not been terminated, MFGI and MFGH shall provide Insurer with a full release of all claims arising from the Futures Action and All Futures Claims in exchange for (i) transferring any interest it has in the Insurer Settlement Payment to the Trustee and (ii) providing the release in Section 15(e) to the Trustee and MFGH (the  "Insurer Release Election") and the Insurer's exercise of same shall have no effect  on (i) the Future Plaintiff's right to the Settlement Fund upon the Effective Date as otherwise provided for in this Settlement Agreement, (ii) the Futures Bankruptcy Claim, or (iii) any other claim of the Class against MFGI.

As approved by the Bankruptcy Court, and subject to the terms and conditions set forth in the Settlement Agreement, Plaintiffs and the Class have been allowed a single general creditor claim against the MFGI Estate in the SIPA proceeding in the amount of $18,753,571.43 (the "Allowed Claim"). *See* Dkt. No. 230-1, Section 3(a) at pp. 12-13; *id.*; 11-3790 (mg)(SIPA)/ECF 8476. To the extent that the Allowed Claim has become Final and Plaintiffs retain ownership of it, they shall receive a pro rata distribution on such claim of any distribution made by MFGI that may occur prior to the Effective Date to holders of general unsecured claims in the SIPA proceeding and (ii) receive any interim distribution on account of such Allowed Claim in the SIPA proceeding after the Effective Date. All such distributions from the SIPA Trustee for the Allowed Claim will be made into the aforementioned CRIS account in the Southern District of New York as provided in the Settlement Agreement once the Settlement is Final and effective.

Subject to the terms and conditions set forth in  the Settlement Agreement, Plaintiffs and the Class had the option either to (i) retain the Allowed Claim; (ii) assign, sell and transfer the Allowed Claim to MFGH or (iii) assign, sell and transfer the Allowed Claim to a Third Party. *See* Dkt. No. 230-1 at Section 3. To date, Plaintiffs have opted to retain the Allowed Claim and have not assigned, sold or transferred the Allowed Claim to either MFGH or to a Third Party.

To date, the SIPA Trustee has authorized a 39% distribution for all allowed general creditor claims in the SIPA liquidation.  The Class is entitled to receive that proportional distribution on the $18,753,571.43 Allowed Claim when this Settlement becomes Final and effective.  Such 39% distribution will provide 7,313,892.86.  Further distributions are anticipated from the MF Global Estate in the liquidation proceeding.  *See* ECF 8549.  McGrath Fee Decl., ¶10 (estimating total payment to the Class from the MF Global Settlement will reach $19,500,000-$21,500,000).

### 3.    The Class and the Class Period

For settlement purposes, Plaintiffs seek to finally certify the same class preliminary certified for settlement purposes.  *See* Dkt. Nos. 212, ¶2 and 245, ¶2.[6]

### B.    The Release

The full release language is set forth in Section 7 of the Settlement and is also included as part of the proof of claim form. Generally, in exchange for the Settlement consideration provided to Plaintiffs described above, the Class will release and discharge the Parties from any and all claims for losses on their transactions in platinum or palladium futures contracts during the Class Period. Settlement, Section 7. Except that the Class will not release the Relevant Insurers regarding the Welsh Judgment and Assignment until the Welsh Futures Assignment Agreement Settlement becomes final and effective. Dkt. No. 230-1, Section 7(a) at p. 20.

### C.    The Proposed Plan of Allocation

The Plan of Allocation is reasonable and should be finally approved for the same reasons set forth in the Moore Fairness Br., pp. 15-17.

### D.    The Notice Plan

The Notice Plan is reasonable and should be finally approved for the same reasons set forth in the Moore Fairness Br., pp. 17-18.

## II.    Background of the Action

### A.    Plaintiffs' Claims Against MF Global

---

[6] Courts have certified settlement classes which involved a bankrupt defendant. See *In re Drexel Burnham Lambert Group*, 960 F.2d 285 (2d Cir. 1992) (affirming class certification and approving settlement involving bankrupt securities firm under federal securities laws); *In re Global Crossing Sec. and ERISA Litig*., 225 FRD 436, 451-453 (S.D.N.Y. 2004)(certifying classes for purposes of ERISA and securities law settlements).

