UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| *In Re: Platinum And Palladium Commodities Litigation*<br><br>This Document Relates To:<br><br>Platinum/Palladium Futures Action | MASTER FILE<br>No. 10 Civ. 3617 (WHP) |

## DECLARATION OF VINCENT BRIGANTI
## IN SUPPORT OF LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

I, Vincent Briganti, pursuant to 28 U.S.C. §1746, hereby declare as follows:

1. I am a shareholder with the law firm of Lowey Dannenberg Cohen & Hart, P.C. ("Lowey Dannenberg").

2. The statements herein are true to the best of my personal knowledge, information and belief based on the books and records of Lowey Dannenberg and information received from Lowey Dannenberg attorneys and staff.

3. I respectfully submit this declaration in support of Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Expenses In Connection with The Futures Plaintiffs' Settlement with (a) the Moore Capital Defendants and Defendant Welsh; and (b) James W. Giddens, as Trustee for the Liquidation of Defendant MF Global, Inc.

4. At all times relevant hereto, Lowey Dannenberg served as counsel for Plaintiff and proposed class representative Richard White ("Plaintiff White"). Lowey Dannenberg worked efficiently under the guidance and at the direction of Lovell Stewart Halebian Jacobson LLP ("Lovell Stewart"), lead counsel for the putative class in the Futures Action. *See* Dkt. No. 18. During the course of this litigation, and as detailed herein, Lowey Dannenberg worked on assignments that it was specifically directed to perform by Lovell Stewart and that were necessary to represent Plaintiff White's interests and to keep Plaintiff White fully informed about the litigation. Lowey Dannenberg's compensation for services rendered in this case was wholly contingent on the success of this litigation, and was totally at risk.

5. Set forth below are Lowey Dannenberg's legal services rendered in this case, the lodestar value of those services and the expenses reasonably incurred by the firm in connection with this litigation for which reimbursement is requested.

6.  Among the services Lowey Dannenberg performed on behalf of proposed class representative Plaintiff White and the putative class in connection with the prosecution of this litigation include, but is not limited to, the following:

  a.  <u>Pre-Complaint Investigation and the Filing of an Initial Complaint</u>. Prior to the filing of an initial complaint on behalf of Plaintiff White and the putative class on May 3, 2010 (*see White v. Moore Capital Management, LP et al.*, 10-cv-03634 (S.D.N.Y.), Lowey Dannenberg performed a comprehensive investigation into alleged violations of the Commodity Exchange Act by the Moore Capital Defendants. The pre-complaint investigatory tasks performed by Lowey Dannenberg included: (i) a review and analysis of the U.S. Commodity Futures Trading Commissions' ("CFTC") April 29, 2010 Order Instituting Proceedings Pursuant to Section 6(c), 6(d), and 8a of the Commodity Exchange Act and Making Findings and Imposing Remedial Sanctions against Moore Capital Management, LP, Moore Capital Advisors, LLC, and Moore Advisors, Ltd. (*In the Matter of: Moore Capital Management, LP, Moore Capital Advisors, LLC and Moore Advisors, Ltd.*, CFTC Docket No. 10-09); (ii) an analysis of Plaintiff White's trading records to determine the impact of the Moore Capital Defendant's manipulation on Plaintiff White's futures contract positions; (iii) consultations with New York Mercantile Exchange ("NYMEX") platinum and palladium futures traders, including floor traders, to discuss facts and circumstances surrounding Moore Capital's alleged "banging the close" trades to determine the impact of the manipulation; (iv) consultations with economic experts to discuss the historical pricing of NYMEX platinum and palladium futures contracts; and (v) performing legal and factual research regarding alleged violations of law by the Moore Capital Defendants.

  b.  <u>Work Relating to Amended and Consolidated Complaints</u>. At Lead Counsel's direction, Lowey Dannenberg also consulted and worked with Lovell Stewart in drafting Plaintiffs' consolidated and amended complaints.

  c.  <u>Defendant Related Discovery</u>. Lowey Dannenberg actively participated, at the request and direction of Lovell Stewart, in the FED. R. CIV. P. 26(f) conference with Defendants. Lowey Dannenberg also drafted and edited the parties' FED. R. CIV. P. 26(f) report, Protective Order, and Electronically Stored Information Stipulation. In addition, my firm drafted and propounded document requests on Defendants on behalf of the putative class. Further, Lowey Dannenberg assisted in drafting Plaintiffs' Rule 26(a) initial disclosures and provided legal research regarding the scope of initial disclosures pursuant to FED. R. CIV. P. 26(a)(1).

  d.  <u>Plaintiff Related Discovery</u>. Lowey Dannenberg conferred on numerous occasions with Plaintiff White to understand and discuss: (i) his transactions in NYMEX platinum and palladium futures contracts; (ii) the location and availability of his NYMEX platinum and palladium futures contract trading records; and (iii) what sources of market information Plaintiff White utilized when he traded in the NYMEX platinum and palladium futures contract market. My firm also reviewed and analyzed Plaintiff White's monthly and daily commodity account statements, account agreements, and other relevant documents in his possession, custody and control and made them available for production to Defendants. Also, at the request and direction of Lead Counsel, my firm assisted in drafting Mr. White's responses and objections to Defendants' document demands and assisted in drafting responses and

objections to subpoena served on Wells Fargo, the financial institution where Mr. White maintained his commodity brokerage account, by the Moore Capital Defendants.

