**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| *In Re: Platinum And Palladium Commodities Litigation*<br><br>This Document Relates To:<br><br> Platinum/Palladium Physical Class | Master File No. 10 Civ. 3617 (WHP)<br><br><br>Physical Plaintiffs' Memorandum Of Law In Support Of Lead Counsel's Motion For An Award of Attorneys Fees and Reimbursement Of Expenses |

TABLE OF CONTENTS

I.   Introduction ............................................................................................................. 1

II.  Statement of Facts ................................................................................................... 2

III. Argument ................................................................................................................. 2

   A. Physical Lead Counsel Is Entitled to an Award of Attorneys' Fees from the Common
      Fund ................................................................................................................... 3

   B. The Court Should Award a Reasonable Percentage of the Common Fund to Physical Lead
      Counsel ............................................................................................................. 3

   C. The Requested Fee Is Fair and Reasonable and Aligns with Fee Awards in Comparable
      Cases ................................................................................................................. 5

   D. The six Goldberger factors support the requested fee award ............................................. 6

      1. Physical Lead Counsel Devoted Substantial Time and Labor Investigating and Pursuing
         the Physical Class's Claims ............................................................................. 6

      2. The Physical Action Involves Unique and Highly Complex Issues of Law and Fact ..... 9

      3. Physical Lead Counsel Faced the Very Real Risk of Never Being Compensated for
         Their Efforts on the Physical Class's Behalf ................................................. 14

      4. Physical Lead Counsel Provided High Quality Representation to the Physical Class .. 17

      5. The Requested Fee Is Reasonable in Relation to the Settlements ................................. 18

      6. Public policy considerations ......................................................................... 19

   E. The lodestar multiplier counsel requests is fair and reasonable, and the cross-check
      supports approval of the requested fees ........................................................................... 20

   F. The requested reimbursement of expenses is reasonable and should be approved .......... 22

IV. Conclusion ............................................................................................................. 23

TABLE OF AUTHORITIES

**Cases**

*Blum v. Stenson,*
    465 U.S. 886 (1984) ................................................................................. 4

*Boeing Co. v. Van Gemert,*
    444 U.S. 472 (1980) ............................................................................. 3, 4

*Cange v. Stotler & Co.,*
    826 F.2d 581 (7th Cir. 1987) ................................................................ 19

*City of Detroit v. Grinnell Corp.,*
    495 F.2d 448 (2d Cir. 1974) ........................................................... 14, 17

*City of Providence v. Aeropostale, Inc.,*
    2014 U.S. Dist. LEXIS 64517 (S.D.N.Y. May 9, 2014) .................. 3, 4, 5, 21

*Comcast Corp. v. Behrend,*
    133 S. Ct. 1426 (2013) .......................................................................... 11

*Fogarazzo v. Lehman Bros. Inc.,*
    2011 U.S. Dist. LEXIS 17747 (S.D.N.Y. Feb. 23, 2011) ................. 5, 23

*FTC v. Actavis, Inc.,*
    133 S. Ct. 2223 (2013) .......................................................................... 13

*Goldberger v. Integrated Res.,*
    209 F.3d 43 (2d Cir. 2000) ............................................................. passim

*Gross v. Waywell,*
    628 F. Supp. 2d 475 (S.D.N.Y. 2009) ............................................ 13, 15

*In re Adler, Coleman Clearing Corp.,*
    270 B.R. 562 (Bankr. S.D.N.Y. 2001) .................................................. 12

*In re Apac Teleservs., Inc. Sec. Litig.,*
    No. 97 Civ. 9145, slip op. at 2 (S.D.N.Y. June 29, 2001) ..................... 5

*In re Beacon Assocs. Litig.,*
    2013 U.S. Dist. LEXIS 82192 (S.D.N.Y. May 9, 2013) ...................... 4, 5

*In re China Sunergy Sec. Litig.,*
    2011 U.S. Dist. LEXIS 53007 (S.D.N.Y. May 13, 2011) ...................... 18

