UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| *In Re: Platinum and Palladium Commodities Litigation*<br><br>This Document Relates To:<br><br>Platinum/Palladium Futures Action | MASTER FILE<br>No. 10 Civ. 3617 (WHP) |

**MOORE DEFENDANTS' OBJECTION TO FUTURES CLASS COUNSEL'S PETITION FOR AN AWARD OF ATTORNEYS' FEES**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .......... 1

BACKGROUND .......... 2

OBJECTION .......... 3

A. The Moore Defendants Object to Class Counsel's Allocation of Time .......... 5

B. Class Counsel's Fee Award Must Account for the Stage of the Litigation and Substantial Governmental Assistance .......... 6

C. Relevant Authority Confirms That a Risk Multiplier of 2.5 is Unreasonably High .......... 7

CONCLUSION .......... 13

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*FTR Consulting Grp. ex rel. Cel-Sci Corp. v. Advantage Fund II Ltd.*,
No. 02 CIV. 8608 (RMB), 2005 WL 2234039 (S.D.N.Y. Sept. 14, 2005) ..........................5, 6

*Goldberger v. Integrated Res., Inc.*,
209 F.3d 43 (2d Cir. 2000)..........................................................................................4, 13

*Hall v. Children's Place Retail Stores, Inc.*,
669 F. Supp. 2d 399 (S.D.N.Y. 2009)...................................................................11, 12

*Hershey v. Pac. Inv. Mgmt. Co. LLC*,
697 F. Supp. 2d 945 (N.D. Ill. 2010) ..........................................................................10

*Hershey v. Pac. Inv. Mgmt. Co*,
05-CV-4681 (RAG) [Doc. No. 572] (N.D. Ill. May 2, 2011)........................................9

*In re Amaranth Natural Gas Commodities Litig.*,
07 Civ. 6377 (SAS) [Doc. No. 415] (S.D.N.Y. June 11, 2012).................................8, 9

*In re BP Propane Direct Purchaser Antitrust Litig.*,
06-CV-3621, Docket No. 1872 (JBZ) (N.D. Ill.) (JBZ) ..............................................11

*In re Buspirone Patent Litigation*,
No. 01-MD-1410, slip op. at 41-43 (S.D.N.Y. Apr 17, 2003)..............................11, 12

*In re Currency Conversion Fee Antitrust Litig.*,
263 F.R.D. 110 (S.D.N.Y. 2009) (WHP).............................................................7, 8, 11

*In re Dreyfus Aggressive Growth Mut. Fund Litig.*,
No. 98 CV 4318 (HB), 2001 WL 709262 (S.D.N.Y. June 22, 2001)..........................5, 9, 12

*In re Indep. Energy Holdings PLC*,
No. 00 CIV. 6689 (SAS), 2003 WL 22244676 (S.D.N.Y. Sept. 29, 2003)..............................5

*In re Med. X-Ray Film Antitrust Litig.*,
No. CV-93-5904 (CPS), 1998 WL 661515 (E.D.N.Y. Aug. 7, 1998)...................................10

*In re NASDAQ Market-Makers Antitrust Litig.*,
187 F.R.D. 465 (S.D.N.Y. 1998) ...............................................................................12

*In re Natural Gas Commodity Litig.*,
03-CV-6186 (VM) [Doc. No. 445] (S.D.N.Y June 15, 2007) ........................................10

*In re Philip Servs. Corp. Sec. Litig.*,
No. 98 CIV. 835 (AKH), 2007 WL 959299 (S.D.N.Y. Mar. 28, 2007) ..................................10

*In re Sumitomo Copper Litig.*,
74 F. Supp. 2d 393 (S.D.N.Y. 1999)..........................................................................................11

*Klein ex rel. SICOR, Inc. v. Salvi*,
No. 02 CIV.1862 (AKH), 2004 WL 596109 (S.D.N.Y. Mar. 30, 2004) ..................................5

*Kohen v. Pac. Inv. Mgmt. Co.*,
571 F.3d 672 (7th Cir. 2009) ................................................................................................9, 10

*McDaniel v. Cnty. of Schenectady*,
595 F.3d 411 (2d Cir. 2010)....................................................................................................4, 12

*Sakiko Fujiwara v. Sushi Yasuda Ltd.*,
No. 12-CV-8742 (WHP), 2014 WL 5840700 (S.D.N.Y. Nov. 12, 2014) ................................4

