UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| *In Re: Platinum And Palladium Commodities Litigation* <br><br> This Document Relates To: <br><br> Platinum/Palladium Futures Action | MASTER FILE <br> No. 10 Civ. 3617 (WHP) |

**CLASS COUNSEL'S CONSOLIDATED REPLY MEMORANDUM OF LAW IN
FURTHER SUPPORT OF PETITION FOR AN AWARD OF ATTORNEYS' FEES AND
<u>REIMBURSEMENT OF EXPENSES</u>**

## TABLE OF CONTENTS

I.     The Requested Fee is Reasonable ........................................................................1

    A.     The Absence Of Any Objections From The Sophisticated Or Other Class
         Members Who Are Being Charged The Requested Fees, Further Supports The
         Reasonableness Of Such Request ...........................................................................1

    B.     There Is No Objection By Defendants To The Fee Request For The MF Global
         Settlement ...............................................................................................................1

    C.     The Presence Of The Extremely Rare, "Man Bites Dog" Objection By Moore To
         The Fee Requested From The Moore Settlement, Further Supports The
         Reasonableness Of Such Request ...........................................................................2

        1.     In Contrast To Typical Class Actions, Here Class Counsel Obtained An
             Enhanced Monetary Settlement For The Class By Telling Moore That It
             Could Object To Class Counsel Fee's ......................................................2

        2.     Moore's Objections Relating To The Most Important Factor, Risk, And
             Moore's Failure To Object To The Public Policy And Complexity
             Factors .....................................................................................................3

            a.     Moore Expressly Admits That The Risks Of Non-Payment Were
                 "Substantial" ................................................................................ 3

            b.     Moore's Citation To The *Amaranth* And *Sumitomo* Cases Further
                 Supports The Requested Fee Because The Percentage Payout To
                 Class Members Here Is 7 Times Greater Than That In *Amaranth*
                 And 1.5 Times Greater Than That In *Sumitomo* ...........................4

            c.     Moore's Argument That Further Decisions By Courts On Class
                 Certification And Summary Judgment Should Be Rewarded
                 Because They Generate Further Risks, Stands Public Policy On Its
                 Head .............................................................................................5

            d.     Moore's Attempted Downgrade Of The Risk From "Extreme" To
                 Merely "Substantial" Is Belied By Moore's Success In Dismissing
                 The Original Complaint .................................................................6

            e.     Moore's Settlement With The Government Of Charges Of
                  Attempted Manipulation Was An Inadmissible Settlement
                 Document Which Did Not Involve Guilty Pleas, Provided
                 Plaintiffs With No Benefits, And Was Stricken From The
                 Complaint.......................................................................................6

                f.      Moore's Argument That Risks Decreased During Settlement Negotiations Is Legally Irrelevant, And Factually Belied By The Termination Of Negotiations As Well As Moore's Statement That The Settlement Negotiations Were The Most "Arduous" Of Moore's Counsel's Career ........................................................... 8

      3.      Moore Expressly Supports The High Quality Of Representation, The Reasonableness Of The Hours Worked, And The Reasonableness Of Each Attorney's Hourly Rates ...........................................................................9

      4.      Moore's Objections Relating To The Allocation of Work Between Partners And Associates Are Counterfactual for Multiple Reasons...........9

      5.      Moore's Objections Relating To The Percentage Fee And The Multiplier Cross Check Ignore The Analysis By Moore's Counsel In Another Case That Show The Requested Percentage Fee And Requested Risk Multiplier Here Are Comparable To The Averages Awarded By Courts In The Second Circuit In Similar Size Settlements Over The Last Five Years ...11

CONCLUSION ………...............................................................................................12

## Table of Authorities

**Cases**

*Bricker v. Planet Hollywood New York, L.P.*,
  08 CIV. 443 (S.D.N.Y. December 11, 2008) ................................................................2

*Cornwell v. Credit Suisse Grp.*,
  No. 08-cv-03758 (S.D.N.Y. July 18, 2011) ..............................................................12

*FTR Consulting Grp. ex rel. Cel-Sci Corp. v. Advantage Fund II Ltd.*,
  No. 02 Civ. 8608, 2005 WL 2234039 (S.D.N.Y. Sept. 14, 2005) ...........................11

*Goldberger v. Integrated Res., Inc.*,
  209 F.3d 43 (2d Cir. 2000) ............................................................................... *passim*

