UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| *In Re: Platinum And Palladium Commodities Litigation*<br><br>This Document Relates To:<br><br>    Platinum/Palladium Futures Action | MASTER FILE<br>No. 10 Civ. 3617 (WHP) |

**REPLY DECLARATION OF CHRISTOPHER M. MCGRATH IN FURTHER SUPPORT OF CLASS COUNSEL'S PETITION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES**

    I, Christopher M. McGrath, pursuant to 28 U.S.C. §1746, hereby declare as follows:

    1.    I am a partner with the law firm of Lovell Stewart Halebian Jacobson LLP ("Lovell Stewart"). The statements herein are true to the best of my personal knowledge, information and belief. I respectfully submit this declaration in further support of Lovell Stewart's Petition for an Award of Attorneys' Fees and Reimbursement of Expenses. Dkt. No. 271.

    **A.    Notice of the Settlements Has Been Provided To the Class Pursuant To The Court-Ordered Program of Notice**

    2.    The Court-appointed Settlement Administrator (A.B. Data, Ltd.) previously submitted two declarations confirming that notice of the Settlements has been provided to the Class pursuant to and in conformity with the notice program ordered by the Court. *Compare* Dkt. No. 212, ¶¶7-9 (program of notice ordered by the Court for the Moore Settlement) *with* Dkt. No. 266 (declaration of Eric J. Miller dated January 14, 2015 affirming compliance with Moore Settlement program of notice); *compare* Dkt. No. 245, ¶¶7-9 (program of notice ordered by the Court for the MF Global Settlement) *with* Dkt. No. 269 (declaration of Eric J. Miller dated January 14, 2015 affirming compliance with MF Global program of notice).

1

3. The Class notices and the Settlement websites for the Moore Settlement and the MF Global Settlement notified Class members that the deadline to file objections to the fairness or any other aspect of Settlements was January 21, 2015.[1] Dkt. No. 266, Ex. A, p. 7 and Dkt. No. 269, Ex. A, p. 7; *see also* http://platinumpalladiumfutureslitigation.com. The Class notices and Settlement websites further informed Class members that the January 21, 2015 objection deadline was also the deadline to object to Class Counsel's request for an award of attorneys' fees and reimbursement of expenses. *Id*. The Class notice for the Moore Settlement notified Class members that Class Counsel would seek an award of attorneys' fees "in the amount of not more than 32.8%" of the common fund created by the Moore Settlement. Dkt. No. 266, Ex. A, p. 5. The Class notice for the MF Global Settlement notified Class members that Class Counsel would seek an award of attorneys' fees "in the amount of not more than one-third (33 1/3%)" of the common fund created by the MF Global Settlement. Dkt. No. 269, Ex. A, p. 5.

**B.   There Have Been No Class Member Objections Of Any Nature**

4. No objections have been filed by any Class member concerning the fairness of the Settlements, Class Counsel's request for an award of attorneys' fees or any other aspect of the Settlements.

5. The Class of commodity futures traders certified by the Court for purposes of the Settlements includes numerous large banks, commodity trading firms, hedge funds and other sophisticated commodity futures traders and investors. Accordingly, many members of this Class have the ability and financial wherewithal to object to the requested fee sought to be

---

[1] The Class notice for the Moore Settlement stated that objections were required to be filed by October 15, 2014. Dkt. No. 266, Ex. A, p. 7. When the Revised Scheduling Order was entered by the Court on October 7, 2014 [Dkt. No. 225] the Settlement website was updated to reflect that the objection deadline had been extended to January 21, 2015. *See* http://platinumpalladiumfutureslitigation.com.

2

charged to them. Unlike other types of class actions, many members of this Class are likely to receive large pay-outs. For example, in a prior commodity futures class action settlement, pay-outs of $8,000,000 to $11,000,000 were made to the largest claimants. *See, e.g.*, *Hershey v. Pac. Inv. Mgmt. Co*, 05-CV-4681 (RAG), Dkt. No. 610, Ex. A (N.D. Ill.).

### C. The 2014 National Law Journal Billing Survey Results

6. Lovell Stewart recently obtained the 2014 National Law Journal ("NLJ") Billing Survey.[2] The 2014 NLJ survey sought to obtain hourly billing rates for the nation's 350 largest law firms. For the 2014 survey, the NLJ was able to obtain hourly billing rates for approximately 169 law firms.

7. Attached as Exhibit A hereto is a summary of certain hourly billing rates for the twenty-eight (28) law firms identified by the 2014 NLJ survey as New York City based law firms. *See* Exhibit A hereto.

