USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 7/7/15

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
                             :
IN RE: PLATINUM AND PALLADIUM         10cv3617
COMMODITIES LITIGATION             :
                                         MEMORANDUM & ORDER
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
                             :
THIS DOCUMENT RELATES TO:
                             :
ALL ACTIONS
                             :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

WILLIAM H. PAULEY III, District Judge:

       Lovell Stewart Halebian Jacobson LLP ("Lovell Stewart"), Lowey Dannenberg Cohen & Hart, P.C., and Law Offices of Edward Cochran (together, "Futures Class Counsel"),[1] along with Doyle Lowther LLP, Law Office of Christopher J. Gray, P.C., and Kieve Law Offices (together, "Physical Class Counsel"),[2] move for awards of attorneys' fees and reimbursement of expenses incurred in settling with the defendants in these actions.[3] For the following reasons, Futures Class Counsel's motion is granted in part, and denied in part. Physical Class Counsel's motion is granted.

## BACKGROUND

       These putative class actions arise out of the Moore and MF Global Defendants' alleged commodities fraud and antitrust violations. After protracted settlement negotiations, this

---

[1] Lowey Dannenberg Cohen & Hart, P.C. and the Law Offices of Edward Cochran performed work under the direction of lead counsel, Lovell Stewart.
[2] The Law Office of Christopher J. Gray, P.C. and Kieve Law Offices performed work under the direction of lead counsel, Doyle Lowther LLP.
[3] Defendants are Moore Capital Management LP, Moore Capital Management LLC, Moore Capital Advisors LLC, Moore Advisors Ltd., Moore Macro Fund LP, Moore Global Fixed Income Master Fund LP, Christopher Pia, Louis Bacon, Eugene Burger, Joseph Welsh (together, the "Moore Defendants"), and the Trustee for the estate of Defendant MF Global, Inc. (the "MF Global Defendant").

Court preliminarily approved the Futures and Physical Plaintiffs'[4] settlements with the Moore Defendants in July 2014. Four months later, this Court preliminarily approved the Futures and Physical Plaintiffs' settlements with the MF Global Defendants.

On February 27, 2015, after the requisite notice to the Futures and Physical Classes and a fairness hearing, this Court granted final settlement approval as to both the Moore and MF Global Defendants. (See ECF Nos. 293-96.) The final settlement fund for the Futures Class is approximately $72,500,000 (see July 6, 2015 Letter from Christopher Lovell; McGrath Fee Decl. ¶¶ 4-12 (explaining original estimate)), and for the Physical Class, approximately $12,100,000 (see Lowther Omnibus Decl. ¶ 20).

Counsel for the Futures and Physical classes performed their work and advanced expenses on a wholly contingent basis. Futures Class Counsel seeks an attorneys' fee award of approximately $21,400,000, representing 29.5% of the Futures Class common fund, and an expense reimbursement of $704,294.50. Physical Class Counsel seeks an attorneys' fee award of $4,029,300, representing 33.3% of the Physical Class common fund, and an expense reimbursement of $229,230.82. No member of the Futures or Physical Classes objects to the proposed fee award. However, the Moore Defendants object to the size of Futures Class Counsel's award. The Moore Defendants assert standing to object because of their reversionary interest in the common fund.

---

[4] Futures Plaintiffs are Richard White; Harry Ploss; and The Stuart Sugarman Trust. Physical Plaintiffs are F.W. DeVito, Inc. Retirement Trust Plan; Frederick DeVito; Mary DeVito; David W. DeVito; and Russell W. Andrews.

2

## DISCUSSION

A court may calculate reasonable attorneys' fees either by determining the lodestar amount, or by awarding a percentage of the settlement. The overwhelming trend, however, is to award a percentage of the fund. See In re WorldCom, Inc. ERISA Litig., 02 Civ. 4816 (DLC), 2005 WL 3101769, at *7 (S.D.N.Y. Nov. 21, 2005). In addition to being simpler, "awarding a percentage of the fund aligns the interest of the class and their counsel by encouraging counsel to resolve cases at an early stage, if possible, while still obtaining the largest possible recovery." Sakiko Fujiwara v. Sushi Yasuda Ltd., 58 F. Supp. 3d 424, 435 (S.D.N.Y. 2014).

