# Exhibit 1

## STIPULATION AND AGREEMENT OF SETTLEMENT

THIS STIPULATION AND AGREEMENT OF SETTLEMENT (the "Settlement Agreement" or "Settlement") is made and entered into as of January 31, 2019, following a mediation as ordered by the Court on December 27, 2018.  This Settlement Agreement is entered into on behalf of the Physical Plaintiffs (all capitalized terms in this Agreement will have the same meaning as defined in the Moore Settlement) and the Physical Class, by and through the Physical Lead Counsel; Moore Capital Management, LP; Moore Capital Management, LLC; Moore Capital Advisors, LLC; Moore Advisors, Ltd.; Moore Macro Fund, LP; Moore Global Fixed Income Master Fund, LP; Louis Bacon (together the "Moore Defendants"); and Corning Incorporated ("Corning").

WHEREAS, the Physical Class and the Moore Defendants entered into a settlement agreement on March 21, 2014 (the "Moore Settlement"), which, among other things, provided for the Moore Defendants to have certain reversion rights (the "Reversion Rights");

WHEREAS, on October 21, 2014, the Physical Plaintiffs and the Physical Class entered into a settlement agreement with James W. Giddens, as trustee for the liquidation of MF Global Inc. under the Securities Investor Protection Act, MF Global Holdings Ltd., and MFG Assurance Company Ltd. (collectively the "MF Global Defendants") (the "MF Global Settlement");

WHEREAS, pursuant to the Moore Settlement, the Moore Defendants contributed $9,335,000 to a settlement fund, from which, as of the date of the Distribution Motion, the Court had authorized distributions totaling $3,388,771.47, resulting in a Net Settlement Fund, as that term is defined in the Moore Settlement, in the amount of $5,816,228.53, plus net accrued interest;

WHEREAS, pursuant to the MF Global Settlement, the MF Global Defendants contributed $2,401,964 to a settlement fund, from which, as of the date of the Distribution Motion, the Court had authorized distributions totaling $880,017, resulting in a Net Settlement Fund, as that term is defined in the MF Global Settlement, in the amount of $1,451,947, plus net accrued interest;

WHEREAS, as of the date of this Agreement, after reserving for fees to be paid to A.B. Data, incentive payments to class representatives and a reserve fund in the amount of $150,000 (the "Reserve Fund") the net amount of the combined settlement funds is $7,147,911;

WHEREAS, on July 28, 2018, the Physical Plaintiffs filed a Motion for Order to Distribute Settlement Funds (the "Distribution Motion") which outlined a plan to distribute the Net Settlement Funds;

WHEREAS, the Distribution Motion noted that Corning's claim had been denied because Corning had not provided documentation showing the sale or disposition of any of the platinum Corning had purchased during the Class Period;

WHEREAS, on August 16, 2018, Corning filed an objection to the Distribution Motion and contended that Corning had not sold or disposed of any of the platinum it had purchased during

the Class Period because that platinum had been used to fabricate equipment used by Corning in the manufacture of specialty glass and further alleged that both Corning's verified claim form and subsequent correspondence from Corning provided this information to A.B. Data and Class Counsel;

WHEREAS, under the Distribution Motion, the Claiming Physical Class Members who had Allowed Claims for Net Artificiality Paid would receive a total distribution of $621,644;

WHEREAS, under the Distribution Motion, the Moore Defendants would receive a reversionary distribution of $4,460,180.26;

WHEREAS, if Corning's claim were allowed in full, the Claiming Physical Class Members who had Allowed Claims for Net Artificiality Paid would receive a total distribution of $274,647, or approximately 44% of their Allowed Claims, and the Moore Defendants would receive no reversionary payment at all;

WHEREAS, on December 27, 2018, the Court ordered the parties and Corning to mediate Corning's objection before Professor Francis McGovern;

WHEREAS, the mediation took place in person on January 22, 2019, and was followed by numerous telephone calls and correspondence between and among counsel for the class, counsel for Corning, counsel for the Moore Defendants and the Mediator;

WHEREAS, as a result of the arm's-length mediation process, the Physical Plaintiffs, the Physical Class, the Moore Defendants and Corning reached agreement to resolve Corning's objection;

NOW, THEREFORE, in consideration of the mutual promises set forth below, and intending to be legally bound, Physical Plaintiffs, the Physical Class, the Moore Defendants and Corning agree as follows:

1.      Unless otherwise defined in this Agreement, capitalized terms in this Agreement will have the same meaning as defined in the Moore Settlement.

2.      The parties will prepare and submit to the Court revised Orders Granting Physical Plaintiffs' Motion for Order to Distribute Settlement Funds (the "Revised Orders").   The Revised Orders will be substantially the same as the Orders submitted with the Distribution Motion, except that they will reflect the agreements outlined in this Agreement.   The Revised Orders also will reflect Corning was the only absent class member in the Physical Class to timely file an objection to the Distribution Motion in accordance with the Court's Orders that were publicly disseminated.

3.      The Revised Orders will provide all Allowed Claims as of the date of the Distribution Motion in which the Claiming Physical Class Member suffered Net Artificiality Paid will be allowed at the rate of 88% of the NAP calculated by A.B. Data as listed in the Miller Declaration attached to the Distribution Motion.

4.     The Revised Orders will provide that Corning's claim will also be allowed at 88% of the NAP calculated by A.B. Data as shown on the enclosure to the Lowther October 24, 2018 correspondence to counsel for Corning (i.e., 88% of $13,939,732.69).

