UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
                                             :
IN RE: PLATINUM AND PALLADIUM                     10cv3617
COMMODITIES LITIGATION              :
                                                  MEMORANDUM & ORDER
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
                                             :
THIS DOCUMENT RELATES TO:
                                             :
ALL ACTIONS
                                             :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

WILLIAM H. PAULEY III, Senior United States District Judge:

This is a consolidated class action by two different sets of plaintiffs (the "Futures Plaintiffs" and the "Physical Plaintiffs") for commodities fraud and antitrust violations.  Both groups move for orders approving the distribution of settlement funds.  For the following reasons, their motions are granted in part and denied in part.

BACKGROUND

In broad strokes, Plaintiffs allege that between October 2007 and June 2008, Defendants manipulated the closing price of platinum and palladium futures contracts traded on the New York Mercantile Exchange by placing large buy orders at the end of trading days to artificially inflate closing prices.  This "bang the close" strategy in turn directly affected the physical bullion market for these metals, resulting in artificially high prices in violation of the Commodity Exchange Act.  Defendants paid a $25 million penalty and agreed to sanctions to settle claims brought by the U.S. Commodity Futures Trading Commission ("CFTC") based on Defendants' alleged manipulation of the futures and physical markets.  Plaintiffs filed their class actions on the heels of the CFTC settlement.

The Futures Plaintiffs and the Physical Plaintiffs subsequently settled with two

different groups of defendants—the Moore Defendants and the MF Global Defendants.[1]  This

Court preliminarily approved the proposed Moore and MF Global Settlements in July 2014 and

November 2014, respectively, and granted final approval of all four settlements on February 27,

2015.

        Each group of plaintiffs subsequently moved for disbursement of settlement

funds.  After the motions were filed and with the consent of the parties and various third parties,

this Court directed mediation of issues arising from the filing of late-but-otherwise eligible

claims, as well as an objection to the Physical Plaintiffs' motion by a class member.  (See Order,

ECF No. 362.)  Following a mediation on January 22, 2019, the Physical Plaintiffs and Futures

Plaintiffs submitted supplemental materials.

DISCUSSION

        Both motions seek approval of (1) the determinations of the settlement

administrator; (2) class counsel's proposed plan of allocation for the 7% pool of the settlement

funds that remains to be determined; (3) incentive awards for class representatives; (4) the

settlement administrator's outstanding fees and expenses; (5) reversion payments to the Moore

Defendants; and (6) a reserve fund for each settlement if certain adjustments need to be made.

Separately, counsel for the Futures Plaintiffs seeks approval of attorney's fees incurred in

connection with administering the settlement after this Court granted final approval, as well as

reimbursement of the mediator's fees and expenses.

        Upon review of the parties' submissions, this Court (1) accepts the results of the

---

[1]     A more fulsome discussion of the parties and the underlying facts of this nearly decade-old litigation is set forth in this Court's prior decisions, familiarity with which is presumed.  See, e.g., In re Platinum & Palladium Commodities Litig., 2015 WL 4560206 (S.D.N.Y. July 7, 2015); In re Platinum & Palladium Commodities Litig., 2014 WL 3500655 (S.D.N.Y. July 15, 2014); In re Platinum & Palladium Commodities Litig., 828 F. Supp. 2d 588, 591-93 (S.D.N.Y. 2011).

mediation; (2) approves the determinations of the settlement administrator, as amended by the results of the mediation, except as to the claim filed by FideliTrade, which will be addressed below; (3) approves class counsel's proposed plan of allocation for the 7% pool of the settlement funds that remains to be determined; (4) rejects the requested incentive awards, which are discussed in greater detail below; (5) approves the settlement administrator's outstanding fees and expenses; (6) approves reversion payments to the Moore Defendants; (7) approves a reserve fund for each settlement as set forth in the plaintiffs' motion papers; (8) approves the attorney's fees requested by Futures Plaintiffs' counsel; and (9) approves the mediator's fees and expenses as addressed below.

I.      FideliTrade's Claim

FideliTrade seeks inclusion of its late-but-otherwise-eligible claim.  (ECF No. 361.)  The determination of whether to accept such a claim "is essentially an equitable decision within the discretion of the court."  In re Currency Conversion Fee Antitrust Litig., 263 F.R.D. 110, 126 (S.D.N.Y. 2009).  FideliTrade contends that the notice of the class action settlement was not directly addressed to its registered agent, so it did not become aware of the class action or the deadline to submit claims until August 21, 2015.  After receiving notice, it submitted its claim one week later on August 28, 2015—roughly three months after the deadline to file claims and one month after the deadline for large traders to file claims.  Because this Court finds that FideliTrade acted expeditiously to submit its claim and that its delay in filing its claim is in line with the filing of other late claims, FideliTrade's claim will be accepted both to share in settlement proceeds and in calculating the Moore Defendants' reversion.

II.     Incentive Awards

Class representatives may receive an incentive award in addition to their share of

3

the ultimate recovery, but the decision to grant the award, and the amount thereof, rests solely within the discretion of the court.  Dial Corp. v. News Corp., 317 F.R.D. 426, 439 (S.D.N.Y. 2016).  The "guiding standard in determining an incentive award is broadly stated as being the existence of special circumstances including the personal risk (if any) incurred by the plaintiff-applicant in becoming and continuing as a litigant, the time and effort expended by the plaintiff in assisting in the prosecution of the litigation or in bringing to bear added value (e.g., factual expertise), or any other burdens sustained by that plaintiff . . . and, of course, the ultimate recovery."  Dial Corp., 317 F.R.D. at 439 (citation omitted).  Individual awards in this district range from $2,500 to $85,000.  Dial Corp., 317 F.R.D. at 439; cf. Kindle v. Dejana, 308 F. Supp. 3d 698, 717 (E.D.N.Y. 2018) (observing that amount of award should be consistent with awards approved in other class actions).  Although these awards are typically provided to individuals, courts have also granted incentive awards to corporate representatives.  Dial Corp., 317 F.R.D. at 439 (collecting cases).