Plaintiffs alleged that MFGI, the Moore Capital and Welsh Defendants and other persons engaged in unlawful or actionable conduct between June 1, 2006 and May 21, 2008, which allegedly continued to have artificial impact on prices of platinum and palladium futures after May 21, 2008.  This includes allegations that, between at least October 17, 2007 and June 6, 2008, certain of such persons combined, conspired, and agreed to manipulate the prices of NYMEX platinum futures contracts and NYMEX palladium futures contracts in violation of the Commodity Exchange Act ("CEA") and Sherman Act.  They allegedly did so by multiple steps. These include by allegedly repeatedly overpaying to purchase NYMEX platinum futures contracts and NYMEX palladium futures contracts during the end of the trading day.  The Plaintiffs contend that the foregoing conduct caused them and others similarly situated to pay artificial prices in order to purchase NYMEX platinum futures contracts and NYMEX palladium futures contracts during the Class Period from June 1, 2006 through April 29, 2010.

### B.    Procedural History of the Action

A detailed procedural history of the action, and the related SIPA liquidation and bankruptcy of defendant MFGI, is set forth in the McGrath Fairness Declaration filed concurrently herewith.  ¶¶9-54.

### III.    Argument

### A.    The Standard for Final Approval Of A Class Action Settlement

Class action claims may be settled only with district court approval "after a hearing and on finding that [the settlement] is fair, reasonable, and adequate."  *Compare* Fed. R. Civ. P. 23(e)(2) with *In re PaineWebber Ltd. P'ships Litig.,* 147 F.3d 132, 138 (2d Cir. 1998) (there is a

"strong judicial policy in favor of settlements, particularly in the class action context"). [7] Such a finding requires consideration of the "negotiating process leading up to the settlement, *i.e.*, procedural fairness, as well as the settlement's substantive terms, *i.e.*, substantive fairness." *D'Amato v. Deutsche Bank,* 236 F.3d 78, 85 (2d Cir. 2001).

**B.      The Settlement Is Fair, Reasonable And Adequate And Should Be Finally Approved**

**1.      The Settlement Is Procedurally Fair**

A "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal–Mart Stores, Inc. v. Visa U.S.A.,* 396 F.3d 96, 116 (2d Cir. 2005), *cert den*. 544 U.S. 1044 (2005); *In re Currency Conversion Fee Antitrust Litigation*, 263 F.R.D. 110, 122 (S.D.N.Y. 2009) (WHP); *In re Alloy, Inc. Securities Litig*., No. 03 Civ.1597 (WHP), 2004 WL 2750089 (S.D.N.Y. Dec. 2, 2004) (final approval where class settlement was made in good faith and at arms-length and defendant was in "dubious financial condition" ).

The Court previously found that the Moore Capital Settlement was entitled to a "presumption of reasonableness" because it was reached in arm's-length negotiations between

---

[7] Settlement of a class action is favored by the Courts.  *Compare* Fed. R. Civ. P. 23(e) (settlements in class actions require "…the court's approval") *with In re Warner Chilcott supra,* 2008 WL 5110904 at *1 ("[t]he settlement of complex class action litigation is favored by the Courts") citing *Wal-Mart Stores, Inc., supra at* 116 ; *In re Paine Webber Ltd. P'ships Litig., supra at*  138; *In re Advanced Battery Tech., Inc. Sec. Litig.*, 298 F.R.D 171, 174 (S.D.N.Y. 2014)("the law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigor of prolonged litigation"). *See also Newberg on Class Actions*, §11.41 (4th ed.) ("[t]he compromise of complex litigation is encouraged by courts and favored by public policy") and *Newberg on Class Actions*, §13.44 (5th ed.) ("The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding lengthy trials and appeals. Settlement is generally favored because it represents a compromise reached between the parties to the suit and relieves them, as well as the judicial system, of the costs and burdens of further litigation").

experienced, capable counsel after meaningful discovery. *In re Platinum & Palladium Commodities Litig.*, *supra*, 2014 WL 3500655, at *11. A similar finding is warranted for the MF Global Settlement. See Dkt. 245.