    e. Third Party Related Discovery. Lowey Dannenberg drafted and served Freedom of Information Act ("FOIA") requests and subpoenas on the CFTC, requesting information related to the CFTC's investigation of Moore Capital. My firm also briefed an appeal of the CFTC's FOIA decision. My firm also drafted and served a third-party subpoena on NYMEX, which resulted in the production by NYMEX of responsive documents, including the "Streebook," the electronic record reflecting the details of each and every trade in platinum and palladium futures contracts.

    f. Representation of Plaintiff White. In addition to effort spent on Plaintiff White's document production, Lowey Dannenberg continually conferred with Plaintiff White throughout the course of the litigation with respect to all motions and briefs submitted on his behalf and on behalf of the Class and kept Plaintiff White fully apprised of significant developments in the case, including, but not limited to, decisions on Defendants' motions to dismiss, the status of settlement negotiations with Defendants, and the terms of the final settlement reached with Defendants in this case.

    g. Motion Practice Relating to Defendants' Motions to Dismiss and Request for a Stay of Discovery. Lowey Dannenberg conducted legal research and drafted various sections of legal memoranda submitted: (i) in opposition to Defendants' motions to dismiss; and (ii) in successful opposition to Defendants' motion to stay discovery. *See In re Platinum & Palladium Commodities Litigation*, Dkt. No. 59 (Nov. 30, 2010) (ordering Defendants to produce to Plaintiffs approximately 250,000 pages of documents that Defendants previously produced to the CFTC).

    h. Expert Related Work. Lowey Dannenberg retained and worked with a NYMEX trading expert concerning the historical settlement pricing of NYMEX platinum and palladium futures contracts, the price performance of NYMEX platinum and palladium futures around the time of market close, and the level of price artificiality attributable to Defendants' alleged manipulation of NYMEX platinum and palladium futures contracts.

    i. Work as Allocation Counsel. At Lead Counsel's direction, Lowey Dannenberg worked as allocation counsel responsible for reviewing the proposed plan of allocation for the Moore Capital Settlement and the impact of the plan of allocation on a subset of class members.

  7. The schedule in ¶8 below is a summary reflecting the amount of time spent by the attorneys and professional support staff of Lowey Dannenberg involved in this litigation. The schedule was prepared based upon daily time records maintained by Lowey Dannenberg.

  8. From the inception of this action in April 2010 to the present, Lowey Dannenberg's total fee compensable time for which it seeks an award of attorneys' fees is summarized below.

| Attorneys[1] | Rates | Hours | Charges |
|---|---|---|---|
| Vincent Briganti (S) | $775 | 521.00 | $403,775.00 |
| Geoffrey M. Horn (S) | $775 | 342.80 | $265,670.00 |
| Scott Papp (A) | $550 | 35.20 | $19,360.00 |
| Deborah Rogozinski (A) | $550 | 89.40 | $49,170.00 |
| Sung-Min Lee (A) | $475 | 23.50 | $11,162.50 |
| Todd Garber (A) | $450 | 55.00 | 24,750.00 |
| | | | |
| **Paralegal** | | | |
| Katherine Vogel | $275 | 24.60 | $6,765.00 |
| | | | |
| **TOTALS** | | **1,091.50** | **$780,652.50** |

9.   Thus, the total time for which Lowey Dannenberg is requesting an award of legal fees is **1,091.50** hours. The total lodestar value of these professional services is **$780,652.50**.

10.   The above hourly rates for Lowey Dannenberg's attorneys and professional support staff are the firm's current hourly rates. Lowey Dannenberg's lodestar figures do not include charges for expense items. Expense items are billed separately and such charges are not duplicated in Lowey Dannenberg's current billing rates.

11.   As detailed and categorized in the below schedule, Lowey Dannenberg has incurred a total of **$43,167.75** in expenses for which it is currently requesting reimbursement.

| Expense Categories | Cumulative Expenses |
|---|---|
| Airfare, Lodging, Meals, Taxi | $ 102.08 |
| Computer Research, Databases & Docket | 5,113.26 |
| Court Reporter | 93.60 |
| Database (including NYMEX trading data) | 9,411.00 |
| Fares and Messengers | 38.50 |
| Federal Express and UPS | 175.67 |
| Filing Fees | 700.00 |
| In-House Copying | 1,232.00 |
| Meals and Conferences | 198.36 |
| Postage and Mailing | 6.08 |
| Professional Consulting Fees and Services | 25,972.27 |

---

[1] "S" refers to Shareholders and "A" refers to Associates of the Firm. The hourly rates for the shareholders, associate attorneys and professional support staff in my firm included in ¶8 hereto are the same rates charged for their services in non-contingent matters and/or which have been accepted and approved in other complex class action litigation. *See, e.g., In re London Silver Fixing, Ltd., Antitrust Litigation*, Case No. 1:14-cv-05682-VEC (S.D.N.Y.), Dkt. No. 43 (November 25, 2014 Order appointing Lowey Dannenberg as co-lead counsel in silver fixing class action finding that Lowey Dannenberg's "hourly rates of the proposed attorneys generally reasonable.").

| | |
|---|---:|
| Service Fees | 80.00 |
| Telephone/Telecopier | 44.93 |
| **TOTAL** | $43,167.75 |

12. The above schedule was prepared based upon expense records reflected in the books and records of Lowey Dannenberg. These books and records are prepared from expense vouchers, check records, receipts and other source materials.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 14, 2015

_____
Vincent Briganti