*In re Crazy Eddie Sec. Litig.*,

  824 F. Supp. 320 (E.D.N.Y. 1993) ............................................................... 6

*In re Currency Conversion Fee Antitrust Litig.*,

  2006 U.S. Dist. LEXIS 81440 (S.D.N.Y. Nov. 8, 2006) ............................. 9, 13

*In re EVCI Career Colleges Holding Corp. Sec. Litig.*,

  2007 U.S. Dist. LEXIS 57918 (S.D.N.Y. July 27, 2007) ............................... 22

*In re Giant Interactive Grp., Inc. Sec. Litig.*,

  279 F.R.D. 151 (S.D.N.Y. 2001) ................................................................... 5

*In re Initial Public Offering Sec. Litig.*,

  671 F. Supp. 2d 467 (S.D.N.Y. 2009) ............................... 5, 18, 20, 23

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,

  2009 U.S. Dist. LEXIS 120953 (S.D.N.Y. Dec. 23, 2009) ............................ 4

*In re Medical X-Ray Film Antitrust Litig.*,

  1998 U.S. Dist. LEXIS 14888 (E.D.N.Y. Aug. 7, 1998) ............................... 6

*In re Merrill Lynch Tyco Research Sec. Litig.*,

  249 F.R.D. 124 (S.D.N.Y. 2008) ............................................................. 12, 17

*In re NASDAQ Market-Makers Antitrust Litig.*,

  187 F.R.D. 465 (S.D.N.Y. 1998) ................................................................. 16

*In re Nortel Networks Corp. Sec. Litig.*,

  539 F.3d 129 (2d Cir. 2008) ...................................................................... 22

*In re PaineWebber Ltd. P'ships Litig.*,

  171 F.R.D. 104 (S.D.N.Y. 1997) .............................................................. 11, 12

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,

  986 F. Supp. 2d 207 (E.D.N.Y. 2013) ......................................................... 16

*In re Philip Servs. Corp. Sec. Litig.*,

  2007 U.S. Dist. LEXIS 101427 (S.D.N.Y. Mar. 28, 2007) ............................ 4

*In re Platinum & Pall. Comm. Litig.*,

  2014 U.S. Dist. LEXIS 96457 (S.D.N.Y. July 15, 2014) ......................... passim

*In re Platinum & Pall. Comm. Litig.*,

  828 F. Supp. 2d 588 (S.D.N.Y. 2011) ......................................................... 7, 12

*In re Prudential Sec., Inc. Ltd. P'ships Litig.*,

912 F. Supp. 97 (S.D.N.Y. 1996) ................................................................. 5, 21

*In re Sumitomo Copper Litig.*,

74 F. Supp. 2d 393 (S.D.N.Y. 1999) ................................... 9, 12, 14, 20

*In re Telik, Inc. Sec. Litig.*,

576 F. Supp. 2d 570 (S.D.N.Y. 2008) ................................................. 22

*In re Veeco Instruments Inc. Sec. Litig.*,

2007 U.S. Dist. LEXIS 85554  (S.D.N.Y. Nov. 7, 2007) ...................... 3, 4

*Jones v. Amalgamated Warbasse Houses, Inc.*,

721 F.2d 881 (2d Cir. 1983) ................................................................. 21

*Luciano v. Olsten Corp.*,

109 F.3d 111 (2d Cir. 1997) ................................................................. 21

*Maywalt v. Parker & Parsley Petroleum Co.*,

963 F. Supp. 310 (S.D.N.Y. 1997) ......................................................... 6

*Miltland Raleigh-Durham v. Myers*,

840 F. Supp. 235 (S.D.N.Y. 1993) ....................................................... 22

*Minpeco, S.A. v. ContiCommodity Servs., Inc.*,

552 F. Supp. 332 (S.D.N.Y. 1982) ....................................................... 13

*Missouri v. Jenkins,*

491 U.S. 274 (1989) ............................................................................... 19

*Newman v. Caribiner Int'l Inc.*,

No. 99 Civ. 2271 (S.D.N.Y. Oct. 19, 2001) ........................................... 6

*RMED Int'l, Inc. v. Sloan's Supermarkets, Inc.*,

2003 U.S. Dist. LEXIS 8239 (S.D.N.Y. May 15, 2003) ......................... 6

*Rodriguez v. It's Just Lunch, Int'l,*

300 F.R.D. 125 (S.D.N.Y. 2014) .......................................................... 14

*Virgin Atl. Airways v. British Airways Plc.*,

257 F.3d 256 (2d Cir. 2001) ................................................................. 12

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,

396 F. 3d 96 (2d Cir. 2005) ...................................................... passim

**Statutes**

Fed. R. Civ. P. 23 ....................................................................................... 16

**Other Authorities**

H.R. Rep. No. 565, 97th Cong., 2d Sess., reprinted in 1982 U.S. Code Cong. & Admin. News

    3871, 3905-06 ...................................................................................................................... 19

Lead Counsel for Physical Plaintiffs, F.W. DeVito, Inc. Retirement Plan Trust, Frederick and Mary DeVito, David W. DeVito and Russell W. Andrews, submits this Memorandum and the accompanying Omnibus Declaration of John A. Lowther in Support of Final Approval of Physical Class Action Settlements and Support of Reimbursement of Attorneys' Fees and Expenses ("Lowther Omnibus Decl."), in support of Physical Lead Counsel's motion for an award of attorneys fees and reimbursement of expenses.[1]

## I.     Introduction

Physical Lead Counsel worked on a fully contingent basis litigating this matter for more than four years before reaching the Moore Capital and MF Global Settlements. During this time, Lead Counsel devoted significant time and resources to the protracted proceedings, working many hours in a vigorously contested matter against ably represented defendants, notwithstanding the significant uncertainty whether the case would be successful.

The contingent risk borne by Physical Lead Counsel in this case greatly exceeded the typical commodities manipulation case. Not only were Physical Plaintiffs confronted with the difficult task of proving a commodities manipulation case, but they also had to do so under the federal antitrust and RICO laws and certain New York common law theories. The Commodity Exchange Act, typically the primary claim used in commodities manipulation cases, was not available to Physical Plaintiffs. Many of Physical Plaintiffs' claims were untested when applied to the manipulation of physical metals vis-à-vis alleged manipulative trades in the futures market, and had never been approved by the Second Circuit or the New York Court of Appeals. Physical Lead Counsel also faced substantial obstacles in establishing the volume of manipulated

---

[1] Capitalized terms are used as defined in the Moore and MF Global Stipulation and Agreement of Settlement.

platinum and palladium bullion given these markets trade over-the-counter, having to prove not only manipulation of the platinum and palladium futures markets but also the impact of the alleged conduct on the physical "spot" market of the underlying commodity. Difficult and complex analyses concerning artificiality, dissipation in the market, and the proper measure of damages led the parties' experts to reach widely different damages calculations. There was a real danger the Physical Class's claims could have been dismissed, either in this Court, the bankruptcy court, or on appeal to the Second Circuit.

The Settlements were obtained through the determined efforts of Physical Lead Counsel, who achieved significant benefits for the Physical Class through hard-fought litigation, extensive discovery reviews and analyses, and protracted negotiations with defendants. The Settlements were reached after Physical Lead Counsel was satisfied the recovery and timing of the specific benefits for the Physical Class strongly favored resolution, when compared to the risks a class would not be certified and the uncertainty facing Plaintiffs through summary judgment, trial, and appeal.

## II.   Statement of Facts

The relevant facts supporting the motion are set forth in detail in the accompanying Lowther Omnibus Declaration and the memoranda of law submitted in support of Physical Plaintiffs' Motions for Final Approval of the Proposed Class Action Settlements filed concurrently herewith.

## III.   Argument

Physical Lead Counsel moves for an award of attorneys' fees and reimbursement of litigation expenses to be paid out of the Settlement Funds. The proposed Settlements recover $12.1 million for the Physical Class. Lowther Omnibus Decl. at ¶20. Physical Lead Counsel

2

seeks an award of attorneys' fees in the amount of 33.3% of the total common fund, or $4,029,300, which would represent a lodestar multiplier of 1.37. Lowther Omnibus Decl. at ¶143. Physical Lead Counsel also seeks reimbursement of $229,230.82 in litigation expenses actually incurred. No Physical Class Member has yet objected to this fee and expense request. Lowther Omnibus Decl. at Ex. C.

As set forth below, this request is reasonable considering the factors identified by the Second Circuit in *Goldberger v. Integrated Res.*, 209 F.3d 43, 50 (2d Cir. 2000) to determine the appropriateness of a fee award. The requested fee is consistent with fees awarded in similar actions in this Circuit, and the amount requested is warranted in light of the substantial recovery obtained for the Physical Class and the significant obstacles presented in prosecuting and settling the Physical Action.