*Wal-Mart Stores, Inc. v. VISA U.S.A. Inc.*,
396 F.3d 96 (2d Cir. 2005)....................................................................................................11, 12

Moore Capital Management, LP, Moore Capital Management, LLC, Moore Capital Advisors, LLC, Moore Advisors, Ltd., Moore Macro Fund, LP, Moore Global Fixed Income Master Fund, LP, Louis Bacon (together the "Moore Defendants"), by and through the undersigned counsel, respectfully submit this objection (the "Objection") to Futures Class Counsel's Petition for an Award of Attorneys' Fees and Reimbursement of Expenses (the "Fee Petition").

**PRELIMINARY STATEMENT**

1. The Moore Defendants object to the 29.5% common fund fee award sought by Class Counsel in connection with the Futures Class' settlement with the Moore Defendants (the "Moore Settlement") in the above-captioned class action (the "Action").[1] Because the Moore Settlement provides for a partial reversion of the consideration paid by Moore in the event excess funds remain after Claiming Class Members are paid in full (per the Plan of Allocation), the Moore Defendants have an economic interest in the size of the fee award, and thus standing to assert this objection. Conversely, in the event the total consideration provided by the Moore Settlement is insufficient to pay all Claiming Class Members in full, any reduction in Futures Class Counsel's fees will redound to the benefit of Claiming Class Members. *See* Futures Class Stipulation and Agreement of Settlement at ¶ 12.[2]

2. The Moore Defendants have the utmost respect for Class Counsel and their representation of the putative futures class in this action, and do not file this objection lightly. However, for the reasons set forth below the Moore Defendants believe the fee requested is excessive when evaluated under relevant case law.

---

[1] Unless otherwise specified, all defined terms shall have the same meaning as in the Futures Class Stipulation and Agreement of Settlement. Doc. No. 163-1.

[2] The existence and extent of any reversionary interest will not be known until all proofs of claim are filed and analyzed.

**BACKGROUND**

3. The Moore Defendants incorporate by reference the recitation of the procedural history in this action contained in the Declaration of Christopher M. McGrath In Support of Motion for Final Approval of Settlements ("McGrath Settlement Decl."). Doc. No. 264 at ¶¶ 9-54.

4. On July 15, 2014, the Court preliminarily approved the Settlement with the Futures Class, scheduling a fairness hearing for November 7, 2014 (the "Preliminary Approval Order"). Doc. No. 212.

On October 7, 2014, the Court adjourned the fairness hearing until February 13, 2015. Doc. No. 225.

On January 21, 2015, the Court adjourned the Final Approval Hearing previously scheduled for February 13 until February 27. Doc. No. 280.

5. On January 15, 2015, Futures Class Counsel petitioned the Court for an award of attorneys' fees and the reimbursement of expenses. Doc. No. 271.

6. None of the foregoing Orders contained a deadline for any objection by defendants to Class Counsel's Fee Petition, and thus this objection is timely. The July 15th Scheduling Order required that any objection to the Moore Settlement or Fee Petition filed by a *class member* would be due twenty-three days before the Fairness Hearing, in this case February 4, 2015. *See* Preliminary Approval Order at ¶ 14 ("no person other than Futures Lead Counsel *and counsel for the Settling Defendants* shall be heard . . . unless, not later than 23 days prior to the Fairness Hearing directed herein, the objecting member of the Futures Class files the following with the Court . . . . ") (emphasis added). Given the parties' efforts (albeit ultimately unsuccessful) to resolve this matter consensually, Class Counsel has agreed with the Moore Defendants that this objection should be deemed to have been served and filed as of February 4,

2015. Thus the objection is timely even assuming, *arguendo*, the deadline for class members to object to the Fee Petition also applies to *defendants*.[3]

**OBJECTION**

7. Class Counsel have petitioned this Court for an award of 29.5% of the common settlement funds in this action, which are expected to total $68-$70 million. Of that amount, $49.15 million derives from the Moore Settlement (the "Moore Common Fund"), and the balance from the separate settlement between the Futures Class and MF Global. *See* Fee Petition at 1; McGrath Settlement Decl. ¶¶ 6-8.