*Hyland v. HomeServices of Am., Inc.*,
  771 F.3d 310 (6th Cir. 2014) .....................................................................................7

*In re Amaranth Natural Gas Commodities Litig.*,
  07 Civ. 6377 (S.D.N.Y. June 11, 2012) ....................................................................4

*In re Amaranth Natural Gas Commodities Litig.*,
  587 F.Supp.2d 513 (S.D.N.Y. 2008) .........................................................................6

*In re Bisys Sec. Litig.*,
  2007 WL 2049726 (S.D.N.Y. July 16, 2007) ..........................................................12

*In re Commodity Exchange, Inc. Silver Futures and Options Trading Litig.*,
  No. 11-md-2213, 2013 WL 1100770 (S.D.N.Y. Mar. 18, 2013) ...............................6

*In re Dreyfus Aggressive Growth Mut. Fund Litig.*,
  No. 98 Civ. 4318, 2001 WL 709262 (S.D.N.Y. Jun. 22, 2001) ...............................11

*In re Enron Corp., Securities, Derivative & ERISA Litig.*,
  586 F.Supp.2d 732 (S.D. Tex. 2008) .......................................................................11

*In re Indep. Energy Holdings PLC*,
  No. 00 Civ. 6689, 2003 WL 22244676 (S.D.N.Y. Sept. 29, 2003) ..........................11

*In re Platinum & Palladium Commodities Litig.*,
  828 F. Supp. 2d 588 (S.D.N.Y. 2011) .......................................................................6

*In re Prudential Sec. Inc. Limited Partnerships Litig.*,
  912 F. Supp. 97 (S.D.N.Y. 1996) ..............................................................................1

*In re Sumitomo Copper Litig.*,
   74 F. Supp. 2d 393 (S.D.N.Y. 1999) ................................................................4, 7, 8

*In re Telik, Inc. Sec. Litig.*,
   576 F.Supp.2d 570 (S.D.N.Y. 2008) ....................................................................1

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   No. 07-md-1827 (N.D. Cal. Sep. 3, 2013) ............................................. 7

*In re U.S. Foodservice, Inc. Pricing Litig.*,
   07-md-1894 (D. Conn. Aug. 29, 2014) ................................................................12

*In re Vitamin C Antitrust Litig.*,
   No. 06-md-1738, 2013 WL 6858853 (E.D.N.Y. Dec. 30, 2013) ...........................11

*Klein ex rel. SICOR, Inc. v. Salvi*,
   No. 02 Civ. 1862, 2004 WL 596109 (S.D.N.Y. Mar. 30, 2004) ...........................11

*Sakiko Fujiwara v. Sushi Yasuda Ltd.*,
   No. 12-cv-8742, 2014 WL 5840700 (S.D.N.Y. Nov. 12, 2014) ...........................2, 12

*Savoie v. Merchants Bank*,
   166 F.3d 456 (2d Cir. 1999) ...................................................................................4

*U.S. v. KREC*,
   No. 05 Civ. 188 (W.D. Ky. Nov. 23, 2005) ...........................................................7

## Other Authorities

*Entry Fee: Surprise-Inexperienced Associates Cost More*, ABA Journal (Jul. 1, 2012) .............10

http://www.abajournal.com/mobile/mag_article/entry_fee_surprise--
inexperienced_associates_cost_more  .......................................................................10

**I.   THE REQUESTED FEE IS REASONABLE.**  In response to the Class Notices provided pursuant to this Court's Orders, no Class member has objected to the **32.8%** Class Counsel fee request specified in the Class Notice regarding the Moore Settlement or the **33.33%** Class Counsel fee specified in the Class Notice regarding the MF Global settlement.  *See* McGrath Reply Decl. ¶¶2-4.  Nor has any Class member objected to the **29.5%** fee actually requested by Class Counsel in their fee Petition.

> **A.   The Absence Of Any Objections From The Sophisticated Or Other Class Members Who Are Being Charged The Requested Fees, Further Supports The Reasonableness Of Such Request**.

Unlike in other types of class actions, the more limited numbers of class members in commodity futures cases often receive substantial pay-outs including payments in the millions of dollars to the largest claimants. McGrath Reply Decl. ¶5.  Such classes include, and this Class here includes, highly sophisticated investment firms, banks, hedge funds, and industrial or other commodities using companies.  They have both the legal departments and the knowledge and financial wherewithal to object to an unreasonable requested fee. *Id.* ¶6.