8. As reflected in Exhibit A hereto, the average "high" partner billing rate for the New York City based law firms is $1,068.39 per hour. *Id.* The average "average" partner billing rate is $883.18. *Id.* The average "high" associate billing rate is $744.29. *Id.* The average "average" associate billing rate is $531.21. *Id.*

9. Lovell Stewart's total fee compensable weighted average hourly rate (*i.e.*, total lodestar divided by total hours) is $611.50. Dkt. No. 272, ¶¶23-24 ($7,426,056.80 total lodestar and 12,143.98 total hours).

---

[2] The 2013 NLJ average partner and associate hourly rates cited by Class Counsel in their January 15, 2015 fee petition inadvertently excluded several New York City based law firms that were surveyed as part of the 2013 NLJ billing survey. Dkt. No. 271, pp. 16-17. Thus, the incomplete 2013 NLJ figures cited in Class Counsel's January 15, 2015 fee petition should not be not be relied upon. Instead, the Court should consider the more recent and more complete 2014 NLJ survey results reflected herein.

3

10. Thus, Lovell Stewart's total fee compensable weighted average hourly rate of $611.50 is $132.79 an hour (or 22%) **less** than the 2014 NLJ billing survey $744.29 average "high" New York **associate** billing rate referenced above and $271.68 (or 44%) less than the $883.18 average New York partner hourly billing rate referenced above.

11. Three of Lovell Stewart's younger partners for whom Lovell Stewart submitted fee compensable time (Mrs. Miller, Mr. Jaccarino and Mr. Isquith) have hourly rates of $435.00, which is $96.21 (or 22%) lower than the "average" New York **associate** hourly rate of $531.21 referenced above. Dkt. No. 272, ¶23.

12. All Lovell Stewart partners for whom Lovell Stewart submitted fee compensable time have hourly rates less than the "average" New York partner rate of $883.18 referenced above except for the two named partners, Mr. Lovell and Mr. Jacobson. *Id*.

### D. The Prospective Payout To Class Members Here is Higher Than in *Amaranth* and *Sumitomo*

13. Plaintiffs here estimate that the average prospective payout to Class members is approximately 17%. Dkt. No. 263, pp. 2-3.

14. In *In re Amaranth Natural Gas Commodities Litig.*, 07 Civ. 6377 (SAS) (S.D.N.Y.), the plaintiffs estimated that the average prospective payout to the class was approximately 2.2%. *Amaranth*, 07-cv-6377, Dkt. No. 380, p. 18.

15. In *In re Sumitomo Copper Litig.,* 96-cv-4584 (MP) (S.D.N.Y.), the plaintiffs estimate that the average prospective payout to the class was approximately 11% (with no deduction for hedging). *Sumitomo,* 96 Civ. 4584, Dkt. No. 146, p. 29.

### E. The Plaintiffs In *PIMCO*, *Sumitomo* and *Amaranth* Were Able To Make Certain Market Power Allegations Based On The Facts Available To Them

4

16. In *PIMCO*, the plaintiffs were able to plead that the mutual fund defendants held significant cash market **and** futures positions based on publicly available SEC filings and other information. *Hershey v. Pac. Inv. Mgmt. Co*, 05-CV-4681 (RAG), Dkt. No. 39, ¶¶1-6 (N.D. Ill.).

17. Similarly, in *Sumitomo*, the plaintiffs were able to allege that the defendants held large long positions in copper futures contracts **and** also held large portions of the physical supplies of copper in exchange warehouses. *In re Sumitomo Copper Litig.*, 182 F.R.D. 85, 87 (S.D.N.Y. 1998).

18. In *Amaranth*, there were detailed U.S. Senate report materials available which allowed the plaintiffs to make allegations to the effect that the Amaranth hedge fund defendants held positions as large as 70% of the total open interest in multiple natural gas futures contracts. *See, e.g., Excessive Speculation in The Natural Gas Market*, Permanent Subcommittee on Investigations, United States Senate, p. 52.

19. In contrast, here, Plaintiffs were not able to make such "market power" allegations. Instead, Plaintiffs' allegations focused primarily on the **timing** of the Defendants' trading. *See, e.g.*, Dkt. No. 218, ¶8. Also, Lovell Stewart believes that, had it not prevailed against the Moore Defendants' motion to stay discovery (thereby obtaining production of the documents Defendants produced to the Commodity Futures Trading Commission), Plaintiffs likely would not have been able to develop sufficient facts to allege a valid claim and obtain the Settlements herein.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed on February 20, 2015

*/s/ Christopher M. McGrath*
Christopher M. McGrath