I. The Goldberger Factors

In awarding a percentage of a fund to class counsel, a court may consider the following factors: (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of the representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations. Goldberger v. Integrated Resources, Inc., 209 F.3d 43, 50 (2d Cir. 2000). The third factor, the "risk of the litigation" is "perhaps the foremost factor to be considered in determining" a reasonable fee award. In re Currency Conversion Fee Antitrust Litig., 263 F.R.D. 110, 129 (S.D.N.Y. Oct. 22, 2009).

There is no question that Futures and Physical Class Counsel faced significant risks in this complex multi-year litigation. See In re Platinum and Palladium Commodities Litig., 10 Civ. 3617 (WHP), 2014 WL 3500655, at *12 (S.D.N.Y. July 15, 2014). Futures and Physical Plaintiffs alleged that defendants manipulated the price of platinum and palladium futures, which in turn directly affected the physical bullion market for these metals, resulting in

artificially high prices in violation of the Commodity Exchange Act. Claims for manipulations in violation of the Commodity Exchange Act, 7 U.S.C. § 1 et seq., are "notoriously difficult to prove" and "more difficult and risky than securities fraud cases." In re Sumitomo Copper Litig., 74 Supp. 2d 393, 395 (S.D.N.Y. 1999). The manipulation claims in this case were further complicated by the fact that the defendants primarily engaged in trade manipulation, without controlling the cash market or building a dominant futures position. And defendants argued strenuously that Futures and Physical Plaintiffs failed to allege any Commodity Exchange Act violation. (See McGrath Fee Decl. ¶ 85; McGrath Fairness Decl. ¶ 98.)

Futures Class Counsel expended approximately 13,300 hours of professional time (see McGrath Fee Decl. ¶ 24; Briganti Decl. ¶ 9, Cochran Decl., ¶ 5),[5] and Physical Class Counsel expended approximately 5,260 hours of professional time (see Lowther Omnibus Decl. ¶ 140)[6] litigating this action. Among other tasks, Class Counsel drafted pleadings, engaged in extensive discovery, worked with experts, briefed a motion to dismiss, participated in a mediation, and negotiated a settlement. At a relatively early stage in the litigation, negotiations between the parties progressed sufficiently to warrant a stay of pre-trial proceedings (see ECF No. 125). Thus Class Counsel were not required to move for class certification, defend a summary judgment motion, submit expert reports, or prove their claims at trial. Nevertheless, all parties agree that the negotiations leading to these settlements were the most exacting that any of the highly experienced counsel had ever participated in.

Public policy and the high quality of representation favor an award of attorneys'

---

[5]   Lovell Stewart spent 12,143.98 hours on this case. Lowey Dannenberg and Ed Cochran, Esq. spent 1,091.50 and 73.8 hours, respectively, on this case.
[6]   Doyle Lowther LLP spent 4,907.2 hours on this case. The Law Office of Christopher J. Gray, P.C. and Kieve Law Offices spent 338.9 hours and 19.4 hours, respectively, on this case.

4

fees. Class Counsel have obtained a recovery for the Futures and Physical Classes higher than the average class action recovery. Compare McGrath Fairness Decl., ¶¶ 98, 127 (the Futures Class will receive approximately 17% of estimated damages), with In re China Sunergy Sec. Litig., 07 Civ. 7895 (DAB), 2011 WL 1899715, at *5 (S.D.N.Y. May 13, 2011) (noting that average settlement amounts in securities fraud class actions have ranged from 3% to 7% of the class members' estimated losses). The substantial recoveries obtained here are a testament to the quality of Class Counsel. See In re Sumitomo Copper Litig., 74 F. Supp. 2d 393, 396 (S.D.N.Y. 1999) ("Suffice it to say, the Plaintiffs' counsel did not have an easy path and their services in this regard are best measured by the enormous recoveries that were achieved under trying circumstances in the face of . . . resistance.").