5.     As a result of Corning's claim being allowed, the Moore Defendants will not be entitled to any reversion from the Net Settlement Fund. In consideration for the Moore Defendants agreeing to the allowability of Corning's claim as described herein, foregoing any reversionary payment from the Net Settlement Fund, and waiving their Reversion Rights under the Moore Settlement Agreement, Corning will assign to the Moore Defendants $425,000 of the distribution to which it is entitled under the Moore Settlement Agreement and this Agreement. Class Counsel will cause A.B. Data to pay that amount from the amount due Corning when A.B. Data issues the first payment to Corning pursuant to this Agreement. The Moore Defendants acknowledge that upon receipt of that payment, entry of the Revised Orders, and such Orders becoming final and non-appealable, they will have no right to receive any portion of the Net Settlement Fund. Upon receipt of that payment, entry of the Revised Orders, and such Orders becoming final and non-appealable, the Moore Defendants also waive any right or ability to object to any proposed or actual distributions from the Net Settlement Fund.

6.     The Revised Orders will provide A.B. Data is to distribute payment to Claiming Physical Class Members who suffered Net Artificiality Paid in the amounts calculated pursuant to paragraph 3 of this Agreement prior to any distribution to Corning.

7.     The Revised Orders will provide A.B. Data is to distribute payment to Claiming Physical Class Members who suffered Net Losses as outlined in the Distribution Motion.

8.     Neither Corning nor the Moore Defendants will object to the fees and costs to be paid to A.B. Data as outlined in the Distribution Motion. Neither Corning nor the Moore Defendants will object to the incentive awards sought in the Distribution Motion. Neither Corning nor the Moore Defendants will object to the establishment of the Reserve Fund as outlined in the Distribution Motion, nor will they object to the Settlement Administrator resolving errors or disputes with Reserve Fund monies in accordance with the Settlement Agreements. The Settlement Administrator will give Corning notice of all expenditures from the Reserve Fund and an explanation for the expenditure.

9.     The Revised Orders will provide immediately following the distributions outlined in paragraphs 6 and 7 of this Agreement, A.B. Data is to make an initial distribution to Corning of the balance of the Net Settlement Fund that remains after the payment of any fees, costs and incentive awards approved by the Court, and after deduction for any Reserve Fund approved by the Court. (Payment of the $425,000 Corning has assigned to the Moore Defendants will be made from this initial payment to Corning).

10.     The Revised Orders will provide that once administration of the settlement is final, all pro-rata distributions have been made and all errors and disputes have been resolved by the

- 3 -

Settlement Administrator in accordance with the Settlement Agreements, and there is no further need for the Reserve Fund, the entire balance of the Reserve Fund and any remaining balance in the Net Settlement Fund will be distributed to Corning.

11.     In addition to the proof of claim submitted by Corning under penalty of perjury, as well as the supplemental documentation submitted by Corning to A.B. Data prior to the filing of the Distribution Motion, Corning will provide the Settlement Administrator with an affidavit as to the sale or disposition of the platinum it purchased during the time period from November 19, 2007 and June 18, 2008.  Corning will submit this Affidavit without waiving its position Corning's proof of claim contained all the information Corning was required to submit. The Moore Defendants' consent to this Settlement is conditioned on the Moore Defendants receiving that Affidavit before the Revised Orders are submitted to the Court and the Settlement Administrator's acceptance of such Affidavit as sufficient verification of Corning's claim.

12.     The parties will use their best efforts to have the Revised Orders submitted and entered by the Court within seven days of the execution of this Agreement.

13.     If the Court determines that new notice must be sent to the Class, any notice costs or fees will be paid from the Net Settlement Fund.

14.     Any disputes arising under this Agreement or in the preparation of the Revised Orders will be resolved by Professor McGovern and his decision will be binding on all parties.

15.     The Parties will execute such additional documents and perform such additional acts as may be necessary or appropriate to effectuate, consummate or perform any of the terms, provisions or conditions of this Agreement.

16.     The Parties are of equal bargaining strength, have participated actively and at arm's-length in the preparation of this Agreement, and have consulted with such independent advisors as each has deemed appropriate, so that any rule of construction that ambiguities are to be resolved against the drafting parties shall not apply in the interpretation of this Agreement.

17.     This Agreement may be executed in any number of counterparts, each of which when so executed will be deemed to be an original and all of which taken together will constitute one and the same agreement.  Delivery of an executed counterpart of a signature page to this Agreement by facsimile or pdf will be as effective as delivery of any other counterpart.

18.     The Late Physical Claimants who participated in the Court ordered mediation and listed in the Miller Declaration will be paid.

[Signature Page to Follow]

In witness whereof, the parties have executed this Settlement Agreement in a manner appropriate to each, and the individual signing on behalf of a party represents and warrants that he or she has the authority to so act.

MOORE DEFENDANTS

By: David M. Zensky
Its Counsel

LEAD COUNSEL FOR THE PHYSICAL CLASS

By: John Lowther, Esq.
Its Lead Counsel

CORNING INCORPORATED

By: WILLIAM L. JUAN
Its VICE PRESIDENT

PHYSICAL PLAINTIFFS

By: John Lowther, Esq.
Their retained counsel and Lead Counsel for the Physical Class

- 5 -