    A.  Futures Plaintiffs

       Richard White, Harry Ploss, and the Stuart Sugarman Trust are the representatives for the Futures Plaintiffs.  They seek an incentive award as compensation and reimbursement for expenses in the aggregate amount of $140,000—that is, $70,000 from the Moore Futures settlement fund and $70,000 from the MF Global Futures settlement fund.  The requested amount represents 0.195% of the aggregate common fund.

       In this Court's view, a 50% reduction in the incentive awards is warranted.  Unlike a class representative in an employment discrimination case who risks retaliation from a current employer or discrimination by future employers, the class representatives here do not appear to have incurred any discernable risks.  See Frank v. Eastman Kodak Co., 228 F.R.D.

4

174, 187 (W.D.N.Y. 2005) (explaining that in the employment context, "the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers"). Nor is it apparent that the class representatives provided any extraordinary services or brought any special expertise to bear on the case. See In re W. Union Money Transfer Litig., 2004 WL 3709932, at *16 (E.D.N.Y. 2004) (noting that courts have "reduced, rejected[,] or questioned incentive awards where named plaintiffs did not perform any extraordinary services to the class"). Instead, the primary consideration relevant to this case is compensating the class representatives for their time and effort.

        The declarations submitted by the class representatives indicate that their efforts principally consisted of providing trading records to counsel, reviewing the complaint and settlement documentation, and participating in telephone conferences with counsel. See In re Colgate-Palmolive Co. ERISA Litig., 36 F. Supp. 3d 344, 354 (S.D.N.Y. 2014) (awarding six representatives $5,000 each for a $45 million settlement where they "reviewed draft pleadings and motions, searched for and produced relevant documents, reviewed filings, and communicated regularly with Class Counsel"). A reduced incentive award would also be congruent with the unexceptional amount of time that the class representatives expended in this action. Ploss estimates spending 45 hours at an estimated hourly value of $400, Stuart Sugarman estimates spending 20 hours at an estimated hourly value of $400, and White estimates spending 40 hours at estimated hourly value of $250. Although this Court certainly does not denigrate the time spent by class representatives, the $36,000 value that their estimates yield pales in comparison to the $140,000 that they request. An aggregate incentive award of $70,000 ($35,000 from each settlement) would be well within the bounds of normalcy, both with respect

to size and proportion of the total settlement fund.  See, e.g., Dial Corp., 317 F.R.D. at 438

(incentive awards comprising 0.12% of the total fund); Currency Conversion, 263 F.R.D. at 131

(incentive awards comprising 0.1% of the total fund).

     B.  Physical Plaintiffs

        Frederick DeVito and Russell W. Andrews are the representatives for the Physical

Plaintiffs.  The Physical Plaintiffs' representatives seek an incentive award of $120,000 in the

aggregate—namely, $50,000 from the Moore Physical settlement fund and  $70,000 from the

MF Global Physical settlement fund.  The requested amount represents 1% of the common fund

resulting from both Physical Settlements.

        For largely the reasons explained above, a concomitant 50% reduction in the

requested incentive awards is warranted.  As with the Futures Plaintiffs' representatives, the

Physical Plaintiffs' representatives did not suffer any inordinate risk or provide any extraordinary

services or expertise.  While they do not reveal how much time they expended in this action,

their work—like that of the Futures Plaintiffs' representatives—consisted of providing trading

records to counsel, collecting documents for production, reviewing case materials, and

communicating with counsel.  See In re Colgate-Palmolive Co. ERISA Litig., 36 F. Supp. 3d at

354.  Against this backdrop, an aggregate incentive award of $60,000 ($25,000 from the Moore

Physical settlement fund and $35,000 from the MF Global Physical settlement fund) is

reasonable.  Finally, the revised award—now 0.5% of the aggregate settlement funds—does not

comprise such an outsize proportion as to require further reduction.

III.    Mediator's Fees and Expenses

        Counsel for the Futures Plaintiffs seeks reimbursement of the mediator's fees and

expenses, to be drawn from the Futures settlement funds in proportion to their size—that is,

68.6% from the Moore Futures settlement fund and 31.4% from the MF Global Futures

settlement fund.  Such an application is, in the abstract, unobjectionable based on the "common

practice in this circuit of granting expense requests."  In re Visa Check/Mastermoney Antitrust

Litig., 297 F. Supp. 2d 503, 525 (E.D.N.Y. 2003) (discussing approval of expenses for the "costs

of experts and consultants," among other things); accord In re Arakis Energy Corp. Sec. Litig.,

2001 WL 1590512, at *17 n.12 (E.D.N.Y. 2001) ("Courts in the Second Circuit normally grant

expense requests in common fund cases as a matter of course.").  Although the proposed orders

contain no reference to the total mediation expenses sought to be approved, thereafter, the

mediator submitted his invoice to this Court and the parties.  This Court finds the mediator's fees

and expenses totaling $27,363.53 to be fair, reasonable, and adequate.

CONCLUSION

For the foregoing reasons, Plaintiffs' motions for distribution are granted in part

and denied in part.  Counsel are directed to file revised proposed orders by March 8, 2019 that

reflect the determinations in this Memorandum & Order.   The Clerk of Court is directed to

terminate the motions pending at ECF Nos. 328 and 336.

Dated: March 1, 2019
       New York, New York

SO ORDERED:

WILLIAM H. PAULEY III
U.S.D.J.