Based on the successful efforts of counsel, the settling parties already have obtained orders from the  Bankruptcy Court (i) approving the Claim Stipulation, attached as Exhibit A to the Settlement Agreement, and granting the Class  an allowed general unsecured claim in the amount of $18,753,571.43 [ECF No. 8442], and (ii) approving the Automatic Stay Stipulation, attached as Exhibit B to the Settlement Agreement which provided a limited modification to the automatic stay to allow the Insurer to pay $4,672,500  into the two escrow accounts as required under the Settlement Agreement [ECF No. 8443]. Further, as noted above, pursuant to the November 14, 2014 Scheduling Order [Dkt. No. 245] the Insurer already paid these monies into escrow. Dkt. No. 249. MFGH also has paid $800,000 into escrow related to the Welsh Futures Assignment Agreement.[8] *See* Dkt. No. 248, p. 2.

### a.    The Settlement Was Negotiated At Arm's-Length by Experienced Capable Counsel

The hard fought negotiations over almost twenty two months that produced the Settlement here were strictly at arm's- length and free of collusion and involved two mediators. McGrath Fairness Decl. ¶¶102-105.[9] The parties to the Settlement have been represented by

---

[8] MFGI and MFGH also requested that the automatic stay be lifted by the Bankruptcy Court to authorize the D&O carrier, U.S. Specialty, to make any payment to MFGH provided for in the Welsh D&O Settlement between U.S. Specialty and MFGH as MFGH seeks to resolve, in conjunction with this Settlement, all claims relating to defendant Welsh and the Relevant Insurers, including those under Plaintiffs' Welsh Futures Assignment Agreement with MFGH. Dkt. 230-1, Ex. C.

[9] The parties' negotiations involved two mediation sessions before The Honorable Daniel Weinstein (Ret.), scores of meetings and/or telephone conferences and hundreds of e-mails. Class Counsel also consulted with at least three independent bankruptcy counsel, insurance counsel and a second Mediator, Professor Francis McGovern, consulted by Lovell Stewart

experienced counsel.  *Id*. ¶¶106-107.  Lovell Stewart has more than thirty years experience

prosecuting commodity futures manipulation and antitrust class actions.  *See* Lovell Stewart

Firm Website, http://www.lshllp.com/practice-areas/commodity-manipulation.  Lovell Stewart

has obtained, as court appointed sole lead counsel, the **first**, **second,** and **third** largest class

action recoveries in the history of the CEA.  *Id.*

Based on their considerable prior experience in complex class actions litigation

involving CEA and antitrust claims, their knowledge of the strengths and weaknesses of the

Plaintiffs' claims and their assessment of the Class's likely recovery following trial and appeal

against a bankrupt defendant in a SIPA liquidation, Class Counsel concluded that the

Settlement is fair, reasonable and adequate and in the best interests of the Class. *Maley v. Del*

*Global Technologies*, 186 F.Supp.2d 385, 366 (S.D.N.Y. 2002) citing *In re Painewebber Ltd.*

*Partnerships. Litig.,* 171 F.R.D. 104, 124 (S.D.N.Y.1997), *aff'd,* 117 F.3d 721 (2d Cir. 1997)

---

involving various issues relating to the litigation and the Settlement.  *See  In re Sturm, Ruger &*
*Co., Inc. Securities Litig.*, 2012 WL 3589610, * 4 (D. Conn. Aug. 20, 2012) (citing on motion for
final approval of settlement that, "the settlement was reached by experienced, fully-informed
counsel after arm's-length negotiations with the assistance of a mediator and therefore the parties
are entitled to a presumption that the settlement was fair, reasonable and adequate.); *In re*
*Wachovia Equity Sec. Litig*, 2012 U.S. Dist. LEXIS 97910, at *9 (S.D.N.Y. June 12, 2012)
(noting the procedural fairness of settlement mediated by Judge Weinstein); *In re Giant*
*Interactive Grp ., Inc. Sec. Litig.,* No. 07 Civ. 10588, 2011 WL 5244707, at *4 (S.D.N.Y. Nov. 2,
2011) (parties were entitled to a presumption of fairness where mediator facilitated arm's-length
negotiations) [emphasis supplied]; *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 2010 U.S. Dist.
LEXIS 119702, at *40 (S.D.N.Y. Nov. 8, 2010) (McMahon, J.) (holding "presumption in favor
of the negotiated settlement in this case is strengthened by the fact that settlement was reached in
an extended mediation supervised by Judge Weinstein"); *In re Initial Pub. Offering Sec.*
*Litig.,* 226 F.R.D. 186, 194 (S.D.N.Y. 2005) (finding the use of an experienced mediator
supports fairness); *In re AOL Time Warner, Inc. Sec. Litig.,* No. 02 Civ. 5575, 2006 WL 903236,
at *6 (S.D.N.Y. Apr. 6, 2006) (noting that involvement of mediator in pre-certification
settlement negotiations helped "ensure that the proceedings were free of collusion and undue
pressure"). *See also Silverman v. Motorola, Inc.*, 2012 U.S. Dist. LEXIS 63477, at *12 (N.D. Ill.
May 7, 2012), *aff'd sub nom. Silverman v. Motorola Solutions, Inc.*, 739 F.3d 956 (7th Cir. 2013)
(approving settlement and describing Judge Weinstein as "a nationally-recognized and highly-
respected mediator").