**A.   Physical Lead Counsel Is Entitled to an Award of Attorneys' Fees from the Common Fund**

The Supreme Court has long recognized "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). "The purpose of the common fund doctrine is to fairly and adequately compensate class counsel for services rendered and to ensure that all class members contribute equally towards the costs associated with litigation pursued on their behalf." *City of Providence v. Aeropostale, Inc.*, 2014 U.S. Dist. LEXIS 64517, at *30 (S.D.N.Y. May 9, 2014) (citing *Goldberger*, 209 F.3d at 47; *In re Veeco Instruments Inc. Sec. Litig.*, 2007 U.S. Dist. LEXIS 85554, at *7 (S.D.N.Y. Nov. 7, 2007).

**B.   The Court Should Award a Reasonable Percentage of the Common Fund to Physical Lead Counsel**

A "lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing*, 444 U.S. at 478; *see also Goldberger,* 209 F.3d at 47 (the common fund doctrine "prevents unjust enrichment of those benefiting from a lawsuit without contributing to its cost"). In determining the amount of a common fund fee award, the Supreme Court and Second Circuit have consistently held it is appropriate for a fee to be determined as a percentage of the fund recovered. *See Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) ("under the 'common fund doctrine,' … a reasonable fee is based on a percentage of the fund bestowed on the class"); *Goldberger*, 209 F.3d at 47 ("the attorneys whose efforts created the [common] fund are entitled to a reasonable fee - set by the court - to be taken from the fund"); *In re Philip Servs. Corp. Sec. Litig.,* 2007 U.S. Dist. LEXIS 101427, at *10-11 (S.D.N.Y. Mar. 28, 2007) ("an attorney succeeds in creating a common fund from which members of a class are compensated for a common injury inflicted on the class… the attorney is entitled to the reasonable value of the services performed in creating that class recovery, as set by the court.").

Moreover, the "trend among district courts in the Second Circuit is to award fees using the percentage method." *City of Providence*, 2014 U.S. Dist. LEXIS 64517, at *32; *accord Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F. 3d 96, 122 (2d Cir. 2005).[2] The Court should examine the reasonableness of the fee request by using a percentage of the fund analysis based on the increasing dominance of this approach and its overall efficiency compared to the lodestar method. *See e.g.*, *In re Initial Public Offering Sec. Litig.*, 671 F. Supp. 2d 467, 505 (S.D.N.Y.

---

[2] *See also In re Beacon Assocs. Litig.*, 2013 U.S. Dist. LEXIS 82192, at *44 (S.D.N.Y. May 9, 2013); *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 2009 U.S. Dist. LEXIS 120953, at *43 (S.D.N.Y. Dec. 23, 2009); *In re Veeco Instruments Inc. Sec. Litig.*, 2007 U.S. Dist. LEXIS 85554, at *10 (S.D.N.Y. Nov. 7, 2007) (same).

2009) (adopting percentage of the fund method to award fees in common fund case); *Fogarazzo v. Lehman Bros. Inc.*, 2011 U.S. Dist. LEXIS 17747, at *12 (S.D.N.Y. Feb. 23, 2011) (same).

###   C.   The Requested Fee Is Fair and Reasonable and Aligns with Fee Awards in Comparable Cases

"What constitutes a reasonable fee is properly committed to the sound discretion of the district court…" *Goldberger,* 209 F.3d at 47. Here, Physical Lead Counsel seeks a fee award of 33.3% of the Settlement Funds. Lowther Omnibus Decl. at ¶143.

In the Second Circuit, "courts routinely award attorneys' fees that run to 30% and even a little more of the amount of the common fund." *Beacon*, 2013 U.S. Dist. LEXIS 82192, at *44. For antitrust and securities cases, courts in the Southern District of New York frequently approve fee awards of one-third of the common fund. *IPO*, 671 F. Supp. 2d at 516 (awarding one-third fee in a securities fraud case); *In re Prudential Sec., Inc. Ltd. P'ships Litig.*, 912 F. Supp. 97, 103 (S.D.N.Y. 1996) ("[m]any courts have approved and awarded fees in class actions of one-third of the settlement fund in recognition of the substantial services performed by counsel and the risks undertaken."); *see also City of Providence*, 2014 U.S. Dist. LEXIS 64517, at *60 (awarding 33% of $15 million settlement); *Fogarazzo,* 2011 U.S. Dist. LEXIS 17747 at *12 (awarding 33.3% of $6.75 million settlement); *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 165 (S.D.N.Y. 2001) (awarding 33% of $13 million settlement); *Maley*, 186 F. Supp. 2d at 367-68 (awarding 33.3% of $11.5 million settlement and citing two cases which awarded 33.3% of the settlement amount: *In re Apac Teleservs., Inc. Sec. Litig.*, No. 97 Civ. 9145, slip op. at 2 (S.D.N.Y. June 29, 2001), awarding 33.3% of $21 million settlement, and *Newman v. Caribiner*

*Int'l Inc.*, No. 99 Civ. 2271 (S.D.N.Y. Oct. 19, 2001), awarding 33.3% of $15 million settlement).[3]

Physical Lead Counsel's requested fee is fair and reasonable considering the substantial recovery obtained for the Physical Class in this high-risk, complex litigation.

**D.      The six *Goldberger* factors support the requested fee award**

The reasonableness of common fund fee awards is governed by the six *Goldberger* factors:

> (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation …; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.

*Goldberger*, 290 F.3d at 50. As shown below, these factors support the requested fee.