8. Given the early stage of the litigation at which the proposed settlement was reached procedurally, and the relative hours expended by Class Counsel actively litigating the Action—as opposed to negotiating and papering the parties' settlements—the Moore Defendants assert that Class Counsel's request for 29.5% (which results in a risk multiplier of 2.5 times class counsel's total lodestar) is excessive. Additionally, while the Moore Defendants take no issue with respect to the total hours expended by Class Counsel or counsel's hourly rates, there is an atypical distribution of hours to partners, rather than associates, which inflates the lodestar beyond that which would have resulted from greater delegation to associates with lower billing rates. An adjusted lodestar would result in an even more excessive risk multiplier if fees of 29.5% were awarded.

9. Accordingly, the Moore Defendants respectfully request that the Court award Class Counsel 20% of the Moore Common Fund instead of 29.5%. An award of 20% would

[3] Class Counsel has reserved the right to argue that the Moore Objection is untimely on the grounds it was allegedly due prior to February 4, 2015.

result in fees respecting the Moore Settlement of $9.83 million, reflecting a multiplier of 2.08[4] times Class Counsel's total lodestar as presented, and a significantly greater multiplier than 2.08 if one adjusts the lodestar to reflect a more typical distribution of hours between partners and associates. *See* McGrath Fee Decl. ¶¶ 10, 24.

10. In awarding a percentage of the fund as attorney fees, courts typically consider six factors: (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations. *Goldberger v. Integrated Res., Inc.*, 209 F.3d at 43, 50 (2d Cir. 2000). Any fee award must ultimately be "reasonable under the circumstances," to be determined by the sound discretion of the district court. *Goldberger*, 209 F.3d at 47.

11. Courts use the lodestar calculation to crosscheck "the reasonableness of the requested percentage." *See e.g.*, *id.* at 50; *Sakiko Fujiwara v. Sushi Yasuda Ltd.*, No. 12-CV-8742 (WHP), 2014 WL 5840700, at *6 (S.D.N.Y. Nov. 12, 2014). The Second Circuit has also approved the use of the lodestar in lieu of a percentage of the fund where the percentage method would reap "an unjustified 'golden harvest of fees' for the lawyer." *McDaniel v. Cnty. of Schenectady*, 595 F.3d 411, 418 (2d Cir. 2010) (quoting *Goldberger*, 209 F.3d at 48) (upholding district court's award of lodestar fees without multiplier instead of utilizing the percentage method).

[4] This Objection does not apply to Class Counsel's MF Global settlement proceeds. Therefore this figure assumes that the requested 29.5% rate is applied to the $19.5 million in settlement funds attributed to the MF Global settlement. *See* Declaration of Christopher M. McGrath in Support of Class Counsel's Petition for an Award of Attorneys' Fees and Reimbursement of Expenses [Doc. No. 272] at ¶ 10 ("McGrath Fee Decl."). Using the higher $21.5 million estimate of recovery yields a blended multiplier of 2.18x the asserted lodestar of $7.43 million. *See* McGrath Fee Decl. ¶¶ 10, 24.

**A. The Moore Defendants Object to Class Counsel's Allocation of Time**

12. The Moore Defendants do not object to the total amount of time expended by Class Counsel (12,143 hours), but as noted above do object to the allocation of that time. *See* McGrath Fee Decl. ¶ 23. Here, Partners billed 79.26% of all Lovell Stewart Halebian Jacobson LLP ("Lovell Stewart") time devoted to the Action, Legal Assistants 7.21%, Paralegals 6.78%, Contract Attorneys 6.01%, and Associates 0.74%. *See id.* This is the inverse of the norm: "at most large New York City firms partners play a largely supervisory role, while the basic work on the case is performed by more junior staff who bill at lower rates." *In re Indep. Energy Holdings PLC*, No. 00 CIV. 6689 (SAS), 2003 WL 22244676, at *9 (S.D.N.Y. Sept. 29, 2003) (internal marks omitted) (quoting *In re Dreyfus Aggressive Growth Mut. Fund Litig.*, No. 98 CV 4318 (HB), 2001 WL 709262, at *7 (S.D.N.Y. June 22, 2001)). Courts frequently reduce the fee percentage requested where, as is the case here, the lodestar value reflects an over-allocation of work to more expensive partners. *See Dreyfus*, 2001 WL 709262 at *7 (reducing requested fee from 30%, representing a 2.03 lodestar risk multiplier, to 15%, representing a 1.02 multiplier where highest billing "partners chose to do all the legal work, clearly much of which could, and typically is, assigned to junior associates"); *see also Indep. Energy Holdings*, 2003 WL 22244676 at *9 (awarding 20% fee, representing a lodestar multiplier of 1.55, instead of requested 25% fee, representing a 1.94 multiplier, in part because a "partner/associate ratio [of 29.75%] is somewhat high"); *Klein ex rel. SICOR, Inc. v. Salvi*, No. 02 CIV.1862 (AKH), 2004 WL 596109, at *9 (S.D.N.Y. Mar. 30, 2004) (reducing requested fee award, noting "inadequate delegation of work to younger lawyers of tasks commonly performed by younger lawyers at lower rates"); *FTR Consulting Grp. ex rel. Cel-Sci Corp. v. Advantage Fund II Ltd.*, No. 02 CIV. 8608 (RMB), 2005 WL 2234039, at *6 (S.D.N.Y. Sept. 14, 2005) ("It would appear that a