The total absence of objections from these types of clients and all the other class members who are to be charged the requested fee, is "one of the most important" testaments or affirmative items of evidence that the requested fee is reasonable here.  *See, e.g., In re Prudential Sec. Inc. Limited Partnerships Litig.*, 912 F. Supp. 97, 99 (S.D.N.Y. 1996) (Pollack, J.); *accord In re Telik, Inc. Sec. Litig.*, 576 F.Supp.2d 570, 593-594 (S.D.N.Y. 2008) ("That only one objection to the fee request was received is powerful evidence that the requested fee is fair and reasonable.").

> **B.   There Is No Objection By Defendants To The Fee Request For The MF Global Settlement.**  No Defendant has objected to Class Counsel's requested fee from the MF Global settlement.  The claims against MF Global had all the risks of proving the underlying

1

claim against Moore, plus the additional risks of establishing the elements of the aiding and abetting against MF Global, and the MF Global bankruptcy risk.

### C. The Presence Of The Extremely Rare, "Man Bites Dog" Objection By Moore To The Fee Requested From The Moore Settlement, Further Supports The Reasonableness Of Such Request.

In a common fund class action, it is extremely rare for a settling defendant ever to object to the class counsel's fee request. *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 52-53 (2d Cir. 2000) ("*Goldberger*"); *Sakiko Fujiwara v. Sushi Yasuda Ltd.*, No. 12-cv-8742, 2014 WL 5840700, at *8 (S.D.N.Y. Nov. 12, 2014) (Pauley, J.).  On the contrary, express or implied agreements by settling defendants **not to object** to class counsel's fees are frequent.[1]

### 1. In Contrast To Typical Class Actions, Here Class Counsel Obtained An Enhanced Monetary Settlement For The Class By Telling Moore That It Could Object To Class Counsel Fee's.

The negotiations to settle the claims against Moore involved very sharp disputes about the amounts and duration of any price artificiality, and the resulting amounts of prospective class member damages proximately caused by Moore. Also, there were lesser disputes about the amount of offsetting gains from artificiality within any given class member's trading profile, and the prospective amount of class members who will file proofs of claim.  These disputes led to an unusually wide discrepancy in damages estimates. Defendants' "Plaintiff friendly" estimate was $6,500,000 vs. Plaintiffs' estimate of in excess of $400,000,000.  Dkt. No. 262, p. 13.

In order to help resolve these disputes and obtain the highest potential monetary settlement for the Class, Class Counsel affirmatively volunteered to Moore that Moore could object to Class Counsel's fee.  Psychologically, this allowed Defendants to oppose the counsel

---

[1] *See e.g., Sakiko Fujiwara v. Sushi Yasuda Ltd.*, No. 12 Civ. 8742, Dkt. No. 45-1, p. 22 (WHP) (S.D.N.Y. May 8, 2014) ("Defendants agree not to oppose any submission regarding, or request for approval of, this payment of fees or costs provided the application and amount sought is consistent with this Settlement Agreement"); *Bricker v. Planet Hollywood New York, L.P.*, 08 CIV. 443, Dkt. No. 22-1, pp. 11-12 (WHP) (S.D.N.Y. December 11, 2008) (same).

who was arguing for the high prospective damages.  Financially, if the Moore Defendants were correct that there was a high amount of offsets and that there would be a low amount of proofs of claim, then this would permit a return to Moore, due to its reversionary rights,[2] of some of the settlement monies paid by Moore.

In these circumstances, Class Counsel respectfully submit that the presence of Moore's objection actually reflects, in substantial part, that Class Counsel sought to obtain the best monetary settlement for the Class.[3]

> **2. Moore's Objections Relating To The Most Important Factor, Risk, And Moore's Failure To Object To The Public Policy And Complexity Factors**
> **a. Moore Expressly Admits That The Risks Of Non-Payment Were "Substantial"**

Moore states: "To be sure, the Moore Defendants agree that the commencement of the litigation involved substantial risk."  Moore Opp., ¶14.  Class Counsel believes that the foregoing statement about "substantial" risks fully supports their requested fee here, as risk is measured at the outset of the litigation.  *Goldberger*, 209 F.3d at 55 ("It is well-established that litigation risk must be measured as of when the case is filed.").