II.     Lodestar Cross-Check

The lodestar cross-check tests the reasonableness of a percentage-based fee. See Goldberger, 209 F.3d at 50 ("[T]he lodestar remains useful as a baseline even if the percentage method is eventually chosen. Indeed, we encourage the practice of requiring documentation of hours as a 'cross check' on the reasonableness of the requested percentage.") (internal citations omitted). Courts applying the lodestar method generally apply a multiplier to take into account the contingent nature of the fee, the risks of non-payment, the quality of representation, and the results achieved. See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 121 (2d Cir. 2005). Where the lodestar is "used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court." Goldberger, 209 F.3d at 50.

Physical Class Counsel spent a combined total of 5,265 hours on this litigation, with hourly billing rates ranging from $300 to $750, generating a total lodestar of $2,935,823.50. This lodestar yields a multiplier of approximately 1.4. (See Lowther Omnibus Decl. ¶ 128, Exs.

5

H, I.) The hourly billing rate to be applied in a common fund case is the hourly rate normally charged in the "relevant community." See Blum v. Stenson, 465 U.S. 886, 895 (1984). In this case, the relevant community is Manhattan. Physical Class Counsel's hourly billing rates are reasonable and comport with rates approved by other courts in this District. See, e.g., City of Providence v. Aeropostale, Inc., 11 Civ. 7132 (CM) 2014 WL 1883494, at *13 (S.D.N.Y. May 9, 2014) (approving billing rates of attorneys in New York firms ranging from $335 to $875 per hour).

Further, the Physical Class Counsel's multiplier of 1.4 falls well within the range approved by courts in this District. See, e.g., In re Currency Conversion Fee Antitrust Litig., 263 F.R.D 110, 130 (S.D.N.Y. 2009) (approving a multiplier of 1.6); In re Telik, Inc. Sec Litig., 576 F. Supp. 2d 570, 590 (S.D.N.Y. 2008) (finding a multiplier of 1.6 "well within the range of fees approved by courts in this Circuit"). Accordingly, the lodestar cross-check confirms the reasonableness of Physical Class Counsel's requested award.

The Futures Class Counsel expended more than 13,300 hours on this litigation, with hourly billing rates ranging from $250 to $950, generating a total lodestar of $8,249,144.30. This lodestar yields a multiplier of 2.6. (McGrath Fee Decl. ¶ 24; Briganti Decl. ¶ 9; Cochran Decl. ¶ 5.) Futures Class Counsel's billing rates are at the higher end of reasonable when measured against rates recently approved in this District. See, e.g., U.S., ex rel Fox Rx, Inc. v. Omnicare, Inc., No. 12 Civ. 275 (DLC), 2015 WL 1726474, at *2 (S.D.N.Y. April 15, 2015) (approving a partner rate of $836 per hour); Themis Capital v. Democratic Republic of Congo, 09 Civ. 1652 (PAE), 2014 WL 4379100, at *7 (S.D.N.Y. Sept. 4, 2014) (approving a partner rate of $871 per hour).

In support of their motion, Futures Class Counsel cite a recent National Law

Journal survey indicating that the average partner billing rate at the largest New York-based law firms is $982 per hour, well above Futures Class Counsel's rates. And the two Lovell Stewart partners with the highest billing rates, Chris Lovell and Gary Jacobson, who billed at $950 and $905, respectively, each have nearly 40 years of experience litigating complex anti-trust actions. In light of the attorneys' legal experience, and the nature and caliber of the work performed here, Futures Class Counsel's rates are reasonable.