("great weight" is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation).

The other parties to the MF Global Settlement were also represented by experienced and well-respected counsel from Hughes Hubbard. *See* McGrath Fairness Decl. ¶¶106-107.

### 2.     The Proposed Settlement Is Substantively Fair

Courts determine whether a proposed settlement is substantively fair by comparing "the terms of the compromise with the *likely* rewards of litigation." *Mavwalt v. Parker & Parsley Petroleum Co.,* 67 F.3d 1072, 1079 (2d Cir. 1995) (emphasis supplied).  In making the determination, the settlement agreement must be considered as a whole. *Id.* at 1079.  Courts in the Second Circuit typically consider the following "*Grinnell*" factors at the final approval stage:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.,* 209 F.3d 43 (2d Cir. 2000) (internal citations omitted). "[N]ot every [*Grinnell*] factor must weigh in favor of settlement, rather the court should consider the totality of these factors in light of the particular circumstances." *In re Global Crossing Sec. and ERISA Litig.,* 225 F.R.D. 436, 456 (S.D.N.Y.2004) (internal quotation marks and citation omitted).

<u>**Factor 1**</u>: **The Complexity, Expense And Likely Duration Of The Litigation.**  There is a consensus that claims for manipulation in violation of the CEA are complex and difficult to

prove.  *See* Moore Fairness Br., p. 3.  The bankruptcy proceedings here added to the degree of

complexity. In the foregoing context, the uncertainty, risk, expense and prospective time

involved in this CEA manipulation case is much greater than in the other types of cases.

In the absence of this Settlement, the litigation of this complex case would likely have

consumed many more years of Court resources.  *Strougo v. Bassini*, 258 F.Supp.2d 254, 261

(S.D.N.Y. 2003) ("[t]he potential for this litigation to result in great expense and to continue for

a long time suggest that settlement is in the best interests of the Class").  The Settlement allows

the parties and the Court system to avoid the significant expenses of continued litigation in the

district and bankruptcy courts.  The costs of experts, the costs of preparing the voluminous pre-

trial order, the costs of summary judgment motion practice as well as trial and appeals would

have been substantial. [10] Further, appeals of any summary judgment decision or final judgment

(which, given the size and nature of the Plaintiffs' claims were almost guaranteed) all but

ensured that this litigation would have dragged on without resolution or relief for many years in

the absence of settlement.

The proposed Settlement eliminates the foregoing complexities, substantial expenses, the

potential for additional years of continued litigation and provides a prompt recovery to the Class.

*Compare In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 210 (S.D.N.Y.1995) ("it

may be preferable to take the bird in the hand instead of the prospective flock in the bush").

**Factor 2**: **The Reaction Of The Class To The Settlement.**  The Class reaction to the

Settlement has been overwhelmingly positive and supports final approval. To date, only four

requests to exclude have been received, a very small number compared to the hundreds of class

---

[10] This Court already found that "….it is clear that this litigation is complex and expensive." See
*In re Platinum and Palladium Commodities Litig., supra* at *12.

members. As of this filing, **no** objections have been received and counsel expects that if any timely objections arise, they will be addressed at the Fairness Hearing or resolved prior thereto.