**1.      Physical Lead Counsel Devoted Substantial Time and Labor Investigating and Pursuing the Physical Class's Claims**

The first *Goldberger* factor for determining whether a fee is reasonable is "the time and labor expended by counsel." *Goldberger*, 290 F.3d at 50. Here, Physical Lead Counsel devoted 4,907.20 hours of professional time in successfully prosecuting the Physical Class's claims. Lowther Omnibus Decl. ¶ 128. Two other law firms worked on the Physical Action and spent a total of 358.3 hours in prosecuting this case. *See* Lowther Omnibus Decl. Exhibits H and I. These firms incurred the majority of their time prior to the Court's appointment of Physical Lead Counsel. Lowther Omnibus Decl. ¶ 140. This brings the total to 5,265.50 hours of professional

---

[3] *See also RMED Int'l, Inc. v. Sloan's Supermarkets, Inc.*, 2003 U.S. Dist. LEXIS 8239, at *6 (S.D.N.Y. May 15, 2003) (awarding 33.3% of common fund); *Maywalt v. Parker & Parsley Petroleum Co.*, 963 F. Supp. 310, 313 (S.D.N.Y. 1997) (awarding 33.4% of common fund), aff'd, 145 F.3d 513 (2d Cir. 1998); *In re Medical X-Ray Film Antitrust Litig.*, 1998 U.S. Dist. LEXIS 14888, at *23 (E.D.N.Y. Aug. 7, 1998) (awarding 33.3% of common fund); *In re Crazy Eddie Sec. Litig.*, 824 F. Supp. 320, 326 (E.D.N.Y. 1993) (awarding 33.8% of common fund).

services performed by counsel for the Physical Class. The total lodestar value of Physical counsel's time is $2,935,823.50. A summary of Physical counsel's hours and lodestars is set forth in the below table.

| Firm | Hours | Lodestar |
|------|-------|----------|
| Doyle Lowther LLP | 4,907.20 | $2,726,406 |
| Law Office of Christopher J. Gray, P.C. | 338.9 | $194,867.50 |
| Kieve Law Offices | 19.4 | $14,550 |
| **Total** | 5,265.50 | $2,935,823.50 |

Federal antitrust and RICO cases, like this one, are "complicated, lengthy, and bitterly fought." *See Wal-Mart Stores*, 396 F.3d at 118. Here, the Court did not permit Physical Lead Counsel to use the government consent decree as a basis to plead their case, but instead required counsel to independently develop the factual allegations and legal theories sufficient to survive heightened pleading standards. *In re Platinum & Pall. Comm. Litig.*, 828 F. Supp. 2d 588, 594 (S.D.N.Y. 2011) ("Plaintiffs are therefore prohibited from relying on the CFTC Order to plead the 'underlying facts of liability.'"). Physical Lead Counsel believes they accomplished this, but only with substantial labor.

Physical Lead Counsel expended an extraordinary amount of work to obtain the Settlements in this case. Among other things Physical Lead Counsel:

- engaged in extensive discovery and investigation, which led to uncovering the specific details of how the platinum and palladium bullion markets were manipulated and by whom, information counsel used to demonstrate the practices and conduct that caused Defendants to violate the federal antitrust and RICO laws and commit various common law torts;

- analyzed over 8.64 gigabytes of electronic data, comprising hundreds of thousands of pages of documents, analyzed and transcribed over 1,100 electronic audio files, including identifying the speakers and topics, and

studied thousands of instant messages produced in this case, not only to determine their meaning and impact on the market, but also to identify the actual communicants, who often used aliases in their communications and electronic instant messages;

- engaged in extensive third-party discovery, including issuing document subpoenas to the Commodities Futures Trading Commission, the New York Mercantile Exchange, Monex Deposit Co., Standard Bank, UBS Investment Bank, JP Morgan Chase Bank, J. Aron & Co., Goldman Sachs, JP Morgan Asset Management, J. Aron & Co., APMEX, HSBC USA Bank, Kitco Metals, Inc., Dillon Gage, Inc., Toledo Coin Exchange, Goldline International, and Northwest Territorial Mint;

- opposed both in papers and at oral argument Defendants' comprehensive motion to dismiss and motion to strike;

- fully briefed a second comprehensive motion to dismiss;

- worked extensively with multiple experts, including commodities damage modeling experts who ran various analyses for a baseline measure of artificiality, as well as experts on the platinum and palladium bullion or "spot" market to understand the scope of potential Physical Class damages;

- conducted significant legal research concerning pursuit, and ultimately resolution, of the asserted claims against bankrupt entity MF Global Inc. and the myriad related issues attendant to its liquidation proceeding, and the asserted underwriter and SIPA Trustee defenses; and

- engaged in prolonged and very contentious settlement discussions, which relied heavily on legal, factual, and expert analyses of all the previously identified matters, including voluminous expert responses by the defense, Physical Plaintiffs' reports and presentations to the mediator's independent economics expert, as well as four all-day mediation sessions with the Hon. Daniel H. Weinstein (Ret.) in New York City and Napa, California (on July 27, 2013, August 27, 2013 and June 4-5, 2014), none of which resulted in a settlement, numerous follow-on teleconferences, and exchanging dozens of iterations of settlement documents before reaching the current Settlement Agreements.

Lowther Omnibus Decl. ¶ 7. As confirmation of the combative and labor-intensive nature of this

litigation, the Moore Defendants' lead counsel described settlement negotiations in this case as

"the most drawn-out, painstaking, and arduous settlement negotiations I have been a party to in

my twenty-seven years as a litigator." *In re Platinum & Pall. Comm. Litig.*, 2014 U.S. Dist. LEXIS 96457, at *24-25 (S.D.N.Y. July 15, 2014).

Physical Lead Counsel respectfully submits the substantial amount of time and labor expended by counsel led to the excellent recovery achieved for the Physical Class.

### 2. The Physical Action Involves Unique and Highly Complex Issues of Law and Fact

The second *Goldberger* factor—the magnitude and complexity of the case—supports the requested fee award. *Goldberger*, 209 F.3d at 50. This "litigation is complex," *Platinum & Pall.,* 2014 U.S. Dist. LEXIS 96457, at *38, and the antitrust, RICO, and commodities fraud claims here involve a "complex factual record and novel issues of law." *See In re Currency Conversion Fee Antitrust Litig.*, 2006 U.S. Dist. LEXIS 81440, at *15 (S.D.N.Y. Nov. 8, 2006); *see also In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 395 (S.D.N.Y. 1999) (commodities manipulation cases are "complex and difficult"). Physical Plaintiffs and the Physical Class bought platinum and palladium bullion and charged defendants with manipulating the NYMEX trading price of platinum and palladium futures over at least two years. Not only did Physical Lead Counsel have to show defendants engaged in a manipulative scheme to inflate prices in platinum and palladium futures contracts, but also prove manipulation of platinum and palladium futures caused artificial price inflation in physical platinum and palladium bullion. *See* ECF No. 133 at 35-59; Lowther Omnibus Decl. ¶ 23.