substantial amount of this work could have been performed by associates or paralegals at significantly lower rates.”).

13. Moreover, the five highest billing partners at Lovell Stewart recorded almost half of all time spent on the Action. *See* McGrath Fee Decl. ¶ 23. As a percentage of Lovell Stewart’s total lodestar ($7.426 million), time billed by Lovell Stewart partners accounted for 92.44%, a ratio criticized by other courts in this district. *See id.*; *see also FTR Consulting*, 2005 WL 2234039 at *6 (reducing requested fee from 36% to 25%, noting that “95.41% of counsel’s lodestar reflects the work of two senior partners”). Were half of the 9,625.83 partner hours billed by Lovell Stewart billed at the rate of their lone associate ($275/hour) instead of the weighted average partner rate ($713.14), the lodestar would instead equal roughly $5.317 million.[5] Given the inefficient allocation of attorney time reflected in Counsel’s lodestar, a reduction from 29.5% to 20% (yielding a fee from the Moore Settlement of $9.83 million) is well supported and in line with other awards within the Second Circuit.

**B. Class Counsel’s Fee Award Must Account for the Stage of the Litigation and Substantial Governmental Assistance**

14. Independent of the makeup of the lodestar, the requested fee is excessive in this case. To be sure, the Moore Defendants agree that the commencement of the litigation involved substantial risk, and have strongly contested the merits of Plaintiffs’ claims since the outset of this litigation. *See* Fee Petition at 2-5. The Moore Defendants further agree that Class Counsel produced a very positive result for the Futures Class. Some premium is appropriate.

[5] $6,864,568.15 in partner billables divided by 9,625.83 total partner hours equals a blended average of $713.14/hour. Half of the 9,625.83 partner hours (4,812.91) billed at that rate ($713.14/hr) equals $3,432,284.08. Half of the partner time billed at the rate of $275/hour equals $1,323,551.63. Summing the $3,432,284.08 in adjusted partner time, plus $1,323,551.63 in adjusted associate time, plus $561,488.65 in non-partner time actually incurred, results an adjusted lodestar of $5,317,324.35.

Nevertheless, given the relatively early stage of the litigation at which the proposed settlement was reached, and the total hours expended by Class Counsel, the $20 million fee requested by Class Counsel (exclusive of expense reimbursements) is too high.

15. Fee awards must be based on the "unique circumstances of each case." *In re Currency Conversion Fee Antitrust Litig*., 263 F.R.D. 110, 128 (S.D.N.Y. 2009) (WHP) (quoting *Goldberger*, 209 F.3d at 53). While the Settlement was initially signed on August 21, 2013 (*see* Aug. 21, 2013 Tr., [Doc. No. 137] at 4:22-23), settlement negotiations had progressed sufficiently to warrant a postponement of litigation by December of 2012, while a second round of motions to dismiss were pending, but were never argued or decided. *See* Dec. 12, 2012 Scheduling Order [Doc. No. 125]. As a result, Class Counsel was not required to complete motion to dismiss proceedings, move for and obtain class certification, defend a motion for summary judgment, submit expert reports, or prove their claims at trial.