---

[2] After every claiming class member receives **from the Moore settlement** (which includes the $800,000 being paid in respect of Defendant Welsh but **excludes** the $18,000,000-$20,000,000 being paid by MF Global) 110% of their full damages under Plaintiffs' full price artificiality / damages model, any excess funds left in the Moore Capital Settlement Fund will be split.  Fifty percent (50%) of such excess monies will be paid to class members and 50% will revert to Moore Defendants.  Settlement Agreement, Dkt. No. 163-1, Section 12.

In the event of a reversion, the claiming Class Members would have received the 110% of their full damages from Moore alone, and would have also received their entire additional amount from the MF Global monies.

Because the MF Global settlement proceeds are approximately 40% of the Moore Defendants' settlement proceeds, claiming Class Members will likely have received approximately 150% of their full damages under Plaintiffs' best damages model **before** they start to split any excess funds with Moore under its reversion.

[3] Also, Lovell Stewart's view, generally, is that any negotiation to limit a settling or trial defendant's ability to object to a class counsel's fee, may occur only in extremely limited circumstances.   This allows a "fair fight" on fees because the persons who know the most about what happened (the settling or trial defendant) are able to contest any statement, fact, or argument made by Class Counsel in support of the requested fee.

    **b.  Moore's Citation To The *Amaranth* And *Sumitomo* Cases Further
Supports The Requested Fee Because The Percentage Payout To
Class Members Here Is 7 Times Greater Than That In *Amaranth* And
1.5 Times Greater Than That In *Sumitomo*.**

The risks of prosecuting commodity futures manipulation cases generally are very

substantial.  Declaration of Jerry W. Markahm (Dkt. No. 265), ¶¶24-49.  However, Moore argues

that the requested fees should be reduced in light of the comparison of the risks here to the

assertedly greater risks in *In re Amaranth Natural Gas Commodities Litig.*, 07 Civ. 6377 (SAS)

[Doc. No. 415] at 6-7 (S.D.N.Y. June 11, 2012) ("*Amaranth*") and *In re Sumitomo Copper Litig.*,

74 F. Supp. 2d 393, 395 (S.D.N.Y. 1999) ("*Sumitomo*").  Moore Opp., ¶¶18, 21.

    First, the percentage payout to Class members here is more than seven times greater than

that in *Amaranth* (17% versus 2.2%).  McGrath Reply Decl. ¶¶13-15.   This Settlement is also

150% greater than that in *Sumitomo*, which involved a 11% payout when there was no deduction

for hedging.  *Id*.  Because of the lower percentage recovery, the avoidance of unjust enrichment[4]

could be accomplished in *Amaranth* and *Sumitomo* by awarding a lower fee than that which

would arguably be required to avoid unjust enrichment here.  Yet the percentage fee awarded in

*Amaranth* (30%) and risk multiplier awarded in *Sumitomo* (2.5) are both higher than that sought

here.

    Second, the claim here involves greater risk than did those in *Sumitomo* and *Amaranth*.

*See* fn. 6 *infra*.

    **c.  Moore's Argument That Further Decisions By Courts On Class
Certification And Summary Judgment Should Be Rewarded Because
They Generate Further Risks, Stands Public Policy On Its Head**.

---

[4] The criteria for determining class counsel fees are now well established.  Dkt. 271, p. 1. fn. 5
(collecting this Court's prior class counsel fee decisions).

    But the sole common law inquiry regarding common fund fee awards was to determine
the extent of unjust enrichment of the persons who would receive the common fund if no fee or
an inadequate fee was paid to the attorneys who produced the common fund.  *Goldberger*, 209
F.3d at 47; *Savoie v. Merchants Bank*, 166 F.3d 456, 460 (2d Cir. 1999).

In seeking to slash Class Counsel's fee for obtaining a much greater percentage settlement here than in the *Sumitomo* or *Amaranth* cases, Moore also reasons that there were no decision by this Court on a second motion to dismiss here nor was a **formal** class certification or summary judgment motions filed here.  Moore Opp., ¶¶18, 21.  Instead, Class Counsel obtained the superior percentage settlement here at what Moore calls an early stage of the litigation.

It is true that the **formal** motions were avoided.  But Class Counsel extensively negotiated and argued with Moore numerous issues involved in anticipated future motions and other risks of continued prosecution of the claims here.   In Class Counsel's judgment, if Moore thought that it could have thrown out the damages analysis on *Daubert* grounds or that it would prevail against class certification or on summary judgment, then Moore never would have agreed to the Settlement here

Regarding public policy, Class Counsel previously demonstrated the many facts that favor the requested fee under the public policy and the complexity factors that this Court has recognized in prior cases. Dkt. 271 pp. 5-6 and 7-10.  This includes judicial economy and the avoidance of the necessity for this Court to decide further motions.  *Id.*  Moore fails to mention these factors and, therefore, fails to dispute that they support the requested fee.  Moore Opp. *passim*.