However, Futures Class Counsel's allocation of time is heavily weighted towards partners: approximately 80% of Lovell Stewart's time was billed by partners. Less than 1% of the billable hours represented associates' time. Further, the five Lovell Stewart partners with the highest hourly rates recorded nearly half of all time spent on this litigation. (See McGrath Fee Decl. ¶ 23.) Such an allocation is atypical. At most firms, partners with the highest billing rates play a largely supervisory role, while more basic work is performed by attorneys (whatever their title) who bill at lower rates. Courts have reduced the fee percentage requested where, as here, the lodestar value reflects an over-allocation of work to more expensive partners. See In re Dreyfus Aggressive Growth Mut. Fund Litig., 98 Civ. 4318 (HB) 2001 WL 709262, at *7 (S.D.N.Y. June 22, 2001) (reducing the requested fee where "partners chose to do all the legal work, clearly much of which could, and typically is, assigned to junior associates."); see also Ryan v. Allied Interstate, Inc., 882 F. Supp. 2d 628, 637 (S.D.N.Y. 2012) (reducing the requested fee where a partner performed work that could "easily have been done by a lower-billing lawyer").

Futures Class Counsel's multiplier of 2.6 is higher than what other courts, including this one, have awarded in commodities and securities cases. And several of those cases proceeded further than this litigation. See, e.g., In re Currency Conversion Fee Antitrust

7

Litig., 263 F.R.D 110, 130 (S.D.N.Y. 2009) (approving a 1.6 multiplier where parties had deposed more than 100 witnesses and briefed and argued motions for class certification and reconsideration); In re Natural Gas Commodity Litig., 03 Civ. 6186 (VM), ECF No. 445, ¶¶ 2, 6, 9 (S.D.N.Y. June 15, 2007) (approving a 1.9 multiplier in commodities class action involving, inter alia, motions to dismiss and class certification); In re Philip Servs. Corp. Sec. Litig., 98 Civ. 835 (AKH), 2007 WL 959299, at *1 (S.D.N.Y. Mar. 28, 2007) (approving a 1.4 multiplier in case involving multiple appeals and 43 days of depositions).

A reduction in the percentage of the common fund awarded to Futures Class Counsel is warranted, in view of the large percentage of hours attributable to attorneys with the highest billing rates, as well as the relatively early stage of the litigation in which settlement was reached. To avoid a windfall where the recovered funds run into the tens of millions, courts typically decrease the percentage of the fee as the size of the fund increases. See Currency Conversion Fee Antitrust Litig., 263 F.R.D. at 129. Accordingly, a 22.5% award of the common fund to Futures Class Counsel, representing a multiplier of approximately 1.9, will adequately compensate Futures Class Counsel.

III.   Expenses

"Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients." In re Currency Conversion Fee Antitrust Litig., MDL No. 1409 (WHP), 2012 WL 3878825, *2 (S.D.N.Y. Aug. 22, 2012) (quoting Miltland Raleigh–Durham v. Myers, 840 F. Supp. 235, 239 (S.D.N.Y. 1993)). Given the magnitude and scope of this case, and the parties' extensive use of experts, this Court is satisfied that the expenses incurred were reasonable. Accordingly, this Court grants Class Counsel's motion for reimbursement of expenses and authorizes a payment of $704,294.50 to Futures Class Counsel

8

and $229,230.82 to Physical Class Counsel.

## CONCLUSION

For the foregoing reasons, Futures Class Counsel's motion is granted in part, and denied in part. Futures Class Counsel are awarded attorneys' fees of $16,312,500, representing 22.5% of the Futures Class common fund,[7] and an expense reimbursement of $704,294.50.

Physical Class Counsel's motion is granted. Physical Class Counsel are awarded attorneys' fees of $4,029,300, representing 33.3% of the Physical Class common fund, and an expense reimbursement of $229,230.82.

The Clerk of Court is directed to terminate the motions pending at ECF Nos. 270 and 276.

Dated: July 7, 2015
      New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.

*All Counsel of Record.*

---

[7] The size of the common fund may change slightly depending on certain contingencies in the MF Global Settlement, which would yield a concomitant change in attorneys' fees.