**Factor 3:** **The Stage Of The Proceedings And Amount Of Discovery Completed.**

Extensive fact discovery and investigation were still before the proposed Settlement was reached.  McGrath Fairness Decl. ¶¶15-35; *see* Moore Fairness Br., pp. 11-12. Aside from reviewing over 250,000 pages of documents and 23 CFTC deposition transcripts, and thousands of emails and text messages, and phone conversations, Class Counsel also consulted with numerous experts to determine the risks in establishing the fact of and amount of impact caused by the manipulation and exchanged expert analyses with the Mediator and defendants. Class Counsel further consulted with insurance counsel and bankruptcy counsel and reviewed numerous filings in the MF Global related bankruptcies and liquidation proceedings.

At the time of Settlement, Class Counsel was well informed of the factual landscape of the action, of MF Global's positions, of the Court's findings on the earlier motion to dismiss, of the bankruptcy litigation, of the insurance coverage issues and the prospective risks, arguments, rewards, rejoinders and other issues faced with continued prosecution of the claims.  McGrath Fairness Decl. ¶117-119.

**Factors 4, 5 and 6:** **The Risks Of Establishing Liability, Damages And Maintaining The Class Action Through Trial.**  As this Court has recognized, "the complexity of Plaintiffs' claims *ipso facto* creates uncertainty."  *Currency Conversion*, 263 F.R.D.at 123. Continuing this complex litigation against the Trustee would entail a lengthy and highly expensive legal battle involving complex legal and factual issues.  Establishing damages would have required significant expert testimony.

As successor in interest to MFGI, the Trustee, on behalf of MFGI in liquidation, has significant defenses which created real risk that the Plaintiffs would not establish liability for a significant period. The Trustee has consistently and vigorously denied any liability whatsoever by MFGI or the Estate to the Class and further argued that treble damages would be unavailable to Plaintiffs in connection with their Proof of Claim in the SIPA proceedings.  In fact, the Trustee, in anticipation of the settlement, successfully moved to reclassify the treble damages portion of the Plaintiffs' Proof of Claim in the Bankruptcy Court. Although Plaintiffs did not oppose such motion for purposes of settlement and because the Trustee agreed he was not seeking a specific ruling on the merits with respect to recovery of treble damages in Bankruptcy Court, the Bankruptcy Court's order allowing such reclassification still could have an adverse affect on Plaintiffs efforts to recover treble damages against MFGI if the Settlement Agreement is not finally approved.

Further, absent the Settlement, and the Trustee's agreement to seek Court approval of an Allowed Claim of $18,753,571.43, the Trustee had argued that he would oppose class certification in the SIPA Proceeding, object to any claims by class members (except those of the Lead Plaintiffs) as time barred, and otherwise seek disallowance of the Plaintiffs' claims. The Trustee further argued that the Insurers were denying coverage under the D&O and E&O insurance policies.

Thus, absent a settlement, the Trustee would continue to vigorously defend against and deny all of Plaintiffs' claims and alleged damages. In the Settlement Agreement, the Trustee continues to deny that MFGI engaged in any unlawful conduct, and that any member of the Class suffered compensable damages.

13

Neither the Bankruptcy Court nor the District Court (so far) has ever rendered a final ruling on whether the Plaintiffs have alleged valid claims nor have the Courts (so far) considered all the other matters that the Plaintiffs would have to establish in order to prove those claims at a trial on behalf of any class and establish damages..[11]

Further risks for Plaintiffs include class certification and interlocutory appeal thereof, summary judgment and *Daubert* and other *in limine* motions.  Also, Plaintiffs would face the risk of a trial and, to the extent successful at trial, of post-trial motions and then appeal. That assumes that the Bankruptcy Court even would lift the automatic stay to permit Plaintiffs to have a trial on liability issues vis a vis MFGI.

 Even if the Plaintiffs did establish liability for certain periods, there was a very real risk that they would not establish entitlement to damages of more than a minuscule fraction of what Plaintiffs asserted.