Physical Plaintiffs allege defendants, from May 2006 until at least June 6, 2008, engaged in a manipulative scheme to inflate prices in platinum and palladium futures contracts traded on NYMEX, which in turn caused artificial price inflation in physical platinum and palladium bullion over the course of the Class Period. (ECF 218 ¶¶ 1-19.) Plaintiffs allege defendants manipulated the closing price of platinum and palladium futures contracts and physical bullion

by engaging in "market on close" trades during the last two minutes of the day's trading—at prices alleged to be in excess of best available prices. (*Id.* ¶¶ 166-307.) Physical Plaintiffs assert defendants' conduct in artificially increasing the price of platinum and palladium futures directly impacted the physical bullion market for these metals and caused Physical Plaintiffs and Physical Class members to pay artificially high prices during the Class Period. (*Id.* ¶¶ 79-83, 237-241, 242-264.) Settling Defendants deny Physical Plaintiffs' charges in their entirety. Lowther Preliminary Approval Decl. Ex. 1 at 2. (ECF 168.)

Proving defendants engaged in market-on-close trades required Physical Plaintiffs to identify the relevant platinum and palladium futures trades and analyze their impact upon the volume-weighted average pricing. Lowther Omnibus Decl. ¶¶ 88, 90-94, 98, 103-110. Physical Lead Counsel needed to develop an understanding of the workings of the NYMEX markets for platinum and palladium futures contracts, including volume-weighted average pricing, knowledge of trading customs in the NYMEX platinum and palladium pits, and familiarity with interpretation of commodity futures trades and transaction documents. *Id.* Physical Lead Counsel, moreover, had to take an additional step and show the artificial inflation in platinum and palladium futures led to corresponding manipulations in the platinum and palladium bullion markets. *Id.* This required counsel to develop an understanding of the workings of the markets for physical platinum and palladium and the interplay between NYMEX pricing and futures pricing. *Id.* Industry publications, peer reviewed journals, factual investigation, and documents from discovery provided counsel with working knowledge of an inflation theory, but a damages model came about only after substantial expert assistance. *Id. See, e.g.*, *Wal-Mart Stores*, 396 F.3d at 118 ("Federal antitrust cases are complicated, lengthy, and bitterly fought.").

Although "in class actions, the complexities of calculating damages increase geometrically," *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 128 (S.D.N.Y. 1997), Physical Lead Counsel confronted unique and tremendous obstacles in establishing class-wide damages in this case. The Physical Class comprises a group of over-the-counter platinum and palladium metal purchasers. Lowther Omnibus Decl. ¶ 122. In contrast to platinum and palladium futures, no centralized trading data exists for the over-the-counter bullion market. Lowther Omnibus Decl. ¶ 98. Substantial analysis by Physical Lead Counsel and retained experts was necessary to extrapolate class volumes for spot platinum and palladium. Lowther Omnibus Decl. ¶ 88.

Defendants, moreover, opposed Physical Plaintiffs' damages calculations throughout settlement discussions, and mediator Weinstein was assisted by an economist, who generated his own damage calculations. Lowther Omnibus Decl. ¶ 14. Competing, sophisticated damages models, including one from a third-party, heightened the factual complexity of this case. Lowther Omnibus Decl. ¶¶ 5, 8, 14, 56, 121. Physical Lead Counsel was required to understand numerous economic issues regarding theories of price artificiality. The class allegations further enhanced the complexity. *See Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1433 (2013) ("at the class-certification stage (as at trial), any model supporting a 'plaintiff's damages case must be consistent with its liability case, particularly with respect to the alleged anticompetitive effect of the violation.'").

Defendant produced more than 8.64 gigabytes of electronic data comprised of over 250,000 pages of documents, thousands of emails and text messages, 1,100 audio files of recorded telephone conversations, which had to be reviewed, transcribed, and analyzed by Physical Lead Counsel. Lowther Omnibus Decl. ¶¶ 7, 89. This was an extremely difficult and

laborious process. Not all voices were identified on tape, and important email and text messages were sent under aliases. Significant time and resources were expended as counsel puzzled through the written communications and recorded conversations. Lowther Omnibus Decl. ¶¶ 91-93. Without a working understanding of the cast of characters and the nature of each actor's conduct, Physical Lead Counsel would have been unable to plead and prove the antitrust, RICO, and fraud claims. *See, e.g.*, *Virgin Atl. Airways v. British Airways Plc.*, 257 F.3d 256, 263 (2d Cir. 2001) (observing the "factual complexities of antitrust cases"); *In re Platinum & Pall. Comm. Litig.*, 828 F. Supp. 2d 588, 602 (S.D.N.Y. 2011) (requiring the "nature of each defendant's participation in the allegedly fraudulent [RICO] scheme" be explained).

Complexity is found where class counsel is required to "master a new or novel area of law." *In re Merrill Lynch Tyco Research Sec. Litig.*, 249 F.R.D. 124, 139 (S.D.N.Y. 2008). Courts recognize commodities manipulation cases are "complex and difficult." *Sumitomo*, 74 F. Supp. 2d at 395. Without a CEA claim, Physical Lead Counsel turned to claims under the antitrust laws, RICO, and price mirage theories under New York common law. Lowther Omnibus Decl. ¶ 117. Based on counsel's research, these theories were novel and even unique when applied to claims for manipulation of investment bullion prices across a nationwide class. Lowther Omnibus Decl. ¶ 117.

Moreover, "complexity of issues is almost always present in cases involving RICO, the federal antitrust laws" and financial manipulation claims. *See In re Adler, Coleman Clearing Corp.*, 270 B.R. 562, 566 (Bankr. S.D.N.Y. 2001). "The RICO allegations alone raise such multifaceted issues of fact as whether a pattern exists and whether underlying predicate acts and a RICO injury can be established." *PaineWebber*, 171 F.R.D. at 125. Physical Lead Counsel devoted substantial time and effort navigating the "formidable intricacies and pitfalls inherent in

RICO litigation." *Gross v. Waywell*, 628 F. Supp. 2d 475, 479 (S.D.N.Y. 2009). Not only was counsel required to develop theories of RICO liability, but also to gather and identify the requisite evidence to establish the "nature of each defendant's participation in the allegedly fraudulent scheme," continuity, and RICO standing, all of which defendants' challenged. *Platinum & Pall.*, 828 F. Supp. 2d at 602.