16. Moreover, Class Counsel were provided with discovery materials previously produced to the CFTC, including documents, audio recordings, and deposition transcripts. *See* Fee Petition at 9-10. Class Counsel was not required to prep for or take its own depositions, lead Plaintiffs were never deposed, and Class Counsel's experts avoided *Daubert* scrutiny. Class Counsel's award should reflect that they have not had to expend enormous resources to fight a protracted litigation, a fact confirmed by the lodestar crosscheck that results from the requested fees. The cases Class Counsel rely on are far removed from this context.

**C. Relevant Authority Confirms That a Risk Multiplier of 2.5 is Unreasonably High**

17. The lodestar crosscheck in this case is clear evidence that a 29.5% fee would over-compensate Class Counsel. Based on a total claimed lodestar of $8,249,144.30 representing all of futures plaintiffs' counsel, Class Counsel's requested award of 29.5% would result in a multiplier between 2.43 and 2.5. Fee Petition at 14. Class Counsel have not offered

any relevant authority to justify such a generous multiplier. To the contrary, comparable commodities class action settlements suggest that a 20% fee award, which would result in a multiplier between approximately 1.65 and 1.70, is much more in line with the attendant risks of such litigation.[6] To avoid routine windfalls where the recovered fund runs into the multi-millions, courts typically decrease the percentage of the fee as the size of the fund increases. *See Currency Conversion*, 263 F.R.D. at 129 (awarding fee of 15.25%, resulting in a 1.6 multiplier).

18. Two recent commodities cases, in which Lovell Stewart was also lead counsel, illustrate this point. In *Amaranth*, the court awarded lead counsel 30% of a $77.1 million settlement that resulted in a multiplier of 0.825, *less* than the actual lodestar. *See* Memorandum Opinion and Order, *In re Amaranth Natural Gas Commodities Litig.*, 07 Civ. 6377 (SAS) [Doc. No. 415] at 6-7 (S.D.N.Y. June 11, 2012) ("Amaranth Order"). Although Class Counsel received a 30% fee award in *Amaranth*, plaintiffs were required to expend many more resources to secure that award, opposing ten motions to dismiss their initial complaint, six subsequent motions to dismiss, securing an order to show cause restraining the Amaranth defendants from distributing their assets, certifying the class (including ten expert reports, four memoranda of law, and a Rule 23(f) petition to the Second Circuit), and moving to attach defendants' assets. *See* Memorandum in Support of Motion for an Award of Attorneys' Fees, No. 07 Civ. 6377 [Doc. No. 383] at 7-8 (S.D.N.Y. Mar. 12, 2012) ("Amaranth Memo"). This effort resulted in a 30% fee award, but a far lower risk-multiplier. Moreover, in *reducing* the requested fee, Judge Scheindlin noted that the plaintiffs had "followed in the footsteps" of the CFTC and NYMEX.

[6] The Moore Defendants have *not* filed an objection to Physical Lead Counsel's request for 33.3% of the total Physical Class common fund. *See* Physical Plaintiffs' Memorandum of Law In Support of Lead Counsel's Motion for an Award of Attorneys Fees [Doc. No. 259] at 3. While the percentage sought is higher than Class Counsel's 29.5%, the settlement amount is materially less and the fee request, if allowed, would represents a more reasonable risk multiplier of 1.37. *Id.*

Amaranth Order at 6. The court went on to explain that, "[g]iven the assistance provided by the NYMEX and CFTC investigations and the rather small size of the settlement in comparison to the amount of time expended by plaintiffs' counsel, a multiplier of 0.825 is necessary so that class members will receive adequate compensation." *Id*; *accord Dreyfus*, 2001 WL 709262 at *5 (rejecting class counsel's assertions that their claims were distinct from those brought by governmental investigators given "substantial overlap between the government's investigations and the plaintiffs' claims."). As Class Counsel here have also reaped the benefits of a prior CFTC investigation (*see, e.g.* Fee Petition at 9-10), they should not be compensated for investigative work they were not required to perform, when equally risky actions received a far lower risk-multiplier. *See* Amaranth Memo at 2 (arguing that claims at issue "were unprecedented and more complex and risky than the extremely risky claims made in prior commodity futures manipulation cases").