There are large case backlogs, and judicial economy is more important than ever now. Based on this and multiple other factors, Class Counsel respectfully submit that successful arguments about **prospective** motions so as to obtain a superior percentage payout here without the actual motion practice, demonstrates the quality of representation and supports the reasonableness of the requested fee.

### d. Moore's Attempted Downgrade Of The Risk Here From "Extreme" To Merely "Substantial" Is Belied By Moore's Success In Dismissing The Original Complaint

Moore succeeded in its original motion to dismiss the complaint.  *In re Platinum & Palladium Commodities Litig.*, 828 F. Supp. 2d 588, 592 (S.D.N.Y. 2011).  Moore put in a very substantial motion to stay discovery in response to Plaintiffs' request that Defendant produce the documents they produced to the Commodity Futures Trading Commission ("CFTC").  Dkt. No. 34.  Solely because they prevailed on the latter motion, Plaintiffs were able to develop sufficient facts to allege a valid claim and settle here.  McGrath Reply Decl. ¶19.

"Substantial" risk and "extreme" risk are, to some extent, mere labels.  But the inability to plead an adequate complaint is fatal to a claim. For example, a motion to compel defendants to produce to plaintiffs the documents defendants produced to the government was **un**successful in a recent commodity futures manipulation and antitrust class action.  *In re Commodity Exchange, Inc. Silver Futures and Options Trading Litig.*, No. 11-md-2213, 2013 WL 1100770 (S.D.N.Y. Mar. 18, 2013), *aff'd*, 560 Fed.Appx. 84 (2d Cir. 2014).  The complaint was dismissed, and such dismissal was recently upheld on appeal.  *Id.* This was similar to what has occurred in other cases.[5]

### e. Moore's Settlement With The Government Of Charges Of Attempted Manipulation Was An Inadmissible Settlement Document Which Did Not Involve Guilty Pleas, Provided Plaintiffs With No Benefits And Was Stricken From The Complaint.

---

[5]And even where **extensive** documents were available from an investigation by the U.S. Senate Permanent Subcommittee on Investigations, the claims against the broker / alleged aider and abetter (who was in the position of MF Global here) were dismissed with prejudice and recently upheld on appeal. *Compare In re Amaranth Natural Gas Commodities Litig.*, 587 F.Supp.2d 513, 544 (S.D.N.Y. 2008) *aff'd*, 730 F.3d 170 (2d Cir)(affirming dismissal notwithstanding the facts that plaintiffs had alleged adequate knowledge but no material assistance of one manipulation and material assistance but inadequate scienter as to the other manipulation) *with Excessive Speculation in The Natural Gas Market*, Permanent Subcommittee on Investigations, United States Senate, Released on June 25, 2007.

Moore points to its settlement with the CFTC as reducing the risk here.  Moore Opp. ¶¶15-16.  The announcement of the CFTC settlement with Moore was extremely helpful in alerting the public, including class action law firms, to the possible wrongdoing and injury here.  Unlike other cases in which government prosecutions/public orders have been helpful, there were no criminal or even administrative guilty pleas here.  Indeed, there were not even any admissions of wrongdoing here.  *Goldberger*, 209 F.3d at 53-54, involved criminal guilty pleas by Drexel and Milken in one of the biggest financial scandals of the 1990s.  On the contrary, Moore entered a "neither admitting nor denying" settlement which this Court found was inadmissible and struck from Plaintiffs' complaint.  *In re Platinum & Palladium Commodities Litig.*, 828 F. Supp. 2d 588, 593-595 (S.D.N.Y. 2011)

Government orders that merely alert the public to potential wrongdoing but contain no admissions or even facts that permit the pleading of a complaint, have repeatedly preceded prior class actions which were dismissed with prejudice. *Compare e.g.*, *U.S. v. KREC*, 05-cv-188, Dkt. No. 27 (W.D. Ky.) (civil consent decree in antitrust case) *with Hyland v. HomeServices of Am., Inc.*, 771 F.3d 310, 313 (6th Cir. 2014) (affirming dismissal claims on summary judgment).  And even where criminal guilty pleas are obtained, civil plaintiffs have lost at trial. *See In re TFT-LCD (Flat Panel) Antitrust Litig.*, Special Verdict (N.D. Cal. Dkt. No. 8562, Sep. 3, 2013).