**Factor 7:** **The Ability Of The Settling Defendant To Withstand A Greater Judgment.**  In light of MFGI's liquidation, the risk of any recovery following protracted and continuing litigation was substantial.  The Plaintiffs believe that the MFGI Estate possibly could withstand a judgment greater than the amount of the Allowed Claim. However, such greater amount is not concrete, given the fact that the MF Global bankruptcy and SIPA liquidation proceedings are continuing and the risk that ultimately the Plaintiffs Claim would be objected to

---

[11] On Moore Defendants' motion to dismiss the Second Amended Complaint, the Court, at oral argument, stated that "I don't think any Court wants to be second guessing trading activity after the fact.  But, the argument that you are making may be very persuasive on summary judgment. But this is a motion to dismiss."   Transcript of Oral Argument dated February 4, 2011, p. 20, lines 5-8. The same defenses and arguments raised by the Moore Defendants and Welsh to the CEA claims in this action, and concerning liability and damages also could be asserted by the Trustee who vigorously disputed Plaintiff's methodology for estimating damages.. *See eg*. Dkt. Nos. 57, 107, and 162 at p.13 (Moore Capital defendants arguing damages were at most  $6.5 million for the entire Class period).

and any recovery on an allowed claim against the MFGI Estate would be limited and less than one hundred percent of the face value.[12]

      After reviewing the financial documentation and reports from public filings, including those provided from the Trustee, and after consulting with several different bankruptcy attorneys about the matter, the fact that the Trustee might pay more does not indicate that the Settlement is not fair, reasonable or adequate. *Cf. Global Crossing*, 255 F.R.D. at 460 ("[T]he fact that a defendant is able to pay more than it offers in settlement does not, standing alone, indicate that the settlement is unreasonable or inadequate") *with* 225 F.R.D. at 456 ("not every factor must weigh in favor of settlement, rather the court should consider the totality of these factors in light of the particular circumstances").

      **<u>Factors 8 and 9</u>: The Range Of Reasonableness Of The Settlement Fund In Light Of The Best Possible Recovery And All The Attendant Risks Of Litigation.**  "In any case there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and concomitant risks and costs necessarily inherent in taking any litigation to completion."  *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972).  The intricacies of what can and cannot be proved based on the law today are pertinent to both the "likely" recovery standard under *Maywalt,* 67 F.3d at 1079, and the "best possible" recovery standard under G*rinnell*. Further, an apples to apples comparison of this class action settlement to the "best possible" recovery following trial, typically should consider not only nominal damages but the amount of damages to the class members who file a claim seeking to

_____

[12] Moreover, the bankruptcy of various MF Global entities and the SIPA liquidation of MFGI, further complicated and imposed hurdles  to a substantial recovery or *any* recovery  by plaintiffs against MFGI, even upon filing a Proof of Claim on behalf of Plaintiffs and the Class in the liquidation/bankruptcy. Although Plaintiffs and the Class asserted one of the largest unsecured general creditor claims against the MFGI Estate, there were no guarantees of any recovery to them in the SIPA proceedings in Bankruptcy Court.

share in the proceeds of any trial judgment. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 479-81 (1980). Here, because years more time would pass between the time of the wrongdoing (2006-2008) and the time of any trial judgment herein, it is very likely that fewer Class members would be in a position to claim after an eventual trial and appeals than are able to do so today.

Plaintiffs reasonably estimate that they would have been able to prove a claim for nominal damages of more than $400,000,000 at trial. The estimate consideration from the MF Global Settlement of $19,500,000-$21,500,000 is 5% of that. *Securities Class Action Settlements, 2011 Review and Analysis*, Cornerstone Research, p. 7 (average settlement recovery for class action settlements during the years 1996 through 2010 involving estimated damages between $250 million and $499 million was only **2.5 cents on the dollar**) *available at* http://securities.stanford. edu/Settlements/ REVIEW_1995 2011/Settlements _Through_12_2011.pdf; *City of Detroit v. Grinnell Corp.*, 495 F.2d at 455 & n. 2 (in theory, even a recovery of only a fraction of one percent of the overall damages could be a reasonable and fair settlement.)

Together, the foregoing factors clearly show that the proposed Settlement is procedurally and substantively fair, reasonable and adequate.

## <u>CONCLUSION</u>

For the reasons stated above, Plaintiffs respectfully request that the Court grant final approval of the MF Global Settlement, approve the Plan of Allocation, finally certify the Class, and enter the form of judgment attached hereto as A.

Dated: New York, New York

January 15, 2015

Respectfully submitted,

16

_/s/ Christopher Lovell_
Christopher Lovell
Jody Krisiloff
**LOVELL STEWART HALEBIAN JACOBSON LLP**
61 Broadway, Suite 501,
New York, New York 10006
Telephone: (212) 608-1900
Facsimile:  (212) 719-4775
**_Counsel for Futures Plaintiffs and the Futures
Class_**