"[A]ntitrust cases, by their nature, are highly complex." *Wal-Mart Stores*, 396 F.3d at 122. The quick look analysis, which Physical Plaintiffs asserted, "is appropriate only where an observer with even a rudimentary understanding of economics could conclude that the arrangements in question would have an anticompetitive effect on customers and markets." *FTC v. Actavis, Inc.*, 133 S. Ct. 2223, 2237 (2013). This required Physical Lead Counsel to take the evidence and devise a simple explanation—one a person with only a "rudimentary understanding of economics" could comprehend—for why defendants' platinum and palladium futures trades were anticompetitive and how the futures trades impacted the bullion market. Applying the "quick look" analysis to the facts of this case involved "novel issues of law." *See Currency Conversion*, 2006 U.S. Dist. LEXIS 81440, at *15. Other legal complexities included identifying the requisite "union of independent centers of decision making" among the affiliated defendants. *See Platinum & Pall.*, 828 F. Supp. 2d at 596-97.

Physical Plaintiffs' common law fraud claims are based on New York law and a price mirage theory. *See Minpeco, S.A. v. ContiCommodity Servs., Inc.*, 552 F. Supp. 332, 336-38 (S.D.N.Y. 1982). These claims implicate complex legal issues, including whether price mirage theories apply at all under the circumstances of this case, whether individual reliance must be shown, and whether New York law can be applied to Physical Plaintiffs and the Physical Class. Regarding questions about reliance, the class allegations added substantial complexity to this

case. *See Rodriguez v. It's Just Lunch, Int'l*, 300 F.R.D. 125, 139 (S.D.N.Y. 2014) (stating common law fraud "[c]ertification may be appropriate as long as plaintiffs can prove reliance through 'common evidence'"). For the MF Global claims, an already "complex" litigation became more complicated with MF Global's collapse, appointment of a SIPA trustee, and subsequent liquidation and disputes with MF Global's insurers, resulting in significant complexity. *See Platinum & Pall.*, 2014 U.S. Dist. LEXIS 96457, at *38 ("it is clear that this litigation is complex"). Accordingly, the factual and legal complexity of this case supports the requested fee award.

### 3. Physical Lead Counsel Faced the Very Real Risk of Never Being Compensated for Their Efforts on the Physical Class's Behalf

The Second Circuit has identified "the risk of success as 'perhaps the foremost' factor to be considered in determining" a reasonable fee award. *Goldberger*, 209 F.3d at 54. "No one expects," the Second Circuit explained, "a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success." *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974). Nor, added the court, "particularly in complicated cases producing large recoveries," such as this case, "is it just to make a fee depend solely on the reasonable amount of time expended." *Id.*

Physical Lead Counsel represented Physical Plaintiffs and the Physical Class on a wholly contingent basis and invested substantial time and funds in prosecuting this case without any guarantee of compensation or even of recovering out-of-pocket expenses. Lowther Omnibus Decl. ¶ 134. From the outset of this litigation, Physical Lead Counsel faced a substantial risk of no recovery. Commodities manipultion cases, by their nature, are complex and subject to many defenses that raise sigificant hurdles to recovery. *See Sumitomo*, 74 F. Supp. 2d at 395; *see also*

14

*Platinum & Pall.*, 2014 U.S. Dist. LEXIS 96457, at *38 ("it is clear that this litigation is complex"). The risk of counsel not being compensated in this case was even greater, given Physical Plaintiffs and the Physical Class bought platinum and palladium bullion, not futures contracts for these metals, which forced counsel to litigate under novel legal theories for violations of the antitrust laws, RICO, and New York common law. These theories were untested and greatly enhanced the risk of no recovery in the case.

Judge Marrero of the Southern District of New York summarized the dismal prospects of recovering anything from a defendant based on RICO claims:

> [T]he statistical record indicates that in 98 percent of the RICO appellate cases surveyed, which do not include RICO actions dismissed by the district courts but not appealed, plaintiffs and counsel invested extensive time and energies in litigation only to come away with a total loss.
> ...
> Ironically, the attractions that explain the magnetlike pull which induces plaintiffs into filing RICO charges also generate counter-forces that repel them. In the final analysis, these pluses and minuses point to some reasons why the incidence of favorable judgments for RICO plaintiffs is so "stunningly awful."

*Gross*, 628 F. Supp. 2d at 479-80. Whatever statistical advantages may have existed for recovering under antitrust and common law fraud claims, the peculiar facts at issue greatly reduced or even eliminated them. Defendants were accused of manipulating the price of platinum and palladium futures, which in turn directly impacted the physical bullion market for these metals, causing Physical Plaintiffs and Physical Class Members to pay artificially high prices. Lowther Omnibus Decl. ¶ 120. Not only did Physical Lead Counsel face the challenge of proving the underlying futures manipulation as well as the corresponding impact on the spot market, but also establishing these facts, if proved, constituted an antitrust violation. Lowther Omnibus Decl. ¶ 24. The difficulties in establishing a nationwide class for all claims increased

the odds against Physical Lead Counsel ever receiving compensation for their efforts on the Physical Class's behalf.

Before settlement, several significant hurdles were still confronting Physical Plaintiffs and the Physical Class. The Court already had dismissed Physical Plaintiffs' pleadings once, *Platinum & Pall.*, 828 F. Supp. 2d at 602. And before the case settled, the Moore Capital defendants had filed their second complex and comprehensive motion to dismiss the third amended and consolidated complaint, defendant Joseph Welsh had moved to dismiss the complaint, and defendant MF Global was in a SIPA liquidation proceeding. (ECF Nos. 55, 75, 98, 106.) Physical Plaintiffs faced the risk a class would not be certified or that certification would be modified as the litigation continued or overturned on appeal, as well as the real risk there would be zero recovery against bankrupt entity MF Global. *See* Fed. R. Civ. P. 23. Even if they survived summary judgment and established liability at trial, the Physical Class would still face the problems and complexities inherent in proving damages to the jury. *See In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 986 F. Supp. 2d 207, 228 (E.D.N.Y. 2013). Physical Plaintiffs' theory of damages would be hotly contested at trial, given platinum and palladium bullion trade over-the-counter, Lowther Omnibus Decl. ¶ 98, and at mediation the parties' damages calculations diverged greatly. Lowther Omnibus Decl. ¶¶ 5, 8, 14, 56, 121. The "history of antitrust litigation is replete with cases in which antitrust plaintiffs succeeded at trial on liability, but recovered no damages, or only negligible damages, at trial, or on appeal." *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 476 (S.D.N.Y. 1998). MF Global, moreover, went bankrupt long before any part of this case settled. Lowther Omnibus Decl. ¶ 45.