19. Lovell Stewart also acted as class counsel in the *PIMCO* commodities class action, where the Illinois District Court awarded a 20% fee recovery, representing approximately a 1.57 lodestar risk multiplier. *See* Final Order and Judgment, *Hershey v. Pac. Inv. Mgmt. Co*, 05-CV-4681 (RAG) [Doc. No. 572] at 7 (N.D. Ill. May 2, 2011). In that case, a market rate of 20% was established early in the case, despite the lack of a precursor governmental investigation and Class Counsel never sought to increase the award beyond 20%. *See* Memorandum in Support of Petition for Award of Attorneys' Fees, No. 05-CV-4681 [Doc. No. 567] at 7-8 (N.D. Ill. Mar. 3, 2011).[7] In fact Class Counsel sought a 20% award despite having to certify the class of futures market participants, defend that certification on appeal to the Seventh Circuit (*see*

[7] Here, Class Counsel did not agree to their fee rate in advance, nor have they presented any evidence that the requested percentage fee was negotiated with, much less approved by, Futures Plaintiffs.

*Kohen v. Pac. Inv. Mgmt. Co.*, 571 F.3d 672 (7th Cir. 2009)), and argue motions to exclude the testimony of key experts. *See Hershey v. Pac. Inv. Mgmt. Co. LLC*, 697 F. Supp. 2d 945 (N.D. Ill. 2010). In light of *Amaranth*'s 0.825 multiplier and *PIMCO*'s 1.57 multiplier, it is therefore difficult to see why Class Counsel here should be awarded a multiplier of 2.43 for expending fewer resources to litigate the Action and devoting much of their time to papering the instant settlement and moving for its approval. Class Counsel does not suggest that the Action was considerably more risky than *Amaranth* or *PIMCO*, nor have Class Counsel's efforts to document the Settlement, while certainly time-intensive, been taken under the same specter of non-recovery as the initial investigatory phase of the litigation.

20. Other commodities and securities cases of comparable sizes to the proposed Settlement also have risk multipliers well below the 2.43-2.5 multiplier requested by Class Counsel, confirming that a 2.5 multiplier would be excessive under current case law even for a case that had proceeded further. *See, e.g., In re Natural Gas Commodity Litig.*, 03-CV-6186 (VM) [Doc. No. 445] at ¶¶ 2, 6, 9 (S.D.N.Y June 15, 2007) (settlement in commodities class action involving, *inter alia*, multiple motions to dismiss, class certification, and motion to compel, awarding 33.3% of a $72,762,500 common fund representing a pre-administration multiplier of 1.44, later increased to 1.86 to reflect efforts securing subsequent settlements and motion practice); *In re Philip Servs. Corp. Sec. Litig.*, No. 98 CIV. 835 (AKH), 2007 WL 959299, at *1 (S.D.N.Y. Mar. 28, 2007) (awarding 26% of a $79.75 million dollar award representing a 1.366 multiplier, case involved multiple appeals and 43 days of depositions); *see also In re Med. X-Ray Film Antitrust Litig.*, No. CV-93-5904 (CPS), 1998 WL 661515, at *7 (E.D.N.Y. Aug. 7, 1998) (awarding a 33.3% fee in a $39.36 million settlement with a multiplier of 1.67).

21. While the court in the *Sumitomo* commodities litigation granted Lovell Stewart a 27.5% award, represented a multiplier of 2.5, that case is readily distinguishable. *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 395 (S.D.N.Y. 1999).[8] Class Counsel were required to review millions of pages of Japanese documents located in London, Hong Kong, and Tokyo simply to assess the strength of their case, as there was "no governmental assist to ease the task." *Id.* Additionally, the *Sumitomo* litigation was one of, if not *the* first successful commodities class action litigation, and required Class Counsel to argue motions not present here to certify the class and move to separate causation and damages prior to trial. *See* Sept. 3, 1998 Tr., Sept. 23, 1998 Tr. No. 96 Civ. 4584 [Doc. Nos. 107, 108]. *Sumitomo* also pre-dated the Second Circuit's *Goldberger* opinion, and as this Court has noted previously, "as a rule, 'post-*Goldberger* courts . . . have generally refused multipliers as high as 2.03.'" *Currency Conversion*, 263 F.R.D. at 129 (quoting *In re Merrill Lynch & Co. Research Report Sec. Litig.*, No. 2 MDL 1484 (JFK), 2007 WL 4526593, at *21 (S.D.N.Y. Dec. 20, 2007)); *see also Hall v. Children's Place Retail Stores, Inc.*, 669 F. Supp. 2d 399, 404 (S.D.N.Y. 2009) (criticizing class counsel's reliance on pre-*Goldberger* opinions).