Thus, only two complaints --- rather than the raft of class action complaints that would have been filed if a government guilty plea provided a roadmap --- were even filed after Moore's settlement order.  Class Counsel had far less indicia here than in the cases to which Moore cites, with which to plead an adequate complaint.[6]

---

[6] Moore Opp. ¶¶18-21 (citing to *Amaranth*, *Sumitomo*, and *Hershey v. Pac. Inv. Mgmt. Co*, 05-CV-4681 (RAG) [Doc. No. 572] at 7 (N.D. Ill. May 2, 2011) ("*PIMCO*")).  *PIMCO* and *Sumitomo* involved public facts (including from PIMCO's mutual fund filings) that enabled

  **f. Moore's Argument That Risks Decreased During Settlement Negotiations Is Legally Irrelevant, And Factually Belied By The Termination Of Negotiations As Well As Moore's Statement That The Settlement Negotiations Were The Most "Arduous" Of Moore's Counsel's Career**

  Moore argues that what it concedes were the substantial risks in this case, should be held to have declined when settlement discussions began.  Moore Opp. ¶¶12-13.  This argument is mistaken both legally and factually.  Legally, the risks are measured at the outset of the action. *Goldberger*, 209 F.3d at 55 ("It is well-established that litigation risk must be measured as of when the case is filed.").  Factually, there is no assurance that, because settlement talks start, they will complete. This is especially true where Class Counsel is seeking to obtain the optimal

---

plaintiffs to plead that *PIMCO* and *Sumitomo* had very large long positions and also held a large portion of the deliverable supply --- this is a classic condition referred to as a corner.  McGrath Reply Decl. ¶¶16-18.  *Amaranth, PIMCO,* and *Sumitomo* each involved sharp breaks in pricing resulting from the manipulative activity.  In *Amaranth*, there were detailed U.S. Senate materials that were publicly available.  *Id.*  The accused hedge fund owned extraordinarily large positions that showed that Amaranth held positions that constituted 25% of the open interest in all contracts and as much as 70% in certain futures contracts.  *Id.*

  In contrast to the foregoing cases, this case does not involve a corner or vast percentages of the open interest or sharp breaks in prices associated with the manipulation.  Nor does it involve any means of knowing the facts needed to allege an adequate claim against Moore.  Rather than involving a corner (as in *Sumitomo* and *PIMCO*) or a very high percentage of the open interest (as in *Amaranth*), this case involved only trades, *i.e.,* buys and sales  The absence of precedent in CEA manipulation claims has led to many losses for the CFTC on what it regarded as manipulation such that the CFTC only won its first contested trial for manipulation after more than 30 years of existence.  *Compare*, *DiPlacido v. CFTC*, 364 Fed. Appx. 657 (2d Cir. 2009) *with* Declaration of Jerry W. Markham dated January 14, 2015 [Dkt. No. 265], ¶¶24-49 (recounting the difficulties the CFTC has experienced trying to prove manipulation and the extreme risk of claims for manipulation); *see also United States v. Radley,* 659 F. Supp. 2d 803 (S.D. Tex. 2009) (rejecting CFTC theory of manipulation as unconstitutional) *aff'd* 632 F.3d 177 (5th Cir. 2011).

  A problem with *DiPlacido* is that the CFTC upheld as manipulative only the trades that also involved rule violations in the order entry process.  *In re Anthony J. DiPlacido*, CFTC No. 01-23, 2008 WL 4831204, *32 (C.F.T.C. Nov. 5, 2008).  The trades not accompanied by a rule violation were not found to be manipulative.  *Id.*  This led Defendants here (and many others) to argue that a rule violation or fraud is required to establish manipulation in violation of the CEA (Dkt. No. 107 at pp. 6-12).  Thus, Moore argued on its successful motion to dismiss, that manipulation cannot turn on intent alone. Transcript of Oral Argument dated February 4, 2011, p. 20, lines 5-8.  The Court stated that this was a sympathetic argument but only at the summary judgment stage.  *Id.*

settlement number.   Thus, here, settlement talks did, in fact, break down, and the litigation time

out ended in late 2012 and early 2013.   After Plaintiffs filed their amended complaint and as

Moore's deadline was approaching to move to dismiss, sudden progress was made during

**litigation** (not a settlement timeout). Dkt. No. 264, ¶31.   Settlement negotiations then resumed

during February 2013.