Despite the unique and substantial risks present in this case, Physical Lead Counsel deployed significant resources in zealously representing the Physical Class and secured

outstanding recoveries for the class. Lowther Omnibus Decl. ¶ 88. Physical Lead Counsel undertook this complex and novel litigation without guaranteed payment. Lowther Omnibus Decl. ¶ 134. No governmental entity ever brought antitrust, RICO, or common law fraud charges against the defendants, or charges based on the manipulation of platinum and palladium bullion prices. Only after substantial assistance from Judge Weinstein, a highly skilled mediator, were the parties even able to move toward settlement. Lowther Omnibus Decl. ¶¶ 12, 14. Although this case involved numerous, substantial risks, Physical Lead Counsel made a significant financial and man-hour investment to the Physical Class throughout the litigation. Lowther Omnibus Decl. ¶ 134.

At this time, Physical Lead Counsel remains uncompensated for the substantial investment of time devoted to this case. Lowther Omnibus Decl. ¶ 133. None of counsel's out-of-pocket expenses have been reimbursed. Lowther Omnibus Decl. ¶ 133. Uncompensated expenditures of time and money of this magnitude can pose severe hardship on a small firm. The substantial risks in this case warrant the requested fee award. *See Grinnell*, 495 F.2d at 470 ("No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success.").

### 4.     Physical Lead Counsel Provided High Quality Representation to the Physical Class

The Court also must consider the "quality of representation" Physical counsel delivered in the litigation. *Goldberger*, 209 F.3d at 50. In evaluating this factor, courts "review the recovery obtained and the background of the lawyers involved in the lawsuit." *In re Merrill Lynch Tyco Research Sec. Litig.*, 249 F.R.D. 124, 141 (S.D.N.Y. 2008). As shown in Physical Lead Counsel's biography, lead counsel is well qualified to prosecute class action litigation,

including cases involving financial manipulation. Lowther Omnibus Decl., Exhibit J. The Court has found Doyle Lowther "very able and highly experienced" and "have proven themselves qualified and capable to represent the classes." *Platinum & Pall.*, 2014 U.S. Dist. LEXIS 96457, at *32, 37.

"The quality of opposing counsel is also important in evaluating the quality of the services rendered by Plaintiffs' Class Counsel." *Maley*, 186 F. Supp. 2d at 373. Several sophisticated law firms represented defendants. The Moore Defendants, for example, were represented by Akin Gump Strauss Hauer & Feld LLP, a prominent international law firm with more than 900 attorneys in twenty-two offices worldwide. Lowther Omnibus Decl. ¶ 4. The MF Global bankruptcy trustee was represented by Hughes Hubbard & Reed LLP, another premier international law firm. Lowther Omnibus Decl. ¶ 4. The other defendants also received representation from well-respected counsel. *See Platinum & Pall.*, 2014 U.S. Dist. LEXIS 96457, at *37 ("All counsel are very able and highly experienced.").

Defense counsel mounted forceful attacks on Physical Plaintiffs' pleadings. They contested the merits of the case, challenged Physical Class damage models, and engaged in hard fought settlement negotiations. A quality settlement against such formidable opponents, as is the case here, is an "impressive feat." *IPO*, 671 F. Supp. 2d at 510.

### 5.    The Requested Fee Is Reasonable in Relation to the Settlements

As the Court explained in its preliminary approval order, the Moore "cash settlement is over 15% of the Physical Class's estimated damages." *Platinum & Pall.*, 2014 U.S. Dist. LEXIS 96457, at *40. In comparison, from 1996 to 2012, the median settlement value recovered in securities class action was 5.3% of estimated damages. *Id.*; *see also In re China Sunergy Sec. Litig.*, 2011 U.S. Dist. LEXIS 53007, at *15 (S.D.N.Y. May 13, 2011) (noting that "average

settlement amounts in securities fraud class actions where investors sustained losses over the past decade ... have ranged from 3% to 7% of the class members' estimated losses"). Considering the Moore settlement alone, the Court found "[t]his settlement is for nearly three times that percentage and within the range of possible approval." *Id*. With the MF Global settlement, the total class recovery has increased to $12.1 million. Lowther Omnibus Decl. ¶ 20. Thus, Physical Lead Counsel obtained a total settlement value well in excess of the median securities settlement.

Physical Lead Counsel's request of a 33.3% fee would produce a 1.37 risk multiplier. Lowther Omnibus Decl. at ¶143. The Supreme Court has held that an appropriate fee is intended to approximate what counsel would receive if they were bargaining for the services in the marketplace. *See Missouri v. Jenkins,*, 491 U.S. 274, 285-86 (1989). As shown above, the 33.3% fee requested by Physical Lead Counsel is consistent with percentage fees awarded in this Circuit for comparable recoveries in similar cases. *See* Section III.C., *supra*. Given the substantial benefits generated for the Physical Class, this *Goldberger* factor supports the requested fee.

### 6.    Public policy considerations

Congress views private lawsuits as "critical to protecting the public and fundamental to maintaining the credibility of the futures market." *Cange v. Stotler & Co.*, 826 F.2d 581, 594-595 (7th Cir. 1987). Courts in this District also recognize the importance of private enforcement actions, such as this case, and the corresponding need to incentivize attorneys to pursue enforcement actions on a contingency fee basis:

> [C]lass actions serve as private enforcement tools when...regulatory entities fail to adequately protect investors … plaintiffs' attorneys need to be sufficiently incentivized to commence such actions in order to ensure that defendants who engage in misconduct will suffer serious financial consequences...awarding counsel a fee that is too low would therefore be detrimental to this system of private enforcement.

*IPO*, 671 F. Supp. 2d at 515-16; *see also Maley,* 186 F. Supp. 2d at 374 ("[p]rivate attorneys should be encouraged to take the risks required to represent those who would not otherwise be protected from socially undesirable activities").

These public policy considerations support the requested fee. Qualified counsel should be sufficiently incentivized to pursue complex and risky commodities manipulation claims, like those alleged here. Congress found private enforcement "critical" to protecting the public and credibility of commodities markets. In sum, all six *Goldberger* factors establish the fairness and reasonableness of the requested fee.