22. Class Counsel also argues that their requested multiplier is consistent with multipliers in "less risky" cases where multipliers of 3.5 or greater were granted. Fee Petition at 15. The cases cited by Class Counsel, however, are not commodities class actions, and all involved much larger settlements than the Common Fund in this case. *See Wal-Mart Stores, Inc. v. VISA U.S.A. Inc.*, 396 F.3d 96, 123 (2d Cir. 2005) (awarding 15% of a settlement valued at $3.383 billion resulting in a multiplier of 3.5); *In re Buspirone Patent Litigation*, No. 01-MD-

---

[8] Class Counsel also cites "*In re BP Propane Direct Purchaser Antitrust Litig.*, 06-CV-3621, Docket No. 1872 (JBZ) (N.D. Ill.) (JBZ) (33.0% fee award that resulted in a 2.7 lodestar multiplier)." Fee Petition at 14 n.13. Despite reasonable efforts, counsel has been unable to find this document.

1410, slip op. at 41-43 (S.D.N.Y. Apr. 17, 2003) (awarding 33.3% of a $220 million common fund resulting in a multiplier of 8.46); *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 489 (S.D.N.Y. 1998) (awarding 14% of a $1.027 billion settlement resulting in multiplier of 3.97). Given the outsized amount of the settlements in these cases, it is a mathematical certainty that, even with lower percentage awards, the dollar value of the attorneys' fees and, consequently, the lodestar multipliers, were also much bigger. Thus, these cases are not useful comparisons of lodestar multipliers for the instant action, as they outlie the prevailing trend within this District that risk multipliers over 2x are discouraged. *See, e.g. Hall*, 669 F. Supp. 2d at 403 (S.D.N.Y. 2009) ("Courts appear to be finding that an award of one-third of the settlement fund is not always justified where that percentage amounts to a lodestar multiplier of substantially more than 2.0."); *Dreyfus*, 2001 WL 709262 at *6 ("There is no recent, relevant case support for awarding a percentage as high as 30%, particularly in a case such as this one where 30% represents more than twice Counsel's billings."). Indeed, the Second Circuit has warned of the dangers of "routine overcompensation" in such "mega-fund" class actions. *McDaniel*, 595 F.3d at 426.

23. Moreover, Class Counsel does not explain why the cited cases are less risky than the Commodity Exchange Act ("CEA") claims at issue here. For example, in *Wal-Mart* the court noted the "risk of the litigation was very high" in part because the lead counsel devoted 52% of its legal staff to work a case that spanned seven years without the benefit of a prior "piggybacking" case. 396 F.3d at 122. Here, Class Counsel only discuss risk in terms of the merits of the claims themselves, but as the Second Circuit's analysis in *Wal-Mart* suggests, a court must also consider *how long* counsel are required to bear that risk. While the Moore Defendants agree that the Plaintiffs' risk of ultimate recovery is quite high, the risk to Class

Counsel of taking the case on contingency was substantially lowered once the Moore Defendants came to the bargaining table. Not only did the likelihood of some recovery materially increase, but a substantial portion of the expense of further litigation was put on hold pending settlement negotiations. A 20% award, representing a 1.65-1.7 risk multiplier, would more than adequately compensate Class Counsel for their risk in representing the class without resulting in a windfall. Indeed, the Second Circuit in *Goldberger* cited "empirical analyses [which] demonstrate that in cases like this one, with recoveries of between $50 and $75 million, courts have traditionally accounted for these economies of scale by awarding fees in the lower range of about 11% to 19%." 209 F.3d at 52; *see id.* at 53 (award of 4% not abuse of discretion despite deviating materially from this range).

**CONCLUSION**

24. For the foregoing reasons, the Moore Defendants respectfully requests entry of an order granting Class Counsel 20% of the Moore Settlement as attorneys' fees, and such other and further relief as the Court deems just and proper.

Dated: February 12, 2015
New York, New York

By: ______________________
AKIN GUMP STRAUSS HAUER & FELD LLP
David M. Zensky, Esq.
Jamison A. Diehl, Esq.
Nicholas C. Adams, Esq.

*Counsel for Defendants Moore Capital Management LP, Moore Capital Management, LLC, Moore Capital Advisors, LLC, Moore Advisors, Ltd., Moore Macro Fund, LP, Moore Global Fixed Income Master Fund, LP and Louis Bacon*