Finally, any reduction of risk during settlement negotiations must be further qualified by

the statement by Moore's counsel that such settlement negotiations were the "most arduous" of

his 25 year career.   Dkt. 190 ¶4.

### 3.  Moore Expressly Supports The High Quality Of Representation, The Reasonableness Of The Hours Worked, And The Reasonableness Of Each Attorney's Hourly Rates.

Class Counsel has submitted what it believes is an extensive factual and legal showing

regarding the reasonableness of the total hours worked by Class Counsel, the reasonableness of

the rates charged, and the quality of the representation.   *Compare* Dkt. No. 271, p. 1, fn. 5

(collecting this Court's prior cases) and pp. 6-13 *with* Dkt. No. 272, ¶¶13-27 and Exhibits A-C.

Confirming this, Moore now expressly states that it has no objection to the

reasonableness of the total amount of hours devoted to the litigation by Class Counsel, and the

reasonableness of the hourly rates charged by each attorney.   *Compare* Dkt. 284, ¶8 ("the Moore

Defendants take no issue with respect to the total hours expended by Class Counsel or counsel's

hourly rates") *with* Dkt. No. 272, ¶¶23-24 Ex. A-C.   Moore likewise expressly states that it has

"the **highest respect**" for Class Counsel and that "Class Counsel produced a **very positive** result

for the Class". [Emphasis supplied] *Id.*, ¶14 and *passim*.

### 4.  Moore's Objections Relating To The Allocation Of Work Between Partners And Associates Are Counterfactual for Multiple Reasons

Citing to four cases, Moore then states that Class Counsel's lodestar is still too high

because there supposedly were too many hours worked by partners and too few by associates.

Moore Opp., ¶¶12-13.  However, the painstaking detail supplied by Class Counsel includes descriptions of what each attorney did and their monthly totals of each's hours.  Dkt. 272 ¶¶13-27, Exhibits A-C. Moore conspicuously fails to point to any specific services that were performed by any partner that should more properly have been performed by an associate.

Based on the unspoken (and false) premise that an hour of associate time accomplishes the same amount of work as an hour of partner time, Moore self-servingly estimates the differences in Class Counsel's lodestar **if** (a) associates had performed the services instead of partners (b) the overall hours remain constant, and (c) blocks of partners' hours are transferred to a relatively low associate rate of $275.00 per hour.   Moore Opp., ¶3.  This is a flawed counter-factual exercise on many levels.

First, $275.00 per hour is one-half of the average associate hourly rate in New York. McGrath Reply Decl. ¶8.  Second, the hourly rates of Lovell Stewart's three youngest partners' are substantially less than just the **average** hourly rate for associates in New York.  *Id.* Third, the hourly rates for all but two of Lovell Stewart's partners are substantially less than the average partner hourly rate in New York. *Id.* ¶¶11-12.  This is a complete answer to Moore's partner-associate objection and renders such objection a matter of semantics (a rose by any other name…).

Fourth, partners may perform in much less time the same service that associates perform.  Thus, it is well known that, since the recession, clients prefer the efficiency of paying for partner time rather than for young associates.  *Entry Fee: Surprise-Inexperienced Associates Cost More*, ABA Journal (Jul. 1, 2012).[7]  The cases cited by Moore are pre-recession cases that pre-date the general trend for clients that pay legal bills to prefer to pay partners rather than

---

[7] *Available at* http://www.abajournal.com/mobile/mag_article/entry_fee_surprise--inexperienced_associates_cost_more.

young associates.[8]  Thus, Moore's holding of the hours constant in its fee-estimation analysis is also incorrect.

Fifth, class action law firms tend to use more partners than do law firms in other aspects of lawyering.  *E.g., In re Vitamin C Antitrust Litig.*, No. 06-md-1738, 2013 WL 6858853, at *5 (E.D.N.Y. Dec. 30, 2013).  Sixth, in truly complex cases, as here, the dominance of class counsel's time by a core of partners is to be expected.  *In re Enron Corp., Securities, Derivative & ERISA Litig.*, 586 F.Supp.2d 732, 788 n.69 (S.D. Tex. 2008).