### E. The lodestar multiplier counsel requests is fair and reasonable, and the cross-check supports approval of the requested fees

Although less favored for determining the fairness and reasonableness of counsel's fees in a common fund case, *Sumitomo,* 74 F. Supp. 2d at 397, the Second Circuit permits courts to use a lodestar cross-check to test further the reasonableness of a precentage-based fee. *See Goldberger*, 209 F.3d at 50. Courts, under the lodestar methods, ascertain the number of hours reasonably billed in the litigation and then multiply that number by an appropriate hourly rate, which generates the "lodestar." *Wal-Mart Stores*, 396 F.3d at 121. Where the lodestar is used as a cross-check, like here, "the hours documented by counsel need not be exhaustively scrutinized by the district court." *Goldberger*, 209 F.3d at 50. Courts applying the lodestar method generally apply a multiplier to take into account the contingent nature of the fee, the risks of non-payment, the quality of the representation, and the results achieved. *Wal-Mart Stores*, 396 F.3d at 121.

Over four years of hard fought litigation, Physical Plaintiffs Counsel devoted substantial time and effort to this litigation. Counsel's efforts reflect the complexity and novelty of the Physical Class's claims, the complicated underlying facts, the volume of discovery, and the "drawn-out, painstaking, and arduous settlement negotiations" of this case. *See Platinum & Pall.*,

2014 U.S. Dist. LEXIS 96457, at *25; Lowther Omnibus Decl. ¶¶ 15, 21-87, 88-104, 105-112. At this time, counsel have spent a combined 5,265.50 hours prosecuting the Physical Class's claims for a total lodestar of $2,935,823.50. Lowther Omnibus Decl. ¶ 128, Exhibits H and I. *See also Prudential*, 985 F. Supp. at 416 (determining whether hours counsel expended is reasonable is first step of lodestar calculation). Given the magnitude and complexities of the case, the time counsel spent litigating on the Physical Class's behalf is more than reasonable. Lowther Omnibus Decl. ¶ 140.

The second step of the lodestar analysis focuses on counsel's hourly rate. *Prudential*, 985 F. Supp. at 416. Based on their experience with complex class action litigation, Physical Counsel's hourly billing rates comport with prevailing market rates. *See* Lowther Omnibus Decl. ¶¶ 125-130; *Luciano v. Olsten Corp.*, 109 F.3d 111, 115 (2d Cir. 1997) (the lodestar figure should be in line with those rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation). Awards in comparable cases confirm the reasonableness of counsel's rates. *See Jones v. Amalgamated Warbasse Houses, Inc.*, 721 F.2d 881, 885 (2d Cir. 1983).

Physical counsel's current hourly rates are reflected in the accompanying declarations. Lowther Omnibus Decl. at ¶128, Exhibits H and I; *See Goldberger*, 209 F.3d at 54 (permitting use of current billing rates to compensate for payment delays). Attorney billing rates ranging from $300 to $750 per hour conform to prevailing market rates in this jurisdiction for cases of comparable complexity. *See* Lowther Omnibus Decl. ¶ 129. Similar billing rates for law firms representing plaintiffs in securities class actions have been approved by other courts in this Circuit. *See*, *e.g*, *City of Providence*, 2014 U.S. Dist. LEXIS 64517, at *38 (finding partner rates of $640 to $875 and non-partner attorney rates of $335 to $665 to be in line with defense firms).

The requested multiplier of 1.37 falls well within the range of multipliers that Second Circuit courts approve. *See, e.g.*, *In re Nortel Networks Corp. Sec. Litig.*, 539 F.3d 129, 134 (2d Cir. 2008) (holding a $34 million fee, representing a 2.04 multiplier was "toward the lower end of reasonable fee awards"); *Wal-Mart Stores*, 396 F.3d at 123 (approving 3.5 multiplier on appeal); *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 590 (S.D.N.Y. 2008) (finding a multiplier of 1.6 "well within the range of fees approved by courts in this Circuit"); *In re EVCI Career Colleges Holding Corp. Sec. Litig.*, 2007 U.S. Dist. LEXIS 57918, at *54 (S.D.N.Y. July 27, 2007) (finding a multiplier of 2.48 in a lodestar cross-check to confirm the reasonableness of the requested attorneys' fees). Considering the substantial risks associated with the Physical Class's claims, Lead Counsel's request is within the range of reasonableness.

### F. The requested reimbursement of expenses is reasonable and should be approved

"Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients." *Miltland Raleigh-Durham v. Myers*, 840 F. Supp. 235, 239 (S.D.N.Y. 1993). Physical counsel requests reimbursement of $229,230.82 in expenses, which were reasonably incurred in the successful prosecution of the Physical Class's claims. Lowther Omnibus Decl. ¶¶ 131-133, Exhibit H. The majority of these expenses comprise payments to consultants and experts. Lowther Omnibus Decl. ¶ 131. The remaining expenses arise from travel, mediation, and administrative expenses. Lowther Omnibus Decl. ¶ 131. These expenses also were reasonably incurred. The amount sought for expense reimbursement by each firm is set forth below:

| Firm | Expenses |
|------|----------|
| Doyle Lowther LLP | $227,707.32 |
| Law Office of Christopher J. Gray, P.C. | $1,523.50 |

| Total | $229,230.82 |
|-------|-------------|

Physical Lead Counsel made a concerted effort to litigate in an efficient manner and avoid unnecessary expenditures. The requested reimbursement of expenses represents less than 2% of the $12.1 million settlement fund. The ratio of settlement recoveries to total incurred costs is well below what other courts have found to be fair and reasonable. *See, e.g.*, *IPO*, 671 F. Supp. 2d at 505 (approving as fair and reasonable expenses that constituted 8% of the settlement fund); *Fogarazzo*, 2011 U.S. Dist. LEXIS 17747 at *12 (approving as fair and reasonable expenses that constituted 9.4% of the settlement fund).

## IV.    Conclusion

For the above reasons, Physical Lead Counsel's requests (1) an award of attorneys' fees in the amount of 33.3% of the total common fund, which is $4,029,300 and (2) reimbursement of $229,230.82 for expenses counsel reasonably incurred in the successful prosecution of the Physical Class's claims. The requested amounts are fair and reasonable under the specific circumstances of this case and should be approved.


Dated: January 14, 2015

_____ */s/ John A. Lowther* _____

William J. Doyle, II
John A. Lowther
DOYLE LOWTHER LLP
10200 Willow Creek Road, Suite 150
San Diego, CA 92131
(858) 935-9960 phone
(858) 939-1939 fax

*Class Counsel for Physical Plaintiffs and the Physical Class*