> **5.  Moore's Objections Relating To The Percentage Fee And The Multiplier Cross Check Ignore The Analysis By Moore's Counsel In Another Case That Shows The Requested Percentage Fee And Requested Risk Multiplier Here Are Comparable To The Averages Awarded By Courts In The Second Circuit In Similar Size Settlements Over The Last Five Years.**

Based on the supposed merit of its objection (*but see* Class Counsel's responses *supra*) and various cases it cites, Moore suggests that a fee of 20% and multiplier of 1.65-1.7 would be more appropriate here than the 29.5% fee and 2.4 risk multiplier requested by Class Counsel here.  Moore Opp., ¶¶17-23.  Moore cites to the 15-year old *Goldberger* case as well as a smattering of other cases to try to indicate that a lower percentage fee or lower multiplier is warranted here.  However, *Goldberger* involved pre-PSLRA facts when securities fraud actions almost always settled.  *Goldberger*, 209 F.3d at 45-47, 52.  Under the PSLRA pleading regime, securities fraud cases do not always settle now.  *E.g., In re Am. Express Co. Sec. Litig.*, No. 02 CIV. 5533 (WHP), 2008 WL 4501928, at *1 (S.D.N.Y. Sept. 26, 2008) *aff'd sub nom. Slayton v. Am. Exp. Co.*, 604 F.3d 758 (2d Cir. 2010).

---

[8] Moore Opp. ¶12 citing to *In re Indep. Energy Holdings PLC*, No. 00 Civ. 6689, 2003 WL 22244676 (S.D.N.Y. Sept. 29, 2003); *In re Dreyfus Aggressive Growth Mut. Fund Litig.*, No. 98 Civ. 4318, 2001 WL 709262 (S.D.N.Y. Jun. 22, 2001); *Klein ex rel. SICOR, Inc. v. Salvi*, No. 02 Civ. 1862, 2004 WL 596109 (S.D.N.Y. Mar. 30, 2004); *FTR Consulting Grp. ex rel. Cel-Sci Corp. v. Advantage Fund II Ltd.*, No. 02 Civ. 8608, 2005 WL 2234039 (S.D.N.Y. Sept. 14, 2005).

Moreover, according to extensive studies performed for Moore's counsel in a separate action, the risk multiplier on just the average class action settlement with recoveries between $27.5 and $88.9 million was 2.29. *In re U.S. Foodservice, Inc. Pricing Litig.*, 07-cv-1894, Dkt. No. 510-5, Declaration of Geoffrey P. Miller, ¶¶45 (D. Conn. Aug. 29, 2014). Class Counsel respectfully submit that the "notoriously complex" and extremely risky commodity futures manipulation claims here fully warrant a higher risk multiplier than the (increasing) average. Thus, the lodestar/risk multiplier cross check fully supports a percentage award that produces a risk multiplier that is higher than the 2.28 risk multiplier awarded in *Sakiko*, 2014 WL 5840700, at *11.

Also, such study performed for Moore's counsel in another action shows that the average class action attorneys' fee awarded in the Second Circuit between 2009-2013 was 28%. *In re U.S. Foodservice, Inc. Pricing Litig.*, 07-cv-1894, Dkt. No. 510-5, Declaration of Geoffrey P. Miller, ¶54 (D. Conn. Aug. 29, 2014). *See e.g., Cornwell v. Credit Suisse Grp.*, No. 08-cv-03758 (VM), slip op. at 1-2 (S.D.N.Y. July 18, 2011), ECF No. 117 (awarding 27.5% of $70 million settlement fund; 4.7 multiplier); *In re Bisys Sec. Litig.*, 2007 WL 2049726, at *3 (S.D.N.Y. July 16, 2007) (awarding fees of 30% of $65.87 million settlement; 2.99 multiplier). The 29.5% fee in the non-average, more complex and risky case here, is reasonable as well.

**II. CONCLUSION.** Class Counsel's requested fee from the Moore Settlement is reasonable and should be granted. Class Counsel's unopposed request for fees from the MF Global Settlement is reasonable and should be granted.

Dated: New York, New York
          February 20, 2015

Respectfully submitted,

*/s/ Christopher Lovell*

Christopher Lovell
Christopher M. McGrath
**LOVELL STEWART HALEBIAN JACOBSON LLP**
61 Broadway, Suite 501
New York, New York 10006
Telephone:     (212) 608-1900
Facsimile:      (212) 719-4775

*Counsel for Plaintiffs and the Futures Class*